UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM GUNNAR TRUITT,<br><br>　　　　　　Plaintiff,<br><br>　-against-<br><br>SALISBURY BANK AND TRUST COMPANY; AND SALISBURY BANCORP, INC.,<br><br>　　　　　　Defendants. | Civil Action No.: 7:18-cv-08386-NSR-PED<br><br>**DECLARATION OF RICHARD J. CANTELE, JR.**<br><br>*Electronically Filed* |

**RICHARD J. CANTELE, JR.**, of full age, hereby declares:

1. I am employed by Salisbury Bank and Trust Company (the "Bank") as the Chief Executive Officer. I am familiar with the facts set forth in this Certification.

2. On January 29, 2018, Truitt was hired as a full-time Mortgage Lending Officer Trainee in the Bank's Residential Lending Department.

3. Without notifying the Bank of his intention to run for elected office in the New York State Assembly, as is required by the Bank's policy on outside employment, on April 12, 2018, I am informed, and based thereon believe, that Truitt posted to Facebook that he would be campaigning for a seat in the New York State Assembly.

4. Upon learning of Truitt's announcement on Facebook, I asked Amy Raymond, Truitt's supervisor, and Doug Cahill, Vice President of Human Resources, to meet with Truitt to determine what kind of time commitment such a campaign (and subsequently job) would entail. I am informed and believe that that meeting took place on April 13, 2018.

5. At their meeting with Truitt on April 13, 2018, I am informed that Raymond and Cahill asked Truitt to provide them with a written explanation as to what the job would entail if he were elected. Truitt provided this letter (attached Exhibit D-4 to Plaintiff's deposition and to

the Declaration of Jennifer Fischer filed concurrently herewith), along with the parameters of the Assembly role.

7. Upon review of the letter, I and other managers reviewed the role with respect to a potential conflict of interest and with respect to the amount of time away from the Bank that would be required. Upon review of the state Assembly calendar provided by Truitt, it became clear that Truitt would be required to spend 2-4 days per week (60 business days) in Albany for more than half of the year. Truitt also acknowledged that campaigning would continue even after he would be elected.

8. The Riverside Division residential lending market, which Truitt served as a Trainee and would be serving as a Mortgage Loan Officer for the Bank upon completion of his training, was an emerging market for the Bank. Because the Bank did not previously provide residential mortgages in this market, it would be incumbent on Truitt to spend most of his working time developing client relationships and business in that region and it would be necessary for him to be present, developing relationships with local real estate agents and attorneys. The Bank was prepared to invest significant marketing resources in the Riverside Division to assist Truitt in developing a customer base.

9. The primary responsibility of a Mortgage Loan Officer is sales. Where competing banks offer similar products and services, a distinguishing factor in being able to get new business and retain current customers is relationship building and customer service. A Mortgage Loan Originator must be responsive and available to their clients at their convenience. Not only do Mortgage Loan Officers spend a significant amount of time on the telephone with clients, they must be physically present in their market to bring a real estate sale to close at the customer's convenience.

10. Residential lenders often work more than 50 hours per week, and there was a concern that Truitt's job duties as an assemblymember would not permit him to focus all of his energies to his clients at the Bank. If the legislature was in session, Truitt would be unable to answer telephone calls and/or emails until the evening hours, and he would physically be more than an hour and a half drive from his assigned market. Raymond, Cahill, Andrea MacArthur and I all had concerns that Truitt would not meet the high level of customer service and responsiveness required in this business, especially in a new market.

11. At no time did Truitt's political affiliation influence management's decision to deny his outside employment request. My sole concern was whether Truitt would be able to fulfill his position as a residential originator given the responsibilities as we knew them to be relative to the Assembly position in New York.

12. Given that Truitt would be required to spend 60 days per year, at a minimum, in Albany when the assembly was in session and would spend additional time campaigning for this position, management determined in its business judgment that the time commitment required by the Assembly role could not be accommodated.

13. The Bank would have come to the same conclusion if Truitt had stated that he was going to unavailable during working hours for 2-4 days per week for a 6 month period to get his pilot's license or become an entrepreneur and create his own company.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: December 12, 2019

_____
Richard J. Cantele, Jr.