Page 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS COUNTY

----------------------------------------X

WILLIAM GUNNAR TRUITT,

                    Plaintiff,

        -against-
SALISBURY BANK and TRUST COMPANY; and
SALISBURY BANCORP, INC.,

                    Defendants.

----------------------------------------X

                         June 27, 2019
                          9:42 a.m.


    EXAMINATION BEFORE TRIAL of WILLIAM GUNNAR
TRUITT, a Plaintiff herein, taken by the
respective parties, pursuant to Court Order,
held at the offices of McCullough Ginsberg
Montano & Partners, 122 East 42nd Street, Suite
3505, New York, New York, before Shechinah
Jackson, a Notary Public for and within the
State of New York.



```
 1                    W. TRUITT
 2   something of the lines of that.  So that
 3   weekend I did because that was a Friday, so I
 4   wrote it up over the weekend.
 5       Q.  Mr. Truitt, is the document that has
 6   been marked Exhibit 20, beginning with Bates
 7   stamp D109, the e-mail that you sent to Doug
 8   Cahill and Amy Raymond that you just testified
 9   to?
10           (Whereupon, E-mail D109 through 115
11            was marked as Defendants' Exhibit 20 for
12            Identification.)
13           MR. LOWER:  Objection to form.  This
14            document seems to have perhaps
15            inadvertently included the last page,
16            Bates stamp 116.
17           MS. SORIN:  Yes.  So the letter
18            contains the Bates stamped pages D109 to
19            D115.
20       A.  I'm going to take a look real quick
21   pages 109 through 115, yes.
22       Q.  Did you draft this document?
23       A.  Yes.
24       Q.  To the best of your knowledge is this
25   document accurate?
```



```
 1                        W. TRUITT
 2        A.   Correct.
 3        Q.   You note that the state assembly
 4   enters session in January and concludes in June
 5   of each year, correct?
 6        A.   Yes.  To the best of my knowledge,
 7   yes.
 8        Q.   So if you were elected to the
 9   assembly, you would be required to be in Albany
10   at the state capital building while the
11   assembly is in session, correct?
12             MR. LOWER:  Objection to form.
13        Q.   When the legislature is in session you
14   would have to be in Albany, correct, if you
15   were elected?
16        A.   You were supposed to be, yes.
17        Q.   You attached to the letter the New
18   York State legislature session calendar for
19   January to June 2018; is that correct?
20        A.   That's correct.
21        Q.   Each of these dates that are
22   highlighted are dates that the assembly is in
23   session and you would be in Albany, if elected?
24             MR. LOWER:  Objection to form.
25        A.   Work permitting, yes.
```


MAGNA
LEGAL SERVICES

```
 1                     W. TRUITT
 2         Identification.)
 3      A.  Yes, I'm familiar with this.
 4      Q.  So did you meet with Doug Cahill on
 5  what will be April 26, 2018?
 6      A.  I can't confirm it was that day, but I
 7  know I met with him that week on Thursday,
 8  Friday.
 9      Q.  Was anybody else in the meeting on or
10  around April 26th?
11      A.  No.  It was just Doug and myself.
12      Q.  What was discussed at this meeting?
13      A.  At this meeting is when Doug had told
14  me that he had spoken with members of the board
15  of directors and, specifically, mentioned Art
16  Bassin, a gentleman, an individual I wasn't
17  familiar with at the time.  He said he had
18  approached him because he, too, was an elected
19  official as a supervisor in the Town of Ancram,
20  A-N-C-R-A-M.
21      Q.  What did he say further?
22      A.  That he wasn't comfortable with this,
23  for myself running for this position and
24  working for the bank.
25      Q.  Who wasn't comfortable?
```



Page 1

1                       A. Raymond

2               UNITED STATES DISTRICT COURT

3             SOUTHERN DISTRICT OF NEW YORK

   --------------------------------------------------------x

4  WILLIAM GUNNAR TRUITT,

5                   Plaintiff,        Case No.

                                      7:18-cv-08386-NSR

6          vs.

7  SALISBURY BANK and TRUST COMPANY; and SALISBURY

   BANCORP, INC.,

8

                   Defendants.

9  --------------------------------------------------------x

10

11

12

13

14

15

16           DEPOSITION OF AMY RAYMOND

17               New York, New York

18              Monday, July 1, 2019

19

20

21

22

23  Reported by:

24  THOMAS A. FERNICOLA, RPR

25  JOB NO. 163802

Page 18

A. Raymond

1  A    Yes.
2  Q    So you first reached out to
3  Mr. Truitt after noon to inquire about his
4  whereabouts in that instance?
5  A    Correct.
6  Q    Did you receive a subpoena for
7  evidence related to this lawsuit?
8      MS. WORTHY:  Objection.  You can
9  answer.
10  A    The bank received a subpoena.
11  Q    Can you give me a little bit of
12  clarity on that question, though?  Did you
13  receive a subpoena for evidence related to
14  this lawsuit?
15  A    Me personally did not; the bank did.
16  Q    Has anyone searched your phone
17  including your phone for text messages that could
18  relate to this litigation?
19  A    No one has taken my phone.  I looked
20  at my phone if I had any texts remaining, and
21  I did not, but it was requested to review it.
22  Q    Who did that request come from?
23      MS. WORTHY:  Objection.  I'm going
24  to object to any -- if you're referring to

Page 19

A. Raymond

1  any attorney-client privilege.
2      MR. LOWER:  No, just the identity.
3  And if you want to make it categorical,
4  whether it was Littler or the bank, I'd be
5  fine with that, but I don't think I'm
6  seeking advice of counsel or work product
7  based on that.
8      MS. WORTHY:  To just clarify your
9  question, you're asking if it's for the
10  bank or whatever?
11  Q    Earlier I said that -- who asked you
12  to check your phone for evidence related to
13  this litigation, and I can just limit that
14  question to was it Littler Mendelson,
15  Salisbury, or someone else?
16      MS. WORTHY:  Objection.  You can
17  answer.
18  A    It came from our counsel.
19  Q    Would that be someone at Littler
20  Mendelson, I mean, this entity that we're
21  sitting in?
22      MS. WORTHY:  Objection.  Don't
23  answer.  She's referring to
24  attorney-client privilege.  No more

Page 20

A. Raymond

1  discussion on that.
2  Q    What kind of phone do you have?
3  A    The brand?
4  Q    Yes, the brand and model.
5  A    IPhone 6.
6  Q    How long have you had that phone
7  for?
8  A    Two to three years.  It's old, I'm
9  embarrassed to say.
10  Q    We're all there.
11      Did you delete the text messages
12  that you've described to me today?
13  A    Yes.
14  Q    When did you delete them?
15  A    Probably within a week after they
16  were sent.
17  Q    Why did you delete them?
18  A    It's normal to clean out my junk.
19  Q    Are you aware of any other criticism
20  of Mr. Truitt's performance at Salisbury?
21  A    No.
22  Q    Are you aware of any positive
23  feedback regarding Mr. Truitt's performance at
24  Salisbury?

Page 21

A. Raymond

1  A    Yes.
2  Q    Can you describe all of that for me?
3  A    I would say he was personable, eager
4  to learn, pleasant.  His interactions with
5  other employees within the department were
6  pleasant.
7  Q    Those are your opinions that you
8  just provided to me, right?
9  A    Yes, but you said feedback from
10  others.  I'm referring to what others had said
11  to me as well.
12  Q    Yes, it's not like I'm trying to pin
13  down an exact source, but perhaps do you think
14  that was a fair characterization of Salisbury
15  employees' view of Mr. Truitt as an employee?
16  A    In general, yes.
17  Q    One thing I forgot to mention
18  earlier today is just breaks.  We can take a
19  break anytime you want.
20      MR. LOWER:  And that goes for you
21  too, Tom.  Anyone.  Sabrina.  So that
22  speaks for itself.
23  Q    I want to ask a little bit about --
24  I believe it's called the employee handbook.

Page 58

A. Raymond

1 requirements with.
2      Q    So I think we've just here discussed
3 two warnings that you indicate you've relayed
4 to Will.  Did you ever give Will any other
5 warnings about a problem with his work
6 performance?
7      A    No.
8      Q    Are you aware of Will receiving any
9 kind of written warning prior to end of his
10 employment?
11      A    I am not aware of any.
12      Q    Have any other Salisbury employees
13 been terminated for their political
14 activities?
15           MS. WORTHY:  Objection.  It's going
16 to her knowledge.  If you could just
17 rephrase.
18      Q    Are you aware of any other Salisbury
19 employees having been terminated or
20 disciplined for their political activity?
21      A    I am not.
22      Q    Are you aware of any current or
23 former Salisbury employee aside from
24 Mr. Truitt who has engaged in political

Page 59

A. Raymond

1 activity?
2      A    I am not.
3      Q    What actions were taken to address
4 Salisbury's concern with Mr. Truitt's campaign
5 for New York State Assembly prior to his
6 termination?
7      A    What specifically are you
8 referencing?
9      Q    I'm asking you what actions were
10 taken to address Salisbury's concerns with
11 Will's campaign for New York State Assembly
12 prior to his termination.
13      A    We discussed all the steps that were
14 taken prior to receipt of his email where he
15 expressed his decision to choose other
16 employment.
17      Q    What steps are those?  I'm not sure.
18 I'm sorry.
19      A    The inquiry to him regarding his
20 intent for other employment.  The meetings
21 that happened between Doug Cahill -- sorry,
22 Mr. Cahill and Mr. Cantele and him regarding
23 the obligations of both positions, and the
24 workload of both positions.

Page 60

A. Raymond

1           And finally, the email that we can
2 reference, P whatever it is, the last
3 document, 65.
4      Q    Were you talking about the page of
5 the Plaintiff's 2 exhibit whose Bates stamp is
6 D-000020?
7      A    Correct.
8      Q    Is it your understanding that this
9 is the date that Mr. Truitt's employment ended
10 as his supervisor?  When I say this is the
11 date, I'm still referring to the P2 page
12 ending in 20 on May 1.
13      A    Yes, this is dated May 1.
14      Q    Because I've made a mess of the
15 transcript now, it's your understanding that
16 May 1, 2018, was the last day of Mr. Truitt's
17 employment; is that correct?
18      A    Correct.
19      Q    Do you know if Mr. Truitt was on the
20 verge of qualifying for any benefits around
21 the time of his termination?
22      A    Benefits regarding what?
23      Q    That's a good question.  It's a
24 pretty good list.  You know, things like

Page 61

A. Raymond

1 health insurance, 401(k).  So when I say
2 "benefits," I'm referring to typical fringe
3 benefits for employees, things like a 401(k),
4 health insurance.  And I'll say any benefit at
5 all.
6      Q    Do you know if Mr. Truitt was -- I
7 can back up, too.  My understanding was that I
8 think on the first day of the month that
9 occurs 60 days after somebody's employment
10 starts, certain benefits kick in at Salisbury,
11 meaning a new employee doesn't instantly get
12 all of the benefits offered by Salisbury.
13      A    I don't know the details.  You would
14 have to refer to HR for that.
15      Q    When you say "HR," who would be a
16 good person that might be acknowledge?
17      A    Doug Cahill, or our employee
18 handbook would have that information
19 specifically to the dates and the exact
20 benefits.
21      Q    I, of course, don't expect you to
22 have an answer to every single question I ask.
23           Did you review any documents in
24 preparation for today's deposition?

# Salisbury Bank and Trust
# EMPLOYEE STATUS CHANGE FORM

| Employee Name | Employee # | Manager | Location | Department | Effective Date |
|---|---|---|---|---|---|
| Kevin Cantele | | Raymond | Lakeville | Retail Lending | 1/12/15 |

**Reason for Change**

☐ Address Change ☒ Pay Change ☒ Status ☒ Title Change ☐ Leave of Absence ☐ Termination ☐ Other _____

## Name/Address Change

Name Change to:

Address Change to:

Last Name _____ First Name _____ MI _____

Street _____  Home Phone Change to: (_____) _____ _____

City _____ State _____ Zip Code _____

## Pay Change

Base Pay Rate    Variable Pay Rate *(if applicable)*    Salary Type:

Current: $14.42    Current: _____    Last Increase Date: _____    ☐ Exempt

Propose _100% Commissioned w/ $2500 per month draw for 3 months_    Proposed: _____    Next Review Date: _____
_____ ☒ Non-Exempt

Pay Change Reason: ☐ Annual Merit ☐ Promotion ☐ Transfer ☐ FT    Budgeted: ☒ Yes ☐ No

## Transfer/Title Change

*(To be filled out by current supervisor)*          *(To be completed by new supervisor)*

From: Location _____          To: Location _____

Department _____          Department _____ Residential Lending _____

Job Title _____ MLO Trainee _____          Job Title _____ MLO _____

Supervisor _____          Supervisor _____ Raymond _____

Status ☐ FT ☐ PT ☐ PT > 30 hours          Status ☐ FT ☐ PT ☐ PT > 30 hours

Will this individual directly manage other employees? NO___ If yes, who? (List employee names)
_____

## Leave of Absence

☐ Disability                ☐ Workers Comp *(attach necessary documentation)*    Period of Absence:
☐ Military Duty *(attach orders)*    ☐ Jury Duty *(attach summons)*    Last Day Worked _____
☐ Family/Medical          ☐ Personal                Leave Begin Date _____
☐ Other _____                          Estimated Return Date _____
                                    Actual Return Date _____

## Termination *(Attach Written Resignation Letter, if applicable)*

☐ Voluntary ☐ Involuntary ☐ Retirement ☐ Other _____

Reason _____ (attach supporting documentation for involuntary termination)

Last Day Worked _____    Vacation Days Remaining _____    Severance Pay (if any) _____

_Doug Cahill_____ VP, HR_____ 12/10/14_____ _____
Originator          Title          Date          HR Processed By

_Amy Raymond_____ SVP Retail_____ 12/10/14_____ _____
Approval          Title          Date          Date Processed

_____ _____ _____          ☐ Paycom ☐ I.S. ☐ COBRA
Approval          Title          Date

D-000996

 # SALISBURY BANK AND TRUST COMPANY

## New Employee / Change of Employee Information Form

☒ **New Employee**        ☐ **Change of Employee Information**

Employee ID Number:      1449

First Name:      Kevin R.

Last Name:      Cantele

Job Title:      Commercial Credit Intern

Department:      **Commercial Credit**

Bank Location:      **Lakeville**

Supervisor:      **Peter Riley**

Home Address:      ███████████████

Alternate Address:      ███████████████

Emergency Contact      ███████████████

Emergency Contact Phone:  ███████████

Home Phone:      ██████████

Cell Phone:      ██████████

Alternate Phone (and description):

Work Phone Extension:

Home E-Mail Address:      ███████████

Work Status (F/T or P/T; Hourly or salaried):      Seasonal/Hourly

### Check boxes below and initial and date when completed:

☒ The Human Resources Department completes this form and forwards to Megan Pezzee.  _Linda Cilley 5-24-12_
☒ Ms Pezzee makes adjustments to the Disaster Recovery Plan and forwards to Deb Macheski.  _MSPBW 6/14/12_
☒ Ms. Macheski makes adjustments to the insider cycle code to 9, mail code on JHA, ATM Fee  _____  7/22/12
    waiver, if necessary and forwards to Human Resources.
☐ Human Resources received form back on _____.  _____  7-23-12

Human Resources Rev 08//10
New or change employee info.dot

**D-000997**

## Douglas Cahill

| | |
|---|---|
| **From:** | Rick Cantele |
| **Sent:** | Wednesday, January 24, 2018 1:46 PM |
| **To:** | Amy Raymond |
| **Cc:** | Douglas Cahill |
| **Subject:** | RE: William Truitt |

Let's talk about it

**From:** Amy Raymond
**Sent:** Wednesday, January 24, 2018 10:54 AM
**To:** Rick Cantele
**Cc:** Douglas Cahill
**Subject:** William Truitt

HI Rick,

Doug, Andrea and myself met with Will Truitt who was referred to us as an applicant for employment from Don Sagliano (Arnoff).

Doug sat with will and immediately picked up on his ability to network and sales personality. He was the youngest person ever elected to the Dutchess county legislature. Hyde Park and Poughkeepsie is his current district and he is a Marist grad. Young, polished, and not afraid to network. ½ the battle for and originator and the hardest part to teach (self- motivation). We also were very comfortable with his ability to learn and understanding of regulations.

We would like to give him the opportunity similar to how we brought Kevin along. 6 months' salary while training in the department and then ease into 100% commission structure.

Our budget called for 100% commission right out of the gate and the other candidates have been seriously lacking to say the least. I would like to discuss this opportunity more together.

Thank you

Amy

Amy Raymond, Senior Vice President Retail Lending and Commercial Operations **NMLS#597837**
**Salisbury Bank • 5 Bissell Street • PO Box 1868, Lakeville, CT 06039-1868 • EXT 3506**
**TEL 860.453.3506 • FAX 860.435.4005 • araymond@salisburybank.com**

STOP (THINK GREEN BEFORE YOU PRINT.

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM GUNNAR TRUITT, | Civil Action No.  7:18-cv-08386-NSR |
| Plaintiff, | |
| -against- | |
| SALISBURY BANK AND TRUST COMPANY; AND SALISBURY BANCORP, INC., | |
| Defendants. | |

## DEFENDANTS' ANSWER AND DEFENSES
## TO PLAINTIFF'S COMPLAINT

Defendants Salisbury Bank and Trust Company and Salisbury Bancorp, Inc. (together, "Defendants"), by and through their attorneys, Littler Mendelson, P.C., hereby answer the Complaint ("Complaint") of William Gunnar Truitt ("Plaintiff"), and state as follows:

### AS TO THE PRELIMINARY STATEMENT

Defendants state that the Preliminary Statement purports to summarize the allegations of the Complaint and that no response is necessary.  To the extent a response is required, Defendants admit that Plaintiff purports to proceed as set forth in the preliminary statement, but deny that there is any basis for Plaintiff's claims.

### AS TO THE PARTIES AND JURISDICTION

1.     Except to admit that Salisbury Bank and Trust Company (the "Bank") has a branch office located at 11 Garden Street, Poughkeepsie, New York 12601, and that Plaintiff, following his hiring in February 2018, would work in such office following the completion of his training, Defendants deny the allegations contained in Paragraph 1 of the Complaint.

2.     Defendants admit the allegations contained in Paragraph 2 of the Complaint.

3.      Defendants state that whether jurisdiction is proper is a legal conclusion to which no response is required. To the extent that a response is required, Defendants admit that this Court has jurisdiction over Plaintiff's claims, but denies that there is any basis in law or fact for Plaintiff's claims.

4.      Defendants admit that Plaintiff purports that venue properly lies in this District, but states that whether venue is proper is a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that venue in this District is proper, but denies that there is any basis in law or fact for Plaintiff's claims.

5.      Defendants admit the allegations contained in Paragraph 5 of the Complaint.

6.      Except to admit that Salisbury Bancorp, Inc. is the holding company of Salisbury Bank and Trust Company, Defendants deny the remaining allegations contained in Paragraph 6 of the Complaint.

7.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint and therefore deny the allegations therein.

8.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint and therefore deny the allegations therein.

9.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint and therefore deny the allegations therein.

10. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint and therefore deny the allegations therein.

11. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint and therefore deny the allegations therein.

12. Except to admit that Plaintiff was hired as a Mortgage Originator, Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint.

13. Except to admit that the Mortgage Originator position is a commissioned-based position following the completion of training, Defendants deny the remaining allegations contained in Paragraph 13 of the Complaint.

14. The allegations contained in Paragraph 14 contain a legal conclusion; therefore, no response is required. To the extent that a response is required, Defendants deny the allegations therein.

## AS TO THE FACTUAL BACKGROUND

15. Except to admit that Defendants were advised by Plaintiff that he was a member of the Dutchess County legislature at the time of hire, who further advised that he was not interested in seeking reelection or another office, Defendants deny the remaining allegations contained in Paragraph 15 of the Complaint.

16. Defendants deny the allegations contained in Paragraph 16 of the Complaint.

17. Defendants deny the allegations contained in Paragraph 17 of the Complaint.

18.     Except to admit that providing Nationwide Mortgage Licensing System numbers to Mortgage Originator Trainees is standard Bank practice, Defendants deny the allegations contained in Paragraph 18 of the Complaint.

19.     Except to admit that Plaintiff had a client meeting in Newburgh, New York, Defendants deny the remaining allegations contained in Paragraph 19 of the Complaint.

20.     Defendants deny the allegations contained in Paragraph 20 of the Complaint.

21.     Except to admit that Plaintiff started his employment on February 26, 2018 and that Plaintiff reported to Amy Raymond ("Raymond"), Defendants deny the remaining allegations contained in Paragraph 21 of the Complaint.

22.     Except to admit that Plaintiff reported to Raymond and Andrea MacArthur, Defendants deny the remaining allegations contained in Paragraph 22 of the Complaint.

23.     Except to admit that Plaintiff announced his campaign for the office of New York State Assembly District 106 on or around April 12, 2018, Defendants deny the remaining allegations contained in Paragraph 23 of the Complaint.

24.     Except to admit that Douglas Cahill ("Cahill") and Raymond met with Plaintiff to discuss the announcement of his candidacy for the New York State Assembly and that Cahill asked Plaintiff to provide an explanation as to what the job would entail if he were elected, Defendants deny the remaining allegations contained in Paragraph 24 of the Complaint.

25.     Except to admit that on or around April 26, 2018, Cahill met with Plaintiff to discuss Plaintiff's candidacy for the New York State Assembly, Defendants deny the remaining allegations contained in Paragraph 25 of the Complaint.

26.     Defendants deny the allegations contained in Paragraph 26 of the Complaint.

27.    The allegations contained in Paragraph 27 of the Complaint call for a legal conclusion to which no response is required. To the extent an answer is required, Defendants deny the allegations contained therein.

28.    The allegations contained in Paragraph 28 of the Complaint call for a legal conclusion to which no response is required. To the extent an answer is required, Defendants admit that Plaintiff met with Richard Cantele on or around April 30, 2018 and deny the remaining allegations contained therein.

29.    Except to admit that Arthur Bassin serves on the Bank's Board of Directors, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint and therefore deny the allegations therein.

30.    The allegations contained in Paragraph 30 of the Complaint call for a legal conclusion to which no response is required. To the extent an answer is required, Defendants deny the allegations contained therein.

31.    The allegations contained in Paragraph 31 of the Complaint call for a legal conclusion to which no response is required. To the extent an answer is required, Defendants deny the allegations contained therein.

32.    Defendants deny the allegations contained in Paragraph 32 of the Complaint.

33.    Defendants deny the allegations contained in Paragraph 33 of the Complaint.

34.    The allegations contained in Paragraph 34 of the Complaint call for a legal conclusion to which no response is required. To the extent an answer is required, Defendants deny the allegations contained therein.

35.    Defendants deny the allegations contained in Paragraph 35 of the Complaint.

36.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint and therefore deny the allegations therein.

## AS TO NEW YORK LABOR LAW

37.    The allegations contained in Paragraph 37 of the Complaint state a conclusion of law as to which no responsive pleading is required.  To the extent a response is required, Defendants admit that Section 201-d states as pleaded but denies that there is any basis for Plaintiff's claims.

38.    The allegations contained in Paragraph 38 of the Complaint state a conclusion of law as to which no responsive pleading is required.  To the extent a response is required, Defendants admit that Section 201-d states as pleaded but denies that there is any basis for Plaintiff's claims.

## AS TO COUNT I

39.    Defendants repeat and incorporate by reference their responses to the preceding allegations of the Complaint as if fully set forth herein.

40.    The allegations contained in Paragraph 40 of the Complaint call for a legal conclusion to which no response is required. To the extent an answer is required, Defendants deny the allegations contained therein.

41.    The allegations contained in Paragraph 41 of the Complaint call for a legal conclusion to which no response is required. To the extent an answer is required, Defendants deny the allegations contained therein.

## AS TO THE PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any judgment or any of the relief set forth in the "WHEREFORE" clause of the Complaint, including subparagraphs (1) to (12).

## GENERAL DENIAL

Defendants deny each and every allegation not specifically admitted herein.

## AFFIRMATIVE AND OTHER DEFENSES

Without admitting any allegations asserted in the Complaint, Defendants assert the following affirmative and other defenses. Nothing stated in any of the following defenses constitutes a concession that Defendants bear any burden of proof on any issue on which it would not otherwise bear such burden.

## FIRST DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

## SECOND DEFENSE

Defendants at all times acted in good faith and with reasonable grounds to believe that they were not violating the New York Labor Law any other anti-discrimination law or statute, or any legal duty owed to Plaintiff.

## THIRD DEFENSE

Defendants employed Plaintiff on an at-will basis and, therefore, could terminate or change the conditions of his employment at any time, with or without prior notice.

## FOURTH DEFENSE

Plaintiff did not engage in "political activities" protected by N.Y. Labor Law § 201-d.

**FIFTH DEFENSE**

Defendants decisions and actions, or failures to act, if any, respecting Plaintiff were neither discriminatory nor motivated by retaliation, but were justified by legitimate, non-discriminatory, non-retaliatory reasons and based on factors other than Plaintiff's alleged political activities.

**SIXTH DEFENSE**

To the extent, if any, that Defendants are found to have violated the New York Labor Law, said violation was not willful and, thus, Plaintiff is not entitled to recover liquidated damages.

**SEVENTH DEFENSE**

Plaintiff's Complaint fails to set forth facts sufficient to state a claim that would support the award of compensatory or punitive damages.

**EIGHTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the principles of waiver, estoppel, laches, unclean hands and/or accord and satisfaction.

**NINTH DEFENSE**

Plaintiff is not entitled to injunctive or affirmative relief.

**TENTH DEFENSE**

If Plaintiff purports to allege claims for physical or mental emotional distress, pain or suffering, including claims for recovery of any medical expenses thereby incurred, said claims are barred by the exclusive remedy provisions of the applicable Workers' Compensation Laws.

## ELEVENTH DEFENSE

Plaintiff's claims for monetary relief and damages are barred to the extent he failed to properly mitigate any of his alleged damages.

## RESERVATION OF RIGHTS

Defendants reserve the right to assert such additional defenses that may appear and prove applicable during the course of this action.

**WHEREFORE**, Defendants deny that Plaintiff is entitled to judgment in any amount whatsoever, and respectfully submit that the entire Complaint should be dismissed in its entirety on the merits and with prejudice, and that Defendants be awarded its costs incurred in defending this lawsuit, including its reasonable attorneys' fees, as well as such other legal and equitable relief as the Court deems just and proper.

Date:   September 24, 2018
        Newark, New Jersey

/s/ Lindsay M. Sorin
Lindsay M. Sorin
LITTLER MENDELSON, P.C.
One Newark Center, 8th Floor
Newark, New Jersey 07102
973.848.4700
lsorin@littler.com

*Attorneys for Defendants*
  *Salisbury Bank and Trust Company and*
  *Salisbury Bancorp, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a copy of the attached Answer and Affirmative

Defenses to the Complaint to be served via ECF and regular mail on the following:

Ted McCullough
Robert B. Lower
McCullough Ginsberg Montano & Partners LLP
122 East 42nd Street, Suite 3505
New York, New York 10168
Attorneys for Plaintiff

James Coughlan
Coughlan Law Offices, LLP
P.O. Box 72
22 Hutton Street
Rhinecliff, New York 12574
Co-counsel for Plaintiff

Dated: September 24, 2018
       Newark, New Jersey

/s/ Lindsay M. Sorin
Lindsay M. Sorin

FIRMWIDE:157071969.1 099759.1001

**Linda King**

| | |
|---|---|
| **From:** | Douglas Cahill |
| **Sent:** | Tuesday, May 01, 2018 2:36 PM |
| **To:** | Linda King |
| **Subject:** | FW: [External] [***Possible SPAM: 03.80] Update |

FYI

Sent with Good (www.good.com)

---

**From:** Amy Raymond
**Sent:** Tuesday, May 01, 2018 1:21:04 PM
**To:** Douglas Cahill; Rick Cantele; Dick Kelly
**Subject:** FW: [External] [***Possible SPAM: 03.80] Update

FYI

**From:** William Truitt [mailto:william.g.truitt@gmail.com]
**Sent:** Tuesday, May 01, 2018 1:02 PM
**To:** Andrea MacArthur; Amy Raymond
**Subject:** [External] [***Possible SPAM: 03.80] Update

Hi Amy and Andrea,

I am truly saddened to say that after multiple discussions with Doug Cahill and after meeting with Rick Cantele yesterday, it has been confirmed to me that my employment with Salisbury Bank will not be continued if I pursue election to the New York State Assembly this November.

Both Doug and Rick reiterated to me that the main concern is that, if elected, I would not have the necessary time it takes to be a successful originator and grow our brand in New York. I understand the concern, but disagree with this sentiment entirely. I am absolutely certain that I would be able to fully commit myself to the bank and far surpass any goals that would be set for me. When it comes to work ethic and competitive spirit, I have always been and always will be someone who strives to do the best I can in every role I hold (I actually even had it on my mind that I wanted to win "Rookie of the Year" next year for the bank). I was truly excited to begin originating and helping us expand in New York State and adding many new customers to our books.

This past weekend, I thought deeply to myself about the possibility of holding off on running for the Assembly. But at the end of the day, it is a once in a lifetime opportunity that my community is asking me to pursue. If I were to give it up, I would truly regret looking back thinking "what if?". The chance to be the youngest Assemblyman since Teddy Roosevelt is one that I can't give up on.

I cannot thank the both of you enough for all the time you both took to train me and for all the valuable information that you taught me. I truly wish this did not have to be the outcome, because I grew to really appreciate the business we do, and I enjoyed all the great people I worked with. As Rick told me, if I am not successful in November's election, he hopes that I will consider coming back to the bank to possibly fill the same residential role or maybe even another role in commercial lending.

1

D-000020

With all my best regards,
Will Truitt

2

D-000021

Page 1

1                    A. BASSIN

2           UNITED STATES DISTRICT COURT

3           SOUTHERN DISTRICT OF NEW YORK

4    ------------------------------------x
     WILLIAM GUNNAR TRUITT,
5
                     Plaintiff,
6                                        Case No.
             vs.                         7:18-cv-08386-NSR
7
     SALISBURY BANK and TRUST COMPANY; AND
8    SALISBURY BANCORP, INC.,

9                    Defendant.
     ------------------------------------x
10

11              DEPOSITION OF ART BASSIN

12                New York, New York

13                 July 24, 2019

14

15

16

17

18

19

20

21

22

23   Reported by:

24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25   JOB NO. 164777

Page 30

A. BASSIN

1
2     Q.   Got it.  It sounds like you're on that
3  Loan Committee also?
4     A.   I am.
5     Q.   How long have you been on that
6  committee?
7     A.   For a long time.  Probably since the
8  beginning.
9     Q.   Okay.
10    A.   Yeah.
11    Q.   Do you access this calendar for your
12 committee and Board meetings through Board
13 Vantage?
14    A.   Yeah, maybe once a year.  I don't look
15 at it on a regular basis, because once it's put
16 out, it changes.  So I don't spend a lot of time
17 checking it.
18    Q.   And those changes, are they just
19 effectuated through e-mails?
20    A.   Yes.  Basically, we'll get a note
21 saying instead of meeting on this Friday, we'll
22 meet on that Friday.  That's...
23    Q.   Got it.
24       Do you know how many times the HR/Comp
25 Committee met in 2018?

Page 31

A. BASSIN

1
2     A.   Not offhand, no.
3     Q.   And how about this year?
4     A.   Not offhand.
5     Q.   I would imagine you have certainly met
6  at least once this year?
7     A.   I think probably twice.
8     Q.   Yeah.
9     A.   Probably twice.
10    Q.   Yeah.  You said at least quarterly, so
11 that would certainly make sense.
12    A.   Yeah.
13    Q.   And even if the calendar is something
14 that's published even up to a year in advance,
15 are materials relevant to your HR/Comp Committee
16 meetings provided in the week or two before the
17 meeting?
18    A.   Yes.
19    Q.   And what kind of materials have you
20 received in anticipation of an HR/Comp Committee
21 meeting?
22    A.   Well, it basically will be the agenda
23 and any support documents that relate to items
24 on the agenda, and there could be six to ten
25 items on the agenda and related documents.

Page 32

A. BASSIN

1
2     Q.   Do you know who authors any of those
3  things that you just mentioned?
4     A.   Different people.
5     Q.   Depending on the subject matter?
6     A.   The subject matter.
7     Q.   I think we've covered most of the
8  questions regarding Didi.
9       Do you know if Didi has referred any
10 business to Salisbury?
11    A.   I don't know.  I don't think so.
12 That's really not her line of work.
13       MR. LOWER:  I'm handing Mr. Bassin
14 what's previously been marked P32, which is
15 a single page memorandum with a Bates stamp
16 of D-0000415.
17    A.   These two copies are the same thing?
18    Q.   I'm sorry.  One is for Sabrina.
19    A.   Thank you.
20       To HR/Comp Committee.  Okay.
21    Q.   And as a general procedure, you can
22 let me know when you're ready to discuss
23 whatever I send over to you.
24    A.   Ah.  There's the relevance.  Okay.
25       Yes.  Your question is?

Page 33

A. BASSIN

1
2     Q.   Did you receive this memorandum from
3  Doug Cahill?
4     A.   No, I don't ever remember seeing this.
5  I say that because when I was notified of the
6  lawsuit, it was the very first time I ever heard
7  the name William Truitt; and if I had seen this,
8  I would have remembered the name.
9     Q.   So this memorandum doesn't look
10 familiar to you?
11    A.   No, I've never seen it.
12    Q.   It is your duty as the chair of the
13 HR/Comp committee to pay attention to any
14 memoranda that are provided to you, correct?
15    A.   Yes.
16    Q.   And you have honored those duties,
17 correct?
18    A.   I do as much as I can.
19    Q.   And within that vein, you review
20 memoranda that are provided to the HR/Comp
21 Committee in a timely manner, correct?
22    A.   I do.
23    Q.   And to the extent that they're sent
24 before the meetings, you review them before the
25 meetings, correct?

9 (Pages 30 to 33)

Page 34

A. BASSIN

1
2      A.   Correct.
3      Q.   Do you recall whether you attended an
4  HR/Comp Committee meeting on April 27, 2018?
5      A.   I don't remember whether I did or not.
6  I mean, if there had been one then, I probably
7  would have been there, but I don't remember.
8          You want me to look in my book?
9      Q.   Sure.
10     A.   Okay.
11     Q.   Thanks.
12     A.   It's where I keep all my valuables.
13         What's the date again?
14     Q.   April 27.
15     A.   Oh, I'm sorry.  This is my 2019 book.
16  This isn't going to help us.  No.
17         If this memo had been handed out at
18  that meeting, I would have remembered it; so I
19  have to assume it wasn't handed out at that
20  meeting.
21     Q.   And I think you made it clear earlier,
22  but it sounded to me like you indicated you
23  didn't recall receiving it through Board Vantage
24  either?
25     A.   Correct.  And the reason is because

Page 35

A. BASSIN

1
2  the name Truitt would have -- you know, I would
3  have made the connection after the lawsuit was
4  filed in September.
5      Q.   Uh-huh.
6      A.   But when I heard about the lawsuit, I
7  said, who's Will Truitt?  Never heard the name
8  before.
9      Q.   Got it.
10     A.   So it's inconceivable to me that I
11  would have seen this and not remembered, when
12  the lawsuit came in September, that this young
13  fella had come before the committee in this
14  form.
15         So I have to assume either this wasn't
16  presented to us or I wasn't there, one way or
17  the other.
18     Q.   Okay.  Well, I'm not going to ask you
19  if it looks like a true and authentic copy of --
20     A.   It could be.  I don't think you guys
21  made it up.
22     Q.   Well, it came from the bank.  I
23  certainly didn't make it up, but...
24     A.   Yep.  I guess the guy to talk to about
25  this would have been Doug Cahill to ask him if

Page 36

A. BASSIN

1
2  he actually did send this to us, so...
3      Q.   Yeah.  And how far back, I mean, how
4  long does stuff stay on Board Vantage?
5      A.   I'm not even sure.  I don't know.  I
6  tend to look at the last month's worth, you
7  know, when I'm trying to find something that I'm
8  looking for that -- if it came out of the last
9  set of meetings.  It probably goes back longer
10  than that.
11     Q.   So this is, of course, like a website,
12  right, Board Vantage --
13     A.   Yeah.
14     Q.   -- at the end of the day?
15     A.   Yeah.
16     Q.   You receive some kind of e-mail
17  notification or --
18     A.   Yes, we get a notification that
19  something's been posted on Board Vantage.
20     Q.   And you click on that hyperlink or
21  notification?
22     A.   Yes, we click on that, and then we
23  identify ourselves, but in our secret password
24  and put in five or six -- or two, I guess it is
25  now, security questions, and voila.

Page 37

A. BASSIN

1
2      Q.   Okay.  And do you download or print a
3  copy of those materials?
4      A.   Most of the stuff can't be printed.
5      Q.   Okay.
6      A.   So we don't.
7      Q.   Oh.
8      A.   Every once in a while, they will put
9  something out that can be printed like the peer
10  group, but since most of this stuff is pretty
11  confidential, they don't like copies floating
12  around.  So we don't get to print this stuff
13  out.
14     Q.   Got it.
15         I do have one more question I just
16  remembered about P32.
17     A.   Uh-huh.
18     Q.   That memorandum.
19         On the first line of the first
20  paragraph, it says, "Per the Bank's Code of
21  Ethics and Conflicts of Interest Policy, please
22  review the attached Outside Employment Report."
23     A.   Uh-huh.
24     Q.   Is the Outside Employment Report a
25  different file posted to Board Vantage, or is

10  (Pages 34 to 37)

Reliance Standard :: Update Employee                                                    Page 1 of 1

**RELIANCE STANDARD**
A MEMBER OF THE TOKIO MARINE GROUP

Employee Benefits ADMINISTRATION SYSTEM

☆ Welcome
View Plan Information
Launch Enrollment
Enrollment Activity
Employee Maintenance
Administrator Options
e-Support
↻ Log Out

**Update Employee Information**     ( Send Login Info ) ( Coverage Details ) ( Update Elections ) ( Save ) ( Back )

**Step 1 of 2: Employee Information:**

| | First Name | MI | Last Name | |
|---|---|---|---|---|
| Full Name | William | • | G   Truitt | • |
| ID Number | A01564855 | | SSN | REDACTED |
| Date of Birth | REDACTED • | | Date of Hire | 2/26/2018 • |
| Job Title | Mortgage Lending Offic | | Gender | Male ▽ • |
| Salary | REDACTED • | | Salary Mode | Annually ▽ • |
| Payroll Frequency | Biweekly ▽ | | Bill Group Number | 01000001 ▽ • |
| Email Address | wtruitt@salisburybank.com | ❷ | Location | ▽ ❷ |
| Status | Terminated ▽ • | | Termination Date | 04/30/2018 • |
| Employee Type | No Differentiation ▽ ❷ | | Department | ▽ ❷ |

Street     REDACTED

City     Hyde Park
State    NY ▽   Zip   REDACTED
Work Zip  06039
Code

Effective
Date of  4/30/2018 •
Change

❷ **Helpful Hints for Adding or Updating Your Employee**

• Complete the required Employee Information section and then click Save.
• Click the Add Coverage button to add all eligible lines of coverage available for enrollment. Click Add Coverage for each line of coverage, excluding AD&D and Core coverages (when either basic or Buy Up coverages are selected, the AD&D and/or core coverages will be automatically selected). Click Save when you have finished adding all eligible coverages.
• Fully Employer-paid coverages do not require elections and only require the coverage to be added through Add Coverage. Once Save is clicked, the coverage will display on the billing statement after clicking on Recalculate. Contributory/voluntary coverage requires an employee election and signature date because they are responsible for paying all or part of the premium. If the employee and/or dependents are electing up to the Guaranteed Issue amount, then you can access the Employee Coverage Details screen to

**Step 2 of 2: Available Coverages:**

( Add Coverage ) ( Save )

| Select Coverage | Policy # | Coverage | Class | Plan Type | Eligibility Date | Effective Date | Termination Date |
|---|---|---|---|---|---|---|---|
| ☐ | GL159009 ▽ | Basic AD&D ▽ | 1 ▽ | Core ▽ | 4/27/2018 | 5/1/2018 | |
| ☐ | GL159009 ▽ | Basic Life ▽ | 1 ▽ | Core ▽ | 4/27/2018 | 5/1/2018 | |
| ☐ | LTD129737 ▽ | Long Term Disability ▽ | 1 ▽ | Core ▽ | 4/27/2018 | 5/1/2018 | |
| ☐ | STD166164 ▽ | Weekly Disability ▽ | 1 ▽ | Core ▽ | 4/27/2018 | 5/1/2018 | |
| ☐ | GL159009 ▽ | Basic AD&D ▽ | 2 ▽ | Core ▽ | 4/27/2018 | 5/1/2018 | 4/30/2018 |
| ☐ | GL159009 ▽ | Basic Life ▽ | 2 ▽ | Core ▽ | 4/27/2018 | 5/1/2018 | 4/30/2018 |
| ☐ | LTD129737 ▽ | Long Term Disability ▽ | 2 ▽ | Core ▽ | 4/27/2018 | 5/1/2018 | 4/30/2018 |

• A red asterisk indicates a required field.

D-000024

## SALISBURY BANK
enriching.

### DEPARTMENT TRAINING SCHEDULES
### RETURNED SIGNED

NAME: **William Truitt**  Hire Date: **February 26, 2018**  Position: **Mortgage Lending Officer**

| DATE RECEIVED | DEPARTMENT TRAINING |
|---|---|
| 2-27-2018 | COMPLIANCE TRAINING |
| 3-16-2018 | CUSTOMER SERVICE / DEPARTMENT OVERVIEW/ SYNAPSYS TRAINING/ |
| 4-7-2018 | EMPLOYEE ACKNOWLEDGEMENT FORM |
| 2-26-2018 | HUMAN RESOURCE TRAINING/CUSTOMER SERVICE/REP RISK |
| 4-7-2018 | INTERNET AND E-MAIL COMMUNICATION POLICY SIGN-OFF |
| 4-7-2018 | IT DEPARTMENT |
| 2-26-2018 | KEY / FOB SIGN-IN FORM  FOB #2637993 |
| 5-14-2018 | NEW EMPLOYEE/CHANGE FORM (DISASTER RECOVERY) |
| N/A | NEW EMPLOYEE ORIENTATION  Terminated employment 4-30-2018 |
| 4-7-2018 | SYSTEM ACCESS AUTHORIZATION FORM  IT<br>2-27-2018 __OMPLIANCE<br>4-12-2018 MARKETING |
| 2-27-2018 | SECURITY TRAINING -, SECURITY PROGRAM / PROCEDURES MANUAL<br>(90 DAY IS ABA TRAINING) |
| 2-26-2018 | AETNA ENROLLMENT FORM (LIFE, SHORT TERM AND LONG TERM) |
| N/A | AETNA ENROLLMENT FORM (MEDICAL AND DENTAL)  ELIGIBLE  Staying on county Plan |
| 3-1-2018 | AETNA LIFE BENEFICIARY FORM |

D-000034



# SALISBURY BANK
enriching.
# COMPLIANCE TRAINING
# TRAINING SCHEDULE

### TRAINERS: COMPLIANCE

NAME: William G. Truitt   Hire Date: February 26, 2018   Position: Mortgage Loan Officer

| | TRAINING DATE | TRAINERS SIGNATURE |
|---|---|---|
| ✓ ABA TRAINING | 2/24/18 | AB Lee |
| ✓ CONTINUITY CONTROL | 2/21/18 | AB 2C |
| ✓ COMPLIANCE POWER POINT | 2/6/18 | AB 8/1 |

- BSA TRAINING
- CIP CUSTOMER ID PROGRAM
- COMPLIANCE PROGRAM
- COMPLAINT PROGRAM
- CRA
- PRIVACY AND CUSTOMER
- RECORDS CONFIDENTIALITY
- REGULATION GG POLICY
- RIGHT TO FINANCIAL PRIVACY
- SAR
- TRUTH-IN-SAVINGS
- WIRE TRANSFER POLICY
- WHISTLE BLOWER PROCEDURE



**SALISBURY BANK**
enriching.

# CUSTOMER SERVICE TRAINING
## TRAINING SCHEDULE

TRAINERS: DAYNA COOK/ SARA MURPHY

NAME: William G. Truitt   Hire Date: February 26, 2018   Position: Mortgage Loan Officer

TRAINING DATE     TRAINERS SIGNATURE

PRODUCT TRAINING        3/14/18   _Sara Murphy_

REG CC TRAINING         n/a

## CRM TRAINING SCHEDULE

CRM (RETAIL ONLY)       3/14/18

## DEPARTMENT TRAINING

DEPARTMENT OVERVIEW      3/14/18

*Jerm 4/30/18*



# SALISBURY BANK AND TRUST COMPANY

## New Employee / Change of Employee Information Form

☑ New Employee            ☐ Change of Employee Information

| | |
|---|---|
| **Employee ID Number:** | 1683 |
| **Name:** | William G. Truitt |
| **Job Title:** | Mortgage Lending Officer |
| **Department:** | Lending |
| **Bank Location:** | Poughkeepsie |
| **Supervisor:** | Amy Raymond |
| **Home Address:** | REDACTED |
| **Alternate Address:** | |
| **Home** | REDACTED |
| **Cell Phone:** | REDACTED |
| **Emergency Contact:** | Kathryn Truitt |
| **Emergency Contact Phone:** | REDACTED |
| **Alternate Phone (and description):** | |
| **Work Phone Extension:** | |
| **Home E-Mail Address:** | REDACTED |
| **Work Status (F/T or P/T; Hourly or Salaried):** | Full Time / Hourly |

Check boxes below and initial and date when completed:

☒ The Human Resources Department completes this form and forwards to Megan Snow. *Anna Chung 3/26/2018*
☒ Ms. Snow makes adjustment to the Disaster Recovery Plan and forwards to Deposit Operations *MSnow 5/11/18*
☒ Deposit Operations makes necessary changes and forwards to Human Resources. *Iclose 5/11/18*
☐ Human Resources received form back on *Anna Chung 5/14/2018*

Compliance Rev 03/17
New or change employee info.dot

D-000054

**From:** Amy Raymond
**Sent:** Monday, April 23, 2018 2:14 PM
**To:** Andrea MacArthur; William Truitt
**Subject:** RE: Federal MLO Registration status has changed for William Gunnar Truitt (NMLS ID 1734370)

Great!

**From:** Andrea MacArthur
**Sent:** Monday, April 23, 2018 2:04 PM
**To:** Douglas Cahill; William Truitt
**Cc:** Amy Raymond
**Subject:** RE: Federal MLO Registration status has changed for William Gunnar Truitt (NMLS ID 1734370)

Awesome!!!!!

Andrea L. MacArthur, AVP Retail Lending Manager, NMLS 597843
Salisbury Bank • 5 Bissell Street • PO Box 1868, Lakeville, CT 06039-1868
TEL 860.453.3531 • FAX 860.435.4005 • amacarthur@salisburybank.com

**From:** Douglas Cahill
**Sent:** Monday, April 23, 2018 2:02 PM
**To:** William Truitt
**Cc:** Amy Raymond; Andrea MacArthur
**Subject:** FW: Federal MLO Registration status has changed for William Gunnar Truitt (NMLS ID 1734370)

Hi Will – congratulations – you're now an active MLO!

Doug Cahill, PHR, SHRM-CP
Vice President, Human Resources
Salisbury Bank • 5 Bissell Street • PO Box 1868, Lakeville, CT 06039-1868
TEL 860.453.3460 • FAX 860.435.5106 • dcahill@salisburybank.com

**From:** NMLS_Notifications@NMLSNotifications.com [mailto:NMLS_Notifications@NMLSNotifications.com]
**Sent:** Monday, April 16, 2018 10:22 AM
**To:** Douglas Cahill
**Subject:** Federal MLO Registration status has changed for William Gunnar Truitt (NMLS ID 1734370)

1

D-000107

External Email

The Federal MLO Registration status for William Gunnar Truitt (NMLS ID 1734370) has changed. See below for further details:

- **Primary Federal Regulator:** Federal Deposit Insurance Corporation
- **Current Registration Status:** Active
- **Previous Registration Status:** Pending
- **Registration Status Date:** 4/16/2018

THIS COMMUNICATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND CONTAINS OR MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this communication is not the intended recipient (or the employee or agent responsible for delivering to the intended recipient), you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please disregard and delete this communication, and do not disseminate or retain any copy of this communication.

D-000108

Message

**From**:          NMLS_Notifications@NMLSNotifications.com [NMLS_Notifications@NMLSNotifications.com]
**Sent**:          6/16/2018 7:46:34 AM
**To**:            dcahill@salisburybank.com
**Subject**:       [External] Employment Records have been changed in NMLS

The following employment records have ended or been withdrawn in NMLS.

| MLO NMLS ID | MLO Name | Employment End Date | Employment Status | Action Taken By |
|---|---|---|---|---|
| 1734370 | William Truitt | 4/30/2018 | Ended | Douglas Alan Cahill |

An end in employment record will change an actively registered individual's status to "Inactive". It also removes the institution's access to the individual's record in NMLS.

THIS COMMUNICATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND CONTAINS OR MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this communication is not the intended recipient (or the employee or agent responsible for delivering to the intended recipient), you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please disregard and delete this communication, and do not disseminate or retain any copy of this communication.

# Linda King

**To:** Douglas Cahill
**Subject:** RE: Staff Updates

**From:** Douglas Cahill
**Sent:** Wednesday, February 14, 2018 10:52 AM
**To:** EntireBank
**Subject:** Staff Updates

I'm pleased to announce the following new hires to Salisbury Bank, starting on Monday, February 26:

- <u>Will Truitt</u> has accepted a Mortgage Originator position in our Riverside Division. Will lives in Hyde Park, NY and will be responsible for mortgage originations in Dutchess, Ulster and Orange Counties. Will is a graduate of Marist College with a BS in Business Finance, and most recently has been a two-term Dutchess County Legislator (of note: he was the youngest ever elected in NY). Will's responsibility for the first 6 months will be to work with our mortgage underwriters and processors in Lakeville and Poughkeepsie, and then transition to his sales role.

Doug Cahill, PHR, SHRM-CP
Vice President, Human Resources
Salisbury Bank • 5 Bissell Street • PO Box 1868, Lakeville, CT 06039-1868
TEL 860.453.3460 • FAX 860.435.5106 • dcahill@salisburybank.com

STOP

1

## Modify a Participant - Confirmation

> ✓ The Participant has been updated successfully. This information has been updated in Fidelity systems for all applicable benefits. To ensure consistency, you will need to update the information in your company's payroll system.
> - View this participant's personal information
> - Modify another participant
> - Go to Manage Data Tab

### WILLIAM TRUITT, xxx-xx-7868

### Personal Information

| | | | |
|---|---|---|---|
| First Name | WILLIAM | Work Email | wtruitt@riversidebankhv.com |
| Last Name | TRUITT | | Legally Required Communications will be sent to this e-mail |
| Employee ID | 1683 | Work Email Status | Active (address of the individual) |
| Date of Birth | REDACTED | Personal Email | REDACTED |
| Gender | M | Personal Email Status | Active (address of the individual) |
| Primary Address | REDACTED | | |

### Defined Contribution Benefit Information - 80387 - SALISBURY BANK & TRU

| EMPLOYMENT INFORMATION | | COMPENSATION | |
|---|---|---|---|
| Status Code | T - TERMINATED | Salary | REDACTED |
| Marital Status | Single | Payroll Frequency | Bi-Weekly |
| Bene/QDRO Payee | N/A | Payroll Class | Full Time |
| Division Code | | Payroll Code | |
| Division Name | | Highly Compensated | REDACTED |
| Region | | Annual Base Salary | |
| Location Code | | Annual Commission | |
| Union Code | | Annual Bonus | |
| Miscellaneous Code | | ELIGIBILITY | |
| Hire Date | 02/28/2018 | Deminimus Eligibility | |
| Participation Date | | 16B Officer | No |
| Vesting Date | | Original Eligibility Date | |
| Termination Date | 04/30/2018  Date changes may cause new eligibility date | Eligibility Date | 06/01/2018 |
| Rehire Date | | Special Tax ID | |
| Retirement Date | | | |

D-000022



Relationship Profile ☉ | Person - Truitt, W. ☉

## Contact

| Phone Number | | | Email | |
|---|---|---|---|---|
| **Type** | **Number** | **Preferred** | **Type** | |
| Cellular | REDACTED | | Home Email Address | REDACTED |
| Personal / Home | | | | |

[ Create ]  [ Edit ]  [ Delete ]          [ Create ]

Relationship Profile ☉ | Person - Truitt, W. ☉

## Person Type

**Person Type Assignment**

| Available | | Selected |
|---|---|---|
| Advisory Director | | |
| Affiliates | | |
| Beneficial Owner | [ Select > ] | |
| Beneficiary | | |
| Check Casher | [ < Remove ] | |
| Corporator | | |
| Customer | [ Select All > ] | |
| Director | | |
| Dup Statement Purposes | [ << Remove ] | |
| Employee | | |
| Executive Officer | | |
| Immediate Family Member | | |
| Officer | | |

Reliance Standard :: Update Employee                                                      Page 1 of 1

**RELIANCE STANDARD**
• A MEMBER OF THE TOKIO MARINE GROUP

Employee Benefits ADMINISTRATION SYSTEM

≡ Welcome
View Plan Information

## Update Employee Information        [ Send Login Info ]  [ Coverage Details ]  [ Update Elections ]  [ Save ]  [ Back ]

Launch Enrollment
Enrollment Activity          **Step 1 of 2: Employee Information:**
Employee Maintenance
Administrator Options              First Name              MI    Last Name
e-Support               Full Name    | William            | • | G | Truitt              | •

⊍ Log Out               ID Number    A01564855                SSN              [REDACTED]

                        Date of Birth  [REDACTED]  •          Date of Hire     2/26/2018          ▲

                        Job Title    Mortgage Lending Offic    Gender           Male   ∨ •

                        Salary       [REDACTED]  •            Salary Mode      Annually         ∨ •

                        Payroll Frequency  Biweekly   ∨        Bill Group Number  01000001       ∨ •

                        Email Address  wtruitt@salisburybank.com  ❷  Location                    ∨ ❷

                        Status       Terminated   ∨ •          Termination Date  04/30/2018        ▲

                        Employee Type  No Differentiation  ∨ ❷   Department                   ∨ ❷

                        Street    [REDACTED]              ❷ **Helpful Hints for Adding or Updating Your Employee**

                                                              • Complete the required Employee Information section and then click Save.
                                                              • Click the Add Coverage button to add all eligible lines of coverage available
                        City     Hyde Park                      for enrollment. Click Add Coverage for each line of coverage, excluding
                        State    NY ∨   Zip [REDACTED]          AD&D and Core coverages (when either basic or Buy Up coverages are
                                                                selected, the AD&D and/or core coverages will be automatically selected).
                        Work Zip  06039                         Click Save when you have finished adding all eligible coverages.
                        Code                                    • Fully Employer-paid coverages do not require elections and only require the
                                                                coverage to be added through Add Coverage. Once Save is clicked, the
                                                                coverage will display on the billing statement after clicking on Recalculate.
                                                                Contributory/voluntary coverage requires an employee election and signature
                        Effective                               date because they are responsible for paying all or part of the premium. If
                        Date of  4/30/2018    •                 the employee and/or dependents are electing up to the Guaranteed Issue
                        Change                                  amount, then you can access the Employee Coverage Details screen to

**Step 2 of 2: Available Coverages:**

                                                                                          [ Add Coverage ]  [ Save ]

| Select Coverage | Policy # | | Coverage | | Class | | Plan Type | Eligibility Date | Effective Date | Termination Date |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ | GL159009 ∨ | Basic AD&D | ∨ | 1 ∨ | Core ∨ | 4/27/2018 | 5/1/2018 | |
| ☐ | GL159009 ∨ | Basic Life | ∨ | 1 ∨ | Core ∨ | 4/27/2018 | 5/1/2018 | |
| ☐ | LTD129737 ∨ | Long Term Disability | ∨ | 1 ∨ | Core ∨ | 4/27/2018 | 5/1/2018 | |
| ☐ | STD166164 ∨ | Weekly Disability | ∨ | 1 ∨ | Core ∨ | 4/27/2018 | 5/1/2018 | |
| ☐ | GL159009 ∨ | Basic AD&D | ∨ | 2 ∨ | Core ∨ | 4/27/2018 | 5/1/2018 | 4/30/2018 |
| ☐ | GL159009 ∨ | Basic Life | ∨ | 2 ∨ | Core ∨ | 4/27/2018 | 5/1/2018 | 4/30/2018 |
| ☐ | LTD129737 ∨ | Long Term Disability | ∨ | 2 ∨ | Core ∨ | 4/27/2018 | 5/1/2018 | 4/30/2018 |

**• A red asterisk indicates a required field.**

D-000024



# SALISBURY BANK
## enriching.

## DEPARTMENT TRAINING SCHEDULES
## RETURNED SIGNED

NAME: **William Truitt**   Hire Date: **February 26, 2018**   Position: **Mortgage Lending Officer**

| DATE RECEIVED | DEPARTMENT TRAINING |
|---|---|
| 2-27-2018 | COMPLIANCE TRAINING |
| 3-16-2018 | CUSTOMER SERVICE / DEPARTMENT OVERVIEW/ SYNAPSYS TRAINING/ |
| 4-7-2018 | EMPLOYEE ACKNOWLEDGEMENT FORM |
| 2-26-2018 | HUMAN RESOURCE TRAINING/CUSTOMER SERVICE/REP RISK |
| 4-7-2018 | INTERNET AND E-MAIL COMMUNICATION POLICY SIGN-OFF |
| 4-7-2018 | IT DEPARTMENT |
| 2-26-2018 | KEY / FOB SIGN-IN FORM   FOB #2637993 |
| 5-14-2018 | NEW EMPLOYEE/CHANGE FORM (DISASTER RECOVERY) |
| N/A | NEW EMPLOYEE ORIENTATION   Terminated employment 4-30-2018 |
| 4-7-2018 | SYSTEM ACCESS AUTHORIZATION FORM   IT |
|  | 2-27-2018 ___COMPLIANCE |
|  | 4-12-2018 ___MARKETING |
| 2-27-2018 | SECURITY TRAINING -, SECURITY PROGRAM /PROCEDURES  MANUAL (90 DAY IS ABA TRAINING) |
| 2-26-2018 | AETNA ENROLLMENT FORM (LIFE, SHORT TERM AND LONG TERM) |
| N/A | AETNA ENROLLMENT FORM (MEDICAL AND DENTAL)   ELIGIBLE   Staying on county Plan |
| 3-1-2018 | AETNA LIFE BENEFICIARY FORM |

D-000034

*Jerm 4/30/18*

 **SALISBURY BANK AND TRUST COMPANY**

## New Employee / Change of Employee Information Form

☑ New Employee          ☐ Change of Employee Information

**Employee ID Number:** 1683

**Name:** William G. Truitt

**Job Title:** Mortgage Lending Officer

**Department:** Lending

**Bank Location:** Poughkeepsie

**Supervisor:** Amy Raymond

**Home Address:** REDACTED

**Alternate Address:**

**Home** REDACTED

**Cell Phone:** REDACTED

**Emergency Contact:** Kathryn Truitt

**Emergency Contact Phone:** REDACTED

**Alternate Phone (and description):**

**Work Phone Extension:**

**Home E-Mail Address:** REDACTED

**Work Status (F/T or P/T; Hourly or Salaried):** Full Time / Hourly

Check boxes below and initial and date when completed:

☒ The Human Resources Department completes this form and forwards to Megan Snow. *Diana Chris 2/26/2018*
☒ Ms. Snow makes adjustment to the Disaster Recovery Plan and forwards to Deposit Operations *MSnow 5/11/18*
☒ Deposit Operations makes necessary changes and forwards to Human Resources. *Iclose 5/11/18*
☐ Human Resources received form back on *Diana Chriy 5/14/20*

Compliance Rev 03/17
New or change employee info.dot

Message

| | |
|---|---|
| **From**: | NMLS_Notifications@NMLSNotifications.com [NMLS_Notifications@NMLSNotifications.com] |
| **Sent**: | 6/16/2018 7:46:34 AM |
| **To**: | dcahill@salisburybank.com |
| **Subject**: | [External] Employment Records have been changed in NMLS |

The following employment records have ended or been withdrawn in NMLS.

| MLO NMLS ID | MLO Name | Employment End Date | Employment Status | Action Taken By |
|---|---|---|---|---|
| 1734370 | William Truitt | 4/30/2018 | Ended | Douglas Alan Cahill |

An end in employment record will change an actively registered individual's status to "Inactive". It also removes the institution's access to the individual's record in NMLS.

THIS COMMUNICATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND CONTAINS OR MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this communication is not the intended recipient (or the employee or agent responsible for delivering to the intended recipient), you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please disregard and delete this communication, and do not disseminate or retain any copy of this communication.

D-0000449

Note: Pages of Ex. 4 and 26 that were not specifically cited in Plaintiff's Opposition were removed at Defendants' request.

# EXHIBIT A

## Salisbury Bank and Trust Company
## Human Resource and Compensation Committee Minutes
## May 25, 2018

The meeting of the Human Resource and Compensation Committee was held at the Salisbury Bank Bissell House Board Room, 19 Bissell Street, Lakeville, CT 06039.

Members present:    George E. Banta
Arthur J. Bassin, Chairman
David B. Farrell
Polly Diane Hoe
Nancy F. Humphreys
Michael A. Varet

Also Present:    Richard J. Cantele, Jr., President and CEO
Peter Albero, Executive Vice President and CFO
Shelly L. Humeston, Senior Vice President and Secretary
Doug Cahill, Vice President and Director of Human Resources

### CALL TO ORDER

Mr. Bassin called the meeting to order at 10:18 a.m.

### APPROVAL OF MINUTES – ART BASSIN

Mrs. Humphreys made a motion, seconded by Ms. Hoe to approve the minutes of January 19, 2018 as presented. Said motion was unanimously approved.



CONFIDENTIAL

SALISBURY BANK AND TRUST COMPANY
**Human Resource & Compensation Committee; May 25, 2018**
**Page 5**

---

- o   $112,057 in Bank accruals
- o   $ 87,516 in funds parked in the ESOP Suspense Account

After discrimination testing and final eligibility analysis:
- **$196,516** will be allocated
  - o   $112,057 in Bank accruals
  - o   $ 84,459 in funds parked in the ESOP Suspense Account
  - o   Represents contribution of 2% eligible compensation (base + incentive)

The unallocated funds will remain in the ESOP Suspense Account for future use.

### OUTSIDE EMPLOYMENT REVIEW – DOUG CAHILL

Per the Bank's Code of Ethics and Conflicts of Interest Policy, Mr. Cahill reviewed with the Committee the Outside Employment Report for Officers of Salisbury Bank. This report has been reviewed by the Executive Manager, the CEO, and the VP, Human Resources, and no conflicts of interest were identified. It is Management's recommendation that all listed outside employment be approved as presented.

In determining whether to approve outside employment by Officers of Salisbury Bank, the Committee should consider all relevant factors, including but not limited to the following:

1. Will it interfere with work assignments or performance;
2. Will it involve the possibility of adverse publicity to the Corporation;
3. Is it with a competitor, supplier or customer;
4. Does it imply sponsorship by the Corporation; and
5. Does it involve serving as a director, officer, manager or consultant.

| 2017-18 Outside Employment Report | | | | |
|---|---|---|---|---|
| Employee | Officer Y/N | Outside Employ Y/N | Employer Name | Nature of Duties |
| Bowerman, Maurice | Y | Y | Bowerman Financial | Insurance Brokerage |
| Cullip, Jason | Y | Y | DevilTechs, LLC | IT Consultant |
| Downey, Kim | Y | Y | Eckert Fine Art | Bookkeeper |
| Golden, Al | Y | Y | Rick's Wine & Spirits | Clerk |
| Long, Darrel | Y | Y | Spirit Ballooning | Pilot |

Mrs. Humphreys noted that Al Golden has worked as a bartender at a number of events and asked why that is not listed on this report.

Mr. Farrell asked about Maurice Bowerman's employment and whether it could be construed that his insurance services are connected to the Bank. Mr. Cantele reported that he has discussed this with Steve Essex and Steve felt confident that it did not pose a conflict of interest.

**CONFIDENTIAL**                                                    D-001134

SALISBURY BANK AND TRUST COMPANY
**Human Resource & Compensation Committee; May 25, 2018**
**Page 6**

Mr. Cantele indicated that he would follow up on these two employment concerns and report back to the Committee.

Following review and discussion, Ms. Hoe made a motion, seconded by Mr. Farrell to approve the Outside Employment report as presented.  Said motion was unanimously approved.

## UNBUDGETED POSITIONS REVIEW – DOUG CAHILL AND RICK CANTELE

Based on need or circumstance, the Management Team considers additions to staff during the year that were not included in the initial budget process.  In 2018, the following positions have been vetted and approved to date, that may have an impact on our compensation and benefit programs:

### 2018 Unbudgeted Adds - Compensation and Benefits

| Title | Rationale | FTE | 2018 Impact Salary | Benefits (20%) | Total Anticipated Variance 2018 |
|---|---|---|---|---|---|
| Mortgage Originator | Revenue | 1.0 | $ 11,667 | $ 2,333 | $ 14,000 |
| Comm. Lending Trainee | Succession | 1.0 | $ 62,500 | $ 12,500 | $ 75,000 |
| Controller | Finance Management | 1.0 | $ 90,000 | $ 18,000 | $ 108,000 |
| Finance Specialist | Finance Support | 0.2 | $ 7,500 | $ - | $ 7,500 |

YTD Total:  $ 204,500

Mr. Cahill reported that Management will look for strategies to get back on budget regardless of these additional hires.

## RIVERSIDE STOCK OPTIONS UPDATE – DOUG CAHILL

So far in 2018, Liliana Guarino and John Davies have opted to exercise their outstanding Riverside Bank Stock Options.  The exercised options were granted in 2008, and are set to expire on May 27, 2018.  The following is a summary of the transactions (highlighted), and outstanding options as of 5/21/18:

**Linda King**

**To:** Douglas Cahill
**Subject:** RE: Staff Updates

**From:** Douglas Cahill
**Sent:** Friday, May 18, 2018 5:22 PM
**To:** EntireBank
**Subject:** Staff Updates

Please help me wish Nicole and James the best in their new roles, and welcome Samantha to Salisbury Bank!

I'm sorry to announce the following resignations:

- Will Truitt has decided to pursue his political ambitions and has resigned his Mortgage Originations position in our Riverside Division.  His last day was Monday, April 30.

Doug Cahill, PHR, SHRM-CP
Vice President, Human Resources
Salisbury Bank  • 5 Bissell Street  •  PO Box 1868, Lakeville, CT 06039-1868
TEL 860.453.3460  •  FAX 860.435.5106  •  dcahill@salisburybank.com

STOP

1

D-000018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

WILLIAM GUNNER TRUITT                                )
                                                     )
                                 Plaintiff,          )          Civil Action No.  7:18-cv-08386-NSR
                                                     )
        v.                                           )          September 30, 2019
                                                     )
SALISBURY BANK AND TRUST COMPANY;                    )
and SALISBURY BANCORP, INC.,                         )
                                                     )
                                 Defendants.         )
_____             )

---

## EXPERT REPORT OF DONALD J. MUSSO

---

**The contents of this Report are confidential pursuant to the Amended Protective Order.**

## **Table of Contents**

| | | |
|---|---|---|
| I. | Certification | 01 |
| II. | Purpose of Report | 05 |
| III. | Opinion of Economic Losses | 06 |
| IV. | Economic Loss | 08 |
| V. | Background on Mortgage Loan Officers | 10 |
| VI. | Background on Mr. Truitt | 17 |
| VII. | Errors/Omissions with Sobel Tinari Economics Group Expert Report | 23 |
| VIII. | FinPro's Calculation of Economic Loss | 37 |
| IX. | Appendices | 43 |
| X. | Table of Authorities | 52 |
| XI. | Materials Reviewed | 55 |
| XII. | Disclaimer on Fees | 57 |

**I. Certification**

**Donald J. Musso**

I founded FinPro, Inc. ("FinPro") in 1987 and currently serve as the company's President and CEO.  In 2012, I also formed FinPro Capital Advisors, Inc. ("FCA") as a wholly owned subsidiary of FinPro to conduct capital markets and investment banking activities.  FinPro provides consultative services to numerous banks that provide mortgage banking services and to mortgage banking clients.  I provide corporate governance advice to numerous banks, including specific advice, on bank audit, compensation, loan and other committees.

In addition to my years of experience at FinPro and FCA, I founded numerous de novo banks, am a large investor in community banks, and have served as a member of the Board of Directors for various banks.  As a member of the Board of Directors of a bank, I have served as the Chairman for the bank's Compensation Committee and served on various other committees. In my capacity as Compensation Committee Chairman and as member of the Compensation Committee I was responsible for:

1. Recommending, overseeing, and approving the Bank's executive compensation plans including the Bank's CEO compensation, non-CEO executive officer compensation, and Director compensation (if applicable);
2. Implementing the most recent advisory on the "Say on Pay" vote mandated by the Dodd-Frank Act;
3. Conducting a detailed review and discussion of the CD&A ("Compensation Discussion & Analysis) with the Bank's management team;
4. Evaluating incentives and other forms of compensation that may encourage unnecessary or excessive risk taking on behalf of the Bank's executives and officers;
5. Overseeing and approving of the general compensation and employee benefit plans, including incentive-compensation plans and any pension or equity-based plans;
6. Making regular reports to the Bank's Board of Directors; and
7. Reviewing the Compensation Committee Charter annually and recommending any changes where appropriate to the Board.

In addition to these responsibilities as Chairman, the Compensation Committee must oversee compliance with legal rules affecting compensation including disclosures, procedures, and internal controls around compensation.

I am a recognized expert in value creation for banks, strategic planning, loan and deposit growth, internal risk assessments, asset/liability management, customer segmentation, risk management, de novo bank formation, and investment banking. I am frequently invited to present these topics as the keynote speaker at industry conferences and teach at many of the elite banking graduate schools.  I am on the faculty of Stonier Graduate School of Banking, and the Graduate School of Banking at Colorado, where I teach Strategic Planning, M&A and Risk Management.  I was also on the faculty of the Pacific Coast Banking School, resigning in 2015 due to time constraints.

I frequently speak on financial institution related topics and have assisted trade groups such as the ABA, CSBS, Bank Director, and numerous State Organizations in various activities. Over the last year and a half, I have presented to general session audiences, each with over 150 executives, at events held by the New Jersey Bankers Association, Utah Bankers Association, Illinois Bankers Association, Heartland Community Bankers Association, Bank Holding Company Association, Oregon Bankers Association, Idaho Bankers Association, Nevada Bankers Association, and Connecticut Bankers Association.

A constant advocate for building value at my clients' institutions, I maintain close contact with all bank regulatory agencies and departments in order to stay current with upcoming policies and rules.  I am often invited to speak with key policy makers at the FDIC, OCC, Federal Reserve and various State Banking Departments.

I earned a B.S. in Finance from Villanova University and an M.B.A. in Finance from Fairleigh Dickinson University.

I hold Series 24, 63, 79 licenses.

Over the last ten years I have personally written several articles that have been published, including but not limited to the following:

1. *Director Training on Compensation Committee Charter & Critical Issues*, FinPro, Inc. (August 2019).

2. *Understanding Your Bank's Capital Alternatives*, BankDirector.com (October 2017) *available at https://www.bankdirector.com/ issues/strategy/understanding-your-banks-capital-alternatives/.*

3. *The Regulatory Feedback Initiative Reports on Latest Findings*, Hoosier Banker (April 2017) *available at http://www.ourdigitalmags.com/ publication.*

4. *Focus on Relationships, Not Transactions*, Bank News (March 2017) *available at https://www.banknews.com/ blog/focus-on-relationships-not-transactions/.*

5. *Focus on Customers and Not Products*, Bank News (October 2016) *accessible at https://www.banknews.com/blog/focus-on-customers-and-not-products/.*

6. *The Traditional Community Banking Model is Dead*, BankDirector.com (February 2016) *available at https://bankdirector.com/issues/ strategy/the-traditional-community-banking-model-is-dead/.*

7. *Four Keys to a Successful ERM Implementation in Commercial Insights*, American Bankers Association (July 2012).

8. *Is ERM Really for Community Banks?*, American Bankers Association (March 2012).

9. *Enterprise Risk Management*, Banknews.com (December 2012).

Over the past few years, some of the speeches I have given include the following:

1. "Shareholder Relations and Activism", presenter, sponsored by Director's Institute, Hershey, Pennsylvania, June 20, 2019.

2. "Onboarding Bank Directors – And the do's and don'ts of being a Director", presenter, sponsored by NJ Bankers HR Conference, New Brunswick, New Jersey, May 14, 2019.

3. "Solving The Regulatory Riddle", presenter, sponsored by FHLB Topeka, Topeka, Kansas, April 25, 2019.

4. "Preparing for the Economic Downturn", presenter, sponsored by NCBA Directors Assembly, Greensboro, North Carolina, March 12, 2019.

5. "Community Banking – The New Model", presenter, sponsored by NJBA Directors Conference, March 3, 2019.

6. "Regulatory Update", presenter, sponsored by Idaho Community Bankers Association, Boise, Idaho, January 29,2019.

7. "State of Industry", presenter, multiple sponsors through Winter 2018.

8. "Change is Coming", presenter, sponsored by Tennessee Bankers Convention, Nashville, Tennessee, October 25, 2018.

9. "FinTech and Lending", presenter, multiple sponsors through Fall 2018.

10. "Fintech is an Ally and Disruptor", presenter, sponsored by Alabama Bankers Association, Southampton, Bermuda, June 5, 2018.

11. "Keys to Being a Successful Director", presenter, sponsored by NJBA Directors Conference, March 10, 2017.

12. "Keeping your Association Relevant", presenter, multiple sponsors through Spring 2019.

I am called on regularly by writers and editors to provide industry insight. Some of the publications where I have been quoted in the last ten years include The Wall Street Journal, American Banker, NY Daily News, CNN Money, ABA Banking Journal, Bloomberg.com, New York Times, SNL Interactive, Banker and Tradesman, and Financial Times.

**II. Purpose of the Report**

FinPro, utilizing Donald J. Musso as its expert, was retained by Salisbury Bank and Trust Company ("Salisbury") on or around March 11, 2019 to:

1. Conduct an analysis and provide an opinion as to the economic loss, if any, incurred by William Truitt as a result of his separation of employment with Salisbury Bank and Trust Company on May 1, 2018; and

2. To review and rebut the Expert Report entitled ***An Appraisal of Economic Loss to William Truitt***, written by Sobel Tinari Economics Group ("Sobel Tinari"), utilizing Kristin K. Kucsma, M.A. as their expert.  The Sobel Tinari Report was dated as of August 30, 2019.

FinPro begins this report with a summary opinion of economic losses.  This opinion is followed by a brief background on the definition of economic loss and then supported by a discussion of the background of mortgage loan officers in general and specific to Salisbury, the background on Mr. Truitt, certain errors and omissions in the Sobel Tinari Economics Group Expert Report, and ultimately FinPro's calculation of economic loss.  Further support for the adjustments made to the Sobel Tinari report, along with FinPro calculation of economic loss can be found in the pertinent appendices.

5

## III. Opinion of Economic Losses

In my opinion, William Truitt suffered no economic loss as a result of his separation of employment with Salisbury Bank and Trust.

### A. Back-Pay

Based on FinPro's computation there is no back pay economic loss.

| Year | Employment Period | Loan Production | Average Loan Balance | $ Production | Commission Rate 0.55% | Salisbury Projected Earnings $ 16.83 | BridgeView Excavation Mitigated Earnings $ 18.00 | Economic Loss | Weeks in Period |
|---|---|---|---|---|---|---|---|---|---|
| 2018 | May 1-Aug 31 | 0 | - | - | $ - | $ 11,444.40 | $ 12,240 | | 17 |
| 2018 | Sep 1 - Dec 31 | 6 | $ 324,253 | $ 1,945,518 | 10,700 | $ 10,700.35 | $ 12,240 | | 17 |
| 2019 | Jan. 1 - Dec. 31 | 18 | $ 324,253 | $ 5,836,554 | 32,101 | $ 32,101.05 | $ 37,440 | | 52 |
| | | | | | $ 54,245 | $ 61,920 | | $0 | |

\* Note:  If mitigated earnings are greater than or equal to Salisbury projected earnings, there is no economic loss.

### B. Front-Pay

Based on FinPro's computation there is no front pay economic loss.

| Year | Employment Period | Loan Production | Average Loan | $ Production | Earnings Based on Commission 0.55% | Actual Mitigated 4.00% | Earnings Based on Commission 1.00% | Mitigated Earnings 4.00% | Economic Loss |
|---|---|---|---|---|---|---|---|---|---|
| 2020 | 3 | 30 | $ 324,253 | $ 9,727,590 | $ 53,502 | $ 47,563 | $ 97,276 | $ 93,535 | |
| 2021 | 4 | 35 | $ 324,253 | $11,348,855 | $ 62,419 | $ 53,356 | $ 113,489 | $ 109,124 | |
| 2022 | 5 | 40 | $ 324,253 | $12,970,120 | $ 71,336 | $ 58,633 | $ 129,701 | $ 124,713 | |
| | | | | | $ 159,551 | | $ 327,371 | | $0 |

\* Note:  If mitigated earnings are greater than or equal to Salisbury projected earnings, there is no economic loss.

### C. Benefits

FinPro determined no economic loss for benefits for the following four reasons:

1. Mr. Truitt was not provided or entitled to any benefits from Salisbury at the time of his departure and, therefore, did not suffer a loss of benefits from Salisbury during the less than one month it took him to accept a new job;

2. Mr. Truitt received health insurance, dental, optical, retirement and disability insurance through Dutchess County and the Civil Service Employees Association, Inc. and therefore did not suffer a loss of benefits;

6

3. because Mr. Truitt obtained a new job with Bridgeview Excavation from which he could have and should have had an additional option for benefits; and

4. Mr. Truitt had an obligation to find comparable employment where he would have received benefits.

## D.  Sobel Tinari Adjusted

FinPro also determined no economic loss after adjusting Sobel Tinari's work with necessary adjustments.  The individual adjustments are detailed later in this expert report.

| | Adjustments | Projected Gross Earnings | Adjusted Earnings | Mitigation | Mitigated Earnings | Present Value |
|---|---|---|---|---|---|---|
| 1 | Sobel Tinari Expert Report | $ 17,950,103 | $ 16,892,809 | $ - | $ - | $ 6,621,117 |
| | **Appropriate Adjustments** | | | | | |
| 2 | Comparable Earnings | $ 1,682,629 | $ 829,013 | $ - | $ - | $ 829,013 |
| 3 | Loan Count Production | $ 2,223,940 | $ 1,086,036 | $ - | $ - | $ 1,086,036 |
| 4 | Average Loan Balance | $ 3,040,683 | $ 1,484,883 | $ - | $ - | $ 1,484,883 |
| 5 | Tenure | $ 312,094 | $ 287,050 | $ - | $ - | $ 287,050 |
| 6 | Actual Mitigation | $ 312,094 | $ 300,090 | $ 202,382 | $ 97,708 | $ 89,170 |
| 7 | Comparable Mitigation | $ 329,927 | $ 303,869 | $ 599,868 | $ (248,620) | $ 552,489 |

| FinPro Adjusted Economic Loss | $ - |
|---|---|

7

---

### IV. Economic Losses

---

A.  **Definition**

When evaluating the economic losses linked to an alleged wrongful termination case, it is important to identify and address the two main components of compensation streams.  Initially, one needs to determine the likely compensation (including benefits) an employee would have earned had he or she not been released by their employer.  Secondly, one needs to consider the potential compensation or mitigation that the employee can be expected to earn from seeking comparable employment.  Subsequently one can ascertain the damages by taking the difference in the two compensation streams.[4.01]

The two primary components of economic loss are referred to as back pay, and front pay. It is imperative to accurately calculate back pay as this will have a considerable impact on the entry point calculation when determining the front pay.

B.  **Calculation Requirements**

When looking at the requirements for back pay, typically the employee's current earnings at the time of separation are used as the base for projecting future earnings.  It is equally important to note that the initial base calculation should only reflect earnings that are likely to reoccur.  In an article concerning the evaluation of economic loss, Stephanie R. Thomas, Ph.D. states that

> [a]ny commissions, bonus payments, long term incentive payments, or other cash supplements or benefits payouts should be carefully examined.  If these amounts were paid post-separation, or if they are unlikely to recur in the future (but for the alleged wrongful termination), they should be excluded from the base of earnings.[4.02]

Identifying a growth rate should also be established when determining back pay., This merely accounts for the percentage that the employee's earnings will increase over time.  Given the impact compounding interest has over time, it's important to capture the right growth as this could significantly sway projection calculations.

---

[4.01] Stephanie R. Thomas, PhD, Evaluation of Economic Damages in Wrongful Termination Litigation (PLI Course Handbook 37th Annual Institute on Employment Law, 2018).
[4.02] Id.

The timeline for back pay is factored from the date of separation through the court hearing.  In this case, the court date is unknown so FinPro assumed December 31, 2019.  The timeline for front pay extends from the court date to the duration of a reasonably assumed tenure for a similar position at a similar job.  The loss period needs to incorporate market data on industry related tenure for similar jobs with similar activities.

Offset or "mitigated" earnings are also a consideration in the economic loss determination.  Mitigated earnings are defined as the potential earnings had the employee sought alternative/comparable employment.  The mitigated earnings calculation is simply a measurement of earnings capacity post termination/resignation from employment.  A plaintiff's effort to secure comparable employment is a form of "mitigation."  "In order to successfully claim damages due to termination, a plaintiff is required to demonstrate that he or she made a reasonable effort to "mitigate their damage by seeking employment consistent with their skills and ability."[4.03]

Under Title VII of the 1964 Civil Rights Act, "interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable"[4.04]

---

[4.03] Amy Aukstikalnis, Ph.D., Stephen Bronars, Ph.D., and Dawn Kovnaer, Ph.D. (Welch Consulting), *Calculation of Economic Damages in Wrongful Termination Cases* (Prepared for the OCBA Labor & Employment Law Section Seminar, June 2013).
[4.04] 42 U.S.C. 2000(e)(5)(g)(1).

<div style="border:1px solid black;">

### V. Background on Mortgage Loan Officers

</div>

#### A. Compensation

The duties and responsibilities of loan officers are to evaluate, authorize, or recommend the approval of loan applications for individuals and businesses.  Most mortgage loan officers ("MLO's") are employed by commercial banks, credit unions, and mortgage companies. The majority of MLO's work full time which is generally 40 hours a week, and some may work more extensive hours which includes working after business hours to make follow up sales calls. MLO's need to be available when the clients need them to be available and as such do not have full control over their schedule.  Based on FinPro's experience, most MLO's have a bachelor's degree.  Mortgage lending is a sales-oriented profession.  The on-the-job training "may be a combination of formal, company-sponsored training and informal training during the first few months on the job."[5.01]  MLO's must be licensed by the Nationwide Multistate Licensing System and Registry ("NMLS"), overseen by Conference of State Supervisors.

A MLO's compensation can be based on commission, salary, or a combination of the two. According to the Bureau of Labor Statistics, published by the U.S Department of Labor, ("U.S. DOL") "[t]he median annual wage for loan officers was $63,040 in May 2018."[5.02] This median declined slightly from May 2017 figures.

In 2018, according to the U.S. DOL Bureau of Labor Statistics, the number of MLO's nationally was 316,200. The projected job outlook for 2018 through 2028 was up 8% which translates into faster than average growth than for all other occupations. The projected growth in the number of jobs nationally from 2018 through 2028 is 24,300.[5.03] According to a June 2018 article written by Lainie Petersen, loan officer employment opportunities "should grow by 11 percent between 2016 and 2026 based upon expected economic growth in real estate sales."[5.04]

According to the U.S. DOL Bureau of Labor Statistics, the number of MLO's employed

---

[5.01] U.S. Bureau of Labor Statistics, Loan Officers Summary, September 2019.
[5.02] U.S. Bureau of Labor Statistics, Occupational Employment and Wages, May 2018.
[5.03] U.S. Bureau of Labor Statistics, Loan Officers Summary, September 2019.
[5.04] Lainie Peterson, *How Much Can an Entry Level Mortgage Loan Originator Make?* (June 27, 2018), *available at* https://work.chron.com/much-can-entry-level-mortgage-loan-originator-make-25292.html.

in New York, including New York City was 12,890 in May 2018. New York is one of the top five states with the highest level of employment of MLO's. The average annual mean wage for MLO's was slightly lower at $62,922 using non-metropolitan areas that surround New York City.  A MLO's income depends upon their employer. Some employers pay a flat salary, others pay a base salary plus commissions, and some only pay commission. The commission structure depends upon the company. At the high end, Salisbury pays 60 basis points on total monthly closed loan volume for new business. Salisbury's full commission schedule is provided in Section VII.[5.05]

MLO's can expect to earn more compensation as they gain more job experience. A survey conducted by PayScale.com "demonstrated that there is a direct correlation between years on the job and total annual compensation (base salary plus commissions)."[5.06]  These findings suggest that total annual compensation peaks between 10 and 20 years at approximately $81,000. Then, there is a $30,000 decline from $81,000 to $51,000 for the category of more than 20 years of experience. The following table summarizes these results:

| Years on the job | Total Annual Compensation |
|---|---|
| 0-5 years | $40,000 |
| 5 to 10 years | $70,000 |
| 10 to 20 years | $81,000 |
| More than 20 years | $51,000 |

According to 2018 American Bankers Association Compensation and Benefits Survey Report, MLOs "can earn a national median total compensation of $79,170 where all or most of compensation is based on loan volume" and a MLO "can earn a national median total compensation of $69,560 where all or most of the compensation is derived from a base

---

[5.05] Salisbury Bank and Trust Compensation of Mortgage Originators Exhibit B (December 31, 2017).
[5.06] Lainie Peterson, *How Much Can an Entry Level Mortgage Loan Originator Make?* (June 27, 2018) *available at https://work.chron.com/much-can-entry-level-mortgage-loan-originator-make-25292.html.*

salary."[5.07]

The compensation received by two of Salisbury MLO's, Mr. Kevin R. Cantele ("Mr. Cantele") and Ms. Spring J. Burke ("Ms. Burke") for the years 2014 through 2018 is outlined in the table below. The actual 2018 annual compensation for Mr. Cantele and Ms. Burke was $176,510 and $158,986, respectively. The 2018 average compensation for these two Salisbury MLOs is calculated at $167,748. However, Mr. Truitt did not have the tenure or background that these two Salisbury MLOs had at this point in their respective careers. As a result, Mr. Truitt is more aligned with the first full year total compensation for Mr. Cantele, which was $53,610. This is a better indication of earnings potential in the first year for Mr. Truitt. This table summarizes compensation in the years 2014 through 2018, as follows [5.08]:

| **Year** | **Mr. Cantele** | **Ms. Burke** | **Average** |
|---|---|---|---|
| 2014 | $22,384 | $115,368 | $68,876 |
| 2015 | $53,610 | $119,359 | $86,485 |
| 2016 | $98,380 | $161,320 | $129,850 |
| 2017 | $154,408 | $157,736 | $156,072 |
| 2018 | $176,510 | $158,986 | $167,748 |

### B. Annual Loan Count Data

According to Mortgage Educators and Compliance, "most loan officers can close anywhere from 18 to 25 loans in a year, with some doing as many as 35 to 40 loans." [5.09] Mortgage loan production is the major responsibility of any MLO. According to the performance evaluations provided by Salisbury for Mr. Cantele and Ms. Burke, mortgage production was

---

[5.07] American Bankers Association, *ABA Benchmarking and Survey Research, 2018 Compensation and Benefits Survey.*
[5.08] W-2 Statements and Tax Statements for Mr. Cantele and Ms. Burke, 2014-2018.
[5.09] Mortgage Educators and Compliance, *4 Reasons Why Becoming a Mortgage Broker on Loan Officer May Be the Career Change You've Been Looking For*", *available at https://mortgageeducators.com/21-supportdocs/251-obtaining-your-mortgage-license.*

deemed commendable for both bank employees.  According to Salisbury performance evaluation standards, commendable is defined as:

> "performance is consistently above requirements. This rating describes performance, which regularly exceeds expectations and demonstrates the willingness to assume additional responsibilities. This rating may be used as a special recognition for extraordinary performance, which as significant impact on the organization."[5.10]

The 2017 performance evaluations summarize Mr. Cantele and Ms. Burke's mortgage production by number of units and volume in dollars. In 2017, Mr. Cantele produced 66 loans, Ms. Burke produced 90 loans, for an annual average of 78 loans.

| **Employee** | **Number of units [5.11]** |
|:---:|:---:|
| Mr. Cantele | 66 |
| Ms. Burke | 90 |
| **Average** | **78** |

### C.  Average Loan Balance

The 2017 performance evaluations summarize Mr. Cantele and Ms. Burke's actual mortgage production by number of mortgage units and volume in dollars to which allows the determination of imputed average loan balance. In 2017, the average loan balance was $324,253, which is calculated in the table below:

---

[5.10] Salisbury Bank and Trust 2017 Performance Appraisal Reports for Kevin Cantele and Spring. Burke.
[5.11] Id.

| **Employee** | **Volume (A) [5.12]** | **Mortgage Units (B) [5.13]** | **Imputed Average Loan Balance (A/B)** |
|---|---|---|---|
| Kevin Cantele | $24,361,220 | 66 | $369,109 |
| Spring Burke | $25,145,680 | 90 | $279,396 |
| **Average** | **$24,753,450** | **78** | **$324,253** |

The Bureau of Financial Protection issues annual HMDA data by state and within specific participating counties within New York State.  As of 2018, utilizing HMDA data, the average calculated loan balance in New York State is $232,169.  The average calculated loan balances in Mr. Truitt's targeted market of Dutchess, Putnam, and Kingston Counties, New York is $237,157.  This data and these calculations are summarized in the following table:

| Loan Type | # of loans (A) | $ Amount (B) | Average (B/A) |
|---|---|---|---|
| New York State | 167,369 | $ 38,857,935,000 | $ 232,169 |
| Dutchess and Putnam County | 7,517 | $ 1,875,135,000 | $ 249,453 |
| Kingston County | 3,230 | $ 673,590,000 | $ 208,542 |
| **Total Market** | **10,747** | **$ 2,548,725,000** | **$ 237,157** |

*Note: HMDA data not available for Ulster County; Kingston, the county seat, was utilized as a proxy.

### D.  **Tenure**

The Salisbury employees, Mr. Cantele and Ms. Burke have worked as loan officers for 5 years and 10 years, respectively.[5.14]  The average tenure of Mr. Cantele and Ms. Burke is 7.5 years.

The authoritative source for tenure is the 2018 NMLS Mortgage Industry Report issued by the Conference of State Bank Supervisors.  NMLS states "the attrition rate for New York

---

5.12 Id.
5.13 Id.
5.14 Id.

State is 23% with a national attrition rate of 21% among Mortgage Loan Originators (MLO)." [5.15]   The attrition rate can be inverted to determine average tenure in years.  The New York State and the national attrition rate is calculated as 4.3 years and 4.8 years, respectively.

      Additional support for the average tenure of an MLO can be found in a number of publicly available sources.  Indeed.com, an industry leading transactional job website states "a typical tenure for a loan officer is 1-3 years."[5.16]  A recent article published by LBA Ware, a top leader in automated compensation and loan origination system integration software for mortgage lenders concluded "that the performance and production of over 6,000 loan originators over a 30-month period found the average tenure at a single mortgage company to be just 2.29 years." [5.17]

      Another source, the Stratmor Insight group conducted a MLO tenure survey and reported those results in its 2017 January report. These results "include input from 40 [lending institutions] composed of 23 independents and 17 bank owned/affiliated mortgage companies. The [lending institutions] range in size from under $500 million in annual production to over $10 billion. The sample includes results from 16,766 retail originators."  The collected tenure information of originators and key insights from the Stratmor Insight survey concluded the following:

- Originators had been with their current company 3.1 years.
- 56.9% of originators have been with their current company for 2 years or less.
- The largest tenure category was between 1 and 2 years at the current lender.

This data underscores what any industry veteran knows, originators like to change companies.[5.18]

      In the same survey "voluntary terminations constituted 83.3% of all terminations with involuntary terminations making up the remaining 16.7%" [5.19] The survey shows that MLO's in the top 20% of producers of their company have a higher rate of voluntary turnover rate at approximately 87%. In the bottom quintile, voluntary turnover drops to 71%. These results suggest that lenders are managing out the non-producers; but it appears that these originators also

---

[5.15] 2018 NMLS Mortgage Industry Report, Conference of State Bank Supervisors, *available at*

*https://mortgage.nationwidelicensingsystem.org/about/Reports/2018%20Mortgage%20Annual%20Report.pdf.*

[5.16] Indeed.com, *Loan Officer Salaries in New York State* (August 27, 2019).

[5.17] Kelley Mangel, *How high is loan originator turnover — and what's behind it?* (April 10, 2019), *available at https://lbaware.com/2019/04/how-high-is-loan-originator-turnover/.*

[5.18] Stratmor Group, *Stratmor Insights from the Originator Census Survey, Average Tenure of an Originator* (January 2017) at 8.

[5.19] Id. at 9.

largely self-select out.

### E. __Basis Point Commission__

Commission rate is a primary driver in determining the assumptions used and the calculation of total compensation. In *How Much is a Loan Officer's Commission?* author Tamara Runzel states

> that 45 percent of firms paid between 76 basis points to 150 basis points commission on each loan. For illustrative purposes, one basis point is equal to 1/100[th] of one percent, so 76 basis points is just slightly over ¾ of one percent. A $100,000 loan would yield $760 in commissions for the loan officer.[5.20]

In *What Kind of Commission Does a Mortgage Banker Make?* Jennifer Fortier states

> a typical commission for a loan ranges from 50 to 100 basis points, where one basis point is one-tenth of a percentage point. The loan officer and the mortgage company will negotiate a commission rate as part of the employment process, and the loan originator earns a set commission on all loans based on that agreement.[5.21]

Additionally, there was a recent 2016 poll conducted by Gina Pogel who is an author of the Mortgage Reports website which asked various lenders: "[i]n 2016, what have you been paying your retail residential loan officers, on average, as a commission?" The results are summarized below.  Please note that this data was pulled directly from the report and is not factored for rounding.

- 25 to 50 basis points per loan:  13%
- 51 to 75 basis points per loan: 22%
- 76 to 100 basis points per loan: 22%
- 101 to 150 basis points per loan: 25%
- More than 150 basis points per loan: 0%
- Undisclosed due to a call center lender status: 19%[5.22]

---

[5.20] Tamara Runzel, *How Much is a Loan Officer's Commission?* (June 27, 2018), *available at https://work.chron.com/much-loan-officers-commission-29176.html.*
[5.21] Jennifer Fortier, "What Kind of Commission Does a Mortgage Banker Make?" (2019), *available at https://www.sapling.com/8594521/kind-commission-mortgage-banker-make.*
[5.22] Gina Pogel, How Much Do Mortgage Lenders Make On Your Mortgage Loan? (December 2, 2016), *available at https://themortgagereports.com/23751/how-much-do-mortgage-lenders-make.*

---

**VI. Background on William Truitt**

---

### A. <u>Mr. Truitt was training to become an MLO</u>

When Mr. Truitt was first hired by Salisbury, he received an employment offer letter from Doug Cahill ("Mr. Cahill"), stating that he will be employed as a "Mortgage Lending Officer Trainee" in its "Residential Lending Department"[6.01] with a start date of February 26th, 2018, his hire date.  The offer letter also specified the Mr. Truitt would be paid "$16.83 per hour based upon a 40-hour work week, and [he] will be classified as a full-time hourly employee during the training period." The offer letter also noted that the "Mortgage Lending Officer Trainee position provides a development plan which will be outlined … in an additional document upon your hire date." [6.02] The offer letter included the following timeline and details:

February 2018

- $35,000 – base salary on hire
- Mortgage Originator Trainee
- 2-3 days each week – works in Residential Credit Underwiring Department
- 2-3 days each week – works with Residential Processors

September 2018

- Base salary consideration after 6 months of training:
  - $2,500 per month draw on commissions
- Works with COI's and internal staff developing relationships in Dutchess, Ulster and Orange Counties.

January 2019

- Compensation consideration:
  - 100% commissioned
- Mortgage Loan Officer [6.03]

Mr. Truitt signed the offer letter.

---

[6.01] The offer letter in the form of an email written by Doug Cahill to Mr. Truitt, on January 29, 2018
[6.02] <u>Id.</u>
[6.03] <u>Id.</u>

The email below written by Amy Raymond to Rick Cantele and Douglas Cahill summarizes that Mr. Truitt was receiving an hourly rate and confirms again that he was in fact, in training for at least 6 months.  After this training period, Mr. Truitt was expected to produce on his own and get eased into the 100% commission structure.  Amy Raymond specifically wrote: "We would like to give him the opportunity similar to how we brought Kevin along, 6 months' salary while training in the department and then ease into 100% commission structure. Our budget called for 100% commission right out of the gate."[6.04]

**B. <u>Mr. Truitt had no Benefits through Salisbury</u>**

The Employee Handbook states that all new employees have a 90-day introductory period before they can receive benefits.  The Handbook indicates that employees that meet the basic performance standard during that time of employment will be eligible for benefits.[6.05]  However, the offer letter from Mr. Cahill to Mr. Truitt states that he will be eligible for medical benefits following 60 days of employment.[6.06]

> We have a wide array of benefits which are available the first of the month following 60 days of employment including life insurance, short- and long-term disability insurance, dental insurance, medical insurance, paid holidays, ESOP program and 401k plan. Salisbury provides a paid time off (PTO) program that accrues 6.46 hour of PTO per pay period, with an annual accrual of 21 days. [6.07]

> If your performance meets the job standards upon completion of the Introductory Period, you will be become a regular status full time, regular status full time 30, or regular status part time employee and be eligible for benefits as described in the 'Employee Benefits' section of this handbook. [6.08]

**C. <u>Outside Activities/Employment</u>**

According to the excerpt from the Employee Handbook below, Mr. Truitt was required to notify his Human Resources Administrator or the President of Salisbury before pursuing any activities outside of the company.  The Employee Handbook states that:

> Salisbury Bank supports our local community in many ways and encourages employees to participate in community activities.  If you wish to accept a position, with or without compensation, with a governmental agency, a for-profit

---

[6.04] Based on an email written from Amy Raymond to Rick Cantele and Douglas Cahill on January 24, 2018, 10:54AM.
[6.05] Salisbury Bank, *Employee Handbook* (January 2018) at 11.
[6.06] The offer letter in the form of an email written by Doug Cahill to Mr. Truitt, on January 29, 2018.
[6.07] <u>Id.</u>
[6.08] Salisbury Bank, *Employee Handbook* (January 2018) at 11.

or a not-for-profit organization, either as a stockholder, director, officer, sole proprietor, partner, employee, you need to first notify the Human Resources Administrator or the President.  Any potential problems may be discussed with you and the request will be reviewed to see if any conflict of interest would exist. If a conflict exists, this outside appointment or employment will not be allowed. Please remember that your first professional responsibility is to the position you have accepted here at Salisbury Bank.  Salisbury Bank does not object to your accepting outside work as long as it does not (a) interfere with your regular work hours; (b) affect the efficient performance of your regular duties; (c) cause you to be ill or accident-prone through fatigue or other condition; or (d) present a conflict of interest.[6.09]

### D. <u>Mr. Truitt had no Employment Agreement or other arrangement</u>

Mr. Truitt was an "at will" employee, meaning he could have been terminated or he could have resigned his employment at anytime for any reason as explained to him in his offer letter below.  There was no other formal agreement or arrangement. He was training with Salisbury with the expectation to become a full time Mortgage Loan Originator in September of 2018.  His offer letter specifically states:

> Salisbury Bank & Trust Company is an "at will" employer which means that your employment is not a fixed term. You or the Company, at any time and for any reasons, may decide to terminate the employment relationship. You will be employed as a Mortgage Lending Officer Trainee in our Residential Lending Department. Your pay will be $16.83 per hour based upon a 40-hour work week, and you will be classified as a full-time hourly employee during the training period.[6.10]

### E. <u>Mr. Truitt was provided an option to stay or apply to come back</u>

The below is an excerpt from an email written by Mr. Truitt himself to Mr. Cahill, of his own interpretation of a conversation he had with Mr. Richard Cantele. In this email he clearly states that Mr. Richard Cantele did suggest that he hopes that Mr. Truitt applies again to Salisbury if he chooses to do so, after the election if he is unsuccessful. In other words, the door was open for Mr. Truitt to apply again and work at Salisbury.

> After sitting down and speaking with Rick yesterday, I informed him that I will continue with my bid for the New York State Assembly. We had a nice conversation, and I told him the same thoughts that I had expressed to you during our meeting; I know that if given the chance, I would be able to prove myself that I can be a very successful originator in NYS even if elected to the State Assembly. He told me that there is a lot of

---

[6.09] Salisbury Bank, *Employee Handbook* (January 2018) at 37.
[6.10] The offer letter in the form of an email written by Doug Cahill to Mr. Truitt, on January 29, 2018.

uncertainty that comes along with this for the bank, and I both understand and respect that. He suggested we consider these next 6 months as a "time out" period, and that he hopes I will consider applying with Salisbury again in November if I am unsuccessful in my election.[6.11]

Mr. Truitt's e-mail to Mr. Cahill clearly demonstrates his understanding that Salisbury would be interested in re-hiring Mr. Truitt after the November 2018 election giving Mr. Truitt the option to reapply to Salisbury for his same position after his failed bid to win the election to Assembly.  Mr. Truitt could have picked up where he left off and mitigated any potential economic loss by going back to work for the bank itself.

### F.  Mr. Truitt required 15 to 20 hours a week for the legislative role

Mr. Truitt was committed to his county political career which by his own admission, required 15-20 hours each week.  "Currently serving in the Dutchess County Legislature, I dedicate an average between 15-20 hours each week toward attending Legislative Meetings as well as assisting constituents of mine."[6.12]

The role as a State legislator would have been equally or more time-consuming.  The role of State legislator required 60 days in Albany annually.  More importantly though was the amount of time that would have been required to run for office.  In FinPro's experience, non-dedicated MLO's underproduce relative to their full-time dedicated counterparts.  In the table below, provided by Salisbury, non-dedicated MLO's have significantly lower production goals.  Maria Seeley, a non-dedicated MLO working for Salisbury has substantially lower production goals than Ms. Burke and Mr. Cantele who are dedicated MLO's.

| 2019 Production Goals by MLO: | | |
|---|---|---|
| MLO | Primary Market | Volume Goal per budget |
| Burke | Ma. | $20,000,000 |
| Cantele | Ct. | $20,000,000 |
| Seeley | Riverside | $8,000,000 |

---

[6.11] An email written by Mr. Truitt titled "Decision" to Douglass Cahill on May 1, 2018, 1:44 PM.
[6.12] A letter in the form of an email written by Mr. Truitt to Douglass Cahill and Amy Raymond. Date unknown.

### G. **Mr. Truitt was employable**

Most of the Senior staff at Salisbury were impressed with Mr. Truitt's capabilities and potential.  He seemed polished, not afraid to network and had a sales personality.  Overall, from the tone of Mr. Truitt's emails to the team it seemed that he was eager, ambitious and ready to make this job a success, despite the Bank's concerns if he was elected for the State Assembly.  Again, his tone seemed happy and he comes across as someone very driven to succeed.

> Doug sat with Will and immediately picked up on his ability to network and sales personality. He was the youngest person ever elected to the Dutchess county legislature. Hyde Park and Poughkeepsie is his current district and he is a Marist grad. Young, polished, and not afraid to network. ½ the battle for an originator and the hardest part to teach (self – motivation). We also were very comfortable with his ability to learn and understanding of regulations.[6.13]

These are attributes that would make Mr. Truitt an attractive candidate for hire for any bank.

### H. **Nothing Salisbury did made Mr. Truitt unemployable**

In what appears to be a resignation letter, Mr. Truitt wrote:

> I did deeply consider and weigh my options over the past weekend and came to the conclusion that I cannot give up on a once in a lifetime opportunity such as the one that has presented itself before me.  The chance to tie Teddy Roosevelt as the youngest State Assemblyman in NY history is one, I cannot give up, nor can I let down my community who has asked me to run. I have learned a tremendous amount during my short two months at Salisbury Bank, and I truly appreciated how quickly everyone welcomed me into the family.  I want to especially thank you Doug, for our initial interview and for your help along the way, and also Rick for his leadership and his willingness to meet with me yesterday. I have a few items that I need to return, including laptop, a key-fab and a Poughkeepsie parking garage badge.  Let me know how you would like me to return those into you, and I will bring them as soon as possible.[6.14]

In an email to the staff of Salisbury, Mr. Cahill notified employees that Mr. Truitt had resigned from Salisbury, with an effective date of April 30, 2018.  "I'm sorry to announce the following resignations: Will Truitt has decided to pursue his political ambitions and has resigned his Mortgage Originations position in our Riverside Division. His last day was Monday, April 30."[6.15]

---

[6.13] An email written by Amy Raymond to Rick Cantele, Cc: Doug Cahill, on January 24, 2018, 10:54AM.
[6.14] An email written by Mr. Truitt titled "Decision" to Douglass Cahill on May 1, 2018, 1:44 PM.
[6.15] An excerpt from an email written from Doug Cahill, to "EntireBank" on May 18, 2018, 5:22 AM.

## I. __Mr. Truitt obtained new employment, at higher pay, in less than 1 month__

According to the Sobel Tinari appraisal, Mr. Truitt obtained a new job in less than 1 month as a Finance Officer at Bridge View.  His new role also paid him more, specifically $18.00 per hour as opposed to $16.83 at Salisbury.

Subsequent to termination from SB, plaintiff continued his part-time Dutchess County Legislator work. In or about May 2018, he also obtained employment as a Finance Officer at Bridge View. A review of his paystubs from that employment reveals that his working hours varied in 2018. Mr. Truitt estimates his yearly earnings at $38,000 per year, based on an hourly rate of $18.[6.16]

Accepting new employment with Bridgeview constitutes actual mitigation from an economic loss standpoint and must be factored into the computation.  Because his hourly rate at new employment is greater than the hourly rate at Salisbury there can be no economic loss.

---

[6.16] Kucsma, Kristin K., M.A., Sobel Tinari Economics Group, *An Appraisal of Economic Loss to William Truitt*, (August 30, 2019) at 5.

## VII. Errors/Omissions with Sobel Tinari Economics Group Expert Report

Sobel Tinari's analysis contains multiple critical errors in its appraisal calculation. Each of the errors/omissions identified by FinPro are discussed in detail below. From a process standpoint, FinPro began by replicating Sobel Tinari's calculations and correcting each error and omission in a sequential manner to establish a corrected earnings calculation. From its corrected earnings calculation, FinPro then calculated the actual mitigation and comparable mitigation for any purported economic loss. Please see Appendix 1 for the Sobel Tinari calculation.

One of Sobel Tinari's errors was a failure to take into account the fact that Mr. Truitt's compensation would have changed from hourly to a commission basis in September of 2018. As a result, Sobel Tinari's base calculation for projected earnings and all subsequent calculations are incorrect as they neglect to capture multiple key variables associated with a commission-based role.

FinPro also notes that Sobel Tinari's analysis does not adhere to the accepted methodologies for calculating economic loss, as outlined in Section IV of FinPro's opinion of economic loss. Specifically, Sobel Tinari does not clearly delineate between back-pay and front-pay in its appraisal. Even more importantly, Sobel Tinari utilizes an implausible timeframe over which Mr. Truitt's earnings would have been expected to occur, neglecting to incorporate market tenure for similar jobs in a similar industry. Sobel Tinari uses statistical data on retirement to project compensation through January 18, 2061 which is more in keeping with a wrongful death analysis than an alleged wrongful termination suit. FinPro discusses statistics on tenure later in this section and demonstrates that this timeframe is inappropriate for an opinion of economic loss. Regardless of Mr. Truitt's age of retirement, it is unreasonable to assume that Mr. Truitt would remain at Salisbury for his entire career, or even remain in mortgage banking. This assertion is supported by the fact Mr. Truitt applied to multiple positions and accepted employment in an unrelated field following his separation from Salisbury in less than 1 month, discussed in detail later in this section. By disregarding key considerations and overlooking the relevant research and readily available statistics on tenure and attrition, Sobel Tinari's appraisal is compromised and grossly overestimates the time period utilized for compensation projections.

Sobel Tinari calculates "Adjusted Earnings" of $16,892,809 and a "Present Value" of $6,621,117 in arriving at its calculation of "Pre-Termination Earnings". Per Sobel Tinari's appraisal, plaintiff's pre-termination yearly earnings were established at $35,006, in 2018 dollars, based upon Mr. Truitt's annual salary in 2018. Sobel Tinari projected "that plaintiff's earnings, but for the alleged termination, would have increased from the previously established figure of $35,006, in 2018 dollars, to the average earnings for the comparative employees of $167,748, in 2018 dollars, by 2022".[7.01]

To arrive at $167,748, Sobel Tinari utilized a sample size of two MLO's from Salisbury. FinPro notes that two employees provide an insufficient sample size and that, given a lack of meaningful observations, is an unreliable basis for establishing compensation for appraisal calculations.

Sobel Tinari indicates that it had not reviewed "any employment evaluations for plaintiff or the comparative employees".[7.02] The two employees utilized by Sobel Tinari were, in fact, categorized by Salisbury as high-performers and have an established tenure with the company.[7.03] Sobel Tinari specifically acknowledges this tenure in its appraisal stating that "Ms. Burke has been a full-time Mortgage Loan Originator since 2009, and Mr. Cantele became a Mortgage Loan Originator Trainee in or about 2014".[7.04] Ms. Burke and Mr. Cantele are, therefore, not "comparative employees" as classified by Sobel Tinari[7.05] given their respective 5 and 10 years of tenure with the company and well-documented high-level of performance.

Studies indicate that "the margin of error is directly proportional to our critical value (which relies upon our level of confidence)." Additionally, "the smaller the sample size is, the larger the margin of error".[7.06] It would therefore follow that Sobel Tinari's basis for appraisal is subject to an extremely high inherent margin of error, as a consequence of its methodology for data selection. This fundamental margin of error is irrespective of additional flaws as Sobel Tinari did not give any consideration to experience level and relevant regional data, both of which are addressed later in this section as key omissions in the analysis.

---

[7.01] Kucsma, Kristin K., M.A., Sobel Tinari, *An Appraisal of Economic Loss to William Truitt*, (August 30, 2019) at 7.
[7.02] Kucsma, supra at 7.
[7.03] Salisbury Bank and Trust 2017 Performance Appraisal Reports for Kevin Cantele and Spring Burke.
[7.04] Kucsma, supra at 6.
[7.05] Id.
[7.06] Courtney Taylor, *How Large of a Sample Size Do Is Needed for a Certain Margin of Error?* (January 28, 2019), *available at* https://www.thoughtco.com/margin-of-error-sample-sizes-3126406.

Because Sobel Tinari overlooked the commission-based nature of Mr. Truitt's role, its appraisal also failed to take into account required loan production to arrive at "Pre-Termination Earnings."  In order to reach Sobel Tinari's "Pre-Termination Earnings" for 2022, Mr. Truitt would have needed to generate $14.7 million, $22.4 million, and $34.2 million in loans in 2020, 2021, and 2022, respectively which is an unreasonable assumption for dollar value loan generation (production volume) as the two much more experienced MLO's averaged $24.8 million in 2017.  Additionally, as stated earlier, a non-dedicated MLO would have a very difficult time producing loans at the same level as dedicated MLOs.  Utilizing the average loan balance of $324,253 that is derived later in this report, and Sobel Tinari's earnings estimates for Mr. Truitt, FinPro re-engineered the equation to determine required loan count.  Mr. Truitt would have been required to originate 45, 69, and 106 loans in 2020, 2021, and 2022, respectively, to earn the amount projected by Sobel Tinari.  Based upon data and statistics provided in Section V, this required loan generation and production volume is an unreasonable assumption.[7.07]

The examples above are only a sample of some of the fundamental flaws in the Sobel Tinari report.  The following sections will step through a detailed analysis of the adjustments that FinPro made to the analysis to utilize a more realistic set of assumptions.

### A.  Adjustments to Change from Salary to Commission

Sobel Tinari appears to have utilized a salary based computation rather than a commission based computation.  To compute a commission, FinPro must calculate total loan originations.  To calculate total loan originations, FinPro needs loan count multiplied by average loan balance.  The total loan originations are then multiplied by the commission basis points.

### i.  Loan Count

Sobel Tinari's calculations do not incorporate assumptions for loan origination.  In order to properly utilize a commission-based salary structure, it would have been necessary for Sobel Tinari to adjust for appropriate loan count in arriving at its appraisal value.

FinPro assessed Mr. Cantele and Ms. Burke's annual loan count for 2017.  FinPro next analyzed national data which prove that the annual loan count for the selected employees utilized by Sobel Tinari are significantly higher than the median high performer.  As Ms. Burke and Mr.

---

[7.07] Mortgage Educators and Compliance, *4 Reasons Why Becoming a Mortgage Broker on Loan Officer May Be the Career Change You've Been Looking For*" (Accessed August 2019), *available at https://mortgageeducators.com/21-supportdocs/251-obtaining-your-mortgage-license*.

Cantele are high-performing, experienced loan officers, utilizing their production number as the number of loans required to reach Sobel Tinari's pre-termination earnings figure is not realistic. Therefore, FinPro utilized the market comparable data which showed the median performer national annual loan count ranges from 18 to 25 loans, while the high performer national loan count ranges from 35 to 40.[7.08]  FinPro notes that these are much more appropriate comparable figures to utilize.

| Source: | Annual Loan Count | Citations: |
|---|---|---|
| Cantele | 66 | Salisbury Bancorp. 2017 Cantele Performance Appraisal |
| Burke | 90 | Salisbury Bancorp. 2017 Burke Performance Appraisal |
| **Salisbury Average** | **78** | |
| | | |
| 2019 Median Performer Low End | 18 | MEC - Mortgage Educators and Compliance, 2019 Data |
| 2019 Median Performer High End | 25 | MEC - Mortgage Educators and Compliance, 2019 Data |
| 2019 High Performer Low End | 35 | MEC - Mortgage Educators and Compliance, 2019 Data |
| 2019 High Performer High End | 40 | MEC - Mortgage Educators and Compliance, 2019 Data |
| **MEC Median:** | **30** | |
| | | |
| **Loan Count Utilized:** | **30** | Utilized for purposes of report. |

Given the limited sample size and discrepancy from national data, FinPro utilized the median of the national data of 30 loans (annually) for purposes of this report's corrected earnings calculations for the first year.  This is the first of three adjustments shown in Appendix 2.

### ii.    Average Loan Balance

After determining the loan count, FinPro needed to determine the average loan balance. FinPro began by assessing the market for New York State as well as Dutchess County, Putnam County and Kingston County.  Based upon the median of the average loan size from these markets, FinPro utilized $237,157 in its corrected comparable earnings and corrected production adjusted earnings calculations based upon the most currently available HMDA data.[7.09]

---

[7.08] Id.
[7.09] 2018 HMDA Data (May 31, 2018).

| Source: | Average Loan Size Originated: | Citations: |
|---|---|---|
| Cantele | 369,109 | Derived from Salisbury Bancorp. 2017 Cantele Performance Appraisal |
| Burke | 279,396 | Derived from Salisbury Bancorp. 2017 Burke Performance Appraisal |
| **Salisbury Average** | **324,253** | |
| | | |
| New York State | 232,169 | 2018 HMDA Data (Bureau of Financial Protection) |
| Dutchess County - Putnam County | 249,453 | 2018 HMDA Data (Bureau of Financial Protection) |
| Kingston County | 208,542 | 2018 HMDA Data (Bureau of Financial Protection) |
| Target Market Area* | 237,157 | 2018 HMDA Data (Bureau of Financial Protection) |
| **Median:** | **234,663** | |
| | | |
| **Average Loan Size Utilized:** | **237,157** | Utilized for purposes of report. |

*Target market area defined as: Dutchess County, Putnam County, and Kingston County

This is the second of three adjustments shown in Appendix 2.

### iii.     **Commission Rate**

With the loan count and the average loan balance, FinPro next needed to find the appropriate commission level.  The average commission between Ms. Burke and Mr. Cantele in 2017 was 55 basis points as shown in the table below.[7.10]

**2017 Actual Production**

| | Volume (A) | Total Units | | 2017 Salary (B) | Imputed 2017 bps on Total Units (A/B) |
|---|---|---|---|---|---|
| Cantele | 27,624,720 | 107 | 258,175 | 154,408 | 0.56% |
| Burke | 29,215,280 | 131 | 223,017 | 157,736 | 0.54% |
| Average | 28,420,000 | 119 | 240,596 | 156,072 | 0.55% |

This calculation utilized all units, not just mortgage units and resulted in a 55-basis point average.  FinPro utilized this basis point commission for purposes of its corrected earnings calculations.  Commissioned officers, such as MLO's, are paid based upon a basis point commission, multiplied by loan balances originated and actually closed.  FinPro derived Mr. Cantele and Ms. Burke's commission fees in basis points based upon each individual's total loan volume and total number of units.  Salisbury's commission structure is also outlined below:[7.11]

---

[7.10] Salisbury Bank and Trust 2017 Performance Appraisal Reports for Kevin Cantele and Spring Burke.
[7.11] Salisbury Bank and Trust Compensation of Mortgage Originators Exhibit B (December 31, 2017).

| Commission Structure: |
| --- |

**New Business: 60 BPS**

You will be paid 60 basis points on total monthly closed volume for New Business.  A concentrated effort should be made to establish other SBT account relationships.

**Current SBT Customers: 30 BPS**

For any loan originated that pays off a current SBT or Heloc compensation will be 30 basis points.

**Jumbo Loans:**

For all jumbo loans in excess of $1.5 million the compensation payout will be capped at $10,000.00 per loan

**\*A referral fee of 25 bps will be paid upon closing for properly qualified commercial loan referrals. These must be enetered and complete thru Synapsis.**

**\*A referral fee of $50.00 per account relationship will be paid on all deposit referrals.  These must be entered and completed thru Synapsis.**

**All SBT HELOC's will be paid a flat origination fee of $500**

This is the third of three adjustments shown in Appendix 2.

## B.  Adjustment to Loan Volume

To accurately reflect the likelihood that Mr. Truitt would progress as a MLO over time, FinPro then increased the loan count by 5 annually, up to 40 loans per year, equal to the 2019 high performer high end loan count shown below.  Mr. Truitt lacked experience in banking and lending which would have limited his ability to generate requisite loan volume to arrive at Sobel Tinari's pre-termination earnings appraisal.[7.12]  Using the high performer low end production of 35 in Year 2 and high performer high end production of 40 thereafter is an ambitious assumption.

---

[7.12] Examination Before Trial of William Gunnar Truitt on June 27, 2019 (hereafter, "Truitt Dep.")

28

| Source: | Annual Loan Count | Citations: |
|---|---|---|
| Cantele | 66 | Salisbury Bancorp. 2017 Cantele Performance Appraisal |
| Burke | 90 | Salisbury Bancorp. 2017 Burke Performance Appraisal |
| **Salisbury Average** | **78** | |
| | | |
| 2019 Median Performer Low End | 18 | MEC - Mortgage Educators and Compliance, 2019 Data |
| 2019 Median Performer High End | 25 | MEC - Mortgage Educators and Compliance, 2019 Data |
| 2019 High Performer Low End | 35 | MEC - Mortgage Educators and Compliance, 2019 Data |
| 2019 High Performer High End | 40 | MEC - Mortgage Educators and Compliance, 2019 Data |
| **MEC Median:** | **30** | |
| | | |
| **Loan Count Utilized:** | **30** | Utilized for purposes of report. |

This is the only adjustment made to derive Appendix 3.  The loan count of 40 was utilized to arrive at its production adjusted earnings calculation and was also used as the loan production assumption for FinPro's calculations of actual mitigation and comparable mitigation.

## C.  <u>Adjustment to Average Loan Balance</u>

The $237,157 average loan size calculated above does not take into consideration the specific product menu that Salisbury originates that other banks may not.  Dividing mortgage loan volume by the count of originations yields the average loan balance, which was $324.3 thousand.

**2017 Actual Production**

| Employee | Volume (A) | Mortgage Units (B) | Imputed Average Loan Balance (A / B) |
|---|---|---|---|
| **Cantele** | **24,361,220** | **66** | **369,109** |
| **Burke** | **25,145,680** | **90** | **279,396** |
| **Average** | **24,753,450** | **78** | **324,253** |

FinPro imputed Mr. Cantele and Ms. Burke's 2017 average loan balance to arrive at $324,253 in its average loan balance adjusted earnings which was also utilized in its actual mitigation and comparable mitigation.  FinPro utilized this figure in its economic loss analysis as Salisbury's bank-specific imputed average loan size is most appropriate in deriving a corrected earnings calculation, as well as actual and comparable mitigation calculations.  This is the only adjustment that was made in Appendix 4.

As such, Mr. Truitt's first full year of commission compensation would equal 30 loans

originated times an average loan balance of $324,253 times a 55-basis point commission equaling $53,502. To test the reasonableness of this assumption, FinPro assessed Mr. Cantele and Ms. Burke's 2018 average salary of $167,748, as utilized by Sobel Tinari[7.10] and compared it to market comparable data from multiple sources.[7.13] [7.14] [7.15] [7.16] In analyzing market comparable data, FinPro applied weightings to each source, placing primary weighting on regional data and data for mortgage loan originators with less than 5 years of experience. Less emphasis was placed on national data. No emphasis was placed on data for mortgage loan originators with more than 5 years' experience as it does not pertain to Mr. Truitt and falls outside the appropriate time frame for this economic loss analysis.

---

[7.13] W-2 Statements and Tax Statements for Cantele and Burke, 2014-2018.
[7.14] U.S. Bureau of Labor Statistics (2019).
[7.15] Salisbury Bank and Trust 2017 Performance Appraisal Reports for Kevin Cantele and Spring Burke.
[7.16] ABA Benchmarking and Survey Research, *2018 Compensation and Benefits Survey* (2018).

| Source: | Annual Compensation ($s Actual): | Citations: |
|---|---|---|
| Cantele | 176,510 | W-2s and Tax Statements |
| Burke | 158,986 | W-2s and Tax Statements |
| Salisbury 2018 Average | 167,748 | |
| | | |
| Cantele Year 1 (2015 First "Full Year") | 53,610 | W-2s and Tax Statements |

| A Weighting: | B Annual Compensation ($s Actual): | Source: | C = A x B Annual Compensation ($s Weighted): | Annual Compensation ($s Actual): | Citations: |
|---|---|---|---|---|---|
| 5% | 63,040 | Nation-Wide Loan Officers (Median) | 3,152 | | May 2018, U.S. Bureau of Labor Statistics |
| 5% | 92,240 | Nation-Wide 75th Percentile | 4,612 | | May 2018, U.S. Bureau of Labor Statistics |
| 5% | 44,500 | Nation-Wide 25th Percentile | 2,225 | | May 2018, U.S. Bureau of Labor Statistics |
| 25% | 103,450 | New York State | 25,863 | | May 2018, U.S. Bureau of Labor Statistics |
| 25% | 40,000 | 0-5 Years Experience | 10,000 | | June 2018 Article, Chron.com ("How Much Can an Entry Level Loan Originator Make?") |
| 0% | 81,000 | 10-20 Years Experience | - | | June 2018 Article, Chron.com ("How Much Can an Entry Level Loan Originator Make?") |
| 25% | 95,198 | New York State | 23,800 | | 2019 Indeed (Base and Compensation) |
| 5% | 69,560 | ABA National (Total) | 3,478 | | 2018 ABA Comp Survey ("Total" Defined as Salary, Compensation, Bonus) |
| 5% | 72,380 | ABA Mid-Atlantic (Total) | 3,619 | | 2018 ABA Comp Survey ("Total" Defined as Salary, Compensation, Bonus) |
| Average: | 73,485 | Weighted Sum: | | 76,748 | |
| | | Imputed Compensation Utilizing Bank Data | 53,502 | | FinPro, Inc. imputed income (30 x 324,253 x 55 bps) based upon bank data |
| | | Imputed Compensation Utilizing Market Comp. Data | 39,131 | | FinPro, Inc. imputed income (30 x 232,894 x 55 bps) based upon market comp. data |
| | | Compensation Utilized: | 53,502 | | |

FinPro notes that this figure is consistent with Mr. Cantele's compensation for his first full year of employment with Salisbury, making it a reasonable starting point.

**D. Average Tenure**

The forward timeline for Sobel Tinari's pre-termination calculations is based upon "plaintiff's statistical date of retirement" which is defined as January 18, 2061.[7.17]  This utilizes an assumption that Mr. Truitt would have remained with Salisbury until 2061 and omits consideration or data on industry turnover which would materially reduce the forward timeline.

FinPro researched average years of tenure for Mr. Cantele (5 years) and Ms. Burke (10 years) relative to numerous national data sources for attrition rate and average years of tenure for MLO's.[7.18] [7.19] [7.20] [7.21] [7.22] [7.23]  FinPro utilized the annual attrition rate for New York MLO's of 4.3 years as calculated by NMLS ("the authoritative source") in its corrected earnings calculation as well as its actual mitigation and comparable mitigation calculations.

| Source: | Attrition Rate (%) | Average Tenure (Years) | Citations: |
|---|---|---|---|
| Cantele | N/A | 5.0 | Salisbury Bancorp. 2017 Cantele Performance Appraisal |
| Burke | N/A | 10.0 | Salisbury Bancorp. 2017 Burke Performance Appraisal |
| **Salisbury Average** | N/A | 7.5 | |
| | | | |
| National Attrition Rate | 21% | 4.8 | 2018 NMLS |
| New York | 23% | 4.3 | 2018 NMLS |
| New York State Low | N/A | 1.0 | 2019 Indeed |
| New York State High | N/A | 3.0 | 2019 Indeed |
| 2019 Stratmor Insights | N/A | 2.0 | 2019 Stratmor Insights |
| Ibaware | N/A | 2.3 | 2019 Ibaware.com |
| **Median:** | 22% | 2.6 | |
| | | | |
| **Tenure Assumed:** | **N/A** | **4.3** | For report purposes. |

Additional data studies further indicate that entry level mortgage loan originators, such as Mr. Truitt, remain at their place of business between 1 to 5 years.[7.24] [7.25] [7.26] [7.27]  This is the only adjustment made to the calculation shown in Appendix 5.

---

[7.17] Kucsma, supra at 18.

[7.18] W-2 Statements and Tax Statements for Cantele and Burke, 2014-2018.

[7.19] Mortgage Educators and Compliance, *4 Reasons Why Becoming a Mortgage Broker on Loan Officer May Be the Career Change You've Been Looking For*" (Accessed August 2019), *available at https://mortgageeducators.com/21-supportdocs/251-obtaining-your-mortgage-license*.

[7.20] Nationwide Mortgage Licensing System, *2018 NMLS Mortgage Industry Report, Convention of State Bank Supervisors, available at https://mortgage.nationwidelicensingsystem.org/about/Reports/ 2018%20Mortgage%20Annual%20Report.pdf*.

[7.21] Indeed.com (Accessed August 2019).

[7.22] Stratmor Group, *Stratmor Insights from the Originator Census Survey, Average Tenure of an Originator* (January 2017) at 8.

[7.23] Kelley Mangel, *How high is loan originator turnover — and what's behind it?* (April 10, 2019), *available at https://lbaware.com/2019/04/how-high-is-loan-originator-turnover/*.

[7.24] Indeed.com, *Loan Officer Salaries in New York State* (August 27, 2019).

### E.  **Actual Mitigation**

To properly calculate economic loss, if any, mitigation is required.  Mr. Truitt's 2019 mitigating compensation is calculated as $18.00 per hour times 40 hours times 52 weeks equaling $37,440, which is extrapolated from Mr. Truitt's actual hourly compensation at Bridgeview Excavation.  This $37,440 was adjusted over a 5-year period utilizing Sobel Tinari's 3.9% annual wage growth assumption.

| Year | Number of Year | Actual Mitigation 3.90% |
|------|------|------|
| 2019 | *0* | $  37,440 |
| 2020 | 1 | $  38,900 |
| 2021 | 2 | $  40,417 |
| 2022 | 3 | $  41,994 |
| 2023 | 4 | $  43,631 |

This is the only adjustment made to the calculation shown in Appendix 6.

### F.  **Comparable Mitigation**

To compute economic loss mitigation appropriately, Mr. Truitt had an obligation to find a similar job in a similar market.  As shown in Section V, there were plenty of MLO positions available in the market.  As such, FinPro analyzed market comparable data, which indicates that 55 basis points of commission is towards the lower end.[7.28]  For this economic loss report's actual mitigation and comparable mitigation, FinPro utilized a commission of 1.00%, which is in the range shown of 0.76% to 1.50%.[7.29]  As all market comparable commission basis points are higher than the 55 basis points of commission paid by Salisbury, any mitigating compensation exceeds projected Salisbury compensation, and therefore there can be no economic loss to Mr. Truitt.

---

[7.25] Stratmor, supra at 8.
[7.26] Kelley Mangel, *How high is loan originator turnover — and what's behind it?* (April 10, 2019), *available at* https://lbaware.com/2019/04/how-high-is-loan-originator-turnover/.
[7.27] *Agreement By and Between Dutchess County and the Civil Service Employees Association, Inc.* (Jan 1, 2017 – Dec 31, 2020).
[7.28] Runzel, Tamara, *How Much is a Loan Officer's Commission?* (June 27, 2018), *available at* https://work.chron.com/much-loan-officers-commission-29176.html.
[7.29] Id.

| Source: | Commission (bps): | Citations: |
|---|---|---|
| Cantele | 0.56% | Derived from Salisbury Bancorp. 2017 Cantele Performance Appraisal |
| Burke | 0.54% | Derived from Salisbury Bancorp. 2017 Burke Performance Appraisal |
| **Salisbury Average** | **0.55%** | |

| Source: | Commission (bps): | Citations: |
|---|---|---|
| Chron (Low End) | 0.76% | 2019 Chron.com |
| Chron (High End) | 1.50% | 2019 Chron.com |
| **Median:** | **1.13%** | |

| | | |
|---|---|---|
| **Commission Utilized:** | **0.55%** | **Utilized for production adjusted earnings.** |
| **Commission Utilized:** | **1.00%** | **Utilized for comparable adjusted earnings.** |

This is the only adjustment made to the calculation shown in Appendix 7.

Taken collectively, correcting the errors and omissions in the Sobel Tinari appraisal takes the present value of the economic loss to zero as shown in the chart below. The detailed computations adding up to this chart are contained in the Appendices.

| | Adjustments | Projected Gross Earnings | Adjusted Earnings | Mitigation | Mitigated Earnings | Present Value |
|---|---|---|---|---|---|---|
| 1 | Sobel Tinari Expert Report | $ 17,950,103 | $ 16,892,809 | $ - | $ - | $ 6,621,117 |
| | **Appropriate Adjustments** | | | | | |
| 2 | Comparable Earnings | $ 1,682,629 | $ 829,013 | $ - | $ - | $ 829,013 |
| 3 | Loan Count Production | $ 2,223,940 | $ 1,086,036 | $ - | $ - | $ 1,086,036 |
| 4 | Average Loan Balance | $ 3,040,683 | $ 1,484,883 | $ - | $ - | $ 1,484,883 |
| 5 | Tenure | $ 312,094 | $ 287,050 | $ - | $ - | $ 287,050 |
| 6 | Actual Mitigation | $ 312,094 | $ 300,090 | $ 202,382 | $ 97,708 | $ 89,170 |
| 7 | Comparable Mitigation | $ 329,927 | $ 303,869 | $ 599,868 | $ (248,620) | $ 552,489 |
| | **FinPro Adjusted Economic Loss** | | | | | **$ -** |

There is no inclusion in Sobel Tinari's calculation of damages of actual offsetting compensation. Mr. Truitt obtained employment in less than one month at a higher level of compensation to that which he was receiving as a mortgage loan originator at Salisbury while in training. While at Salisbury in training Mr. Truitt was earning $16.83 per hour, while in his new job, he was earning by his own admission $18.00 per hour. Clearly there is no economic loss here for back-pay purposes.

Market data demonstrates that other organizations are paying higher commission (as expressed in basis points) than Salisbury. The average paid to Ms. Burke and Mr. Cantele was 55 basis points while the overall market was paying anywhere from 76 basis points to 150 basis points. Had Mr. Truitt, as required by economic loss computation, undertaken comparable

34

mitigation this data strongly suggests there could be no economic loss for front-pay purposes. Following his departure from Salisbury, Mr. Truitt attained employment at a similar compensation but did not accept employment as a mortgage broker or mortgage loan originator with another bank, despite the fact that "substantially equivalent employment"[7.30] was available to Mr. Truitt in his immediate market[7.31].  During Mr. Truitt's deposition on June 27, 2019 he made the following statement when asked by defendant's counsel what had made the last year "tough" for him:

> "Well, believing I found a job that would be perfect for me.  It had been in the field that I had studied in school for and studied so hard to be in that filed [sic] and to succeed in it and then to be fired from that position, and then sort of have to start back at square one."[7.32]

FinPro notes that during the same deposition Mr. Truitt listed his undergraduate concentration in business administration, finance.  FinPro notes that concentrations in these fields does not imply that Mr. Truitt "studied in school"[7.33] to be a mortgage loan originator. Further, Mr. Truitt had originally completed a general job application to Salisbury and the mortgage loan originator position was suggested to Mr. Truitt by the bank.  During the deposition, Mr. Truitt stated that: "I love talking to people, and I would've been very outgoing out in Dutchess County, Columbia County, Putnam County, Ulster County.  All these counties, where we hoped we would've been doing more business."[7.34]

After this statement, Mr. Truitt was asked if he knew the competitors in the mortgage business in each of these counties, to which he responded: "So I'll give a few examples.  Like Ulster Savings Bank, Rhinebeck Bank, Hudson Valley Federal Credit Union and institutions like those"[7.35] clearly demonstrating a knowledge of the immediate market for mortgage lending and more specifically banks at which he could have sought employment as a mortgage loan originator following his resignation from Salisbury.

The deposition contains references to applications submitted by Mr. Truitt to USI Insurance Services, New York Life for a financial advisory position, Palisade Hudson Financial

---

[7.30] Stephanie R. Thomas, PhD, *Evaluation of Economic Damages in Wrongful Termination Litigation* (PLI Course Handbook 37th Annual Institute on Employment Law, 2018) at 7.
[7.31] Indeed.com (Job search for Mortgage Lending within 15 miles of Dutchess County, August 2019).
[7.32] Truitt Dep. 132:3-132:10.
[7.33] Truitt Dep. 132:5.
[7.34] Truitt Dep. 73:19-73:23.
[7.35] Truitt Dep. 74:5-74:8.

Group for a financial planning associate position, and Central Hudson Gas & Electricity for a position as payroll analyst.  Mr. Truitt also indicated that he had applied to Central Hudson Gas & Electricity directly out of college as well.  Mr. Truitt commented that "I want to stick in finance."[7.36] FinPro notes the distinction between finance and mortgage banking and emphasizes that the jobs for which Mr. Truitt applied, listed in the preceding sentence, are materially dissimilar occupations from that of a mortgage loan originator.  MLO's are more sales-oriented than finance-oriented and a position as an MLO cannot be studied as it is bank and product specific.

The fact that Mr. Truitt "found a job that would be perfect for me" and yet did not apply for a single MLO position, even though there were job openings in this area is perplexing.

### G.  Elimination of Benefits

Although Sobel Tinari neglected to incorporate offsetting compensation in its analysis, Sobel Tinari did erroneously include in its calculations an adjustment for health insurance benefits and disability and life insurance benefits.  This adjustment is inappropriate for four reasons: (1) Mr. Truitt was not provided or entitled to any benefits from Salisbury at the time of his departure and, therefore, did not suffer a loss of benefits from Salisbury during the less than one month it took him to accept a new job; (2) Mr. Truitt received health insurance, dental, optical, retirement and disability insurance through Dutchess County and the Civil Service Employees Association, Inc. and therefore did not suffer a loss of benefits; (3) because Mr. Truitt obtained a new job[7.37] with Bridgeview Excavation where he could have and should have had an additional option for benefits; and (4) Mr. Truitt had an obligation to find comparable employment where he would have had benefits.

---

[7.36] Truitt Dep. 149:5-149:6.
[7.37] *Agreement By and Between Dutchess County and the Civil Service Employees Association, Inc Jan 1, 2017 – Dec 31, 2020.*

| VIII. FinPro's Calculation of Economic Loss |
|---|

### A. Back-Pay Computation

Section IV.A of this report delineates the two components driving total economic loss calculations in an employment termination case. FinPro first addressed the back-pay component which would encompass any earnings Mr. Truitt may be have lost and be entitled to from the time of separation, through to the trial proceedings (estimated to be December 31, 2019).

| Year | Employment Period | Loan Production | Average Loan Balance | $ Production | Commission Rate | Salisbury Projected Earnings | BridgeView Excavation Mitigated Earnings | Economic Loss | Weeks in Period |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 0.55% | $ 16.83 | $ 18.00 | | |
| 2018 | May 1-Aug 31 | 0 | - | - | $ - | $ 11,444.40 | $ 12,240 | | 17 |
| 2018 | Sep 1 - Dec 31 | 6 | $ 324,253 | $ 1,945,518 | 10,700 | $ 10,700.35 | $ 12,240 | | 17 |
| 2019 | Jan. 1 - Dec. 31 | 18 | $ 324,253 | $ 5,836,554 | 32,101 | $ 32,101.05 | $ 37,440 | | 52 |
| | | | | | $ 54,245 | $ 61,920 | | $0 | |

\* Note:  If mitigated earnings are greater than or equal to Salisbury projected earnings, there is no economic loss.

When examining the back-pay period, Mr. Truitt worked at an hourly rate of $16.83 per hour, 40 hours per week, from May 1, 2018 to August 31, 2018. This period was considered a training period and Mr. Truitt was not closing loans at this time, nor was he earning any commission. His compensation structure was hourly only. Once the training period had been completed, projected to be September 2018, Mr. Truitt's compensation structure was to change from an hourly wage, to 100% commission based.[8.01]

To determine potential commission compensation from September 1, 2018 to December 31, 2018, FinPro assumed Mr. Truitt could originate and close 1.5 loans per month equivalent to 6 loans total during this period. 2018 calculations are as follows:

- For the period May 1 to Aug 31, Mr. Truitt's compensation was $11,444. This was calculated at $16.83/hour at 40 hours per week, times 17 weeks.

- From September 1, 2018 – December 31, 2018, FinPro assumed Mr. Truitt to originate 6 loans. Salisbury bank data indicated that the average commission rate paid to employees

---

[8.01] Truitt Correspondence with Salisbury Bank, D-000111

is 55 basis points.  FinPro used this rate to determine Mr. Truitt's commission-based income for 2018 to be $10,700 (6 loans*$324,253 average balance) *55 basis points. [8.02]

- Adding his total hourly wages of $11,444 to his 4-month commission of $10,700 equals $22,144.

- In 2019, FinPro calculated Mr. Truitt's earnings based on commission only.  As it is his first year of being an MLO, FinPro assumed Mr. Truitt could originate 18 loans total, for an average of 1.5 per month.[8.03]  Using the same average loan balance of $324,253 multiplied by 18 loans equals $5,836,554 in dollars of loan production.  Applying the 55-basis point commission rate, Mr. Truitt would have earned $32,101 in 2019 (0.55%*$5,836,554 in dollars of loan production).

- As such, Mr. Truitt's total back pay earnings from Salisbury for the combined period of 2018 and 2019 is $54,245, which equals $11,444 plus $10,700 plus $32,101. **$**

Proper economic loss analytics must include any mitigation.  Shortly after separation from Salisbury, Mr. Truitt gained employment at Bridgeview Excavation as a finance officer earning $18 per hour.[8.04]

- In 2018, Bridgeview Excavation paid Mr. Truitt $18 per hour, based on 40 hours per week.  To calculate Mr. Truitt's mitigating compensation from May 1, 2018 to August 31, 2018 we multiplied $18.00 per hour times 40 hours per week times 17 weeks equaling $12,240.  As such, the mitigating compensation exceeds Mr. Truitt's projected Salisbury income of $11,444, meaning no economic loss incurred.

- To calculate Mr. Truitt's mitigating compensation from September 1, 2018 to December 31, 2018 FinPro multiplied $18.00 per hour times 40 hours per week times 17 weeks equaling $12,240.  As such, the mitigating compensation exceeds Mr. Truitt's projected Salisbury income of $10,700, meaning no economic loss incurred.

- Mr. Truitt's 2019 mitigating compensation is calculated as $18.00 per hour times 40 hours times 52 weeks equaling $37,440.  As such, the mitigating compensation exceeds Mr. Truitt's projected Salisbury income of $32,101, meaning no economic loss incurred.

[8.02] Salisbury Bank and Trust 2017 Performance Appraisal Reports for Kevin Cantele and Spring Burke.
[8.03] Mortgage Educators and Compliance, *4 Reasons Why Becoming a Mortgage Broker on Loan Officer May be the Career Change You've Been Looking For*" (Accessed August 2019), *available at https://mortgageeducators.com/21-supportdocs/251-obtaining-your-mortgage-license*.
[8.04] Kristin K. Kucsma, M.A., Sobel Tinari Economics Group, An Appraisal of Economic Loss to William Truitt, (August 30, 2019) at 6.

Mr. Truitt's mitigating compensation from Bridgeview over the course of 2018 and 2019 exceeds the income he may have made had he remained employed with Salisbury. Therefore, since mitigating compensation exceeds projected Salisbury compensation for the entire back-pay period, there is no economic loss to Mr. Truitt.

### B. Front-Pay Computation

Front pay is the second component addressed in FinPro's economic loss computation. The front-pay section highlights what Mr. Truitt could have earned had he sought a comparable MLO position in the market. Per NMLS, market research for New York indicates that the average employee in the mortgage loan officer role works for 4.3 years.[8.05]

Further market comparable data surveyed revealed tenure to be 1 year on the low end, 4.8 years on the high end. To simplify the math, FinPro has opted to use 5 years for tenure, of which 2 years are already accounted for in back-pay, leaving 3 years for front-pay analysis. It is important to note that the 5 years FinPro used for tenure is higher than the 4.3 years as calculated by NMLS. Therefore, FinPro has modeled Mr. Truitt's tenure through the year 2022.[8.06]

| Year | Employment Period | Loan Production | Average Loan | $ Production | Earnings Based on Commission 0.55% | Actual Mitigated 4.00% | Earnings Based on Commission 1.00% | Mitigated Earnings 4.00% | Economic Loss |
|------|------|------|------|------|------|------|------|------|------|
| 2020 | 3 | 30 | $ 324,253 | $ 9,727,590 | $ 53,502 | $ 47,563 | $ 97,276 | $ 93,535 | |
| 2021 | 4 | 35 | $ 324,253 | $ 11,348,855 | $ 62,419 | $ 53,356 | $ 113,489 | $ 109,124 | |
| 2022 | 5 | 40 | $ 324,253 | $ 12,970,120 | $ 71,336 | $ 58,633 | $ 129,701 | $ 124,713 | |
| | | | | | | $ 159,551 | | $ 327,371 | $0 |

\* Note: If mitigated earnings are greater than or equal to Salisbury projected earnings, there is no economic loss.

- Beginning in 2020, FinPro assumed loan production to be 30 loans per year, which is between the median and high-performing benchmarks.[8.08] FinPro assumed an average loan balance of $324,253 and 55 basis points of commission resulting in compensation of $47,563.

- Beginning in 2021, FinPro assumed loan production to be 35 loans per year, which is between the median and high-performing benchmarks.[8.07] FinPro assumed an average loan balance of $324,253 and 55 basis points of commission resulting in compensation of $53,356.

---

[8.05] Stratmor Group, *Stratmor Insights from the Originator Census Survey, Average Tenure of an Originator* (January 2017) at 8.
[8.06] Indeed.com (Job search for Mortgage Lending within 15 miles of Dutchess County, August 2019).

[8.07] Mortgage Educators and Compliance, *4 Reasons Why Becoming a Mortgage Broker on Loan Officer May Be the Career Change You've Been Looking For*", *available at https://mortgageeducators.com/21-supportdocs/251-obtaining-your-mortgage-license.*

- Beginning in 2022, FinPro assumed loan production to be 40 loans per year, which is between the median and high-performing benchmarks.[8.08]   FinPro assumed an average loan balance of $324,253 and 55 basis points of commission resulting in compensation of $58,633.

The mitigated earnings column is computed by utilizing a 100-basis point commission rate (based on market comparable data) multiplied by an assumed loan count and average loan balance. For the purpose of calculating front pay, all previously used assumptions remain constant, commission being the exception.

- To calculate Mr. Truitt's mitigating compensation for the year 2020 FinPro multiplied 30 loans times $324,253 average loan balance times 100 basis point commission equaling $97,276 or $93,535 on a present value basis.  As the mitigating compensation exceeds Mr. Truitt's projected Salisbury present value income of $47,563, there is no economic loss incurred.

- To calculate Mr. Truitt's mitigating compensation for the year 2021 FinPro multiplied 35 loans times $324,253 average loan balance times 100 basis point commission equaling $113,489 or $109,124 on a present value basis.  As the mitigating compensation exceeds Mr. Truitt's projected Salisbury present value income of $53,356, there is no economic loss incurred.

- To calculate Mr. Truitt's mitigating compensation for the year 2022 FinPro multiplied 40 loans times $324,253 average loan balance times 100 basis point commission equaling $129,701 or $124,713 on a present value basis.  As the mitigating compensation exceeds Mr. Truitt's projected Salisbury present value income of $58,633, there is no economic loss incurred.

Mr. Truitt's mitigating compensation from a comparable MLO job for the period 2020 through 2022 exceeds the income he may have earned had he remained employed with Salisbury.  Therefore, since mitigating compensation exceeds projected Salisbury compensation for the entire front-pay period, there is no economic loss to Mr. Truitt.

---

[8.08] Id.

### C.  **Benefit Loss Calculation**

Total economic loss damages in an alleged wrongful termination case should also be inclusive of any benefits the employee was eligible to receive at the time of termination. Benefits include but are not limited to, health coverage such as medical, dental, and vision, retirement, employee stock option, pension plans, and other fringe benefits provided at the discretion of an employer.[8.09]

The approach to calculating a potential loss of benefits depends on the nature of the particular benefit.  For example, the loss of health care coverage is most often valued using actual out of pocket expense.  If an employee paid into COBRA benefits post termination, paying $300 per month for a period of 3 months until gaining new employment providing him with health care coverage, the loss associated with health care would be $900 ($300 per month X 3 months = $900).[8.10]

It is significant to note that mitigation, or offset losses, are essential when determining the value associated with benefit losses.  "Benefits associated with alternative employment are assumed to be equivalent to the benefits received prior to the alleged wrongful termination."[8.11] If benefits are found to be comparable, the calculations would essentially offset, and no loss can be recognized.

FinPro did not adjust for benefits for the following four reasons: (1) Mr. Truitt was not provided or entitled to any benefits from Salisbury at the time of his departure and, therefore, did not suffer a loss of benefits from Salisbury during the less than one month it took him to accept a new job; (2) Mr. Truitt received health insurance, dental, optical, retirement and disability insurance through Dutchess County and the Civil Service Employees Association, Inc. and therefore did not suffer a loss of benefits; (3) because Mr. Truitt obtained a new job he would have had an additional option for benefits from Bridgeview Excavation; and (4) typical MLO positions at other organizations pay equitable benefits.[8.12]

**5**

---

[8.09] Stephanie R. Thomas, PhD, Evaluation of Economic Damages in Wrongful Termination Litigation (PLI Course Handbook 37th Annual Institute on Employment Law, 2018).

[8.10] Id.

[8.11] Id.

[8.12] *Agreement By and Between Dutchess County and the Civil Service Employees Association, Inc. Jan 1, 2017 – Dec 31, 2020.*

## IX. Appendices

**Appendix 1.** <u>**Sobel Tinari Economic Model**</u>

**Appendix 2.** <u>**Comparable Earnings Correction Adjustment**</u>

**Appendix 3.** <u>**Production Earnings Adjustment**</u>

**Appendix 4.** <u>**Average Loan Balance Adjustment**</u>

**Appendix 5.** <u>**Tenure Adjustment**</u>

**Appendix 6.** <u>**Actual Mitigation**</u>

**Appendix 7.** <u>**Comparable Mitigation**</u>

**Summary**

# Appendix 1. <u>Sobel Tinari Economic Model</u>

For reference purposes only, FinPro has recreated the economic loss model that Sobel Tinari prepared. The data highlighted is FinPro derived loan count requirements based on Sobel Tinari projected income.

| Year | Number of Year | Wage Growth | Projected Gross Earnings | Sobel Tinari Adjustment | Adjusted Earnings | Present Value | Cumulative Earnings | Required Production Balance | # of Loans Required |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | *0.55%* | *$ 324,253* |
| | | | | | *4.00%* | | | | |
| 2018 | | | | | | | | | |
| 2019 | 0.25 | 0.25 | 1.30% | $ 53,473 | 98.76% | $ 13,203 | $ 13,203 | $ 13,203 | |
| 2020 | 1 | 1 | 3.90% | $ 81,682 | 98.76% | $ 80,669 | $ 77,566 | $ 90,769 | *$ 14,667,117* | *45* |
| 2021 | 2 | 1 | 3.90% | $ 124,773 | 98.76% | $ 123,226 | $ 113,929 | $ 204,699 | *$ 22,404,694* | *69* |
| 2022 | 3 | 1 | 3.90% | $ 190,596 | 98.76% | $ 188,233 | $ 167,338 | $ 372,037 | *$ 34,224,111* | *106* |
| 2023 | 4 | 1 | 3.90% | $ 198,029 | 98.76% | $ 195,574 | $ 167,177 | $ 539,214 | *$ 35,558,851* | *110* |
| 2024 | 5 | 1 | 3.90% | $ 205,752 | 98.76% | $ 203,201 | $ 167,016 | $ 706,230 | *$ 36,945,646* | *114* |
| 2025 | 6 | 1 | 3.90% | $ 213,777 | 98.76% | $ 211,126 | $ 166,856 | $ 873,086 | *$ 38,386,527* | *118* |
| 2026 | 7 | 1 | 3.90% | $ 222,114 | 98.76% | $ 219,360 | $ 166,695 | $1,039,782 | *$ 39,883,601* | *123* |
| 2027 | 8 | 1 | 3.90% | $ 230,776 | 98.76% | $ 227,915 | $ 166,535 | $1,206,317 | *$ 41,439,062* | *128* |
| 2028 | 9 | 1 | 3.90% | $ 239,777 | 98.76% | $ 236,804 | $ 166,375 | $1,372,692 | *$ 43,055,185* | *133* |
| 2029 | 10 | 1 | 3.90% | $ 249,128 | 98.76% | $ 246,039 | $ 166,215 | $1,538,907 | *$ 44,734,337* | *138* |
| 2030 | 11 | 1 | 3.90% | $ 258,844 | 98.76% | $ 255,634 | $ 166,055 | $1,704,962 | *$ 46,478,976* | *143* |
| 2031 | 12 | 1 | 3.90% | $ 268,939 | 98.76% | $ 265,604 | $ 165,896 | $1,870,858 | *$ 48,291,656* | *149* |
| 2032 | 13 | 1 | 3.90% | $ 279,428 | 98.76% | $ 275,963 | $ 165,736 | $2,036,594 | *$ 50,175,031* | *155* |
| 2033 | 14 | 1 | 3.90% | $ 290,325 | 98.76% | $ 286,725 | $ 165,577 | $2,202,170 | *$ 52,131,857* | *161* |
| 2034 | 15 | 1 | 3.90% | $ 301,648 | 98.76% | $ 297,907 | $ 165,417 | $2,367,588 | *$ 54,165,000* | *167* |
| 2035 | 16 | 1 | 3.90% | $ 313,412 | 98.76% | $ 309,526 | $ 165,258 | $2,532,846 | *$ 56,277,435* | *174* |
| 2036 | 17 | 1 | 3.90% | $ 325,635 | 98.76% | $ 321,597 | $ 165,100 | $2,697,946 | *$ 58,472,255* | *180* |
| 2037 | 18 | 1 | 3.90% | $ 338,335 | 98.76% | $ 334,140 | $ 164,941 | $2,862,886 | *$ 60,752,672* | *187* |
| 2038 | 19 | 1 | 3.90% | $ 351,530 | 98.76% | $ 347,171 | $ 164,782 | $3,027,669 | *$ 63,122,027* | *195* |
| 2039 | 20 | 1 | 3.90% | $ 365,240 | 98.76% | $ 360,711 | $ 164,624 | $3,192,292 | *$ 65,583,786* | *202* |
| 2040 | 21 | 1 | 3.90% | $ 379,484 | 98.76% | $ 374,779 | $ 164,465 | $3,356,758 | *$ 68,141,553* | *210* |
| 2041 | 22 | 1 | 3.90% | $ 394,284 | 98.76% | $ 389,395 | $ 164,307 | $3,521,065 | *$ 70,799,074* | *218* |
| 2042 | 23 | 1 | 3.90% | $ 409,661 | 98.76% | $ 404,581 | $ 164,149 | $3,685,214 | *$ 73,560,238* | *227* |
| 2043 | 24 | 1 | 3.90% | $ 425,638 | 98.76% | $ 420,360 | $ 163,991 | $3,849,206 | *$ 76,429,087* | *236* |
| 2044 | 25 | 1 | 3.90% | $ 442,238 | 98.76% | $ 436,754 | $ 163,834 | $4,013,040 | *$ 79,409,822* | *245* |
| 2045 | 26 | 1 | 3.90% | $ 459,485 | 98.76% | $ 453,787 | $ 163,676 | $4,176,716 | *$ 82,506,805* | *254* |
| 2046 | 27 | 1 | 3.90% | $ 477,405 | 98.76% | $ 471,485 | $ 163,519 | $4,340,235 | *$ 85,724,570* | *264* |
| 2047 | 28 | 1 | 3.90% | $ 496,024 | 98.76% | $ 489,873 | $ 163,362 | $4,503,596 | *$ 89,067,828* | *275* |
| 2048 | 29 | 1 | 3.90% | $ 515,369 | 98.76% | $ 508,978 | $ 163,205 | $4,666,801 | *$ 92,541,473* | *285* |
| 2049 | 30 | 1 | 3.90% | $ 535,468 | 98.76% | $ 528,828 | $ 163,048 | $4,829,848 | *$ 96,150,591* | *297* |
| 2050 | 31 | 1 | 3.90% | $ 556,351 | 98.76% | $ 549,453 | $ 162,891 | $4,992,739 | *$ 99,900,464* | *308* |
| 2051 | 32 | 1 | 3.90% | $ 578,049 | 98.76% | $ 570,881 | $ 162,734 | $5,155,474 | *$ 103,796,582* | *320* |
| 2052 | 33 | 1 | 3.90% | $ 600,593 | 98.76% | $ 593,146 | $ 162,578 | $5,318,051 | *$ 107,844,649* | *333* |
| 2053 | 34 | 1 | 3.90% | $ 624,016 | 98.76% | $ 616,278 | $ 162,421 | $5,480,473 | *$ 112,050,590* | *346* |
| 2054 | 35 | 1 | 3.90% | $ 648,353 | 98.76% | $ 640,313 | $ 162,265 | $5,642,738 | *$ 116,420,563* | *359* |
| 2055 | 36 | 1 | 3.90% | $ 673,638 | 98.76% | $ 665,285 | $ 162,109 | $5,804,847 | *$ 120,960,965* | *373* |
| 2056 | 37 | 1 | 3.90% | $ 699,910 | 98.76% | $ 691,231 | $ 161,953 | $5,966,800 | *$ 125,678,443* | *388* |
| 2057 | 38 | 1 | 3.90% | $ 727,207 | 98.76% | $ 718,189 | $ 161,798 | $6,128,598 | *$ 130,579,902* | *403* |
| 2058 | 39 | 1 | 3.90% | $ 755,568 | 98.76% | $ 746,199 | $ 161,642 | $6,290,240 | *$ 135,672,518* | *418* |
| 2059 | 40 | 1 | 3.90% | $ 785,035 | 98.76% | $ 775,301 | $ 161,487 | $6,451,727 | *$ 140,963,746* | *435* |
| 2060 | 41 | 1 | 3.90% | $ 815,651 | 98.76% | $ 805,537 | $ 161,331 | $6,613,058 | *$ 146,461,332* | *452* |
| 2061 | 42 | 0.05 | 3.90% | $ 847,462 | 98.76% | $ 41,848 | $ 8,059 | $6,621,117 | *$ 7,608,666* | *23* |
| | | | | $ 17,950,103 | | $16,892,809 | $6,621,117 | $6,621,117 | | |

**Appendix 2. <u>Comparable Earnings Correction Adjustment</u>**

The first adjustment to Sobel Tinari's appraisal was to change from a salary to commission basis.  Data changes include loan production (count), average loan balance and basis points of commission, and are depicted in the highlighted columns below:

| Year | Number of Year | | Projected Gross Earnings | Present Value | Cumulative Earnings | Loan Production | Average Loan Balance | Production Balance | Commission Rate |
|------|------|------|------|------|------|------|------|------|------|
| | | | | **4.00%** | | | | | **0.55%** |
| 2019 | 0 | 1 | $ 39,131 | $ 39,131 | $ 39,131 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2020 | 1 | 1 | $ 39,131 | $ 37,626 | $ 76,757 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2021 | 2 | 1 | $ 39,131 | $ 36,179 | $ 112,935 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2022 | 3 | 1 | $ 39,131 | $ 34,787 | $ 147,723 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2023 | 4 | 1 | $ 39,131 | $ 33,449 | $ 181,172 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2024 | 5 | 1 | $ 39,131 | $ 32,163 | $ 213,335 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2025 | 6 | 1 | $ 39,131 | $ 30,926 | $ 244,260 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2026 | 7 | 1 | $ 39,131 | $ 29,736 | $ 273,997 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2027 | 8 | 1 | $ 39,131 | $ 28,593 | $ 302,589 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2028 | 9 | 1 | $ 39,131 | $ 27,493 | $ 330,082 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2029 | 10 | 1 | $ 39,131 | $ 26,435 | $ 356,518 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2030 | 11 | 1 | $ 39,131 | $ 25,419 | $ 381,936 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2031 | 12 | 1 | $ 39,131 | $ 24,441 | $ 406,377 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2032 | 13 | 1 | $ 39,131 | $ 23,501 | $ 429,878 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2033 | 14 | 1 | $ 39,131 | $ 22,597 | $ 452,475 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2034 | 15 | 1 | $ 39,131 | $ 21,728 | $ 474,203 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2035 | 16 | 1 | $ 39,131 | $ 20,892 | $ 495,096 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2036 | 17 | 1 | $ 39,131 | $ 20,089 | $ 515,185 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2037 | 18 | 1 | $ 39,131 | $ 19,316 | $ 534,501 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2038 | 19 | 1 | $ 39,131 | $ 18,573 | $ 553,074 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2039 | 20 | 1 | $ 39,131 | $ 17,859 | $ 570,933 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2040 | 21 | 1 | $ 39,131 | $ 17,172 | $ 588,105 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2041 | 22 | 1 | $ 39,131 | $ 16,511 | $ 604,616 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2042 | 23 | 1 | $ 39,131 | $ 15,876 | $ 620,493 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2043 | 24 | 1 | $ 39,131 | $ 15,266 | $ 635,758 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2044 | 25 | 1 | $ 39,131 | $ 14,679 | $ 650,437 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2045 | 26 | 1 | $ 39,131 | $ 14,114 | $ 664,551 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2046 | 27 | 1 | $ 39,131 | $ 13,571 | $ 678,122 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2047 | 28 | 1 | $ 39,131 | $ 13,049 | $ 691,172 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2048 | 29 | 1 | $ 39,131 | $ 12,547 | $ 703,719 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2049 | 30 | 1 | $ 39,131 | $ 12,065 | $ 715,784 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2050 | 31 | 1 | $ 39,131 | $ 11,601 | $ 727,385 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2051 | 32 | 1 | $ 39,131 | $ 11,155 | $ 738,539 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2052 | 33 | 1 | $ 39,131 | $ 10,726 | $ 749,265 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2053 | 34 | 1 | $ 39,131 | $ 10,313 | $ 759,578 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2054 | 35 | 1 | $ 39,131 | $ 9,916 | $ 769,494 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2055 | 36 | 1 | $ 39,131 | $ 9,535 | $ 779,029 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2056 | 37 | 1 | $ 39,131 | $ 9,168 | $ 788,197 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2057 | 38 | 1 | $ 39,131 | $ 8,816 | $ 797,013 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2058 | 39 | 1 | $ 39,131 | $ 8,477 | $ 805,490 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2059 | 40 | 1 | $ 39,131 | $ 8,151 | $ 813,640 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2060 | 41 | 1 | $ 39,131 | $ 7,837 | $ 821,477 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2061 | 42 | 0.05 | $ 39,131 | $ 7,536 | $ 829,013 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| | | | $ 1,682,629 | $ 829,013 | | | | | $ 1,682,629 |

44

## Appendix 3. Production Earnings Adjustment

The next adjustment made to Sobel Tinari's appraisal ramps up loan production. Data changes are depicted in the highlighted columns below:

| Year | Number of Year | | Projected Gross Earnings | Present Value 4.00% | Cumulative Earnings | Loan Production | Average Loan Balance | $ Production | Commission Rate 0.55% |
|------|------|------|------|------|------|------|------|------|------|
| 2019 | 0 | 1 | $ 39,131 | $ 39,131 | $ 39,131 | 30 | $ 237,157 | $ 7,114,710 | 39,131 |
| 2020 | 1 | 1 | $ 45,653 | $ 43,897 | $ 83,028 | 35 | $ 237,157 | $ 8,300,495 | 45,653 |
| 2021 | 2 | 1 | $ 52,175 | $ 48,238 | $ 131,266 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2022 | 3 | 1 | $ 52,175 | $ 46,383 | $ 177,649 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2023 | 4 | 1 | $ 52,175 | $ 44,599 | $ 222,248 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2024 | 5 | 1 | $ 52,175 | $ 42,884 | $ 265,132 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2025 | 6 | 1 | $ 52,175 | $ 41,234 | $ 306,366 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2026 | 7 | 1 | $ 52,175 | $ 39,648 | $ 346,014 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2027 | 8 | 1 | $ 52,175 | $ 38,123 | $ 384,138 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2028 | 9 | 1 | $ 52,175 | $ 36,657 | $ 420,795 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2029 | 10 | 1 | $ 52,175 | $ 35,247 | $ 456,042 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2030 | 11 | 1 | $ 52,175 | $ 33,892 | $ 489,934 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2031 | 12 | 1 | $ 52,175 | $ 32,588 | $ 522,522 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2032 | 13 | 1 | $ 52,175 | $ 31,335 | $ 553,857 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2033 | 14 | 1 | $ 52,175 | $ 30,129 | $ 583,986 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2034 | 15 | 1 | $ 52,175 | $ 28,971 | $ 612,957 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2035 | 16 | 1 | $ 52,175 | $ 27,856 | $ 640,813 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2036 | 17 | 1 | $ 52,175 | $ 26,785 | $ 667,598 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2037 | 18 | 1 | $ 52,175 | $ 25,755 | $ 693,353 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2038 | 19 | 1 | $ 52,175 | $ 24,764 | $ 718,117 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2039 | 20 | 1 | $ 52,175 | $ 23,812 | $ 741,929 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2040 | 21 | 1 | $ 52,175 | $ 22,896 | $ 764,825 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2041 | 22 | 1 | $ 52,175 | $ 22,015 | $ 786,840 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2042 | 23 | 1 | $ 52,175 | $ 21,169 | $ 808,009 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2043 | 24 | 1 | $ 52,175 | $ 20,354 | $ 828,363 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2044 | 25 | 1 | $ 52,175 | $ 19,572 | $ 847,935 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2045 | 26 | 1 | $ 52,175 | $ 18,819 | $ 866,754 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2046 | 27 | 1 | $ 52,175 | $ 18,095 | $ 884,849 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2047 | 28 | 1 | $ 52,175 | $ 17,399 | $ 902,248 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2048 | 29 | 1 | $ 52,175 | $ 16,730 | $ 918,977 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2049 | 30 | 1 | $ 52,175 | $ 16,086 | $ 935,064 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2050 | 31 | 1 | $ 52,175 | $ 15,468 | $ 950,531 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2051 | 32 | 1 | $ 52,175 | $ 14,873 | $ 965,404 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2052 | 33 | 1 | $ 52,175 | $ 14,301 | $ 979,705 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2053 | 34 | 1 | $ 52,175 | $ 13,751 | $ 993,456 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2054 | 35 | 1 | $ 52,175 | $ 13,222 | $ 1,006,678 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2055 | 36 | 1 | $ 52,175 | $ 12,713 | $ 1,019,391 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2056 | 37 | 1 | $ 52,175 | $ 12,224 | $ 1,031,615 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2057 | 38 | 1 | $ 52,175 | $ 11,754 | $ 1,043,369 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2058 | 39 | 1 | $ 52,175 | $ 11,302 | $ 1,054,671 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2059 | 40 | 1 | $ 52,175 | $ 10,867 | $ 1,065,539 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2060 | 41 | 1 | $ 52,175 | $ 10,449 | $ 1,075,988 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| 2061 | 42 | 0.05 | $ 52,175 | $ 10,048 | $ 1,086,036 | 40 | $ 237,157 | $ 9,486,280 | 52,175 |
| | | | $ 2,223,940 | $ 1,086,036 | | | | | 2,223,940 |

.

## Appendix 4. Average Loan Balance Adjustment

The next adjustment made to Sobel Tinari's appraisal adjusts average loan balance.  Data changes are depicted in the highlighted columns below:

| Year | Number of Year | | Projected Gross Earnings | Present Value | Cumulative Earnings | Loan Production | Average Loan Balance | $ Production | Commission Rate 0.55% |
|------|------|------|------|------|------|------|------|------|------|
| | | | | 4.00% | | | | | |
| 2019 | 0 | 1 | $ 53,502 | $ 53,502 | $ 53,502 | 30 | $ 324,253 | $ 9,727,590 | 53,502 |
| 2020 | 1 | 1 | $ 62,419 | $ 60,018 | $ 113,520 | 35 | $ 324,253 | $ 11,348,855 | 62,419 |
| 2021 | 2 | 1 | $ 71,336 | $ 65,954 | $ 179,474 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2022 | 3 | 1 | $ 71,336 | $ 63,417 | $ 242,891 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2023 | 4 | 1 | $ 71,336 | $ 60,978 | $ 303,869 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2024 | 5 | 1 | $ 71,336 | $ 58,633 | $ 362,501 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2025 | 6 | 1 | $ 71,336 | $ 56,378 | $ 418,879 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2026 | 7 | 1 | $ 71,336 | $ 54,209 | $ 473,088 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2027 | 8 | 1 | $ 71,336 | $ 52,124 | $ 525,213 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2028 | 9 | 1 | $ 71,336 | $ 50,119 | $ 575,332 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2029 | 10 | 1 | $ 71,336 | $ 48,192 | $ 623,524 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2030 | 11 | 1 | $ 71,336 | $ 46,338 | $ 669,862 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2031 | 12 | 1 | $ 71,336 | $ 44,556 | $ 714,418 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2032 | 13 | 1 | $ 71,336 | $ 42,842 | $ 757,261 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2033 | 14 | 1 | $ 71,336 | $ 41,195 | $ 798,455 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2034 | 15 | 1 | $ 71,336 | $ 39,610 | $ 838,065 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2035 | 16 | 1 | $ 71,336 | $ 38,087 | $ 876,152 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2036 | 17 | 1 | $ 71,336 | $ 36,622 | $ 912,774 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2037 | 18 | 1 | $ 71,336 | $ 35,213 | $ 947,987 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2038 | 19 | 1 | $ 71,336 | $ 33,859 | $ 981,846 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2039 | 20 | 1 | $ 71,336 | $ 32,557 | $ 1,014,403 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2040 | 21 | 1 | $ 71,336 | $ 31,304 | $ 1,045,707 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2041 | 22 | 1 | $ 71,336 | $ 30,100 | $ 1,075,808 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2042 | 23 | 1 | $ 71,336 | $ 28,943 | $ 1,104,750 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2043 | 24 | 1 | $ 71,336 | $ 27,830 | $ 1,132,580 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2044 | 25 | 1 | $ 71,336 | $ 26,759 | $ 1,159,339 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2045 | 26 | 1 | $ 71,336 | $ 25,730 | $ 1,185,069 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2046 | 27 | 1 | $ 71,336 | $ 24,740 | $ 1,209,810 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2047 | 28 | 1 | $ 71,336 | $ 23,789 | $ 1,233,598 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2048 | 29 | 1 | $ 71,336 | $ 22,874 | $ 1,256,472 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2049 | 30 | 1 | $ 71,336 | $ 21,994 | $ 1,278,466 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2050 | 31 | 1 | $ 71,336 | $ 21,148 | $ 1,299,615 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2051 | 32 | 1 | $ 71,336 | $ 20,335 | $ 1,319,949 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2052 | 33 | 1 | $ 71,336 | $ 19,553 | $ 1,339,502 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2053 | 34 | 1 | $ 71,336 | $ 18,801 | $ 1,358,303 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2054 | 35 | 1 | $ 71,336 | $ 18,078 | $ 1,376,380 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2055 | 36 | 1 | $ 71,336 | $ 17,382 | $ 1,393,763 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2056 | 37 | 1 | $ 71,336 | $ 16,714 | $ 1,410,476 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2057 | 38 | 1 | $ 71,336 | $ 16,071 | $ 1,426,547 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2058 | 39 | 1 | $ 71,336 | $ 15,453 | $ 1,442,000 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2059 | 40 | 1 | $ 71,336 | $ 14,858 | $ 1,456,858 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2060 | 41 | 1 | $ 71,336 | $ 14,287 | $ 1,471,145 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| 2061 | 42 | 0.1 | $ 71,336 | $ 13,737 | $ 1,484,883 | 40 | $ 324,253 | $ 12,970,120 | 71,336 |
| | | | $ 3,040,683 | $1,484,883 | | | | | 3,040,683 |

46

**Appendix 5. <u>Tenure Adjustment</u>**

The next adjustment made to Sobel Tinari's appraisal adjusts for tenure.  Data changes are depicted in the highlighted columns below:

| Year | Number of Year | | Projected Gross Earnings | Present Value | Cumulative Earnings | Loan Production | Average Loan Balance | $ Production | Commission Rate |
|------|------|------|------|------|------|------|------|------|------|
| | | | | **4.00%** | | | | | **0.55%** |
| 2019 | 0 | 1 | $ 53,502 | $ 53,502 | $ 53,502 | 30 | $ 324,253 | $ 9,727,590 | $ 53,502 |
| 2020 | 1 | 1 | $ 53,502 | $ 51,444 | $ 104,946 | 30 | $ 324,253 | $ 9,727,590 | $ 53,502 |
| 2021 | 2 | 1 | $ 62,419 | $ 57,710 | $ 162,655 | 35 | $ 324,253 | $ 11,348,855 | $ 62,419 |
| 2022 | 3 | 1 | $ 71,336 | $ 63,417 | $ 226,072 | 40 | $ 324,253 | $ 12,970,120 | $ 71,336 |
| 2023 | 4 | 1 | $ 71,336 | $ 60,978 | $ 287,050 | 40 | $ 324,253 | $ 12,970,120 | $ 71,336 |
| | | | $ 312,094 | $ 287,050 | | | | $ 56,744,275 | $ 312,094 |

47

**Appendix 6. <u>Actual Mitigation</u>**

The next adjustment to Sobel Tinari's appraisal was to compute actual mitigation.  Data changes include 2019 earnings of $37,440 from Bridgeview Excavation and a 3.9% wage growth rate.  Data changes are depicted in the highlighted columns below:

| Year | Number of Year | | Projected Gross Earnings | Adjusted Earnings | Actual Mitigation 3.90% | Mitigated Earnings | Present Value 4.00% | Cumulative Earnings | Loan Production | Average Loan Balance | $ Production | Commission Rate 0.55% |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | 0 | 1 | $ 53,502 | $ 51,444 | $ 37,440 | $ 14,004 | $ 14,004 | 14,004 | 30 | $ 324,253 | $ 9,727,590 | $ 53,502 |
| 2020 | 1 | 1 | $ 53,502 | $ 51,444 | $ 38,900 | $ 12,544 | $ 12,061 | 26,065 | 30 | $ 324,253 | $ 9,727,590 | $ 53,502 |
| 2021 | 2 | 1 | $ 62,419 | $ 60,018 | $ 40,417 | $ 19,601 | $ 18,122 | 44,187 | 35 | $ 324,253 | $11,348,855 | $ 62,419 |
| 2022 | 3 | 1 | $ 71,336 | $ 68,592 | $ 41,994 | $ 26,599 | $ 23,646 | 67,833 | 40 | $ 324,254 | $12,970,160 | $ 71,336 |
| 2023 | 4 | 1 | $ 71,336 | $ 68,592 | $ 43,631 | $ 24,961 | $ 21,337 | 89,170 | 40 | $ 324,254 | $12,970,160 | $ 71,336 |
| | | | $ 312,094 | $ 300,090 | $ 202,382 | $ 97,708 | $ 89,170 | | | | | |

**Appendix 7. <u>Comparable Mitigation</u>**

      The next adjustment to Sobel Tinari's appraisal was to compute comparable mitigation by adjusting the market average commission rate upward to 1.00% compared to .55%.  Data changes are depicted in the highlighted columns below:

| Year | Number of Year Employed | | Projected Gross Earnings | Discounted Adjusted Earnings | Comparable Mitigation | Present Value | Mitigated Earnings | Loan Production | Average Loan Balance | $ Production |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | <u>1.00%</u> | <u>4.00%</u> | | | | |
| 2019 | *0* | *1* | $  53,502 | $  53,502 | *$  97,276* | $  97,276 | *$  (43,774)* | 30 | $  324,253 | $  9,727,590 |
| 2020 | 1 | 1 | $  62,419 | $  60,018 | *$  113,489* | $  109,124 | *$  (49,106)* | 35 | $  324,253 | $11,348,855 |
| 2021 | 2 | 1 | $  71,336 | $  65,954 | *$  129,701* | $  119,916 | *$  (53,962)* | 40 | $  324,253 | $12,970,120 |
| 2022 | 3 | 1 | $  71,336 | $  63,417 | *$  129,701* | $  115,304 | *$  (51,887)* | 40 | $  324,253 | $12,970,120 |
| 2023 | 4 | 1 | $  71,336 | $  60,978 | *$  129,701* | $  110,869 | *$  (49,891)* | 40 | $  324,253 | $12,970,120 |
| | | | $  **329,927** | 303,869 | $  **599,868** | $  **552,489** | $  (248,620) | | | |

**Summary**

| | Adjustments | Projected Gross Earnings | Adjusted Earnings | Mitigation | Mitigated Earnings | Present Value |
|---|---|---|---|---|---|---|
| 1 | Sobel Tinari Expert Report | $ 17,950,103 | $ 16,892,809 | $ - | $ - | $ 6,621,117 |
| | **Appropriate Adjustments** | | | | | |
| 2 | Comparable Earnings | $ 1,682,629 | $ 829,013 | $ - | $ - | $ 829,013 |
| 3 | Loan Count Production | $ 2,223,940 | $ 1,086,036 | $ - | $ - | $ 1,086,036 |
| 4 | Average Loan Balance | $ 3,040,683 | $ 1,484,883 | $ - | $ - | $ 1,484,883 |
| 5 | Tenure | $ 312,094 | $ 287,050 | $ - | $ - | $ 287,050 |
| 6 | Actual Mitigation | $ 312,094 | $ 300,090 | $ 202,382 | $ 97,708 | $ 89,170 |
| 7 | Comparable Mitigation | $ 329,927 | $ 303,869 | $ 599,868 | $ (248,620) | $ 552,489 |

| | | |
|---|---|---|
| **FinPro Adjusted Economic Loss** | | **$     -** |

---

**X. Table of Authorities**

---

1. Stephanie R. Thomas, PhD, *Evaluation of Economic Damages in Wrongful Termination Litigation* (From PLI Course Handbook 37th Annual Institute on Employment Law, 2018).

2. Amy Aukstikalnis, Ph.D., Stephen Bronars, Ph.D., and Dawn Kovnaer, Ph.D. (Welch Consulting), Calculation of Economic Damages in Wrongful Termination Cases (Prepared for the OCBA Labor & Employment Law Section Seminar, June 2013).

3. 42 U.S.C. 2000(e)(5)(g)(1).

4. U.S. Bureau of Labor Statistics, *Loan Officers Summary* (September 2019).

5. U.S. Bureau of Labor Statistics, *Occupational Employment and Wages* (May 2018).

6. Lainie Peterson, *How Much Can an Entry Level Mortgage Loan Originator Make?* (June 27, 2018) *available at https://work.chron.com/much-can-entry-level-mortgage-loan-originator-make-25292.html.*

7. Salisbury Bank and Trust Compensation of Mortgage Originators Exhibit B (December 31, 2017).

8. ABA Benchmarking and Survey Research, *2018 Compensation and Benefits Survey* (2018).

9. W-2 Statements and Tax Statements for Kevin Cantele and Spring Burke, 2014-2018.

10. Mortgage Educators and Compliance, *4 Reasons Why Becoming a Mortgage Broker on Loan Officer May Be the Career Change You've Been Looking For*" (Accessed August 2019), *available at https://mortgageeducators.com/21-supportdocs/251-obtaining-your-mortgage-license.*

11. Salisbury Bank and Trust 2017 Performance Appraisal Reports for Kevin Cantele and Spring Burke.

12. Nationwide Mortgage Licensing System, *2018 NMLS Mortgage Industry Report, Convention of State Bank Supervisors, available at https://mortgage.nationwidelicensingsystem.org/about/Reports/2018%20Mortgage%20Annual%20Report.pdf.*

13. Indeed.com, *Loan Officer Salaries in New York State* (August 27, 2019).

14. Stratmor Group, *Stratmor Insights* 2 (2017) *available at http://www.stratmorgroup.com/wp-content/uploads/STRATMOR-Insights-December-2017.pdf.*

15. Stratmor Group, *Stratmor Insights* 2 (2017) *available at stratmorgroup.com/sp-content/uploads/STRATMOR-Insights-January-2017-pdf.*

16. Kelley Mangel, *How high is loan originator turnover — and what's behind it?* (April 10, 2019), *available at https://lbaware.com/2019/04/how-high-is-loan-originator-turnover/.*

17. Tamara Runzel, *How Much is a Loan Officer's Commission?* (June 27, 2018), *available at https://work.chron.com/much-loan-officers-commission-29176.html.*

18. Jennifer Fortier, *"What Kind of Commission Does a Mortgage Banker Make?"* (2019), *available at https://www.sapling.com/8594521/kind-commission-mortgage-banker-make.*

19. Gina Pogel, How Much Do Mortgage Lenders Make On Your Mortgage Loan? (December 2, 2016), *available at https://themortgagereports.com/23751/how-much-do-mortgage-lenders-make.*

20. The offer letter in the form of an email written by Doug Cahill to Mr. Truitt, on January 29, 2018.

21. E-mail written from Amy Raymond to Rick Cantele and Douglas Cahill on January 24, 2018, 10:54AM.

22. Salisbury Bank, Employee Handbook, January 2018.

23. Email written by Mr. Truitt titled "Decision" to Douglass Cahill on May 1, 2018, 1:44 PM.

24. Letter in the form of an email written by Mr. Truitt to Douglass Cahill and Amy Raymond. Date unknown.

25. E-mail written by Amy Raymond to Rick Cantele, Cc: Doug Cahill, on January 24, 2018, 10:54AM.

26. E-mail written by Mr. Truitt titled "Decision" to Douglass Cahill on May 1, 2018, 1:44 PM.

27. Excerpt from an email written from Doug Cahill, to "EntireBank" on May 18, 2018, 5:22 AM.

28. Kristin K. Kucsma, M.A., Sobel Tinari Economics Group, *An Appraisal of Economic Loss to William Truitt*, (August 30, 2019).

29. Courtney Taylor, *How Large of a Sample Size Do Is Needed for a Certain Margin of Error?* (January 28, 2019), *available at https://www.thoughtco.com/margin-of-error-sample-sizes-3126406.*

30. Examination Before Trial of William Gunnar Truitt on June 27, 2019 ("Truitt Dep.")

31. HMDA Data (May 31, 2018).

32. Indeed.com (Accessed August 2019)

33. Agreement By and Between Dutchess County and the Civil Service Employees Association, Inc Jan 1, 2017 – Dec 31, 2020.

34. Indeed.com (Job search for Mortgage Lending within 15 miles of Dutchess County, August 2019).

35. Truitt Correspondence with Salisbury Bank, D-000111.

## XI. Materials Reviewed

| Document Type | Document Name | Exhibit #/Document # | Reference # |
|---|---|---|---|
| Complaint | Supreme Court of the State of New York of Dutchess County, William Gunner Truitt, Plaintiff, vs. Salisbury Bank and Trust; and Salisbury Bancorp. Inc., Defendants. | Index No. 2018-52675 | |
| Deposition | Deposition and Exhibits of William Gunner Truitt | Index Number: 7:18-CV-08386 | |
| Plaintiff's Amended Responses and Objections to Defendants' First Set of Interrogatories and First Request for the Production of Documents | United States District Court of Southern District of New York, William Gunner Truitt, Plaintiff, against Salisbury Bank and Trust; and Salisbury Bancorp. Inc., Defendants. | Civil Action No.: 7:18-cv-0836-NSR | |
| Deposition | Kevin Cantele in the United States District Court for the Southern District of New York, William Gunner Truitt, Plaintiff, against Salisbury Bank and Trust; and Salisbury Bancorp. Inc., Defendants. | Index Number: 7:18-CV-08386 | |
| Deposition | Maria Seeley in the United States District Court for the Southern District of New York, William Gunner Truitt, Plaintiff, against Salisbury Bank and Trust; and Salisbury Bancorp. Inc., Defendants. | Index Number: 7:18-CV-08386 | |
| Deposition | Deposition of Spring Burke in the United States District Court for the Southern District of New York, William Gunner Truitt, Plaintiff, against Salisbury Bank and Trust; and Salisbury Bancorp. Inc., Defendants. | Case No.: 7:18-cv-08386-NSR | |
| Expert Appraisal for the Plaintiff | An Appraisal of Economic Loss to William Truitt, Kristin K. Kucsma, M.A., Sobel Tinari Economics Group | | |
| Compensation Document by Expert for the Defendant | Directors Training – Compensation Committee Charter & Critical Issues, FinPro, Inc. | | |
| Performance Appraisals from the Defendant | Salisbury Bank and Trust Compensation of Mortgage Originators Effective Jan 1, 2017 Thru December 31, 2017 | Exhibit B | |
| Deposition Exhibit | Employee Handbook, January 2018, Salisbury Bank | Ex P-4 4845-7539-5745 1 | |
| Deposition Exhibit | Linda King e-mail dated April 29, 2014 | Ex P-5 4827-4674-4737 1 | |
| Deposition Exhibit | Kevin Cantele W-2 and Earnings Summaries | Ex P-6 4819-4156-9441 1 | |
| Deposition Exhibit | Mortgage Originator Performance Appraisal for Kevin Cantele, 2015 | Ex P-7 4843-0715-6897 1 | |

| Deposition Exhibit | Mortgage Originator Performance Appraisal for Kevin Cantele, 2016 | Ex P-8 4818-4097-1681 1 | |
|---|---|---|---|
| Deposition Exhibit | Mortgage Originator Performance Appraisal for Kevin Cantele, 2017 | Ex P-9 4847-6020-7265 1 | |
| Deposition Exhibit | Douglas Cahill e-mail dated September 14, 2018 | Ex P-10 4822-4310-0577 1 | |
| Deposition Exhibit | Offer of additional duties to Maria Seeley from Salisbury Bank dated September 12, 2018 | Ex P-11 4824-4449-2705 1 | |
| Deposition Exhibit | Douglas Cahill e-mail dated January 24, 2018 | Ex P-12 4844-4098-1409 1 | |
| Deposition Exhibit | Andrea MacArthur e-mail dated April 23, 2018 | Ex P-13 4813-8759-3633 1 | |
| Deposition Exhibit | Maria Seeley e-mail date April 6, 2018 | Ex P-14 4828-3049-9745 1 | |
| Deposition Exhibit | Employee Performance Review for Maria Seeley, 2018 | Ex P-15 4852-4641-8849 1 | |
| Deposition Exhibit | Andrea MacArthur e-mail dated March 16, 2018 | Ex P-16 4825-1179-8177 1 | |

## XII.  Disclaimer on Fees

FinPro, Inc. ("FinPro") has provided and been compensated for consulting services to Salisbury Bancorp. and Salisbury Bank (collectively, "Salisbury Bancorp.") in the past three years:

A.  In 2016, FinPro facilitated two Board Retreats for Salisbury Bancorp.  In aggregate, including reimbursement for travel expense and other pass-thru costs, the compensation received by FinPro for these engagements comprised 0.10% of FinPro's annual gross revenue.

B.  FinPro did not provide any services to Salisbury Bancorp in 2017.

C.  In 2018, FinPro provided quarterly Dynamic ALM consulting services to Salisbury Bancorp.  Including reimbursement for travel expense and other pass-thru costs, the compensation received by FinPro for this engagement comprised 0.17% of FinPro's annual gross revenue.

D.  As of September 13, 2019, FinPro has continued to provide quarterly Dynamic ALM consulting services to Salisbury Bancorp.  FinPro has also provided Financial Projection Budgeting services to Salisbury Bancorp.  Including reimbursement for travel expense and other pass-thru costs, the compensation received by FinPro for these engagements comprised 0.76% of FinPro's annual gross revenue (year to date as of September 13, 2019).

The amount of compensation received from Salisbury is not, and has not been, material to FinPro's annual gross revenue.

FinPro was retained in this matter to provide the following expert witness services:

1.  Review the existing documentation related to this litigation.

2.  Produce an expert witness report focused on:

   i)  Economic damages to William Truitt, if any, based on alleged termination from Salisbury Bank

   ii)  Compensation levels for mortgage originators and factors that would influence compensation amounts

   iii) Comparison to other Salisbury Bank mortgage originators

   iv)  Other related areas as requested.

3.  Participate in depositions.

4.  Testify at the trial, if necessary.

FinPro's fees for this expert witness engagement are billed on an hourly basis at a rate of $350 per hour.  There is a nonrefundable $5,000 initial retainer that was payable at signing of the agreement.  The hourly rate of FinPro personnel will be applied toward the initial retainer fee until the retainer fee is utilized, at which time a new retainer of $5,000 will be billed.  This process will continue until the engagement is finalized.  FinPro collects the initial retainer and subsequent retainers prior to starting or continuation of work.  At the end of the engagement FinPro will reimburse for any unused retainer amounts after all bills have been paid including out of pocket expenses, if any.  **No fees are contingent upon the outcome of litigation.**

Page 1

1

2  UNITED STATES DISTRICT COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  --------------------------------X

5  WILLIAM GUNNAR TRUITT,

6                      Plaintiff,

7                                      Case No.

8     -against-                7:18-cv-08386

9                                       (NSR)

10 SALISBURY BANK and TRUST COMPANY;

11 and SALISBURY BANCORP, INC.,

12                    Defendants.

13 --------------------------------x

14

15            DEPOSITION OF DONALD J. MUSSO

16                  Newark, New Jersey

17                 November 7, 2019

18

19

20 Reported by:

21 MARY F. BOWMAN, RPR, CRR

22 JOB NO. 170979

23

24

25

Page 26

1           D. Musso
2    would have been determined not in the offer
3    letter, but in the employee handbook, and
4    in the employee handbook, I believe it says
5    that you would go to the 1st of the
6    following month to qualify.
7         Q.   Just to be clear, I think you
8    said the date of his termination was March.
9    Did you mean May 2018?
10         MS. SORIN:  Objection.
11         A.   I've got to go look that -- I
12   don't have that --
13         Q.   On page 5, you have this.
14         A.   Thank you.
15         Q.   I just wanted to --
16         A.   May 1, thank you.
17         Q.   May 1, 2018.
18         And you would agree that May 1,
19   2018, is much more than 60 days after any
20   date in January or February of 2018, is
21   that correct?
22         MS. SORIN:  Objection.
23         A.   Yes.  But the date of the offer
24   letter doesn't constitute when benefits
25   starts.  The date of benefits would start

Page 27

1           D. Musso
2    from the date he actually started work at
3    Salisbury.  And I don't have that date in
4    front of me.  I would have to go to my work
5    papers.
6         Q.   Do you have any of your work
7    papers with you here today?
8         A.   I do not.
9         Q.   It does seem you are referring to
10   the offer letter and, in fact, you are
11   quoting it as well, that block quote that
12   we discussed a number of minutes ago.
13         A.   Yes, I am referring to the offer
14   letter.  But I -- go ahead.
15         Q.   Even if Mr. Truitt said you were
16   hired and started working in February of
17   2018, per the offer letter, the wide array
18   of benefits described in the offer letter
19   would have become available the 1st of the
20   month following 60 days of employment, is
21   that correct?
22         A.   That would be my understanding,
23   yes.
24         Q.   You would agree that May 1, 2018,
25   is within that period when that wide array

Page 28

1           D. Musso
2    of benefits would be available, is that
3    correct?
4         A.   I do not agree with that and,
5    again, I have to have my work papers in
6    front of me to give you the critical dates
7    of when he actually started work, what was
8    his official date of work, and what was the
9    official date of termination.
10         Q.   After reviewing these dates in
11   your report and the snippets from Mr.
12   Truitt's offer letter that we have been
13   discussing, do you still stand behind your
14   conclusion on page 6 that Mr. Truitt was
15   not entitled to any benefits from Salisbury
16   at the time of his departure?
17         A.   Are you asking specifically about
18   III.c benefits, part 1.
19         Q.   Yes, I am.
20         A.   Yes, then.
21         Q.   The fact that Mr. Truitt's offer
22   letter indicated that a wide array of
23   benefits which were specifically listed
24   would be available on the 1st of the month
25   following 60 days of employment, and the

Page 29

1           D. Musso
2    fact that more than 60 days of employment
3    and the 1st of the following month occurred
4    by the time Mr. Truitt was terminated,
5    doesn't impact your opinion at all?
6         A.   No, again, there is four concrete
7    reasons that we gave here.  That was a just
8    one of the four, and not even the most -- I
9    would argue the least important of the
10   four.
11         Q.   Is it is your expert opinion that
12   Mr. Truitt's offer letter did not make any
13   benefits available to him at any point
14   during his employment?
15         MS. SORIN:  Objection.
16         A.   I did not say that.
17         MS. SORIN:  Misstates testimony.
18         Q.   Is it your expert opinion that
19   Mr. Truitt's offer letter did not entitle
20   him to any benefits at any point during his
21   Salisbury employment?
22         MS. SORIN:  Objection, asked and
23   answered.
24         Q.   You're not answering because of
25   your attorney's objection, is that correct?

8 (Pages 26 to 29)

Page 30

D. Musso

1      A.   I didn't know if I was supposed
2  to still answer.
3      Q.   That's OK.  In general, you can
4  still answer.  But sometimes attorneys will
5  say don't answer.
6      A.   OK.
7      MS. SORIN:  If you understand the
8  question, you can answer.
9      A.   I do understand the question and
10  I did not say what you just said.
11      Q.   Because we have got a page of us
12  talking now, I'm going to reask it one more
13  time just so we have a clear question and
14  answer.
15      A.   That would be fine.
16      Q.   I'll certainly honor that
17  objection which you're welcome to repeat.
18           Is it your expert opinion that
19  Mr. Truitt's offer letter -- strike that.
20           Is it your expert opinion that
21  Mr. Truitt was not entitled to any benefits
22  at any point during his Salisbury
23  employment based on his January 29, 2018
24  offer letter?

Page 31

D. Musso

1      MS. SORIN:  Objection, both
2  misstates prior testimony and asked and
3  answered.
4      You can answer.
5      A.   No, that's not what I said.  And
6  that's not what's in my report.
7      Q.   Your report does say that Mr.
8  Truitt was not provided or entitled to any
9  benefits from Salisbury at the time of his
10  departure, is that correct?
11      A.   Yes.
12      Q.   And your report indicates that
13  Mr. Truitt's separation of employment with
14  Salisbury occurred on May 1, 2018, is that
15  correct?
16      A.   That's what's in my report, yes.
17      Q.   Having considered all those
18  factors, you remain confident in the
19  accuracy of your statement on page 6 in
20  section III.c 1?
21      A.   Yes.
22      Q.   Hopefully the next three sections
23  won't take as long.
24           I'm still on this page 6 at the

Page 32

D. Musso

1  last -- I'll call it a paragraph,
2  specifically section III.c 2.
3           And in this section of your
4  opinion, you indicate Mr. Truitt received
5  health insurance, dental, optical,
6  retirement disability insurance through
7  Duchess County and the Civil Service
8  Employees Association and, therefore, did
9  not suffer a loss of benefits.
10           Did I read that correctly?
11      A.   Yes.
12      Q.   And could you explain how you
13  reached that -- so there is no footnote on
14  that paragraph.  I'm just wondering if you
15  can give me a brief summary of what your
16  basis was for that determination?
17      A.   Yes.  It was in the deposition
18  that I read when he was asked specifically
19  about that and it was I believe it was in
20  the Sobel Tinari report that he was getting
21  benefits and in discussions that I had with
22  members of -- as I was gathering
23  information from Salisbury, their HR
24  department told me that he was getting

Page 33

D. Musso

1  benefits through Duchess County.
2      Q.   When you said their HR
3  department, you were talking about
4  Salisbury's HR department?
5      A.   Yes.
6      Q.   Not Duchess?  You have not spoken
7  to Duchess at all?
8      A.   We did go look up the Duchess
9  County and Civil Service Employees benefit
10  plans to make sure we knew what was
11  available and who it was available to.  But
12  we stopped at that.
13      Q.   That employee benefit plan you
14  just referred to, is that related to the
15  Duchess County and Civil Service Employee
16  Association Inc. reference in your
17  paragraph?
18      A.   Yes.
19      Q.   Mr. Truitt, Duchess County
20  employment does not provide any 401K
21  benefit to your knowledge, does it?
22      A.   I don't know and I don't state
23  that in my report.
24      Q.   You're not aware of any employee

9 (Pages 30 to 33)

Page 46

D. Musso

1
2    opportunity such as the one that has
3    presented itself before me."
4         So right there, he says he has
5    options and he's selecting the option
6    that's presented in front of him;
7    "Specifically, the chance to tie Teddy
8    Roosevelt as the youngest state assemblyman
9    in New York history is one that I cannot
10   give up, nor can I let down my community
11   who has asked me to run.
12        "I have learned a tremendous
13   amount during my short two months at
14   Salisbury Bank."  So there is the two
15   months that would go back to the 60-day
16   question.
17        "And I truly appreciated how
18   quickly everyone welcomed me into the
19   family.  I want to especially thank you
20   Doug, for initial interview."
21        I can read the rest of it.  But
22   then he goes on to say, "I have a few items
23   that I need to return including laptop, a
24   key fob and Poughkeepsie parking garage
25   badge."

Page 47

D. Musso

1
2         That also was very telling to me
3    in that in the banking world, normally when
4    people are terminated, not resign, they are
5    usually escorted out of the business on the
6    same day.  They very rarely are allowed to
7    stay around and have access for things like
8    a laptop, a key fob.
9         So certainly -- then the last
10   thing, "Let me know how you would like me
11   to return those in to you," made it sound
12   like it was amicable.
13   Q.   And just for clarity on the
14   record, you added some of your own
15   commentary there, in your recitation of
16   that letter, is that correct?
17   A.   Yes, I did.
18   Q.   And you would agree that you
19   didn't put the entire letter in your block
20   quote on page 21 of your report, did you?
21   A.   No, I did not.
22   Q.   Are you aware that part of the
23   letter that you omitted from your block
24   quote on page 21; namely, the first
25   paragraph in that first paragraph of that

Page 48

D. Musso

1
2    letter, Mr. Truitt said and I quote, "I
3    know that if given the chance, I would be
4    able to prove myself that I can be a very
5    successful originator."
6         MS. SORIN:  Objection.  Can
7    you -- before asking him questions
8    about the content of a letter, I would
9    ask that you put the document in front
10   of him.
11        MR. LOWER:  I don't have a copy
12   of that specific letter prepared to
13   hand to him right now.
14        MS. SORIN:  Then I just object to
15   the question as -- you can ask
16   questions about it, but he cannot state
17   as -- he cannot testify as to the
18   accuracy of a document without -- in
19   terms of what the document says without
20   having the document in front of him.
21        MR. LOWER:  I'm not asking him to
22   verify the authenticity or accuracy of
23   any document at this point.
24        MS. SORIN:  OK.
25        MR. LOWER:  I'm simply asking

Page 49

D. Musso

1
2    whether Mr. Musso is aware that the
3    letter he quoted on page 21 of his
4    report by Mr. Truitt indicated Mr.
5    Truitt said, "I know that if given the
6    chance I would be able to prove myself
7    that I can be a very successful
8    originator."
9         MS. SORIN:  Objection --
10   Q.   Were you aware of that?
11   A.   I am aware of the letter and I'm
12   aware of the first paragraph, but -- I
13   cannot quote it word for word.  And
14   therefore, I can't put that into context.
15   Q.   If Mr. Truitt were wrongfully
16   terminated by Salisbury, would it have any
17   effect on the conclusions in your report?
18   A.   Absolutely not.
19        MS. SORIN:  Objection to form.
20   A.   If I might just clarify one thing
21   in my report.
22   Q.   You can.  I might move to strike,
23   but please yeah, go ahead.
24   A.   You have continuously pointed to
25   the date of May 1 on page 5.  But if you

13  (Pages 46 to 49)

Page 50

D. Musso

1  look at page 21, it keeps talking about an
2  effective date of April 30.
3      So in reading my report, I
4  believe that the effective date for his
5  resignation, termination, whatever to be
6  determined legally, was April 30, 2018.
7      Q.   For the sake of clarity on the
8  record, are you indicating that the date
9  you have on page 5 of your report is not
10  accurate?
11      A.   I want to clearly make sure I
12  enunciate this appropriately.  His official
13  date of resignation would have been
14  April -- Monday April 30.  That means on
15  May 1 would have been his first day of
16  separation of employment which is what I do
17  say, so I do stand by my document.
18      I think earlier you showed me
19  that date and I didn't have a chance to
20  clarify.  That's why I wanted to take this
21  opportunity to do that.  There is clearly a
22  difference between the two dates.
23      Q.   You are taking the position that
24  the term "separation of employment" means

*(Note: line numbers 1-25)*

---

Page 51

D. Musso

1  the day after someone's employment ended?
2      A.   I'm not taking the position.  I
3  wrote the document.  That's what my intent
4  was in the document.
5      Q.   I would like to take a quick
6  bathroom break if that's OK with everybody.
7      (Recess; 11:08 to 11:13 a.m.)
8      Q.   Mr. Musso, I had one other
9  question about materials that you
10  considered in general in forming your
11  opinions.
12      Could you go through those for
13  me, let me know what materials you
14  considered in forming your opinion.
15      A.   If you go to page 51 of my
16  report, I list 35 specific table of
17  authorities, things that we looked at and
18  that we utilized in our report.  That is
19  not at all an inclusive list of things that
20  we looked at.  And then on page 54 -- pages
21  54 and 55, I give you a list of the
22  critical materials reviewed.
23      Q.   When you say "critical materials
24  reviewed," what does that mean?

---

Page 52

D. Musso

1      A.   Ones that are specifically
2  referred to in the report or utilized
3  somewhere in the actual document itself.
4      Q.   Is it fair to say that all these
5  sources listed between pages 51 and 55 were
6  relied upon by yourself in forming your
7  opinions?
8      A.   Yes.
9      Q.   Are there any documents or
10  materials that you considered or relied
11  upon in forming the opinions in your report
12  that are not listed on pages 51 through 55?
13      A.   Not that I'm aware of.
14      MR. LOWER:  Is there any
15  objection to a request for production
16  of materials relied upon in forming
17  this report?
18      MS. SORIN:  Yes, all of the
19  materials I believe are either publicly
20  available or have already been
21  produced.
22      MR. LOWER:  And to the extent any
23  of such materials are not publicly,
24  readily and publicly available --

---

Page 53

D. Musso

1      MS. SORIN:  Readily and publicly
2  available are two different things.  If
3  you -- I'm not going to stipulate to
4  anything.  If there is a particular
5  document that you cannot find, I will
6  consider your request.  But please do
7  so in writing.
8      MR. LOWER:  Yeah, I just --
9      MS. SORIN:  Or on the record.
10      MR. LOWER:  My goal is to make
11  sure that we are all looking at the
12  same documents.
13      MS. SORIN:  Of course.
14      Q.   And Mr. Musso, I'm now moving on
15  to page 8 of your report section -- which
16  is where section IV entitled "Economic
17  Losses" begins.  Is that correct?
18      A.   IV, yes.
19      Q.   To jump the gun here, of course,
20  ultimately your opinion was Mr. Truitt
21  endured no economic losses, is that
22  correct?
23      A.   Yes.
24      Q.   And this section includes

---

14 (Pages 50 to 53)

Page 82

D. Musso

1    analysis and my opinion says that they were
2    not comparable and that I went through a
3    very detailed explanation of how I came up
4    with the computation using industry known
5    numbers from industry known sources.
6
7        Q.   But if you used Salisbury data
8    for the exact same position and exact same
9    amount of experience, that would more than
10   double your compensation estimate reflected
11   in page 6 of your report for the year 2022,
12   wouldn't it?
13       A.   For Mr. Cantele specifically,
14   yes.  If I only use Mr. Cantele and I only
15   use the fifth year.
16       Q.   Are you aware that Mr. Cantele
17   has received at least one performance
18   evaluation with the lowest possible rating
19   for part of the work that he has done as a
20   mortgage loan originator?
21       A.   No.
22       Q.   If you had been aware of negative
23   performance feedback that Mr. Cantele had
24   received as part of his mortgage loan
25   originator position, would that impact any

Page 83

D. Musso

1    aspect of your analysis?
2        MS. SORIN:  Object to form.
3    Calls for speculation.
4        A.   No.  These are commission based
5    jobs.  They're not salaried with -- so you
6    earn what you kill.  Pardon my language.
7    That's the phrase.  It's actually eat what
8    you kill.
9        Q.   Either are fine by me.
10       MR. LOWER:  Off the record.
11       (Recess; 12:02 to 12:14 p.m.)
12       Q.   Mr. Musso, on page 41, you also
13   cover some benefit loss calculation as
14   well, is that correct?
15       A.   Yes.
16       Q.   At the top of this page, you
17   indicate, "Total economic loss damages in
18   an alleged wrongful termination case should
19   also be inclusive of any benefits the
20   employee was eligible to receive at the
21   time of termination."
22       Is that correct?
23       A.   Yes.
24       Q.   And despite all the evidence that

Page 84

D. Musso

1    we have discussed and looked at today
2    throughout your report, it's still your
3    opinion that Mr. Truitt was not eligible to
4    receive any type of benefits from Salisbury
5    at the time of his termination?
6        MS. SORIN:  Object to form.
7        Q.   Is that correct?
8        A.   Yeah.  Again, I didn't say that
9    he wasn't entitled to any benefits.  I said
10   he wasn't getting any benefits as of that
11   period, and again, my specific language is
12   on page --
13       Q.   Page 6.
14       A.   Thank you.  6 and C1 -- you would
15   look at all of section C for the four
16   primary reasons.  But specifically, I said
17   was not provided or entitled to any
18   benefits from Salisbury at the time of his
19   departure.
20       Q.   And it is still your opinion that
21   Mr. Truitt was not entitled to any benefits
22   from Salisbury at the time his employment
23   ended?  Is that what you mean by -- you
24   mean --

Page 85

D. Musso

1        A.   Using the April 31 assumed
2    resignation date, yes.
3        MS. SORIN:  For the record, April
4    30.
5        THE WITNESS:  What did I say?
6        MS. SORIN:  31st.  There is no
7    31st in April.
8        A.   Whatever is on page.  I lost the
9    page, but I had -- I specifically showed
10   the date on page 21.  April 30.  Thank you.
11       Q.   If the time of Mr. Truitt's
12   departure from Salisbury was instead May 1,
13   2018, would that affect any aspect of your
14   analysis?
15       A.   Again, I think we have a
16   terminology issue here.  As I pointed out
17   earlier in my report, I'm saying that the
18   effective date of resignation was April 30,
19   but his first date of departure of not
20   being there was May 1.
21       So are you saying if the
22   effective resignation date had been in
23   May --
24       Q.   That's correct --

Page 86

D. Musso

1
2     A.   -- or effective -- I don't want
3  to use a legal term inappropriately.
4     Q.   I'm not going to push you to say
5  fired, you don't need to push me to say
6  resigned.  Termination, we can agree, would
7  cover both possibilities?
8     A.   That would be fine, thank you.
9        So yeah, it might change C1 if it
10 had been in May.
11    Q.   OK, thank you.
12       And on page 41, at the bottom,
13 you talk about the following four reasons
14 again for the no benefit adjustment.  This
15 looks pretty much identical to what we
16 already discussed this morning.  I don't --
17 is there any --
18    A.   There is nothing new there.
19    Q.   -- any aspect to this page, you
20 know, that you think warrants more
21 discussion on this?
22    A.   No.
23    Q.   It seems like it was pretty clear
24 before and it still is here.
25       I have a couple of questions

Page 87

D. Musso

1
2  about the bases that you provided for your
3  front pay computations and I'm going to
4  direct you to a specific page, but if you
5  feel like you need to review the
6  surrounding pages for context, you can take
7  as much time -- page 39.
8        And you're OK to answer a
9  question about this section B on page 39,
10 right?
11    A.   You haven't asked a question yet,
12 I'm sorry.
13    Q.   I just wanted to make sure you
14 were familiar with that part of your
15 report?
16    A.   I'm there.
17    Q.   OK.  Regarding the only table or
18 chart that appears on page 39 right in the
19 middle, again, this looks to me like the
20 same chart that we have been referring to
21 on page 6.  Does that sound right to you?
22    A.   It should be, yes.
23    Q.   And --
24    A.   Yes.
25    Q.   Did you at any point consider the

Page 88

D. Musso

1
2  possibility that Mr. Truitt's tenure as a
3  Salisbury MLO could have extended beyond
4  2022?
5     A.   Yes.
6     Q.   And what part of your report
7  summarizes that?
8     A.   Page 39.  It's also in some other
9  sections, further up front in the document.
10       I have no way of knowing, nor
11 does anybody else, have any way of knowing
12 what Mr. Truitt's actual tenure would have
13 been and we never will know.
14       Therefore, you've got to go and
15 look at what a typical tenure would be for
16 a typical position in a typical market.
17       Therefore, I went to the NMLS,
18 which is the authoritative source for
19 licensing MLOs in the entire country, and
20 it also does it for specifically each of
21 the regions that Salisbury operates in and
22 the specific regions that Mr. Truitt was
23 going to operate in.  And I looked at what
24 the typical tenure was.
25       And when you work the math on

Page 89

D. Musso

1
2  that, it comes out to the average life for
3  a MLO in that market is 4.3 years.
4  Therefore, that would be the most
5  reasonable number to use in any kind of
6  analysis.  And then I got generous and I
7  said we will round it up to five.
8     Q.   Even though the average tenure
9  for a Salisbury MLO is seven and a half
10 years in your -- at least as indicated in
11 your report?
12    A.   That's correct.
13    Q.   And nonetheless, ultimately, what
14 I was getting at -- I think it is a simple
15 question is your analysis does not consider
16 the possibility that Mr. Truitt's tenure
17 your as a Salisbury MLO could have extended
18 beyond 2022, does it?
19    A.   No.  Nor does it include that he
20 could have left in one month.
21    Q.   Now, I'm jumping to page 32, if
22 you want to just to give you a head start
23 before I ask my first question.
24       My question is not going to
25 immediately reference anything on this

23 (Pages 86 to 89)

Home (/)  /  Businesses (/businesses)  /  BOWERMAN FINANCIAL, INC.

# BOWERMAN FINANCIAL, INC.

ID 10299771

### *i* Summary

Formed in New York, BOWERMAN FINANCIAL, INC. is a business entity and is a DOMESTIC BUSINESS CORPORATION in accordance with local law. Having the registration number 2372097, according to the relevant government agency, it is now ACTIVE.

### ✎ Status

ACTIVE updated recently

more like this → (/businesses?standing=2)

### 🔲 Kind

DOMESTIC BUSINESS CORPORATION

more like this → (/businesses?type=5)

### 🏠 Address

834 ROUTE 203, P.O. BOX 26, SPENCERTOWN, NEW YORK, 12165

### 👥 Officers

MAURICE S BOWERMAN Chief Executive Officer

MAURICE S BOWERMAN Principal Executive Office

### ⚑ Regulatory regime

New York State Division of Corporations (/bowerman-financial-inc)

### Update status

Previous update: 2019-12-06 03:44:41 UTC



Comments

0 Comments          Company Insider          Login

♡ Recommend          Tweet          Share                    Sort by Best

Start the discussion…

LOG IN WITH                    OR SIGN UP WITH DISQUS ?

Name

Be the first to comment.

✉ Subscribe     Add Disqus to your siteAdd DisqusAdd

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WILLIAM GUNNAR TRUITT,

                Plaintiff,

          -against-

SALISBURY BANK AND TRUST COMPANY;
AND SALISBURY BANCORP, INC.,

                Defendants.

Civil Action No.: 7:18-cv-08386-NSR-PED

**AFFIDAVIT OF KRISTIN KUCSMA**

Enclosed is a true and accurate copy of my expert report, which reflects my professional opinion regarding the value of economic loss sustained by Mr. Truitt.

Dated: January 13 , 2020
      Essex County, New Jersey

                                K. Kucsma
                                Kristin Kucsma
                                Sobel Tinari Economics Group
                                293 Eisenhower Parkway
                                Livingston, New Jersey 07039

Helen Skirptunas

    HELEN SKIRPTUNAS
  NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 9/26/2021

**AN APPRAISAL OF ECONOMIC LOSS**
**TO**
**WILLIAM TRUITT**


Kristin K. Kucsma, M.A.


SOBEL TINARI ECONOMICS GROUP
www.SobelTinariEconomics.com

| | |
|---|---|
| 293 Eisenhower Parkway | 112 West 34th Street |
| 2nd Floor | 18th Floor |
| Livingston, NJ 07039 | New York, New York 10120 |
| 973 / 992-1800  phone | 212 / 201-0938  phone |
| 973 / 994-1571  fax | 212 / 201-0937 fax |


August 30, 2019



# TABLE OF CONTENTS

Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Purpose of Appraisal. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Opinion of Economic Losses. . . . . . . . . . . . . . . . . . . . . . .  2

Background Facts and Assumptions. . . . . . . . . . . . . . . .  4

Components of Analysis. . . . . . . . . . . . . . . . . . . . . . . . .  11

Adjusted Earnings in Past Years . . . . . . . . . . . . . . . . . .  11

Adjusted Earnings in Future Years. . . . . . . . . . . . . . . . .  15

Employer Cost of Insurance-Based Benefits. . . . . . . . . .  22

Compensation for Excess Taxes. . . . . . . . . . . . . . . . . . .  25

Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

Qualifications Profile

Lists of Trial and Deposition Testimonies

Statement of Ethical Principles and Principles of Professional
Practice

Professional Fees Schedule



**<u>Certification</u>**

This is to certify that I am not related to any of the parties to subject action, nor do I have any present or intended financial interest in this case beyond the fees due for professional services rendered in connection with this report and possible subsequent services. Further, I certify that my professional fees are not contingent on the outcome of this matter but are based on the services provided to counsel in connection with subject action.

This is to further certify that all assumptions, methodologies, and calculations utilized in this Commentary are based on current knowledge and methods applied in the determination of projected pecuniary losses.

In addition, this is to further certify that I pledge to abide by the spirit and the letter of the Statement of Ethical Principles and Principles of Professional Practice of the National Association of Forensic Economics, a copy of which is attached to this report.

Lastly, I certify that the Sobel Tinari Economics Group has received, thus far, $4,000 compensation for preparation of a report for William Gunnar Truitt v. Salisbury Bank and Trust Co.; and Salisbury Bancorp, Inc. As of this date, an outstanding balance of $1,400 is due. Our services are billed according to our Professional Fees, a copy of which is attached to this report.

 

_____
Kristin K. Kucsma, M.A.



TRUITT / **McCullough Ginsberg Montano and Partners, LLP**                    **page 2**

## Purpose of Appraisal

Sobel Tinari Economics Group was retained to prepare a report evaluating the economic losses suffered by William Truitt resulting from an alleged wrongdoing in employment. Background facts on this matter were provided to us in a packet of documents. Additional information was obtained subsequent to the initial communications. We have relied on these documents, facts and publicly available documents in developing this appraisal. The respective document used as a source is duly noted at each point of use in the report.

The purpose of this report, therefore, is <u>to provide a written appraisal of the economic loss sustained by William Truitt in this matter</u>.



TRUITT / McCullough Ginsberg Montano and Partners, LLP                    page **3**

## Opinion of Economic Losses

Within a reasonable degree of economic certainty, and based on the information received and the analysis contained in this report, it is our professional opinion that the value of the economic loss sustained by Mr. Truitt amounts to either

*Present Value*

**SEVEN MILLION,
NINE HUNDRED THIRTY-FIVE THOUSAND,
SEVEN HUNDRED EIGHTY-NINE DOLLARS**

**[    $7,935,789    ]**

**or**

*Future Value*

**TWENTY MILLION,
SIX HUNDRED NINETY-SEVEN THOUSAND,
EIGHT HUNDRED EIGHTY-ONE DOLLARS**[1]

**[    $20,697,881    ]**

This range of loss reflects presentation of total loss values in present value and future value amounts. Further, our valuation does not take into account the ramifications of intangible, non-economic losses such as human suffering or emotional feelings that may have been experienced by plaintiff or his family members.

---

[1] At the time of trial, these figures will be updated to reflect the passage of time and more recently available economic data from the sources already cited in this report.



## Background Facts and Assumptions

1) Background Information:

- ▸ Plaintiff:              William Truitt; male
- ▸ Born:                 April 13, 1995
- ▸ Residence:            Hyde Park, New York
- ▸ Education:            Bachelor's degree
- ▸ Former employer:      Salisbury Bank & Trust Co./Salisbury Bancorp (collectively, "SB")
- ▸ Former position:      Mortgage Lending Officer/Originator (full-time)*
- ▸ Hired:                February 26, 2018
- ▸ Terminated:           on or about May 1, 2018
- ▸ Current employer:     Bridge View Excavation, Inc.[2] ("Bridge View")
- ▸ Current position:     Business Assistant
- ▸ Marital status:       single

  * plaintiff was an elected part-time Dutchess County Legislator prior to starting this position

2) Life expectancy: as of May 1, 2018, males of plaintiff's age (23.05 years) live, on average, an additional 54.4 years. [SOURCE: *National Vital Statistics Reports,* Volume 67, No. 7, United States Life Tables, 2015, Table 2, November 13, 2018, http://www.cdc.gov/nchs/data/nvsr/nvsr67/nvsr67_07-508.pdf, by interpolation.] Therefore, persons in plaintiff's statistical cohort have an expected total life span averaging 77.45 years, implying a statistical date of death of September 24, 2072.

3) Statistical retirement age: as of May 1, 2018, males of plaintiff's age (23.05 years) and level of education (Bachelor's degree) have 42.72 median years to retirement. [SOURCE: Gary R. Skoog and James E. Ciecka, "Probability Mass Functions for Years to Final Separation from the Labor Force Induced by the Markov Model," *Journal of Forensic Economics*, 16(1), 2003, pp. 51-86, by interpolation.] Applying these years results in a statistical retirement age of 65.77 years, occurring on January 18, 2061.

4) Expected working years: work-life expectancy tables provide statistics descriptive of the actual working life experience of the civilian population by gender, age, employment, status, and schooling. As of May 1, 2018, males of plaintiff's age/education/labor-force-activity statistical cohort have 39.45 median years of remaining labor force activity. [SOURCE: Gary R. Skoog, James E. Ciecka and Kurt V. Krueger, "The Markov Process

---

[2] Also known as Metzger Construction Corp.



Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors", *Journal of Forensic Economics*, Volume 22, No. 2, August 2011, pp. 183-190, by interpolation.]

5) Worklife-to-retirement ratio: the number of years from the date of termination, until plaintiff's statistical retirement date (42.72 years in this case) exceeds the number of expected remaining working years (39.45 in this case). Thus arithmetically, the number of years of worklife for this statistical cohort comprises 92.3% of the total remaining number of years until retirement.

6) Occupation and employment: in or about February 2018, SB hired plaintiff in a finance position knowing that he already had a part-time job as an elected Dutchess County Legislator. Mr. Truitt reportedly completed his employer's mortgage origination training more quickly than average. Plaintiff was informed that other loan originators at SB received compensation in excess of $150,000, and that he could expect similar compensation in that employment. [SOURCE: Summons and Verified Complaint, filed August 22, 2018. ]

On or about April 12, 2018, Mr. Truitt announced his campaign for the office of New York State Assembly District 106, a part-time citizen legislature position. At that time, plaintiff was unaware of the strong connections between SB's Board of Directors and the incumbent Democratic Assembly member for District 106. On or about May 1, 2018, plaintiff's employment at SB was terminated. Mr. Truitt's run for public office was reported to be the one and only reason provided for his termination. [SOURCE: Complaint, *ibid*.]

Subsequent to termination from SB, plaintiff continued his part-time Dutchess County Legislator work. In or about May 2018, he also obtained employment as a Finance Officer at Bridge View. A review of his paystubs from that employment reveals that his working hours varied in 2018. Mr. Truitt estimates his yearly earnings at $38,000 per year, based on an hourly rate of $18. [SOURCES: electronic mail from counsel, dated August 17, 2019; and plaintiff's various paystubs for 2018 from Bridge View.]

7) Earnings history: plaintiff's earnings figures for the years 2016 through 2018, are presented in the following table. [SOURCES: plaintiff's W-2 Wage and Tax Statements for the years 2016 through 2018; and plaintiff's payroll profile for 2018, Salisbury Bank & Trust Co.]



TRUITT / McCullough Ginsberg Montano and Partners, LLP                page  6

| Year | Marist College | County of Dutchess | Salisbury Bank & Trust Co.^ | Bridge View Excavation, Inc.* |
|------|------|------|------|------|
| 2016 | $4,513 | $15,450 | | |
| 2017 | 1,327 | 15,450 | | |
| 2018 | | 15,450 | $5,496 | $6,503 |

^ start date of plaintiff's employment: February 26, 2018; terminated: May 1, 2018
* start date of plaintiff's employment: May 2018; plaintiff reportedly took some
  time off to focus on his campaign in the second half of 2018

We have been provided with earnings information for Kevin Cantele and Spring Burke (f/k/a Spring Bagnall), two other full-time Mortgage Loan Originators at SB[3]. Ms. Burke has been a full-time Mortgage Loan Originator since 2009, and Mr. Cantele became a Mortgage Loan Originator Trainee in or about April 2014. Earnings information for the years 2014 through 2018 is presented as follows: [SOURCES: W-2 Wage and Tax Statements for Kevin Cantele and Spring Burke, for the years 2014 through 2018; and electronic mail from counsel, dated August 17, 2019.]

| Year | Kevin Cantele | Spring Burke | Average |
|------|------|------|------|
| 2014 | $22,384 | $115,368 | $ 68,876 |
| 2015 | 53,610 | 119,359 | 86,485 |
| 2016 | 98,380 | 161,320 | 129,850 |
| 2017 | 154,408 | 157,736 | 156,072 |
| 2018 | 176,510 | 158,986 | 167,748 |

---

3

We collectively label Mr. Cantele and Ms. Burke as the "comparative employees".



8) Pre-termination earnings: we establish plaintiff's pre-termination yearly earnings at $35,006, in 2018 dollars[4], based upon his annual salary in 2018. [SOURCE: Termination Check List for William G. Truitt, dated April 30, 2018.]

Given the earnings figures presented above for the two comparative employees, we project that plaintiff's earnings, but for the termination, would have increased from the previously established figure of $35,006, in 2018 dollars, to the average earnings for the comparative employees of $167,748, in 2018 dollars[5], by 2022. At the time this report was prepared, we did not review any employment evaluations for plaintiff or the comparative employees. We reserve the right to provide amended calculations, upon request, should additional information be provided.

9) Post-termination earnings: we establish plaintiff's post-termination earnings at $38,000 per year, in 2019 dollars, based upon his previously noted projected yearly earnings at Bridge View Excavation. The aforementioned figure is consistent with an hourly rate of $18 and 2,080 working hours per year. Since plaintiff began employment at Dutchess County prior to the termination, we do not value his earnings from that employment in this report.

Actual and projected post-termination earnings are applied as an offset to projected pre-termination earnings. We reserve the right to provide amended calculations, upon request, should additional information be provided.

10) Pre- and post-termination fringe benefits: a review of SB's Compensation and Benefit Statement provided to plaintiff reveals that the following fringe benefits would have been available to plaintiff in his SB employment: medical, dental, and life insurance, short- and long-term disability insurance, employer 401(k) contributions (4% Safe Harbor plus 100%

---

4

This figure is consistent with the earnings of Loan Officers in New York State at the 10th percentile ($36,490). [SOURCE: U.S. Department of Labor, Bureau of Labor Statistics, Occupational Employment Statistics (OES), Loan Officers, May 2018, New York, data extracted on August 25, 2019, http://www.bls.gov/oes.]

5

This figure is consistent with the 2018 earnings of Loan Officers in New York State between the 75th and 90th percentiles. [SOURCE: U.S. Department of Labor, Bureau of Labor Statistics, Occupational Employment Statistics (OES), Loan Officers, May 2018, New York, data extracted on August 25, 2019, http://www.bls.gov/oes.]



match on the first 6% employee contribution[6]) and a 2% employer Employee Stock Ownership Plan (ESOP) contribution. [SOURCE: Salisbury Bank Management, Compensation and Benefit Statement - Draft for Discussion Purposes.]

The following table summarizes the employer costs (2018 dollars, assumed) for plaintiff's insurance-based benefits, based on aforementioned statement:

Health Insurance

| Fringe Benefit | Yearly Employer Cost |
|---|---|
| Medical Insurance (single) | $9,236 |
| Dental Insurance (single) | 523 |
| Total: | $    9,759 |

Disability and Life Insurance

| Fringe Benefit | Yearly Employer Cost |
|---|---|
| Short-Term Disability | $368 |
| Long-Term Disability | 239 |
| Life Insurance | 430 |
| Total: | $    1,037 |

Further, given the information presented above, we value pre-termination employer contributions to plaintiff's 401(k) and ESOP at a total of 12% of gross earnings, based upon a maximum 10% employer contribution to the 401(k) plan and 2% employer contribution to the ESOP, effective June 1, 2018, based upon his previously noted eligibility date for the Defined Contribution Plan. Plaintiff's pre-termination insurance-based fringe benefits are valued in a separate section of this report. We reserve the right to provide amended calculations, upon request, should additional information be provided.

---

6

The Compensation Statement includes an assumption that plaintiff would contribute 6% of salary to the 401(k) and receive the full 6% match in addition to the 4% Safe Harbor employer contribution. His eligibility date for the defined contribution plan was June 1, 2018.



At present, plaintiff receives post-termination health coverage through his employment as a Legislator for Dutchess County. [SOURCE: electronic mail from counsel, dated August 17, 2019.] Since his current employment is contingent upon reelection, it is not known how long his current health coverage will continue.

11) Pre-termination insurance-based fringe benefits: given the prospective nature of insurance, we limit the valuation of plaintiff's pre-termination insurance-based fringe benefits to future years. As previously noted, the yearly employer cost of those benefits are calculated at a total of $9,759, in 2018 dollars, for health insurance, and at a total of $1,037, in 2018 dollars, for disability and life insurance.

12) Excess tax on lump-sum award: it is important to recognize that a lump-sum award received in this matter may be subject to a relatively high income tax bracket on the entire amount in the year in which it is awarded. As a result, it is frequently impossible to make a plaintiff whole in matters like this without including compensation for taxes (i.e., a tax gross-up) to account for the fact that, because he will receive compensation all at once in the form of the award, he will face a higher tax rate in the year he receives the award than he would have faced each year but for the termination.

Most recently, in *E.E.O.C. v. Northern Star Hospitality, Inc.*, the 7th U.S. Circuit Court agreed with previous rulings in the 3rd and 10th Circuits[7] that the resulting tax increase, which would not have occurred had [plaintiff] received the pay on a regular, scheduled basis, will then decrease the sum total [plaintiff] should have received . . . And [plaintiff] would not be made whole, a result that offends Title VII's remedial scheme. [SOURCE: *E.E.O.C. v. Northern Star Hospitality, Inc.*, 777 F.3d 898,904 (7th Cir.2015).] This enhancement, or gross-up, recognizes, and is in compliance with, the "make-whole" doctrine set forth by the 3rd U.S. Circuit Court of Appeals 1995 decision in *Starceski v. Westinghouse Electric Corporation*.[8] [SOURCE: *Starceski v. Westinghouse Electric Corp.*, 993 F.2d 879 (3d Cir.1993).]

---

[7]

 See, Eshelman v. Agere Sys., 554 F.3d 426,441 (3d Cir.2009) and Sears v. Atchison, Topeka & Santa Fe R. Co., 749 F.2d 1451,1456 (10th Cit. 1984).

[8]

In *O'Neill v. Sears Roebuck & Co.*, it was ruled that a plaintiff award is entitled to a court-ordered enhancement in order to compensate for the "negative tax consequences" of receiving, in a single year, a lump-sum award for back pay and front pay.  Additionally, the judge in a Washington Court of Appeals case, *Blaney v. Int'l Assoc'n Of Machinists and Aerospace Workers*, concluded that adverse federal income tax consequences "are within the scope of the term 'actual damages.'" [SOURCES: *O'Neill v. Sears Roebuck*, 108 F. Supp.2d 443 (E.D.Pa.2000); *Blaney v. Int'l Assoc'n Of Machinists and Aerospace Workers,* 114 Wn.App. 80, 55 P.3d 1208 (2002).]



We calculate excess taxes in this report as an independent component of loss at this stage of the litigation. However, if the court permits, we are prepared to testify about the nature and magnitude of the excess taxes at trial. Or, if the pertinent post-trial application is made, we also stand ready to project post-award excess taxes. We note that such calculations require assumptions regarding pre- and post-termination income tax rates that then must be incorporated into the excess tax formula in the four-step procedure explained in this report.



## Components of Analysis

The pecuniary value of loss to plaintiff is estimated by consideration of the following components:

1. adjusted earnings in past years
2. adjusted earnings in future years
3. employer cost of insurance-based benefits
4. compensation for excess taxes

Each of these components is analyzed separately in the following sections of this appraisal report.

## Adjusted Earnings in Past Years

This loss consists of the earnings plaintiff most likely would have generated but for the alleged wrongdoing. In this section, we calculate a loss of earnings beginning May 1, 2018, and continuing through the present time. Plaintiff's pre-termination earnings were previously established at $35,006, in 2018 dollars, increasing to the average earnings for the comparative employees of $167,748, in 2018 dollars, by 2022. His post-termination earnings were previously established at $38,000 per year, in 2019 dollars.

To obtain a corresponding value for 2019 for the earnings of the comparative employees, we apply a yearly increase consistent with recent and expected annual wage growth economy-wide, of 1.3%.[9] To project gross earnings figures in the future (beginning in 2020), we apply a yearly increase of 3.9%, based on recent and expected wage growth economy-wide, as presented in the table below.[10] [SOURCES: U.S. Department of Labor, Bureau of Labor Statistics, Occupational Employment Statistics (OES), Median Hourly Earnings, Business and Financial Operations Occupations, http://www.bls.gov/oes,

---

[9]

We assume wage growth through 2019 is likely to reflect wage growth from 2014 to 2018. Accordingly, we utilize compound wage growth from 2014 through 2018 to calculate annual wage growth in 2019.

[10]

The yearly increase is an overall compound growth rate that encompasses two assumptions. The first is that wage growth through 2020 is likely to reflect wage growth from 2014 to 2018. Accordingly, we assume 2.1% annual wage growth from 2019 to 2020 (based on compound wage growth from 2014 through 2018, economy-wide). Annual wage growth after 2020 is best approximated by reference to the wage rate projections found in the Board of Trustees report cited above.



percent calculated by author; and Principal Economic Assumptions, *The 2019 Annual Report of the Board of Trustees of the Federal Old-age and Survivors Insurance and Federal Disability Insurance Trust Funds*, Table V.B1, http://www.ssa.gov/OACT/TR/2019/lr5b1.html#alt_2.]

Projected gross earnings for the comparative employees are calculated through 2022, as follows:

| Year | Yearly Increase | Projected Earnings for Comparative Employees |
|------|-----------------|----------------------------------------------|
| 2018 | - | $167,748 |
| 2019 | 1.3% | 169,929 |
| 2020 | 3.9% | 176,556 |
| 2021 | 3.9% | 183,442 |
| 2022 | 3.9% | 190,596 |

Using information from the preceding table we present plaintiff's projected pre-termination earnings, assuming that his earnings would have increased from $35,006, in 2018, to $190,596, by 2022, in the following table.

| Year | Plaintiff's Projected Pre-Termination Gross Earnings |
|------|------------------------------------------------------|
| 2018 | $35,006 |
| 2019 | 53,473 |
| 2020 | 81,682 |
| 2021 | 124,773 |
| 2022 | 190,596 |

Gross earnings are adjusted to take into account several factors. An adjustment for worklife expectancy is necessary because the number of years of actual working life is



generally less than the total number of years until retirement. The estimated remaining years of worklife, given in the Background Facts and Assumptions section above, amounts to 92.3% of the total remaining number of years until retirement for persons of plaintiff's statistical cohort. No adjustment is made to actual post-termination earnings for worklife in past years.

Another adjustment relates to fringe benefits. In this analysis, we value pre-termination employer contributions to plaintiff's 401(k) and ESOP accounts at SB at a total of 12% of his pre-termination gross earnings beginning on June 1, 2018, based upon his previously noted eligibility date. His pre-termination insurance-based benefits are analyzed in a separate section of this report.

As a result of case law, IRS rulings and legislation, economic losses awarded in wrongful termination cases are fully subject to income tax liabilities. [SOURCE: *Gray v. Commissioner,* CA 10, No. 96-9006, 1/13/97.] The Small Business Job Protection Act of 1996 states that only settlements or awards originating in physical injury or physical sickness claims are excludable from income taxes. All other damage awards are taxable, including claims filed under federal statutes such as the Age Discrimination in Employment Act. Therefore, no adjustment is made to account for this liability in the present analysis, because to do so would unduly penalize the plaintiff, as income taxes will have to be paid on any back/front pay award received in this matter.

A final adjustment to gross earnings addresses job maintenance expenses that plaintiff would have continued to incur in maintaining his employment. These expenses typically include transportation expenses, clothing, meals outside the home, and other costs. We estimate job maintenance expenses at 5% of pre- and post-termination earnings.

The preceding adjustments are summarized algebraically as presented in the following table.



TRUITT / **McCullough Ginsberg Montano and Partners, LLP**                                    **page  14**

|  | Pre-Termination | | Post-Termination | |
|---|---|---|---|---|
|  | Through June 1, 2018 | Thereafter | Actual | Projected |
| Gross Earnings Base | 100.00% | 100.00% | 100.00% | 100.00% |
| x worklife adjustment | 92.30% | 92.30% | 100.00% | 92.30% |
| = Adjusted Earnings Base | 92.30% | 92.30% | 100.00% | 92.30% |
| x (1 + 0%, 12%, 0%, 0% fringe benefits) | 100.00% | 112.00% | 100.00% | 100.00% |
| = Fringe - Adjusted Base | 92.30% | 103.38% | 100.00% | 92.30% |
| x (1 - 5%  job maintenance expenses) | 95.00% | 95.00% | 95.00% | 95.00% |
| **= Adjusted Earnings Factor (AEF)** | **87.69%** | **98.76%** | **95.00%** | **87.69%** |

Given the aforementioned, plaintiff's pre-termination adjusted earnings are calculated at 87.69% and 98.76% of projected gross earnings, through June 1, 2018, and thereafter, respectively. Further, his post-termination adjusted earnings are calculated at 95% and 87.69% of actual and projected gross earnings, respectively.

Applying the aforementioned information, the total values of plaintiff's earnings, calculated through September 30, 2019, are presented in the following tables.

<div align="center">Pre-Termination</div>

| Year | Portion of Year | Projected Pre-Termination Gross Earnings | Adjusted Earnings [ (2) x (3) x AEF^] | |
|---|---|---|---|---|
| (1) | (2) | (3) | (4) | |
| 2018* | 67% | $        35,006 | $            22,853 | |
| 2019 | 75% | 53,473 | 39,608 | |
|  |  | **Total:** | **$62,461** | |

    * terminated: May 1
    ^ 87.69% through June 1, 2018, and 98.76% thereafter



TRUITT / McCullough Ginsberg Montano and Partners, LLP          page 15

Post-Termination

| Year | Portion of Year | Actual / Projected Gross Earnings | Adjusted Gross Earnings [(2) x (3) x AEF^] |
|------|------|------|------|
| (1) | (2) | (3) | (4) |
| 2018 | 100% | $11,999 | $11,399 |
| 2019 | 75% | 38,000 | 24,992 |
| | | Total: | $36,391 |

^ 95% for 2018 and 87.69% for 2019

Subtracting post-termination earnings from projected pre-termination earnings yields total lost earnings in past years as presented in the following table.

| Adjusted Gross Earnings | Value |
|------|------|
| Pre-Termination | $62,461 |
| Post-Termination | (36,391) |
| Total: | $26,070 |

**Adjusted Earnings in Future Years**

In this section, cumulative future losses to plaintiff are calculated by extending these earnings projections into the future. This method reflects our understanding that, with respect to front pay or future lost earnings, courts allow claims for a "reasonable" period of time. Thus, we present cumulative potential losses in present value terms through plaintiff's statistical date of retirement for the trier-of-fact to consider.

To project gross earnings in the future (beginning in 2023 and 2020 for pre- and post-termination earnings, respectively), we apply a yearly increase of 3.9%, based on recent



and expected wage growth economy-wide.[11] [SOURCES: U.S. Department of Labor, Bureau of Labor Statistics, Occupational Employment Statistics (OES), Median Hourly Earnings, All Occupations, http://www.bls.gov/oes, percent calculated by author; and Principal Economic Assumptions, *The 2019 Annual Report of the Board of Trustees of the Federal Old-age and Survivors Insurance and Federal Disability Insurance Trust Funds*, Table V.B1, http://www.ssa.gov/OACT/TR/2019/lr5b1.html#alt_2.]

Regarding future projected values, it is possible to set aside a lump-sum monetary amount at the present time such that the annual flow of interest earnings from it plus a part of the principal would generate the equivalent amount of lost financial sums projected for each successive year under consideration. In other words, money has a time value. Pecuniary losses expected to be suffered at some future point in time are worth less in today's dollars because money can earn additional monies in the form of interest. Thus, to calculate the present value lump-sum amount, it is necessary to establish a reasonable interest rate which is referred to as a discount rate.

We note that interest earnings from any award in this case will be subject to future income taxation in each subsequent year. This poses a problem since the award will be, in effect, taxed indirectly when no provision has been made for this tax burden. Thus, it is assumed that any lump-sum award would be used to purchase investment instruments to provide a flow of <u>nontaxable</u> payments to plaintiff.

Therefore, the tax-free return on high-grade municipal bonds is considered when determining our discount rate. We also consider historical yields, as well as current financial market conditions, when determining the appropriate discount rate(s). [SOURCES: Bond Yields and Interest Rates, 1948-2018, *Economic Report of the President*, March 2019, Table B-42,  https://www.govinfo.gov/content/pkg/ERP-2019/pdf/ERP-2019.pdf, the Board of Governors of the Federal Reserve System, http://www.federalreserve.gov/, and other publically available data on interest rates.]

In recent years, interest rates have dropped to historically low levels. In future years, rates are expected gradually to resume historical trends. In light of historical yields and current financial market trends, we select 4.0% as the appropriate discount rate.

---

[11]
The yearly increase is an overall compound growth rate that encompasses two assumptions. The first is that wage growth through 2020 is likely to reflect wage growth from 2014 to 2018. Accordingly, we assume 2.1% annual wage growth from 2019 to 2020 (based on compound wage growth from 2014 through 2018, economy-wide). Annual wage growth after 2020 is best approximated by reference to the wage rate projections found in the Board of Trustees report cited above.



**TRUITT** / **McCullough Ginsberg Montano and Partners, LLP**                    **page  17**

Our calculations of plaintiff's projected pre-termination earnings through his statistical retirement date are presented in the table that follows. We provide both future and present value totals.

Pre-Termination

| Year | Portion of Year | Projected Gross Earnings [@ 3.9%^] | Adjusted Earnings [(2) x (3) x 98.76%] | Present Value [@ 4.0%] | Cumulative Present Value |
|------|-----------------|-----------------------------------|----------------------------------------|------------------------|-------------------------|
| (1) | (2) | (3) | (4) | (5) | (6) |
| 2019 | 25% | $53,473 | $13,203 | $13,203 | $13,203 |
| 2020 | 100% | 81,682 | 80,669 | 77,567 | 90,769 |
| 2021 | 100% | 124,773 | 123,226 | 113,929 | 204,699 |
| 2022 | 100% | 190,596 | 188,233 | 167,338 | 372,037 |
| 2023 | 100% | 198,029 | 195,574 | 167,177 | 539,214 |
| 2024 | 100% | 205,752 | 203,201 | 167,016 | 706,230 |
| 2025 | 100% | 213,777 | 211,126 | 166,856 | 873,086 |
| 2026 | 100% | 222,114 | 219,360 | 166,695 | 1,039,782 |
| 2027 | 100% | 230,776 | 227,915 | 166,535 | 1,206,317 |
| 2028 | 100% | 239,777 | 236,804 | 166,375 | 1,372,692 |
| 2029 | 100% | 249,128 | 246,039 | 166,215 | 1,538,907 |
| 2030 | 100% | 258,844 | 255,634 | 166,055 | 1,704,962 |
| 2031 | 100% | 268,939 | 265,604 | 165,896 | 1,870,858 |
| 2032 | 100% | 279,428 | 275,963 | 165,736 | 2,036,594 |
| 2033 | 100% | 290,325 | 286,725 | 165,577 | 2,202,170 |
| 2034 | 100% | 301,648 | 297,907 | 165,417 | 2,367,588 |
| 2035 | 100% | 313,412 | 309,526 | 165,258 | 2,532,846 |
| 2036 | 100% | 325,635 | 321,597 | 165,100 | 2,697,946 |
| 2037 | 100% | 338,335 | 334,140 | 164,941 | 2,862,886 |
| 2038 | 100% | 351,530 | 347,171 | 164,782 | 3,027,669 |
| 2039 | 100% | 365,240 | 360,711 | 164,624 | 3,192,292 |
| 2040 | 100% | 379,484 | 374,779 | 164,465 | 3,356,758 |



**TRUITT** / **McCullough Ginsberg Montano and Partners, LLP**                    **page 18**

| Year | Portion of Year | Projected Gross Earnings [(2) @ 3.9%^] | Adjusted Earnings [(2) x (3) x 98.76%] | Present Value [@ 4.0%] | Cumulative Present Value |
|------|------|------|------|------|------|
| (1) | (2) | (3) | (4) | (5) | (6) |
| 2041 | 100% | 394,284 | 389,395 | 164,307 | 3,521,065 |
| 2042 | 100% | 409,661 | 404,581 | 164,149 | 3,685,214 |
| 2043 | 100% | 425,638 | 420,360 | 163,991 | 3,849,206 |
| 2044 | 100% | 442,238 | 436,754 | 163,834 | 4,013,039 |
| 2045 | 100% | 459,485 | 453,787 | 163,676 | 4,176,716 |
| 2046 | 100% | 477,405 | 471,485 | 163,519 | 4,340,235 |
| 2047 | 100% | 496,024 | 489,873 | 163,362 | 4,503,596 |
| 2048 | 100% | 515,369 | 508,978 | 163,205 | 4,666,801 |
| 2049 | 100% | 535,468 | 528,828 | 163,048 | 4,829,848 |
| 2050 | 100% | 556,351 | 549,453 | 162,891 | 4,992,739 |
| 2051 | 100% | 578,049 | 570,881 | 162,734 | 5,155,473 |
| 2052 | 100% | 600,593 | 593,146 | 162,578 | 5,318,051 |
| 2053 | 100% | 624,016 | 616,278 | 162,421 | 5,480,473 |
| 2054 | 100% | 648,353 | 640,313 | 162,265 | 5,642,738 |
| 2055 | 100% | 673,638 | 665,285 | 162,109 | 5,804,847 |
| 2056 | 100% | 699,910 | 691,231 | 161,953 | 5,966,800 |
| 2057 | 100% | 727,207 | 718,189 | 161,798 | 6,128,598 |
| 2058 | 100% | 755,568 | 746,199 | 161,642 | 6,290,240 |
| 2059 | 100% | 785,035 | 775,301 | 161,487 | 6,451,727 |
| 2060 | 100% | 815,651 | 805,537 | 161,331 | 6,613,058 |
| 2061* | 5% | 847,462 | 41,848 | 8,059 | 6,621,117 |
| | **Total:** | | **$16,892,809** | **$6,621,117** | |

^ applied beginning in 2023
* plaintiff's statistical date of retirement: January 18



**TRUITT / McCullough Ginsberg Montano and Partners, LLP**                    page  19

## Post-Termination

| Year | Portion of Year | Projected Gross Earnings [@ 3.9%] | Adjusted Earnings [(2) x (3) x 87.69%] | Present Value [@ 4.0%] | Cumulative Present Value |
|------|------|------|------|------|------|
| (1) | (2) | (3) | (4) | (5) | (6) |
| 2019 | 25% | $38,000 | $8,331 | $8,331 | $8,331 |
| 2020 | 100% | 39,482 | 34,622 | 33,290 | 41,621 |
| 2021 | 100% | 41,022 | 35,972 | 33,258 | 74,879 |
| 2022 | 100% | 42,622 | 37,375 | 33,226 | 108,105 |
| 2023 | 100% | 44,284 | 38,833 | 33,194 | 141,299 |
| 2024 | 100% | 46,011 | 40,347 | 33,162 | 174,462 |
| 2025 | 100% | 47,805 | 41,921 | 33,130 | 207,592 |
| 2026 | 100% | 49,670 | 43,555 | 33,099 | 240,691 |
| 2027 | 100% | 51,607 | 45,254 | 33,067 | 273,757 |
| 2028 | 100% | 53,620 | 47,019 | 33,035 | 306,792 |
| 2029 | 100% | 55,711 | 48,853 | 33,003 | 339,795 |
| 2030 | 100% | 57,883 | 50,758 | 32,971 | 372,767 |
| 2031 | 100% | 60,141 | 52,738 | 32,940 | 405,707 |
| 2032 | 100% | 62,486 | 54,794 | 32,908 | 438,615 |
| 2033 | 100% | 64,923 | 56,931 | 32,876 | 471,491 |
| 2034 | 100% | 67,455 | 59,152 | 32,845 | 504,336 |
| 2035 | 100% | 70,086 | 61,459 | 32,813 | 537,149 |
| 2036 | 100% | 72,820 | 63,855 | 32,782 | 569,931 |
| 2037 | 100% | 75,659 | 66,346 | 32,750 | 602,681 |
| 2038 | 100% | 78,610 | 68,933 | 32,719 | 635,400 |
| 2039 | 100% | 81,676 | 71,622 | 32,687 | 668,087 |
| 2040 | 100% | 84,861 | 74,415 | 32,656 | 700,743 |
| 2041 | 100% | 88,171 | 77,317 | 32,624 | 733,367 |
| 2042 | 100% | 91,610 | 80,332 | 32,593 | 765,960 |
| 2043 | 100% | 95,182 | 83,465 | 32,562 | 798,522 |



TRUITT / McCullough Ginsberg Montano and Partners, LLP                    page  20

| Year | Portion of Year | Projected Gross Earnings [@ 3.9%] | Adjusted Earnings [(2) x (3) x 87.69%] | Present Value [@ 4.0%] | Cumulative Present Value |
|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) | (6) |
| 2044 | 100% | 98,895 | 86,721 | 32,530 | 831,052 |
| 2045 | 100% | 102,751 | 90,103 | 32,499 | 863,551 |
| 2046 | 100% | 106,759 | 93,617 | 32,468 | 896,019 |
| 2047 | 100% | 110,922 | 97,268 | 32,437 | 928,456 |
| 2048 | 100% | 115,248 | 101,061 | 32,405 | 960,861 |
| 2049 | 100% | 119,743 | 105,003 | 32,374 | 993,235 |
| 2050 | 100% | 124,413 | 109,098 | 32,343 | 1,025,578 |
| 2051 | 100% | 129,265 | 113,353 | 32,312 | 1,057,890 |
| 2052 | 100% | 134,306 | 117,773 | 32,281 | 1,090,171 |
| 2053 | 100% | 139,544 | 122,366 | 32,250 | 1,122,421 |
| 2054 | 100% | 144,987 | 127,139 | 32,219 | 1,154,640 |
| 2055 | 100% | 150,641 | 132,097 | 32,188 | 1,186,828 |
| 2056 | 100% | 156,516 | 137,249 | 32,157 | 1,218,985 |
| 2057 | 100% | 162,620 | 142,602 | 32,126 | 1,251,111 |
| 2058 | 100% | 168,962 | 148,163 | 32,095 | 1,283,206 |
| 2059 | 100% | 175,552 | 153,941 | 32,064 | 1,315,271 |
| 2060 | 100% | 182,398 | 159,945 | 32,033 | 1,347,304 |
| 2061* | 5% | 189,512 | 8,309 | 1,600 | 1,348,904 |
| | **Total:** | | **$3,390,005** | **$1,348,904** | |

* plaintiff's statistical date of retirement: January 18

Subtracting projected post-termination earnings from projected pre-termination earnings yields the loss of earnings in future years as presented in the table below.



**TRUITT / McCullough Ginsberg Montano and Partners, LLP**          page  21

| Adjusted Gross Earnings | Present Value | Future Value |
|---|---|---|
| Pre-Termination | $6,621,117 | $16,892,809 |
| Post-Termination | (1,348,904) | (3,390,005) |
| **Total:** | **$5,272,213** | **$13,502,804** |



## Employer Cost of Insurance-Based Benefits

As previously noted in the Background Facts and Assumptions section of this report, we value the employer cost of plaintiff's health insurance, in future years, at $9,759, in 2018 dollars. Further, we value the employer cost of disability and life insurance, in future years, at $1,037, in 2018 dollars.

To obtain a corresponding value in 2019 for health insurance, we apply a yearly increase of 4%, consistent with average increases in the Average Annual Premiums in recent years. Thus, the value of health insurance, in 2019, is estimated to be $10,149 ($9,759 x 1.04). [SOURCE: Employer Health Benefits, 2018 Annual Survey, The Kaiser Family Foundation and Health Research & Educational Trust, http://files.kff.org/attachment/report-2018-employer-health-benefits-survey, Figure 1.10.] To obtain a corresponding value in 2019 for disability and life insurance, we apply a yearly increase of 1.83%, based on Consumer Price Index data for the U.S. Thus, the value of disability and life insurance, in 2019, is estimated to be $1,056 ($1,037 x 1.0183). [SOURCES: Consumer Price Index, All Urban Consumers: U.S. City Average, U.S. Department of Labor, Bureau of Labor Statistics, http://www.bls.gov/cpi/; and Principal Economic Assumptions, *The 2019 Annual Report of the Board of Trustees of the Federal Old-age and Survivors Insurance and Federal Disability Insurance Trust Funds*, Table V.B1, http://www.ssa.gov/OACT/TR/2019/lr5b1.html#alt_2.]

To project the cost of health insurance in future years (beginning in 2020), we apply a 5% growth rate reflecting average increases in the Average Annual Premiums in recent years. [SOURCE:  Employer Health Benefits, 2018 Annual Survey, *ibid.*] To project the cost of disability and life insurance in future years (beginning in 2020), we apply a 2.6% growth rate reflecting expected increases in the general price level in future years. [SOURCE: Principal Economic Assumptions, *The 2019 Annual Report of the Board of Trustees of the Federal Old-age and Survivors Insurance and Federal Disability Insurance Trust Funds*, Table V.B1, http://www.ssa.gov/OACT/TR/2019/lr5b1.html#alt_2.]

We apply a discount rate of 4.0% to convert future values to present dollar amounts. Values in future years are calculated beginning October 1, 2019, and extend to Mr. Truitt's statistical retirement date (January 18, 2061). Application of the preceding information yields the employer cost of insurance premiums, in future years, calculated as follows:



**TRUITT / McCullough Ginsberg Montano and Partners, LLP**                 page  23

| Year | Portion of Year | Health Insurance Benefits [@ 5%] | Disability and Life Insurance Benefits [@ 2.6%] | Total [(3) + (4)] | Present Value [@ 4.0%] | Cumulative Present Value |
|---|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
| 2019 | 25% | $    2,537 | $     264 | $    2,801 | $ 2,801 | $     2,801 |
| 2020 | 100% | 10,656 | 1,083 | 11,740 | 11,288 | 14,090 |
| 2021 | 100% | 11,189 | 1,112 | 12,301 | 11,373 | 25,462 |
| 2022 | 100% | 11,749 | 1,141 | 12,889 | 11,459 | 36,921 |
| 2023 | 100% | 12,336 | 1,170 | 13,506 | 11,545 | 48,466 |
| 2024 | 100% | 12,953 | 1,201 | 14,154 | 11,633 | 60,100 |
| 2025 | 100% | 13,601 | 1,232 | 14,832 | 11,722 | 71,822 |
| 2026 | 100% | 14,281 | 1,264 | 15,545 | 11,813 | 83,634 |
| 2027 | 100% | 14,995 | 1,297 | 16,291 | 11,904 | 95,538 |
| 2028 | 100% | 15,744 | 1,330 | 17,075 | 11,997 | 107,535 |
| 2029 | 100% | 16,532 | 1,365 | 17,897 | 12,090 | 119,625 |
| 2030 | 100% | 17,358 | 1,401 | 18,759 | 12,185 | 131,811 |
| 2031 | 100% | 18,226 | 1,437 | 19,663 | 12,281 | 144,092 |
| 2032 | 100% | 19,137 | 1,474 | 20,612 | 12,379 | 156,471 |
| 2033 | 100% | 20,094 | 1,513 | 21,607 | 12,477 | 168,948 |
| 2034 | 100% | 21,099 | 1,552 | 22,651 | 12,577 | 181,526 |
| 2035 | 100% | 22,154 | 1,592 | 23,746 | 12,678 | 194,204 |
| 2036 | 100% | 23,262 | 1,634 | 24,895 | 12,781 | 206,985 |
| 2037 | 100% | 24,425 | 1,676 | 26,101 | 12,884 | 219,869 |
| 2038 | 100% | 25,646 | 1,720 | 27,366 | 12,989 | 232,858 |
| 2039 | 100% | 26,928 | 1,764 | 28,693 | 13,095 | 245,953 |
| 2040 | 100% | 28,275 | 1,810 | 30,085 | 13,202 | 259,155 |
| 2041 | 100% | 29,688 | 1,857 | 31,546 | 13,311 | 272,466 |
| 2042 | 100% | 31,173 | 1,906 | 33,079 | 13,421 | 285,887 |
| 2043 | 100% | 32,732 | 1,955 | 34,687 | 13,532 | 299,419 |



**TRUITT** / **McCullough Ginsberg Montano and Partners, LLP**                    page  24

| Year | Portion of Year | Health Insurance Benefits [@ 5%] | Disability and Life Insurance Benefits [@ 2.6%] | Total [(3) + (4)] | Present Value [@ 4.0%] | Cumulative Present Value |
|------|------|------|------|------|------|------|
| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
| 2044 | 100% | 34,368 | 2,006 | 36,374 | 13,645 | 313,064 |
| 2045 | 100% | 36,087 | 2,058 | 38,145 | 13,758 | 326,822 |
| 2046 | 100% | 37,891 | 2,112 | 40,003 | 13,874 | 340,696 |
| 2047 | 100% | 39,785 | 2,167 | 41,952 | 13,990 | 354,686 |
| 2048 | 100% | 41,775 | 2,223 | 43,998 | 14,108 | 368,793 |
| 2049 | 100% | 43,863 | 2,281 | 46,144 | 14,227 | 383,021 |
| 2050 | 100% | 46,057 | 2,340 | 48,397 | 14,348 | 397,368 |
| 2051 | 100% | 48,359 | 2,401 | 50,760 | 14,470 | 411,838 |
| 2052 | 100% | 50,777 | 2,463 | 53,241 | 14,593 | 426,431 |
| 2053 | 100% | 53,316 | 2,527 | 55,844 | 14,718 | 441,149 |
| 2054 | 100% | 55,982 | 2,593 | 58,575 | 14,844 | 455,992 |
| 2055 | 100% | 58,781 | 2,661 | 61,442 | 14,971 | 470,964 |
| 2056 | 100% | 61,720 | 2,730 | 64,450 | 15,100 | 486,064 |
| 2057 | 100% | 64,806 | 2,801 | 67,607 | 15,231 | 501,295 |
| 2058 | 100% | 68,047 | 2,873 | 70,920 | 15,363 | 516,658 |
| 2059 | 100% | 71,449 | 2,948 | 74,397 | 15,496 | 532,154 |
| 2060 | 100% | 75,021 | 3,025 | 78,046 | 15,631 | 547,785 |
| 2061^ | 5% | 3,939 | 3,104 | 7,042 | 1,356 | 549,141 |
| | | | **Total:** | **$1,449,856** | **$549,141** | |

^ plaintiff's statistical date of retirement: January 18



TRUITT / **McCullough Ginsberg Montano and Partners, LLP**                    **page  25**

## Compensation for Excess Taxes

In this section, we include an analysis of excess taxation using the loss figures previously calculated in this report. Plaintiff's actual excess tax liability can only be determined once the actual pre-tax award is known.

Prior to calculating the additional tax liability, a summary of the components analyzed in this appraisal report, which sum to the pre-tax award (PTA), is presented in the following table.

| Component of Analysis | Present Value | Future Value |
|---|---|---|
| Adjusted Earnings in Past Years | $26,070 | $26,070 |
| Adjusted Earnings in Future Years | 5,272,213 | 13,502,804 |
| Employer Cost of Insurance-Based Benefits | 549,141 | 1,449,856 |
| Total PTA: | $5,847,424 | $14,978,729 |

The normal income tax liability on each year's annual earnings would have been less than the tax liability imposed on a single lump-sum representing the total of past and future earnings losses. As explained in the Background Facts and Assumptions section of this report, it is appropriate to include this additional or excess tax liability as an element of damages in order to ensure plaintiff is made whole.

To calculate the additional tax liability, we first estimate the current average effective tax rate that would have been in effect for the plaintiff's earnings but for the termination and then the average effective tax rate that will be in effect when the plaintiff receives the PTA, and any other current income, all at once.

Second, we estimate the plaintiff's after-tax award (ATA) by applying to it the average effective income tax rate that would have been in effect but for the incident. The ATA is intended to be a replacement for the income that he or she would have received during the normal, scheduled course of time, instead of all at once.

Third, the make-whole objective, after all is said and done, is that the plaintiff be left with this ATA after the higher tax rate is applied to the PTA, such that the additional tax markup is simply intended to be passed through in taxes that will need to be paid. In order to accomplish this, we mark up the ATA by the higher average tax rate that will be in effect upon receipt of the award, plus other current income, to obtain the final award (FA). Then, the FA less the PTA is the tax markup that needs to be included as a loss component to make the plaintiff whole.



**TRUITT** / **McCullough Ginsberg Montano and Partners, LLP**                    **page  26**

1. Income Tax Liability Estimates: Annual Income and Lump-sum Award Income

Estimation of after-tax wages is based on a review of the information furnished in recent tax returns, anticipated changes in the plaintiff's taxation profile, and current tax laws and statutes. Based upon a review of federal and New York personal income tax schedules, and plaintiff's federal income tax returns, we estimate his pre-termination effective federal-state income tax liabilities as a single filer at 24%. [SOURCES: plaintiff's federal and state income tax returns for the years 2016 and 2017; Internal Revenue Service, 2018 Tax Rate Schedules, https://www.irs.gov/pub/irs-pdf/i1040gi.pdf; and 2018 New York State Individual Income Tax Rate Schedules, https://tax.ny.gov/pit/file/tax_tables.htm.]

To calculate the tax rate on the PTA, we also look at plaintiff's estimated taxable income in 2019 absent the award. Using plaintiff's 2019 total estimated income at $38,000 based upon his projected earnings for that year and a $12,200 standard deduction for a single filer, we calculate his projected 2019 taxable income at $25,800. [SOURCE: IRS Provides Tax Inflation Adjustments for Tax Year 2019, https://www.irs.gov/newsroom/irs-provides-tax-inflation-adjustments- for-tax-year-2019.]

If plaintiff were to receive the previously noted PTAs in 2019 in addition to his projected taxable income for 2019, we estimate that he would have average combined federal and state rates on the lump-sums estimated as shown in the following tables:

<div align="center">

Present Value

</div>

| Federal | NY | Combined Effective Tax Rate |
|---------|-----|------------------------------|
| (1) | (2) | (3) |
| 36% | 8% | 44% |



Future Value

| Federal | NY | Combined Effective Tax Rate |
|---------|-----|-----------------------------|
| (1) | (2) | (3) |
| 37% | 8% | 45% |

## 2. Calculation of ATA

Based on the tax rates presented above, the ATA is calculated as follows:

Present Value

| PTA | Combined Effective Tax Rate | ATA (1) x {1 - (2)} |
|------|-----------------------------|---------------------|
| (1) | (2) | (3) |
| $5,847,424 | 24% | $4,444,042 |

Future Value

| PTA | Combined Effective Tax Rate | ATA (1) x {1 - (2)} |
|------|-----------------------------|---------------------|
| (1) | (2) | (3) |
| $14,978,729 | 24% | $11,383,834 |

## 3. Estimation of Final Award

The final award (FA) is calculated by application of the following formula.

$$FA = (ATA) / (1 - t)$$

where ATA is the previously-calculated after-tax award and t is the average effective tax rate on the PTA. [SOURCE: adaptation of Tyler J. Bowles, and W. Cris Lewis, "Taxation of Damage Awards: Current Law and Implications," *Litigation Economic Digest*, Fall 1996, Volume 2, Number 1, pp. 73-77.]



**TRUITT** / **McCullough Ginsberg Montano and Partners, LLP**                    **page  28**

Thus, using the above formula and the preceding information, we calculate the award adjusted for the additional compensation for the tax liability imposed on a lump-sum award as follows:

Present Value

| ATA | Combined Effective Tax Rate | FA [(1) / {(1 - (2)}] |
|---|---|---|
| (1) | (2) | (3) |
| $4,444,042 | 44% | $7,935,789 |

Future Value

| ATA | Combined Effective Tax Rate | FA [(1) / {(1 - (2)}] |
|---|---|---|
| (1) | (2) | (3) |
| $11,383,834 | 45% | $20,697,881 |

After all is done, and after imposition of the higher tax rates on the FAs, we calculate that Mr. Truitt will receive the net amounts shown above, the same amounts he would have received normally but for the incident, after imposition of the normal, lower tax rate. He will thereby be made whole.

4. Additional/Excess Income Taxes

In order to establish the excess tax amount as a separate component of loss, we subtract the pre-tax award amount, PTA, from the final award amount, FA, as follows:



**TRUITT / McCullough Ginsberg Montano and Partners, LLP**          page  29

Present Value

| FA | PTA | Excess Tax Gross Up [(1) - (2)] |
|---|---|---|
| (1) | (2) | (3) |
| $7,935,789 | $5,847,424 | **$2,088,365** |

Future Value

| FA | PTA | Excess Tax Gross Up [(1) - (2)] |
|---|---|---|
| (1) | (2) | (3) |
| $20,697,881 | $14,978,729 | **$5,719,152** |



## Summary

The preceding findings evaluating the magnitudes of the loss components analyzed in this appraisal report are combined in order to obtain a total value of loss in present and future dollar amounts, presented as follows:

### Present Value

| Present Value | Component of Analysis |
|---|---|
| $  26,070 | adjusted earnings in past years |
| 5,272,213 | adjusted earnings in future years |
| 549,141 | employer cost of insurance-based benefits |
| 2,088,365 | compensation for excess taxes |
| **$  7,935,789** | **total present value of loss** |

### Future Value

| Future Value | Component of Analysis |
|---|---|
| $  26,070 | adjusted earnings in past years |
| 13,502,804 | adjusted earnings in future years |
| 1,449,856 | employer cost of insurance-based benefits |
| 5,719,152 | compensation for excess taxes |
| **$  20,697,881** | **total future value of loss** |

It is important to understand that the total present value loss figure is a present value amount (in 2019 dollars), representing a lump-sum payment needed at present to generate a flow of payments sufficient to compensate for the losses in each year of loss included in this appraisal. It is also important to understand that the total future loss figure is a cumulative value of loss and has not been discounted to present value. In addition, please note that pre-trial or pre-judgment interest has not been calculated. These interest losses are typically determined at the time of trial and would be in addition to the losses calculated in this appraisal report.

The preceding findings are based on information provided to us as of this date. They are subject to revision should additional information be forthcoming that would change any facts or assumptions upon which this analysis rests. We also note that pecuniary losses are an approximation and are provided by the economic expert as a guide to the trier-of-fact. [SOURCE: *Jones and Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 545-47 (1983).]



**Kristin Kucsma, M.A.**

*Qualifications Profile*

Principal of the Firm and Chief Economist
SOBEL TINARI ECONOMICS GROUP
293 Eisenhower Parkway, 2nd Floor
Livingston, NJ 07039
KKucsma@SobelTinariEconomics.com
973-992-1800

## Education

ABD in Economics, Rutgers University, New Brunswick, NJ
M.A. in Economics, Rutgers University, New Brunswick, NJ (1993)
B.A. in Economics / English Minor, Seton Hall University, South Orange, NJ, *summa cum laude* (1991)

## Fields of Specialization

Applied Microeconomic Theory, American Economic History, Monetary History of the United States, Macroeconomic Theory and Business Cycles, Banking Structure and Regulation

## Honors and Awards

Recognition Award, #1 Economic Expert, New York Law Journal, 2014, 2015, 2016, 2017, and 2018.
Best 50 Women in Business Award, NJBIZ, Class of 2017
"5.0" Teaching Commendation Award, Stillman School of Business, Seton Hall University, 2003-04
Teaching Commendation Award, Stillman School of Business, Seton Hall University, 2002-2003, 2001-2002.
Recognition Award, Educational Opportunity Program, Seton Hall University, 2003
Professor of the Year Award, Alpha Kappa Psi, Seton Hall University, 2002-2003, 2001-2002.
President's Award for Student Services, Seton Hall University, 2001
The Faculty Pirate Pride Award, Seton Hall University, 2000-2001
Feature of Faculty Profile, Seton Hall University Magazine, 2001

## Positions Held

**Principal of the Firm, Sobel & Co., January 1, 2016 - present**
In addition to my responsibilities as Managing Director and Chief Economist of the Sobel Tinari Economics Group (STEG), a wholly owned subsidiary of Sobel & Co., I represent and lead STEG as a division of Sobel & Co.



**Kristin Kucsma, M.A.**

**Positions Held (cont'd)**

Managing Director (since July 2014 and Chief Economist since March 2017), Sobel Tinari Economics Group, January 2008 - present
> *Primary responsibilities:* oversee the day-to-day operations of the group; analyze data, prepare reports, and provide expert testimony; manage our team of economists, analysts and research assistants and collaborate on the group's more complex cases; perform independent and co-authored research, present at national and regional conferences, regularly teach CLEs and lead other seminars, and serve as an active participant in the field of forensic economics.

President, Bull and Bear Consulting, September 2006 - December 2007
> Review portfolios of equities, fixed-income securities and mutual funds for clients; manage financial assets for several high-end clients; advise clients and refer them to specialists regarding long-term care, supplemental health insurance and a variety of trusts including qualified personal residential and generation skipping trusts.

Lecturer, Department of Economics, Drew University, September 2004 – August 2006
> *Courses Taught:* Money, Banking and the Macroeconomy; Principles of Microeconomics; Principles of Macroeconomics; Intermediate Macroeconomic Analysis; and Mergers and Manias: The Business of Banking

Faculty Associate, Department of Economics, Seton Hall University, Sept. 1999 - July 2004
> *Graduate Courses Taught:* The National Economy (MBA Level Macro); HUB 1 (Blend of Economics and Corporate Finance); *Undergraduate Courses Taught:* Principles of Microeconomics; Principles of Macroeconomics; Money and Banking; Intermediate Microeconomic Theory; Government and Business; Labor Economics; Small Scale Technology; and Economics in Our Nation's Capital.

Program Coordinator for Economic History Sessions, Eastern Economic Association, 2005 - 2007.

Faculty Advisor to Omicron Delta Epsilon, the International Honor Society in Economics, Drew University and Seton Hall University, September 1999 – August 2006.

Faculty Advisor for the Fed Challenge, Seton Hall University and the Federal Reserve Bank of New York, 2002-2004.

Co-chair and Project Coordinator for University Retention Committee, Seton Hall University, December 2000 – July 2004.

Adjunct Lecturer, Department of Economics, Seton Hall University, 1998 – 1999.

Lecturer, Department of Economics, Drew University, 1997 – 1999.

Instructor, Department of Economics, Saint Peter's College, on-campus as well as at corporate satellite centers, 1995 – 1998.

Instructor, Department of Economics, Rutgers University, New Brunswick NJ, 1992 – 1995.

Teaching Assistant, Department of Economics, Rutgers University, New Brunswick NJ, 1991 – 1992.



## Kristin Kucsma, M.A.

### Professional Activities

Executive Mentor for Seton Hall University's Women's Leadership Development Honors Program, 2017- present.
Member, American Economic Association, 2017 - present
National Association of Forensic Economics, 2010 - present.
Member, Eastern Economic Association, 1997 - present.
National Association of Forensic Economics, Chairperson, Software Committee, 2015 - 2017
Member, District Ethics Committee, Office of Attorney Ethics of the Supreme Court of New Jersey, 2010 - 2016.
Member, American Monetary Institute, 2006 - 2014
Member, Conference Organizing Committee, Eastern Economic Association, 2006
Co-Developer of Revised Business Writing Course, Stillman School of Business, Seton Hall University, 2003 – 04.
Member, CDI-7: Writing Intensive Workshop for Business, Seton Hall University, 2003 - 04.
Designer of Various Question/Answer Duos for Sophomore Assessment, Stillman School of Business, Seton Hall University, 2001 – 2004.
> Topics included the "Congested Parks Dilemma", the impact on the US economy of tobacco litigation, issues of market structure with respect to TIVO, the blackout of August 2003 that affected the northeast United States and the Martha Stewart litigation.
Guest Speaker, National Council of Negro Women, Seton Hall University, February 2004.

### Publications

"Loss of Services Calculations Should Not Incorporate a Personal Consumption Deduction," co-authored with Frank D. Tinari, The National Association Of Forensic Economics Newsletter, *The Forecast,* November 2017, pp. 9-11.
"How to Distinguish Between a Forensic Economist and an Accountant and Why it Matters When Evaluating Economic Damages," *The New Jersey Law Journal*, 2014 How-To Guide.
"How to Make Sure Your Economic Expert is Prepared for Cross-Examination," *The New Jersey Law Journal*, 2013 How-To Guide.
"Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: The State of New Jersey," co-authored with Frank D. Tinari, *Journal of Forensic Economics*, 21(2), June 2010, pp. 219-234. (To be updated in 2018)
   http://www.JournalofForensicEconomics.com/doi/pdf/10.5085/jfe21.2.219.
"State's Housing Rules Ignore Needs of Immigrants," co-authored with Frank D. Tinari, *Daily Record*, Morris County, NJ, August 30, 2009. (Note: article title is what is available electronically; newsprint copy is titled: "COAH Rules Hurt Immigrants").
White paper: Is Affordable Housing the Remedy to Perceived Discrimination Against Immigrants? co-authored with Frank D. Tinari, prepared for the Community Forum on Immigration and Education Issues, convened by the New Jersey State Advisory Committee to the United States Commission on Civil Rights, May 2009.



**Kristin Kucsma, M.A.**

**Publications (cont'd)**

"COAH Research is Full of Short-comings," co-authored with Frank D. Tinari, *Newark Star-Ledger,* April 1, 2009.

"Companionship, Advice, and Counsel Services," co-author, Section 640 of Chapter 6,The Value of Household Services, of *Determining Economic Damages,* by Gerald D. Martin, Ph.D., Costa Mesa, Ca: James Publishing, Inc., July 2008, pp. 6-7 - 6-11.

Wrote entries for *barter, cost of information, demand, the discount rate, the functions of money, price floors and ceilings and profit maximization* for Encyclopedia of Capitalism, Dr. Syed B. Hussain, Editor, Golson Books, Ltd., published 2004.

**Papers Presented**

"Loss of Services Calculation Should Not Incorporate a Personal Consumption Deduction," Northeast Business and Economics Conference, Stockton University, New Jersey, October 2018.

"Household Services: An Economist's Approach to Calculating the Market Value of Replacement Services," co-authored with Kenneth T. Betz, presented by Kenneth T. Betz, Northeast Business and Economics Conference, Stockton University, New Jersey, October 2018.

"A Note on Household Services: Updated Hourly Rates," co-authored with Kenneth T. Betz, presented by Kenneth T. Betz at the Eastern Economic Association Conference, Boston, Massachusetts, March 2018.

"Update to Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: The State of New Jersey," co-authored with Sarah A. Betz, presented by Sarah A. Betz at the Eastern Economic Association Conference, Boston, MA, March 2018.

"Loss of Services Calculations Should Not Incorporate a Personal Consumption Deduction," co-authored with Frank D. Tinari, presented by Frank D. Tinari at the Eastern Economic Association Conference, Boston, MA, March 2018.

"Valuation of Services Provided by Family Members: Focus on On-Call Services," Eastern Economic Association Conference, New York, New York,  February 25, 2017.

"A Comprehensive Assessment of Economic Damages in Wrongful Death Matters: Focus on On-call Services," Seminar sponsored by the Pennsylvania Association for Justice, P.A., Philadelphia PA, October 2015.

"The Crisis in Economics Education and Its Impact on Political Participation and Economic Growth," The American Monetary Institute Monetary Reform Conference, Chicago IL, September 2006.

"A Picture Comes into Focus: A Reexamination of the Crisis of 1877-78," Eastern Economic Association Conference, Philadelphia PA, February 2006.

"The Opportunity Cost of Undervaluing Core Concepts in Macroeconomics Courses," Eastern Economic Association Conference, Philadelphia PA, February 2006.



**Kristin Kucsma, M.A.**

**Papers Presented (cont'd)**

"A Framework for Teaching Money and Banking in a Liberal Arts Setting," as part of a panel
    discussion with Mary Lesser and Steven Cechetti, Eastern Economic Association
    Conference, New York NY, February 2005.
"Portrait of a Panic: The Crisis of 1877," Eastern Economic Association Conference,
    Washington DC, February 2004.
"Betrayed by the FDIC? A Preliminary Examination of the D'Oench, Duhme Doctrine and Its
    Impact on the Potential Efficiency of Banks in the United States," Eastern Economic
    Association Conference, New York NY, February 2003.
"Celebrating Economics as a Social Science,"  14th Annual Conference on Teaching Economics:
    Instruction and Classroom Based Research at Robert Morris University, Moon Township
    PA, February 2003.
"Deciphering the Mystery of Medieval Debasement," Eastern Economic Association
    Conference, New York NY, February 2001.

**Comments, Notes and Reviews**

Review for publisher of Laurence Ball's *Money and Banking* textbook, 2003 - 2004
Referee, "A Test of the Purchasing Power Parity Concept Including the Law of One Price and Its
    Applicability in International Business," *Journal of Applied Management,* South Orange,
    New Jersey, 1999

**Other Conference Activities**

Session Chair for the Economics Session, organized by the Northeast Business Economics
    Association, Stockton University, New Jersey, October 2018.
Session Organizer for the Forensic Economic Session organized by the National Association of
    Forensic Economics at the Eastern Economic Association Conference, Boston,
    Massachusetts, March 2018.
Discussant of paper titled, "Hyperbolic Discounting and the Defense Economist's Impact on
    Settlement Outcomes," session hosted by the National Association of Forensic
    Economics by the Allied Social Science Associations at the American Economic
    Association Conference, Philadelphia, Pennsylvania, January 6, 2018.
"Topics in Forensic Economics: Valuation of Services Provided by Family Members: Focus on
    On-Call Services,"  Presenter, session organized by the National Association of Forensic
    Economics at the Eastern Economic Association Conference, New York, New York,
    February 25, 2017.



**Kristin Kucsma, M.A.**

**Other Conference Activities (cont'd)**

"Current Developments in Testimony for the Defense: A Panel Discussion," Panelist, session organized by the National Association of Forensic Economics at the Eastern Economic Association Conference, Washington, D.C., February 27, 2016.

"A Comprehensive Assessment of Economic Damages in Wrongful Death Matters: Focus on On-Call Services," Seminar sponsored by the Pennsylvania Association for Justice, Philadelphia, Pennsylvania, October 2015.

Session Organizer for Undergraduate Panel: "Tax Reform in the US: Is A Consumption Tax the Answer?" Eastern Economic Association Conference, Philadelphia Pennsylvania, February 2006

Discussant for two panels: "Topics in Economic History" and "Teaching and Learning Economics: Achieving Desired Outcomes," Eastern Economic Association Conference, Philadelphia Pennsylvania, February 2006.

Discussant for two panels: "Personal Behavior: Time, Money, Risk and Trust" and "Lessons From the Past: Money, Trade and Wages," Eastern Economic Association Conference, New York New York, February 2001.

Discussant for panel on "Political and Economic Transformations," Northeastern Political Science Association and International Studies Association Conference, Philadelphia, Pennsylvania, November 1999.

"A Picture Comes Into Focus: A Reexamination of the Crisis of 1877-78," Work in Progress

"The Opportunity Cost of Undervaluing Core Concepts in Undergraduate Macroeconomics Courses," February 2006.

"Regulation of the US Banking Industry in the Aftermath of the Great Depression," Work in Progress, 2004.

"Increasing the Marginal Utility Derived From An Economics Course Through Experiential Education," Work in Progress, 2004.

"Betrayed by the FDIC? A Preliminary Examination of the D'Oench, Duhme Doctrine and Its Impact on the Potential Efficiency of Banks in the United States," 2001.

**Speaking Engagements**

"Valuing Economic Damages in Employment Law Cases," CLE program presenter, sponsored by Sobel Tinari Economics Group, Livingston, New Jersey, October 24, 2018.

"A Comprehensive Assessment of Economic Damages in Wrongful Death Matters Part II: Family Services," CLE program presenter, sponsored by Sobel Tinari Economics Group, Livingston, New Jersey, September 13, 2018.

"Assessing Economic Damages in Wrongful Death Matters Part I: Lost Income," CLE program presenter, sponsored by Sobel Tinari Economics Group, Livingston, New Jersey, June 12, 2018.

"The Economic Expert at Trial," CLE program co-presenter, *Bootcamp for Lawyers*, sponsored by The New York State Trial Lawyers Association, New York, New York, June 7, 2018.



**Kristin Kucsma, M.A.**

**Speaking Engagements (cont'd)**

"Quantifying Lost Profits," CLE program co-presenter, *Commercial Litigation from the Masters*, sponsored by The New Jersey State Bar Association, New Brunswick, New Jersey, May 31, 2018.

"Evaluating Economic Damages, Personal Injury, Part II," CLE program presenter, sponsored by Sobel Tinari Economics Group, Livingston, New Jersey, May 17, 2018.

"Recent Developments in Assessing Economic Damages," CLE program co-presenter, Boardwalk Seminar 2018, sponsored by the New Jersey Association for Justice, Atlantic City, New Jersey, May 11, 2018.

"The Missing Damages," CLE program co-presenter, Boardwalk Seminar 2018, sponsored by the New Jersey Association for Justice, Atlantic City, May 9, 2018.

"Mock Trial – Direct and Cross Examination of an Employability/Life Care Plan Expert and Economist at Trial," CLE program co-presenter, sponsored by CMCS Management, Inc., Woodbridge, New Jersey, April 24 2018.

"Assessing Economic Damages in Matters Involving Personal Injury & Wrongful Death," CLE program presenter, held at Gluck & Walrath LLP, Trenton, New Jersey, March 28, 2018.

"Assessing Economic Damages in Matters Involving Personal Injury: Lost Income," CLE program presenter, sponsored by Sobel Tinari Economics Group, Livingston, New Jersey, March 13, 2018.

"Medical Malpractice Trial: What You Need to Know," CLE program co-presenter, sponsored by The New York State Trial Lawyers Association, New York, New York, March 6, 2018.

"Valuing Economic Damages in Employment Law Cases," CLE program co-presenter, sponsored by CMCS Management, Inc., Iselin, New Jersey, November 1, 2017.

"The Celebrated Court Reporter," Keynote Speaker, CEU program, sponsored by the Susan Gioffre Court Reporting Seminar, Edison, New Jersey, October 28, 2017.

"Building The  House of Damages Using a Vocational Expert/Life Care Planner, and an Economist in Severe Child Injury Cases," CLE program co-presenter, sponsored by CMCS Management, Inc., Saddle Brook, New Jersey, October 17, 2017.

"Building Your House of Damages with Economic Experts," CLE program co-presenter, sponsored by The New York State Academy of Trial Lawyers, Brooklyn, New York, October 4, 2017.

"Building Your House of Damages with Economic Experts," CLE program co-presenter, sponsored by The New York State Academy of Trial Lawyers, Flushing, New York, September 25, 2017.

"Building Your House of Damages with Economic Experts," CLE program co-presenter, sponsored by The New York State Academy of Trial Lawyers, New York, New York, September 19, 2017.

"How to Excel at Direct and Cross Examination of an Economic Expert at Trial," CLE program co-presenter, sponsored by The Legal Intelligencer, Philadelphia, Pennsylvania, September 12, 2017.



**Kristin Kucsma, M.A.**

**Speaking Engagements (cont'd)**

"Bootcamp for the Seasoned Attorney: A Clinical Course in Advanced Trial Tactics," CLE program co-presenter, sponsored by The New York State Trial Lawyers Association, New York, New York, May 31, 2017.

"Analyzing Traumatic Brain Injury Cases Using Neurologists, Employability/Life Care Plan Experts, and Economists," CLE program co-presenter, sponsored by CMCS Management, Inc., Kenilworth, New Jersey, May 2, 2017.

"Mock Trial – Direct and Cross Examination of an Employability/Life Care Plan Expert and Economist at Trial," CLE program co-presenter,  sponsored by CMCS Management, Inc., East Rutherford, New Jersey, March 23, 2017.

"A Comprehensive Assessment of Economic Damages in Wrongful Death Matters," CLE program co-presenter, sponsored by the New Jersey State Bar Association, Iselin, New Jersey, November 21, 2016.

"Evaluating Economic Damages in Personal Injury Matters in New York," CLE program co-presenter, sponsored by the Westchester County Bar Association, White Plains, New York, November 8, 2016.

"Personal Injury and Economic Damages: Preparing Your Case," and "The Testimony of the Economist: Excelling at Direct and Cross Examination of Your Economic Expert," CLE program co-presenter, sponsored by CMCS Management, Inc., East Rutherford, New Jersey, October 19, 2016.

"How an Economist Projects Future Lifetime Care Costs," CLE program co-presenter, sponsored by CMCS Management, Inc., New York, New York, September 29, 2016.

"A Comprehensive Assessment of Economic Damages in Wrongful Death Matters," CLE program co-presenter, sponsored by the New Jersey State Bar Association, Atlantic City, New Jersey, August 12, 2016.

"Valuing Economic Damages in Cases Involving Catastrophic Injury & Wrongful Death in NJ," CLE program presenter, held at Messa & Associates, Philadelphia, Pennsylvania, July 20, 2016.

Participated in the New Jersey State Bar Association, 2016 Civil Trial Advocacy Summer Institute, sponsored by the American College of Trial Lawyers, New Brunswick, New Jersey, July 11, 2016.

"Direct and Cross Examination of Economic, Vocational and Life Care Planning Experts in the Catastrophic Injury Case: Use of Demonstrative Evidence," CLE program co-presenter, sponsored by CMCS Management, Inc., Saddle Brook, New Jersey, March 16, 2016.

"Presenting the Economist at Trial – A Live Demonstration with Expert" and "Panel Discussion on the Finer Points of Direct Examination," program co-presenter, sponsored by the New Jersey Association for Justice: Six Concurrent Seminars, New Brunswick, New Jersey, February 6, 2016.

"Valuing Economic Damages in Wrongful Death Cases," CLE program presenter, sponsored by Sobel Tinari Economics Group, Livingston, New Jersey, November 17, 2015.



**Kristin Kucsma, M.A.**

**Speaking Engagements (cont'd)**

"Deposing Your Economic Expert," Hudson County Inn of Court, Hudson County Community
        College Culinary Conference Center, Jersey City, New Jersey, November 9, 2015.
"Recent Developments in Assessing Economic Damages," CLE program co-presenter,
        sponsored by CMCS Management, Inc., Saddle Brook, New Jersey, October 29, 2015.
"An Introduction to Economic Damages," CLE program co-presenter, sponsored by Union County
        Bar Association, Summit, New Jersey, October 27, 2015.
"A Comprehensive Assessment of Economic Damages in Wrongful Death Matters:
        Focus on On-Call Services," presented as part of the CLE program, sponsored by
        Pennsylvania Association for Justice, P.A., Philadelphia, Pennsylvania, October 22,
        2015.
"Valuing Economic Damages in Cases Involving Catastrophic Injury," CLE program presenter,
        sponsored by Sobel Tinari Economics Group, Livingston, New Jersey,
        October 13, 2015.
"Valuing Economic Damages in Medical Malpractice Cases in New York," CLE program co-
        presenter, sponsored by NYLJ, Union League, New York, October 9, 2015.
"Introduction to Economic Damages," CLE program presenter, sponsored by Sobel Tinari
        Economics Group, Livingston, New Jersey, September 16, 2015.
"Valuing Economic Damages in Wrongful Death Cases," CLE program co-presenter, sponsored by
        the New Jersey Association for Justice,  Boardwalk Seminar, Atlantic City, New Jersey, May
        1, 2015.
"Valuing Economic Damages in Employment Law Cases," CLE program co-presenter, sponsored
        by  the Legal Intelligencer, Philadelphia, Pennsylvania, April 10, 2015.
"Telling the Damages Story: Effectively Proving Damages at Trial", CLE program presenter,
        sponsored by the New York State Academy of Trial Lawyers, New York, NY, April 30 and
        April 31, 2015.
"Building the House of Damages: Using a Vocational Expert, Life Care Planner, and
        Economist," CLE program presenter, sponsored by CMCS Management, Inc., Saddle
        Brook, New Jersey, March 26, 2015.
"How to Effectively Quantify Economic Damages in Personal Injury and Medical Malpractice
        Cases," CLE program presenter, sponsored by the NJAJ Pines Manor, Four Concurrent
        Seminars, Edison, New Jersey, February 28, 2015.
"Valuing Economic Damages in Wrongful Death Cases," CLE program co-presenter,
        sponsored by the Gloucester County Legal Education Association, Mantua Township,
        New Jersey, November 22, 2014.
"Valuing Economic Damages in Catastrophic Injury Cases,"  CLE program presenter,
        sponsored by the Gloucester County Legal Education Association, Mantua Township,
        New Jersey, November 22, 2014.
"Integrating Vocational Experts and Economics in Documenting Damages in Personal Injury
        Cases", CLE program co-presenter, sponsored by CMCS Management, Inc., Saddle Brook,
        New Jersey, October  23, 2014.



**Kristin Kucsma, M.A.**

**Speaking Engagements (cont'd)**

"Economic Damages, Proving Loss With Life Care Planners," Vocational Experts and
Economists in Personal Injury and Medical Malpractice Cases, CLE program co-
presenter, sponsored by NYSTLA Management, Inc., New York, New York, May 20 and
28, 2014.

"Use of an Economist in Litigated Matters," Hudson County Inn of Court, Hudson County
Community College Culinary Conference Center, Jersey City, New Jersey, April 21,
2014.

"The Use of a Vocational Expert/Life Care Planner and Economist in Assessing Damages in Child
and Adult Personal Injury Cases," CLE program co-presenter, sponsored by CMCS.
Management, Inc., Saddle Brook, New Jersey, March 20, 2014.

"How To Effectively Quantify Economic Damages in Personal Injury and Medical Malpractice
Cases," Clifford Inn of Court, Brownstone, Paterson, NJ, February 4, 2014.

"Documenting Vocational and Economic Damages in Personal Injury Cases," CLE program co-
presenter, sponsored by CMCS Management, Inc., Mount Laurel, New Jersey, December
11, 2013.

"How to Effectively Quantify Economic Damages in Personal Injury and Medical Malpractice
Cases", CLE program co-presenter, sponsored by Comprehensive Medical Case
Management, Inc., Philadelphia, July 30, 2013.

"The Economist's Role: Lost Profits & Employment Litigation," CLE program co-presenter,
sponsored by the New Jersey Law Journal, Edison, NJ, May 1, 2013.

"The Economist's Role: Lost Profits & Employment Litigation", CLE program co-presenter,
sponsored by the New Jersey Law Journal, Florham Park, NJ, April 10, 2013.

"Documenting Vocational & Economic Damages in Catastrophic Personal Injury Cases," CLE
program co-presenter, sponsored by CMCS Management, Inc., Saddle Brook, New
Jersey, March 14, 2013. (video)

"Measuring Lost Profits," Worrall F. Mountain American Inn of Court, Morristown, NJ,
October 22, 2012.

"Proving Damages to the Jury," CLE program co-presenter, sponsored by New York State Academy
of Trial Lawyers, October 23, 2012.

"Using an Economist to Prove Damages in Non-Catastrophic Personal Injury Cases," CLE
program co-presenter, sponsored by CMCS Management, Inc., Saddle Brook, New
Jersey, October 11, 2012. (video taped)

"Some Key Issues in the Use of Economic Experts," co-presenter, *Litigation Summit*,
Philadelphia, September 13, 2012. (audio/video taped)

Mock Trial, participant (economic expert for plaintiff), CLE program sponsored by New Jersey
Law Center, New Brunswick, NJ, July 11, 2012.

"Valuing Economic Damages in Matters Involving Employment Litigation," Brennan/Vanderbilt
Inn of Court, East Hanover, NJ, June 25, 2012.



**Kristin Kucsma, M.A.**

**Speaking Engagements (cont'd)**

"Proof of Damages in a Wrongful Death Case" at the "Proving Damages in Personal Injury
    Cases: How BIG is Your Case?" seminar, sponsored by the Gann Legal Education
    Foundation, Renaissance Woodbridge in Iselin, New Jersey, April 22, 2011.
"How Outstanding Plaintiff Lawyers Build Their Case on Damages - and How Effective
    Defense Lawyers Can Destroy It," Obstetric Malpractice: Cutting-Edge Techniques for
    Bringing and Defending Perinatal Brain Injury Cases, national conference, continuing
    education seminar, Chicago, IL, November 9 - 11, 2009.
"Deposition of an Economist from the Witness' Viewpoint", Taking and Defending Effective
    Depositions in New York, continuing education seminar, New York, NY, March 12, 2009.
"The Role of the Economist in Assessing Damages for Defendants," with co-presenter Frank D.
    Tinari, Ph.D., GEICO, Huntington, NY, July 31, 2008.
"Economic and Statistical Issues in Assessing Damages for Defendants," with co-presenter
    Frank Tinari, Ph.D, LUM , DRASCO & POSITAN, Roseland, New Jersey, June 2, 2008.
"Economic Damages: Overlooked Elements in Personal Injury and Wrongful Death Cases,"
    ATLA-NJ Women Attorney's Dinner Meeting, Mountainside, New Jersey, April 9, 2008.

**Kristin Kucsma, M.A.**

**Trials, Arbitrations, Mediation, and Depositions**

Ms. Kucsma has testified in over 300 trials, arbitrations, and mediation in both federal and state courts. She has testified in over 420 depositions. A detailed listing of Ms. Kucsma's trial and deposition testimony is available upon request.

Ms. Kucsma has prepared numerous economic loss evaluations for use in litigation regarding economic damages, earnings, fringe benefits, household services, guidance, companionship, employment discrimination, lost profits, commercial damages, breach of contract, defamation, divorce, and punitive damages.

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Mary Murphy-Clagett as Temporary Administrator for the Estate of Pietro Macaluso vs. A.O. Smith Corporation, et al., 50-B Hearing, on behalf of the Plaintiff, Supreme Court of The State of New York, County of New York, Index No.: 190311/15, December 10, 2018.

John Christ and Jill Christ, individually and as adoptive parents and guardians of Shayne Christ, a minor child vs. Preston McCollum and Allstate Insurance Company, on behalf of the plaintiff, de bene esse deposition, in The Commonwealth of Pennsylvania, Court of Common Pleas of Pike County, No.: 1209-2014, November 30, 2018.

Melissa Migut vs. State of New Jersey, Administrative Office of the Courts; Glenn A. Grant, J.A.D. in his capacity as the Acting Administrator Director of the Courts; Harvey M. Goldstein, in his capacity as the Manager of the Intensive Supervision Program and Jasper Reeves, in his capacity as Building Manager, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Mercer County, Docket No.: MER-L-934-14, November 15, 2018.

Jefferies LLC and Jefferies Group, LLC vs. Rick Alan Davidson, FINRA Dispute Resolution Arbitration No. 17-02868, on behalf of the respondent, Kraus & Zuchlewski, LLP, New York, New York, November 12, 2018.

Doreen DiToro, as the Executrix of the Estate of Michael DiToro, deceased, and Doreen DiToro, Individually vs. Richmond University Medical Center, Frank Scafuri, D.O., Madhvi Rana, M.D., Frank Scafuri, III, D.O., P.C., and Kikkeri Vinaya, M.D., on behalf of the plaintiff, Supreme Court of the State of New York, County of Richmond, Index No.: 151024/2015E, November 9, 2018.

Mirvella Dulanto, as Administratrix of the Estate of Yesenia Arango and Frank Javier, individually vs. Robert Cameron, M.D., Richard Frimer, M.D., Leon Kranzler, M.D., David G. Rusch, M.D., White Plains Hospital and White Plains Radiology Associates, P.C., on behalf of the plaintiff, Supreme Court of the State of New York, County of Westchester, Index No.: 52239/2015, October 31, 2018.

Denise Jarius and David Jarius, her husband vs. Yuan Lin, Mingjun Liu, John Does 1-10 (fictitious names, real names unknown), ABC Companies 1-10 (fictitious names, real names unknown), on behalf of the plaintiff, de bene esse deposition, Superior Court of New Jersey Law Division: Middlesex County, Docket No.: MID-L-3211-16, October 29, 2018.

Marek Jedrzejek vs. 4L Equipment Leasing, LLC, et al., on behalf of the plaintiff, Supreme Court of the State of New York, County of Queens, Index No.: 7081102015, October 23, 2018.

Susan Kasman, Administratrix of the Estate of Lee Kasman and Susan Kasman, Individually vs. Shivang Trivedi, MD, Cardiology Associates of Somerset County, John Doe, Jane Doe, RN, et al., on behalf of the plaintiff, Superior Court of New Jersey Law Division: Somerset County, Docket

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

No.: SOM-L-1237-15, October 22, 2018.

Philippe Carr-Forster vs. Andrew Landis, Hilary Landis and Emma Landis, an infant, Felix Kwakye and Slate Cab Corporation, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No.: 160354/15, October 17, 2018.

Amanda Holley vs. Port Authority of New York and New Jersey, Port Authority of New York and New Jersey Police Department, Superintendent Michael A. Fedorko, Chief Michael Brown, Sergeant Erick Torres, and John and Jane Does 1-10, (fictitious names), on behalf of the plaintiff, United States District Court for the District of New Jersey, Civil Action No.: 14-7534-BRM-DEA, October 3, 2018.

Makiko Murakami and Jeffrey Tam, as Co-Administrators of the Estate of Ryo Murakami, Deceased, and Mako Murakami, Individually, vs. Lutheran Medical Center, Steven Athanaikl, M.D., Margaret Kuhn-Basti, M.D., New York Presbyterian Columbia University Medical Center, William A. Bulman, M.D., Matthew Bacchetta, M.D., E. Sander Connolly, Jr., M.D., and Jan Claasen, M.D., on behalf of the plaintiff, Supreme Court of the State of New York, County of Kings, Index No.: 12975/2014, September 27, 2018.

Lukasz Bedkowski vs. Shiavone Construction Co., LLC, Ryan Yanosh, and John Doe and Jane Does 1-10, fictitious names for unknown parties, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Hudson County, Docket No.: HUD-L-348-17, September 10, 2018.

Linda Steele-Denardo, as Executor of the Estate of Donald Denardo, deceased, and Linda Steele-Denardo, Individually, vs. Memorial Hospital for Cancer and Allied Diseases, Memorial Sloan Kettering Cancer Center, Kathryn Beal, M.D., Pamela Salerno, P.A., Viviane Tabar, M.D., and "John Doe" and "Mary Doe," on behalf of the plaintiff, Supreme Court of the State of New York, County of Richmond, Index No.: 100028/2014, July 27, 2018.

Adel Shehata vs. Jose Koruthu, on behalf of the plaintiff, Supreme Court of the State of New York, County of Richmond, Index No.: 100042/15, July 20, 2018.

Aida Vergara vs. Metropolitan Authority and New York City Transit Authority, on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, Index No.: 309841/12, July 19, 2018.

Karen Schramm, as wife and Guardian of Michael Schramm and Karen Schramm, Individually vs. The City of New York, Hudson River Park Trust and Gramercy Group, Inc., Mediation, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No.: 158043/2017, July 18, 2018.

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Helena Ross, as Administratrix, of the Estate of Emory F. Ross, deceased, as Administratrix Ad Prosequendum for the heirs-at-law of Emory F. Ross, Deceased and Individually vs. Eddy Simon, M.D., JFK Medical Center, John Doe (a fictitious name) and North Jersey Emergency Physicians, PA, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Essex County, Docket No.: ESX-L-5733-15, July 16, 2018.

Allison R. Richardson vs. SIGMA Transportation Inc., Sadam Maroun Jaser and Noel D. Santana-Amadi, on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, Index No.: 303399/14, July 5, 2018.

Alban Hoxha vs. Robert Castillo, MTA New York City Transit Authority and Metropolitan Transportation Authority, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No.: 161292/2014, June 20, 2018.

David Straka vs. BASF, a corporation or business organization, David Freidinger, Individually, and/or as agent, servant, or employee of BASF, Deon Carter, Individually, and/or as agent, servant, or employee of BASF, and John Does 1-100, said names being fictitious and unknown, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Union County, Docket No.: UNN-L-1025-16, June 12, 2018.

Jeanie Lynn Baily Kohl, as Executor of the Estate of James Elwood Kohl, Jr., deceased vs. Derrick D. Young, on behalf of the plaintiff, United States District Court for the Northern District of New York, Case No: 8:17-cv-692 (BKS/CFH), June 8, 2018.

Alliance International Inc., vs. Bloomage Freda Biopharm U.S.A., and Bloomage Freda Biopharm Co., Ltd., Arbitration, on behalf of the plaintiff, Superior Court of New Jersey Chancery Division: Morris County, Docket No.: MRS-L-001084-17, May 30, 2018.

Keith Hudson vs. Town of Morristown, Karl Peter Demnitz, Individually and in his official capacity as Chief of Police, John Doe(s) 1-10, and XYZ Corp(s). 1-10, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Morris County, Docket No.: MRS-L-2343-15, May 24, 2018.

Russell J. Lester vs. JD Carlisle Development Corp., MD Carlisle Development Corp., and 835 6th Ave Master LP, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No.: 152112/12, May 15, 2018.

Jose Bauta vs. Greyhound Lines Inc., Sabrina Anderson, Akos Gubica, Karoly Gubica, CAV Enterprise, LLC, First Group America, Inc. and First Group PLC, on behalf of the plaintiff, United States District Court, East District Court of the State of New York, Docket No.: 14-3725, May 4, 2018.

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Angela Marrero, Individually and as Administratrix of the Estate of Louis Marrero, Deceased vs. Louis Faiella, III, M.D., Advanced Urology Centers of New York, P.C., and Integrated Medical Professionals, on behalf of the plaintiff, Supreme Court of the State of New York, County of Suffolk, Index No.: 021329/2012, April 30, 2018.

Frederick F. Fagal, Jr. vs. Marywood University, on behalf of the plaintiff, United States District Court, Middle District of Pennsylvania, No.: 3:14-cv-02404-ARC, April 23, 2018.

John Astriab, Clyde Banks, James Buckley, William Cullinane, Richard DeStefano, David Labruno, Ezio Scerbo, John Whalen vs. City of Jersey City, Jersey City Police Department, Mayor Jerramiah Healy, in his individual and official capacities, and Business Administrator Brian O'Reilly, in his individual and official capacities, on behalf of the plaintiffs, United States District Court for the District of New Jersey, Newark Vicinage, Civil Action No.: 06-3790 (FSH), April 20, 2018.

Shane Forbes and Charles Forbes vs. Natalie Nickol and Lawrence Nickol, on behalf of the plaintiff, The Court of Common Pleas of Bucks County, Pennsylvania, Docket No.: 2014-06490, April 18, 2018.

Peter I. Chukwuneke vs. TCBA Ambulance, Inc., and Kevin Kirton, on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, Index No.: 302745/2011, April 5, 2018.

Joseph J. Wiles and Terry Jean Wiles as the Administrators of the Estate of Michael Wiles vs. Daniel D. Files, D.O., and Bucks Family Medicine, P.C., on behalf of the plaintiff, Court of Common Pleas, Bucks County, Pennsylvania, Civil Action No.: 2009-13261, April 4, 2018.

MaryAnne Cosimano vs. Township of Union, Frank Bradley, and Daniel Zieser, on behalf of the plaintiff, United States District Court of New Jersey, Civil Action No.: 10-5710 (JLL), April 4, 2018.

Bria Albinder-Miletsky, an infant by her Natural Mother and Guardian Ad Litem, Cindi Albinder-Miletsky, Cindi Albinder-Miletsky, Individually, and Jason Miletsky, Individually vs. Manuel Alvarez, M.D., R & R Perinatal Associates, Hackensack University Medical Center, Magadalena J. Pawlik, A.P.N., Monique P. Donnelly, R.P.N., John Does 1 through 10 (fictitious names, true identities unknown), Jane Does 1 through 10 (fictitious names, true identities unknown), Entities A through Z (fictitious names, true identities unknown), on behalf of the plaintiff, Superior Court of New Jersey Law Division: Bergen County, Docket No.: BER-L-4342-14, April 2, 2018.

Thomas Kosch and Eileen Kosch, his wife vs. Gabriel Gonzalez, SuperValu Inc., John Does 1-10, ABC Corps. 1-10, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Passaic County, Docket No.: PAS-L-03301-15, March 28, 2018.

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Francina Elysee, Administrator of the Estate of Issac Elysee, Deceased, and Francina Elysee, Individually vs. Rajasree Roy, M.D., North Shore Long Island Jewish Health System, Inc., Joseph Ghassibi, M.D., St. Luke's Hospital, St. Luke's Roosevelt Hospital Center Foundation Inc., and Continuum Health Partners, Inc., on behalf of the plaintiff, Supreme Court of The State of New York, County of New York, Index No.: 805276/12, March 27, 2018.

Nancy Velasquez, Individually and as Administrator Ad Prosequendum of the Estate of Michael Mercado, vs. Newark Police Department, City of Newark, Police Officer Tyrone Moore, Police Officer Victor Garcia, John and Jane Does 1-10, (fictitious unidentified individuals), and ABC Corp 1-10, (fictitious unidentifiable business entities), on behalf of the plaintiff, Superior Court of New Jersey Law Division: Essex County, Docket No.: ESX-L-9943-13, March 19, 2018.

Richard John Powers, Individually and as Executor of the Estate of Meg Felice Charlop, deceased vs. Kyong Kwan Min, New York City Transit Authority, Metropolitan Transportation Authority, MTA Bus Company, Manhattan and Bronx Surface Transit Operating Authority, Wayne W. Forde, City of New York, John or Jane Doe 1 through 3 or ABC Corp. or Entity 1 through 3, the names being fictitious and unknown to plaintiff and being the person, party, entity, partnership, corporation, employer, agent, servant, or assign for whom Kyong Kwan Min was operating his motor vehicle, or third party who serviced, repaired or maintained the premises, or was responsible for implementing and keeping safe in good repair bicycle lanes at the premises, as described in the complaint, on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, Index No: 307701/10, March 7, 2018.

Mark P. Gardner, vs. Metropolitan America KEC Prospect LLC, John Doe (1-10) (fictitious names representing unknown defendants who owned, operated, controlled and maintained the property), and ABC Corp. (1-10) (fictitious names representing unknown defendants who performed maintenance and snow removal activity at the property), on behalf of the plaintiff, Superior Court of New Jersey Law Division: Essex County, Docket No.: ESX-L-3248-15, March 5, 2018.

Ana Pereira vs. Michael Esposito, M.D., et al., on behalf of the plaintiff, Superior Court of New Jersey Law Division: Monmouth County, Docket No.: MON-L-1397-12, February 27, 2018.

Graciela Terra vs. Mount Sinai Hospital of Queens and George J. Tsioulias, M.D., on behalf of the plaintiff, Supreme Court of The State of New York, County of Queens, Index No.: 12606/13, January 31, 2018.

Basilia D'Amico, Individually and as Administratrix Ad Prosequendum of the Estate of Franco D'Amico vs. Meherwan Burzor Joshi, M.D., Oscar E. Verzosa, M.D., Ellen T. Leavell, M.D., Paul J. Bolanowski, M.D., Vanessa Mae S. Abrina, M.D., Maged M. Lotfalla, M.D., Trinitas Regional Medical Center, Rutgers, The State University, ABC Entities 1-10 and John Does 1-20, unknown entities and persons, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Union

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

County, Docket No.: UNN-L-788-15, January 26, 2018.

Jason Brownrigg vs. Steven David Shamah and Hyman M. Shamah, on behalf of the plaintiff, Supreme Court of the State of New York, County of Kings, Index No.: 8104/2015, January 22, 2018.

Anna Margitich and Paul Margitich vs. CareOne & Wayne-SNF, CareOne Management, LLC, Black Oak Ridge, LLC, Des Holding Co., Inc., Des-C 2009 GRAT, Adina Straus, Bethia Straus, Daniel Straus, Jeffrey Rubin, Moshael Straus, Helene Scarnegi, John Doe Medical Director, John and/or Jane Does, M.D., John and/or Jane Roes, "A" through "Z" (fictitious names to describe unknown defendants), and ABC Corporations "A" through "Z" (fictitious names used to describe unknown defendants), individually, jointly, severally and in the alternative, Arbitration, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Passaic County, Docket No.: PAS-L-246-13, December 19, 2017.

Euklin Smith-Tucker and Billy Tucker vs. Steven J. Ravich, Barry M. Katzman and Orthopaedic Care & Surgery, P.C., on behalf of the plaintiff, Supreme Court of The State of New York, County of Kings, Index No.: 9775/03, December 11, 2017.

Donna Watson and Richard Watson, her husband vs. Barry Hoskins, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Warren County, Docket No.: WAR-L-416-15, November 29, 2017.

Michael Fava vs. Vincent Moss, M.D., Harold Chung-Loy, M.D., Surgical Practices Associates, JFK Medical Center, John Does (fictitious names of those persons whose true identities and/or culpability are not presently known, who participated in plaintiff's treatment during the course of his admission of 5/13/13), Jane Roes (fictitious names of those persons whose true identities and/or culpability are not presently known, who participated in plaintiff's treatment during the course of his admission of 5/13/13), and ABC Groups (fictitious name of any group practice, association, entity, of whom or which any individual defendant is an agent, servant or employee), on behalf of the plaintiff, Superior Court of New Jersey Law Division: Middlesex County, Docket No.: MID-L-4567-14, November 13, 2017.

Roderick Trusty, Individually and as Personal Representative of the Estate of Julie Trusty, and parent of minor children, Blake Trusty and Baylee Trusty vs. Joy Patterson, ARNP, Gainseville Emergency Medical Associates, P.A., Charles Wilson, M.D., Clarence Uy, M.D., Hospital Internal Medicine P.A., North Florida Regional Medical Center, Inc., d/b/a North Florida Regional Medical Center, Suzanne Zentko. M.D., Brian Werbel. M.D., Genevieve Farnham, ARNP, and Interventional Cardiologists of Gainesville, P.A.., d/b/a The Cardiac and Vascular Institute, on behalf of the plaintiff, The Circuit Court of the 8th Judicial Circuit In and For Alachua County, Florida, Case No.: 2015-CA-004503, November 9, 2017.

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Colombina Frosch, as Executrix of the Estate of Steven A. Frosch, deceased, and Colombina Frosch, Individually vs. the City of New York and Antonio G. Decaro, on behalf of the plaintiff, Supreme Court of the State of New York, County of Queens, Index No.: 17285/14, October 20, 2017.

Donald Longo and Deborah Longo vs. Desmond Nunan. D.O., South Jersey Health Emergency Physician Services, South Jersey Health System, South Jersey Healthcare Elmer Hospital A/K/A SJH Elmer Hospital, et al., on behalf of the plaintiff, Superior Court of New Jersey Law Division: Cumberland County, Docket No.: CUM-L-745-12, September 28, 2017.

Morgan Courtney Wang vs. Neil N. Sexton, PV Holding Corp., Avis Budget Car Rental, LLC, and Budget Rent A Car System Inc., on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No.: 155406/13, September 27, 2017.

Nancy Velasquez, Individually and as Administrator Ad Prosequendum of the Estate of Michael Mercado vs. Newark Police Department, City of Newark, Police Officer Tyrone Moore, Police Officer Victor Garcia, John and Jane Does 1010, (fictitious unidentified individuals) and ABC Corp 1-10, (fictitious unidentifiable business entities), on behalf of the plaintiff, Superior Court of New Jersey Law Division: Essex County, Docket No.: ESX-L-9943-13, September 21, 2017.

Deanna Velazquez vs. Xiao Chen, John Does, Mary Does, ABC Partnerships and XYZ Corporations, jointly, severally and in the alternative, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Camden County, Docket No.: ATL-L-5792-14, September 20, 2017.

Regina Fucile vs. Dr. Robert Pampin, Newton Medical Center, Dr. Stephen Golombek, Morristown Medical Center, Dr. Christopher O. Okechukwu (formerly pleaded as John Doe A.), Dr. Ellen Benson (formerly pleaded as Jane Doe A), John Does B-Z, (said names being fictitious as their identities are presently unknown), and Jane Does B-Z, (said names being fictitious as their identities are presently unknown), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Morris County, Docket No.: MRS-L-2260-12, September 19, 2017.

Aisha Kelly, as Administratrix of the Estate of Stefanus Watson vs. New York City Health & Hospitals Corporation, et al., on behalf of the plaintiff, Supreme Court of the State of New York, County of Queans, Index No.: 995/08, August 25, 2017.

Theresa Quibell, The September 11th Victim Compensation Fund (VCF) Hearing, Claim No.: VCF0002067, August 22, 2017.

Sharon Steudle vs. Yvonne Schafer, John Does, Mary Does, ABC Partnerships and XYZ

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Corporations, jointly, severally and in the alternative, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Gloucester County, Docket No.: GLO-L-933-15, July 19, 2017.

Arkadiusz Lotowski, The September 11th Victim Compensation Fund (VCF) Hearing, Claim No.: VCF0052951, July 12, 2017.

Elizabeth Rota and Michael Rota, her husband vs. Jerusalem II Pizza, Yehuda Nakar, Encompass Insurance, Co., et als., on behalf of the plaintiff, Superior Court of New Jersey Law Division: Bergen County, Docket No.: BER-L-4673-15, July 10, 2017.

Gail Infantes and William Infantes vs. Steven Binenebaum, M.D., Sukrat Dwivedi, DO, Andrew Lee, M.D., Tisha Tan, M.D., Ajay Mathur M.D., Barnabas Health Inc., Monmouth Medical Center, Specialty Surgical Associates, et als., on behalf of the plaintiff, Superior Court of New Jersey Law Division: Essex County, Docket No.: ESX-L-8893-14, June 30, 2017.

Jonathan A. Botey vs. Robert D. Green, Conwell Corporation, and FFE Transportation Services, Inc., on behalf of the plaintiff, The United States District Court For The Middle District of Pennsylvania, Civil Action No.: 3:12-CV-01520, June 16, 2017.

Brenda Wynter, on behalf of the plaintiff, lifetime care costs, Supreme Court of the State of New York, County of Kings, May 30, 2017.

Debra Warren, Executrix of the Estate of Robert Warren, and Debra Warren, Individually, vs. Christopher P. Muenzen, M.D., Charles Carey, PA, Christopher P. Muenzen, M.D. PA, John Doe, M.D., Mary Roe, RN, and XYZ Corp. (fictitious names), on behalf of the plaintiff, Superior Court of New Jersey Law Division: Morris County, Docket No.: MRS-L-2017-13. May 11, 2017.

James Greene vs. American Elevator & Machine Corp., Padded Wagon Express, Inc., Oak Leaf Moving, Inc., 157 East 57th Street LLC, Solil Management, LLC and Plaza Circle Enterprises, LLC, on behalf of the plaintiff, Supreme Court of The State Of New York, County of Bronx, Index No.: 307445/08, May 11, 2017.

Mario Nichilo vs. Wenger Construction Co., The City Of New York and the New York City School Construction Authority, on behalf of the plaintiff, Supreme Court of the State of New York, County of Richmond, Index No.: 102729/12, May 10, 2017.

William Marks, Individually and as Personal Representative of the Estate of Jeanne Marks, deceased vs. Brian Coleman, M.D., Justin Bartl, PA-C, South Palm Orthopedics, P.A., and Delray Medical Center, on behalf of the plaintiff, The Circuit Court of the 15th Judicial Circuit In and For Palm Beach County, Florida, Case No.: 2015 CA 013574 AI, May 4, 2017.

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Risa Rosenberg, Individually and as Executrix of the Estate of Gerald Lazar, vs. Englewood Hospital and Medical Center, Inc., Mitchell Spinnell, M.D., Russell Gura, M.D., Jacquilin A. Watts, R.N., AMN Healthcare, Inc., d/b/a "American Mobile," John Doe and ABC Corp., on behalf of the plaintiff, Superior Court of New Jersey Law Division: Bergen County, Docket No.: BER-L-1818-14, May 2, 2017.

Joanna Barbagallo, as Administratrix of the Estate of Linda Murphy, deceased, Joanna Barbagallo as Administratrix of the Estate of Sean T. Murphy, deceased, Hannah Murphy, an infant under the age of 14 years, by her Guardian of the Person, Joanna Barbagallo, and Andrew Murphy, an infant under the age of 14 years, by his Guardian of the Person, Joanna Barbagallo, vs. William Grant LeMaster, D.O., Irene Hollander Margolis, LCSW, John T. Mather Memorial Hospital of Port Jefferson New York, Inc., and Outpatient Behavioral Health Services, on behalf of the plaintiff, Supreme Court of the State of New York, County of Richmond, Index No.: 1022763/09, May 1, 2017.

Lisa D'Amore vs. Douglas D'Amore, Arbitration, on behalf of the plaintiff, Superior Court of New Jersey Chancery Division - Family Part: Monmouth County, Docket No.: MON-FM-13-190-15-E, April 18, 2017.

Leonard Hoffman and Rosalia Hoffman vs. Biltmore 47 Associates LLC, Manhattan Theater Club Inc., The Biltmore Theater Corporation, The Biltmore Theater Group Inc., Sweet Construction Corp., Biltmore Theater Independent Manager Corp., Biltmore Theater LLC, The Jack Parker Corporation, Biltmore Tower LLC, Parker Second LLC, Parker Theater Associates LLC and Sweet Construction of Long Island LLC, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No.: 1080095/06, April 17, 2017.

Jo Ann M. Wolf, Executrix of the Estate of George J. Wolf, deceased, and Jo Ann M. Wolf, individually vs. Richard M. Mauriello D.O., Advocare Berlin/Berlin Medical Associates P.A., John Doe #1-15 (fictitious), Jane Roe #1-15 (fictitious), and John Doe Employers #1-15 (fictitious), individually, jointly, severally, and/or in the alternative, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Camden County, Docket No.: CAM-L-4165-13, April 12, 2017.

MaryAnne Cosimano vs. Township of Union, Frank Bradley, and Daniel Zieser, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Union County, Docket No.: UNN-L-3316-10, April 7, 2017.

Nicholas Valvo vs. City Of New York and New York City Department of Sanitation, on behalf of the plaintiff, United States District Court Eastern District of New York, Case No.: 1:13-CV-06562, April 6, 2017.

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Alexander Son vs. Derrick Senior, New Jersey Transit Corporation, New Jersey, John Does 1-20, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Essex County, Docket No.: ESX-L-1380-15, March 24, 2017.

Harold Hansen vs. Rite Aid Corp., Eckerd Corporation, Craig Muriello, Michelle Caga, Lisa Ford, John Doe (1-10), Jane Doe (1-10), and XYZ Corp (1-10), on behalf of the plaintiff, Superior Court of New Jersey Law Division: Monmouth County, Docket No.: MON-L-4790-08, March 22, 2017.

Juan Pineda vs. Byrne Dairy, Inc., and Michael Gannon, on behalf of the plaintiff, United States District Court Southern District of New York, Case No.: 7:13-CV-6821, March 22, 2017.

Manzoor Ahmad vs. The City Of New York, New York City Police Department and David Engram, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No.: 150871/2013, March 17, 2017.

Mary Duffy, as Guardian of the Person and Estate of Steven Duffy, an incapacitated person vs. Sandra McAdams and/or John Doe 1-5 fictitious name, on behalf of the plaintiff, de bene deposition, Livingston, NJ, Superior Court of New Jersey Law Division: Camden County, Docket No.: CAM-L-4491-14, March 3, 2017.

Domenico Maceri, Individually, and as Administrator Ad Prosequendum of the Estate of Jaqueline Garcia-Maceri (Deceased) vs. The Chandelier Catering, John Does 1-10, and ABC Corporations 1-10, (fictitious designations for persons and entities whose true identities are presently unknown that negligently caused and/or were otherwise responsible or liable for Plaintiff's damages), on behalf of the plaintiff, Superior Court of New Jersey Law Division: Hudson County, Docket No.: HUD-L-605-15, February 27, 2017.

Stephen Middlebrook and Mary Middlebrook vs. Michael T. Clark, M.D., Khanh Hoang Dinh, R.P.A., Syracuse Orthopedic Specialists and St. Joseph's Hospital Health Center, on behalf of the plaintiff, de bene esse deposition, Garden City, NY, Supreme Court of the State of New York, County of Onondaga, Index No.: 2014EF845, February 16, 2017.

Ekaterini Giannikios vs. Kathyrn M. Carney-Cole, on behalf of the plaintiff, Supreme Court of The State of New York, County of Nassau, Index No.: 600948/2013, February 16, 2017.

Terry Polt vs. Andrew C. Loesberg, M.D., Hunterdon Radiologic Assoc., David F. Kroon, M.d., and Stephen M. Schwartz, M.D., Hunterdon Otolaryngology Associates and The Hunterdon Medical Center and ABC Corps (fictitious hospitals) and John Does 1-6 (fictitious names representing the class of as yet unknown physicians, nurses, persons or entities affiliated or connected with the

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

above-named corporate defendants and/or with the individual defendants in this matter or with plaintiff's care, and who, vicariously or directly were responsible for the other medical provider's actions or failures), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Somerset County, Docket No.: SOM-L-427-12, February 13, 2017.

Arthur Ruff, Individually and as Administrator Ad Prosequendum of the Estate of Jimeta Yashone Moseley-Ruff, (Deceased) vs. Newark Beth Medical Center, Yvonne Wright-Cadet, M.D., Monroe Karetzky, M.D., Martin Larry Gimowsky, M.D., and David Nunez, M.D., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No.: ESX-L-6561-08, February 8, 2017.

Kenneth Couillard and Francine Couillard  vs. The Shaw Group Inc., C.M. Camparetti, April A. Clark and Womens Professionals, LLP, 50-B Hearing on behalf of the plaintiff, Supreme Court of The State of New York, County of New York, Index No.: 111969/10, January 30, 2017.

Estate of Linda Pizzano by her Executor and Proposed Administrator Ad Prosequendum Thomas P. Pizzano, and Thomas P. Pizzano, Individually vs. Overlook Medical Center, John N. Franzese, M.D., Paul M. Starker, M.D., Michael Solomon, M.D., Tamir Ben-Menacheman, M.D., Terrence H. Lee, M.D., Individuals Signing May 14-17, 2011 Infectious Disease Consult, Individuals Signing the May 22, 2011 Infectious Disease Consult, Individuals Signing May 25, 2011 Infectious Disease Consult, Individuals Signing and Co-Signing May 7-14, 2011 Surgery Notes, Individuals Signing and Co-Signing May 16-19, 2011 Surgery Notes, Individuals Signing and Co-Signing May 21-23, 2011 Surgery Notes, Individuals Signing and Co-Signing May 7-24, 2011 GI Notes, Individuals Signing and Co-Signing May 8, 2011 Note Signed at 8:25 a.m., Individuals Signing and co-Signing May 11, 2011 Notes Signed at 12:15 a.m., Individuals Signing and Co-Signing May 11, 2011 Note Signed at 5:30 a.m., Individuals Signing and Co-Signing May 18, 2011 Note Signed at 3:40 a.m./p.m., Individuals Signing and Co-Signing May 9-11, 2011 Medicine Note, Individuals Signing and Co-Signing May 14, 2011 Medicine Note, Individuals Signing and Co-signing May 16-17, 2011 Medicine Note, Individuals Signing and Co-signing May 19, 2011 Medicine Note, Individuals Signing and Co-Signing May 23, 2011 Medicine Note, Individuals Signing and Co-Signing May 25, 011 Medicine Note, Individuals Signing and Co-Signing May 14, 2011 ICU Note, Individuals Signing and Co-Signing May 14, 2011 Note Signed at 9:10 p.m., Individuals Attending May 14, 2011 ICU Note, Individuals Signing and Co-Signing May 15, 2011 PGY1 7:00 a.m./p.m. Note, Individuals Signing and Co-signing May 16, 2011 PGY-1 Critical Care Note and John Does (s), M.D., and/or Jane Doe(s), M.D., Richard Roe(s), and/or Jane Roe(s), and XYZ Corporations 1-5, (said names being fictitious and whose present identities are unknown), on behalf of the plaintiff, Superior Court Of New Jersey, Law Division: Essex County, Docket No.: ESX-L-3443-13, January 26, 2017.

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Lauro G. Pomasan as Administrator Ad Prosequendum of the Estate of Ricardo Pomasan, Deceased vs. the American Legion, Highlands Twin Light, NJ Post 143; M&D Property Management, LLC d/b/a Off The Hook Restaurant and Bar; M&D, Inc. d/b/a Off The Hook Restaurant and Bar; Paul Ritter; John and Jane Does (1-10); and XYZ Corporations (1-10), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Monmouth County, Docket No.: MON-L-5310-11, January 25, 2017.

Kelli Rivera vs. Best Transit Corp., Wagner M. Alcivar, Operation Prison GAP, Inc., Ford Motor Company, Warrick Industries, Inc. d/b/a Goshen Coach, and J&R Tours, LTD., on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, Index No.: 17408/94, January 20, 2017.

Michael Billok, Individually and as Proposed Executor of the Estate of Kimberlee Billok, Deceased, and Michael Billok, as Natural Guardian to Madison Billok, Grace Billok, and Samuel Billok, Minor Children vs. Georgia-Pacific, LLC, and Union Carbide Corporation, on behalf of the plaintiff, Supreme Court of the State of New York, County of Saratoga, Index No.: 001848/2015, January 19, 2017.

Fred Bonda vs. City of Elizabeth, Elizabeth Fire Department, Christian Bollwage, Individually and In His Official Capacity, Onofrio Vitullo, Individually and In His Official Capacity, Edward Sisk, Individually and In His Official Capacity, Thomas McNamara, Individually and In His Official Capacity, and Mark Chai, Individually and In His Official Capacity, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Union County, Docket No.: UNN-L-1979-13, January 18, 2017.

Jason Rivera vs. GRM Information Management Services Inc., GRM Document Management, Fran Mulnick Parker and Moishe Mana, Delaware River Valley Leasing Corp., and Alain Woolley, on behalf of the plaintiff, Supreme Court of the State of New York, County of Kings, Index No.: 22648/2012, January 17, 2017

Maria Hernandez, Individually and as Administrator Ad Prosequendum and General Administrator of the Estate of Eugenio Cortez, vs. Cesar Cruz, John Doe #1-5, ABC Corp. #1-5, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Union County, Docket No.: UNN-L-4404-14, January 12, 2017.

Deborah J. Stazak and Shawn M. Stazak, her husband vs. Bayonne Medical Center, Stuart Myers, M.D., John Coccaro, M.D., Mahmoodah Perveen, M.D., Nighthawk Radiology Services, Ian Matsuura, M.D., Edward Fobben, M.D., Bayonne Medical Center Radiology Services, Doctor Doe (a fictitious name representing a class of fictitious doctors), Nurse Roe (a fictitious name representing a class of fictitious nurses), Robert Doe and/or ABC Corp. (fictitious names

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

representing a class of fictitious defendants who were employed by the defendant hospital), ABC Hospital (a fictitious name representing a class of fictitious defendants), John Does (a class of fictitiously named defendants), Doe Physician Group, PA and/or Doe Physician Group, PC and/or Doe Managed Care Company, (fictitious designations representing the class of as yet unknown corporate entities affiliated or connected in any manner with the individual defendants in this matter or with plaintiff's care and vicariously, directly or administratively responsible for the other medical providers actions or failures or plaintiff's injury), John/Jane Roes 1-5 (unknown medical aides and/or assistants responsible for the care of the Plaintiff), Robert/Roberta Roes 1-5 (presently unknown Administrators responsible for policy and procedure at Bayonne Medical Center), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, Docket No.: MID-L-4453-12, December 15, 2016.

Boris Khazin vs. TD Ameritrade Holding Corporation, TD Ameritrade, Inc., Amerivest Investment Management Company and Lule Demmissie, Individually, FINRA Dispute Resolution Arbitration No. 13-4149, on behalf of the claimant, Biebelberg and Martin Law Office, Manhattan, New York, November 9, 2016.

Manuel Cruz Barbecho  vs. The City of New York, New York City Housing Authority, M.A., Angelides, Inc., Hudson Meridian Construction Group, LLC, and Stonewall Contracting Corp., et als., on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Docket No.: 1019702007, November 2, 2016.

Jeffrey Boslet vs. Randy Klein, M.D., The Doctor Is In, and John Does 1-100, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Hunterdon County, Docket No.: HNT-L-127-14, October 26, 2016.

Michael Friedman vs. Nancy L. Koury, John Does 1-10 ( representing individuals and/or entities whose identities are presently unknown), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Ocean County, Docket No.: OCN-1967-14, October 21, 2016.

Thomas Magee, The September 11th Victim Compensation Fund (VCF) Hearing, Claim No.: VCF0069123, October 20, 2016.

Judy Komlodi, as Guardian for Michelle Komlodi, an incapacitated person vs. Sharad Patel, M.D., Anne Picciano, M.D., et als., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, Docket No.: MID-L-5951-06, October 19, 2016.

Lee Ann Horton, Administratrix and Administratrix Ad Prosequendum of the Estate of Shaina Horton, vs Linda Stanley, M.D., Louis Wesley, M.D., John Does (fictitious names of healthcare providers who cared for the decedent during the relevant time period, whose true identities and/or

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

culpability is not presently know), et als., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Camden County, Docket No.: CAM-3171-12, October 18, 2016.

Madeline Alverio, individually, and as Administrator of the Estate of Julio Alverio, vs. The Brooklyn Hospital Center, Bariatric Surgery Center at the Brooklyn Hospital, Stephen S. Carryl, M.D., et al.s., on behalf of the plaintiff, Supreme Court of The State of New York, County of Kings: Docket No.: 3664/2011, October 13, 2016.

Christina Brigliadoro Administratrix ad Prosequendum of the Estate of Thomas Brigliadoro, Christina Brigliadoro, Individually vs. Joo Yup Shaun Chun, M.D., Valley Hospital, Valley Emergency Room Associates, PA., et, als., on behalf of the plaintiff, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, Docket No.: BER-L-9615-13, October 11, 2016.

Jeffrey Gorsak and Thomas Orr, Esquire, as Trustee of Bankruptcy Estate of Jeffrey Gorsak, vs. Navistar, Inc. (F/k/a) International Harvester Company, ABC, Inc. (1-10), et als., Superior Court of New Jersey, Law Division: Hunterdon County, Docket No.: HNT-L-558-12, September 28, 2016.

Hussein M. Agiz vs. Heller Industrial Parks, Inc., Georgia Pacific Harmon Recycling, LLC, John Wiley & Sons, Inc., Lagasse Brothers Inc., United Stationariness, Inc. Taylored Services LLC, ADI Logistics, Celebrity International, NFI Distribution, A/K/A National Distribution Center, DNP International, OVED Apparel Corporation, et als., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, Docket No.: MID-L-4520-13, September 20, 2016.

Carmine S. Cortese, as Executor of the Estate of Barbara Anne Cortese, vs. Kanga N. Sundaram, M.D., Allergy and Clinical Immunology Center, P.A., Aaron Chevinsky, M.D., et als., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Morris County, Docket No.: MRS-L-817-13, September 14, 2016.

Jesse Diaz vs. City of Trenton, James Hall, individually and as an agent of the City of Trenton, Leonard Carmichael, individually and as an agent of the City of Trenton, Qareeb Bashir, individually and as an agent of the City of Trenton, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Mercer County, Docket No.: MER-1058-14, September 7, 2016.

Daryl Whatts vs. Ronald Clark, on behalf of the plaintiff, Supreme Court of the State of New York, County of Westchester: Docket No.: 2205-2014, August 3, 2016.

Bernard Belzi, Individually and as Personal Representative of the Estate of Patricia Belzi, deceased, and as legal guardian and parent of A.B., minor vs. Plantation General Hospital Limited Partnership d/b/a Plantation General Hospital; Andrew Agbi, Docket No.:, et als., on behalf of the plaintiff, State

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

of Florida, Division of Administrative Hearings: Docket No.: 15-3711MA, Fort Lauderdale, Florida, July 28, 2016.

Metehan Kutbettin Erim Arbitration vs. J.P Morgan Securities LLC aka JPMorgan Chase & Co., Manuel Ruiz, Michael Ayerov, Craig Alan Pruett, et als., Law Office of Jason LeBoeuf, Livingston, New Jersey, July 26, 2016.

Evelyn Rodriguez, vs. Raritan Bay Medical Center, Michael Sears, DPM, John Kramer, DPM, et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, Docket No.: MID-L-2809-11, July 15, 2016.

Przemyslaw Ksepka, vs. The City of New York, et al., on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No.: 111542-10, July 12, 2016.

Zulfiqar Ali vs. Belcrest Apartments LLC, on behalf of the plaintiff, Supreme Court of the State of New York, County of Kings, Index No.: 11394-13, June 13, 2016.

Joan Pykosh, individually and as Executrix of the Estate of Michael Pykosh vs. James Najarian, M.D., and John Doe 1-100, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Morris County, Docket No.: MRS-L-757-13, May 18, 2016.

Juana Fernandez, as Administrator Ad Prosequendum of Miguel A. Marte vs. Al & John, Inc. T/a Glen Rock Ham, John Does 1-10, ABC Corp 1-5 (name being fictitious), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No.: ESX-L-8931-12, May 12, 2016.

Timothy Habersham, vs. Jimmy Seenath & Rye Ambulette Transport, Inc., on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, Docket No.: 305541/10, May 11, 2016.

Rene H. Manlapig, et al. vs. Jeremy Horace Jupiter, et al., on behalf of the plaintiff, United States District Court, Southern District of New York, Docket No.: 14 CV-235-LGS, May 9, 2016.

Janet Nunez vs. Wells Fargo Bank, United Counties, Thomas Reuters, John Doe ( name being fictitious) and ABC Corp. (name being fictitious), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Union County, Docket No.: UNN-L-2972-13, April, 28, 2016.

Peter Liquari and Rebecca Liquari vs. Jennifer Combs, Procura Management Inc., et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Monmouth County, Docket No.: MON-L-327-13, April 21, 2016.

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Richard Evans vs. Yonkers Contracting Company, Inc., Gotham Construction Company, LLC, River Place III, LLC, and Silverstein Properties, Inc., on behalf of the plaintiff, Supreme Court of New York, County of New York, Docket No.: 107866/09, April 18 and 19, 2016.

John Amico, as Administrator of the Estate of Jennifer Amico, and John Amico, Individually, vs. Sanjaya JHA, M.D., and Michael Yen, M.D., and Hudson Valley Cardiovascular Associates, P.C., on behalf of the plaintiff, Supreme Court of the State of New York, County of Dutchess, Docket No.: 2013/771, April 15, 2016.

Anthony J. Lucca and Toni Lucca vs. Mary A. Sorenson, on behalf of the plaintiff, United States District Court, District of New Jersey, Docket No.: 1:12-cv-05890-JHR-KMW, March 24, 2016.

Jose Gonzalez vs. County of Hudson, Hudson County Sheriff's Department, Sheriff Frank X. Schillari, individually and in his official capacity, Chief Andrew Conti, Captain William Joy, Captain Thomas Cerwinski, et al., on behalf of the plaintiff, Superior Court of New Jersey Law Division: Hudson County, Docket No.: HUD-L-2353-13, March 23, 2016.

Vanessa Russy and Lee Russy vs. Hackensack University Medical Center and Jeffrey Barrata, D.O., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, Docket No.: BER-L-L3606-12, March 21, 2016.

Thomas Phillips vs. Powercraft Corporation, Von Rohr Equipment Corp. & KMCP, LLC, on behalf of the plaintiff,  Supreme Court of The State of New York, County of Bronx, Docket No.: 300459/10, March 17, 2016.

Sally Walker Kelly, Administratrix Ad Prosequendum of the Estate of John Becker Kelly, and Sally Walker Kelly, Individually vs. Atlantic Health System, Inc., Morristown Medical Center, Emergency Medical Associates of New Jersey, PA., Steven P. Gohsler, M.D., Alfredo Tapia, M.D., et al., on behalf of the plaintiff, Superior Court of New Jersey, Law, Divison: Morris County, Docket No.: MRS-2862-11, March 15, 2016.

Mary Jean Alsina vs. Millburn Township Schools/Board of Education and John Does 1-10, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No.: ESX-3020-13, March 7, 2016.

Mary Jean Alsina vs. Millburn Township Schools/Board of Education and John Does 1-10, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No.: ESX-3020-13, March 1, 2016.

Michael J. Pulaski, Individually and as Administrator of the Estate of Sarah E. Pulaski, deceased and

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Rene Paradis vs. Children's Hospital of Philadelphia, Children's Hospital of Philadelphia Practice Association and Children's Health Care Associates, Inc., on behalf of the plaintiff, Court of Common Pleas Philadelphia, County Civil Division- Law: Docket No.: 13080250, February 10, 2016.

Paul Darcy vs. SL Green Realty Corp., 673 First Avenue Associates L.P., 673 First Associates, L.P., Yates Restoration Group LTD and Barr & Barr, Inc., on behalf of the plaintiff, Supreme Court of The State of New York, County of the Bronx: Docket No.: 304063/2012, January 27, 2016.

Eugene Stolowski vs. 234 East 178th Street, LLC, and the City of New York, on behalf of the plaintiff, Supreme Court of The State of New York, County of the Bronx: Part IA-2 : Docket No.: 8850/05, January 13, 2016.

Estate of Joseph G. DiBernardo vs. 234 East 178th Street, LLC, and the City of New York, on behalf of the plaintiff, Supreme Court of The State of New York, County of the Bronx: Part IA-2, Docket No.: 8850/05, January 13, 2016.

Joseph G. Cool, Sr. vs. 234 East 178th Street, LLC, and the City of New York, on behalf of the plaintiff, Supreme Court of The State of New York, County of the Bronx: Part IA-2 , Docket No.: 8850/05, January 13, 2016.

Eileen Bellew, as Administratrix of the Estate of John G. Bellew vs. 234 East 178th Street, LLC, and the City of New York, on behalf of the plaintiff, Supreme Court of The State of New York, County of the Bronx: Part IA-2 , Docket No.: 8850/05, January 13, 2016.

Tiffany D. Cianci vs. FSB Operating Company, LLC, d/b/a Four Seasons Hotel Baltimore, on behalf of the plaintiff, de bene esse deposition, Livingston, New Jersey, In the Circuit Court for Baltimore City, Docket No.: 24-C-14-004979, January 6, 2016.

Michael Newland and Vernisea Newland vs. David Ward, Allied Surgical Group, P.A., Somerset Medical Center, Richard Wittenborn, John/Jane Doe Physicians 1-10, and John/Jane Doe Healthcare Providers 1-10, on behalf of the plaintiff, Superior Court of New Jersey Law, Division: Middlesex County, Docket No.: MID-L-8303-11, January 4, 2016.

Mushander Brown vs. Metropolitan Transit Authority, New York City Transit Authority, The City of New York, Ronnie Hamlin and Betty J. Foster, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Docket No.: 115539/2008, December 15, 2015.

Ana Espinal vs. New York City Health & Hospitals Corporation, on behalf of the plaintiff, Supreme Court of The State of New York, County of Queens: Part 15, Docket No.: 11336-08, November 18,

SOBEL TINARI
ECONOMICS GROUP

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

2015.

Claudia Burzichelli and Robert Burzichelli vs. Carole Lytle, M.D., Bridgewater Medical Group, Bernard Terry, M.D., Associated Radiologists, P.A., et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, Docket No.: MID-5438-12, November 13, 2015.

Chaya Morrison and Raymond Morrison vs. Alan Miller, M.D., John Lloyd, M.D., Daniel Wambold, M.D., Bergen Orthopaedic Surgery and Sports Medicine, P.A., The Valley Hospital, Valley Health System, John Does 1 through 100, et al., on behalf of the plaintiff, Superior Court Of New Jersey, Law Division: Ocean County, Docket No.: OCN-L-403-12, October 26, 2015.

Bienvenido Velasquez vs. United States Postal Services, United States of America, and Jane Doe, on behalf of the plaintiff, United States District Court, Eastern District of New York, Docket No.: 14-CV-1397, October 14, 2015.

Francine Comforto, As Administratrix of the Estate of Paul G. Comforto, Deceased and Francine Comforto, Individually vs. Rosetta Grella, M.D. and Joshi Abraham John, M.D., North Shore Syosset Hospital and Eugenio Tassy, on behalf of the plaintiff, Supreme Court of The State of New York, County of Nassau, Docket No.:48758-11, Re-trial September 22, 2015.

Bahadur Singh and Harbinder Singh, H/W; Sukhwant and Jagdev Kaur, H/W; and Ajaib Singh and Mandee Singh, H/W vs. Thomas Alfano, Julia Alfano, Gurmeet Singh, John Doe (1-10) and John Doe Entities (1-10), individually, jointly, severally and/or in the alternative, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Mercer County, Docket No.: MER-L-666-11, September 9, 2015.

William Adams vs. Randy W. Edwards, Enterprise Rent-A-Car Company, Inc., Elrac, Inc., Cambridge Integrated Services Group, Inc., Brandon Edwards, Estate of Marvin J. Gustafuson, Foremost Insurance Company, and John Doe, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Warren County, Docket No.: WRN-L-7-10, August 6, 2015.

Dennis Lipinski Administrator of the Estate of Erica Leibowitz-Lipinski, deceased vs. Edward T. Krupp, M.D.; Crescent Internal Medicine Group, LLC, et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No.: ESX-L-5645-12, July 21, 2015.

Michael Parker Administrator and Administrator Ad Prosequendum for the Estate of Mildred Parker; and Michael Parker, individually vs. Basel Bataresh, M.D., et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Passaic County, Docket No.: PAS-2082-11, July 16, and 21, 2015.

SOBEL TINARI
ECONOMICS GROUP

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Christopher Marconi vs. First Quality Properties I, LLC, First Quality Enterprise Inc., Haleh Damaghi and Kambiz Damaghi, on behalf of the plaintiff, United States District Court, Eastern District of New York, Docket No.: 13CV5367, June 29-30, 2015.

Kia Song Tang vs. Glocap Search LLC, and Adam Zoia, on behalf of the plaintiff, United States District Court, Southern District of New York, Docket No.: 14CV1108, June 23, 2015.

Sylvia Davis vs. CPS 1Realty Group LLC, and Tishman Construction Corp., on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No.: 100485/08, June 19, 2015.

Dewon Wilson vs. Joseph Giacomo, Carmel Giacomo, Renaissance at Raritan Valley-Franklin Township, New Jersey, ABC Corporation 1-10; and John Doe, 1-10 (owners, tenants, or other entity or person responsible for maintenance and/or snow/ice removal at 24 Esplanade Drive, Somerset, New Jersey), on behalf of the plaintiff, Superior Court of New Jersey, Law-Division: Middlesex County, Docket No.: MID-L-7351-12, June 16, 2015.

Celso Roberto Planta vs. Edwards S. Martin 3rd and John Doe, first and last names are being fictitious and unknown to plaintiff, on behalf of the plaintiff, Supreme Court of The State of New York, County of Queens, Index No.: 24272/12, June 16, 2015.

Albert Wolf vs. Fujitsu America, Inc., John Does 1-10, said names being fictitious individuals; Jane Does 1-10, said names being fictitious individuals; ABC Corps. 1-10, said names being fictitious corporations or business organizations; and ABC Entities 1-10, said names being fictitious entities or business organizations, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, Docket No.: BER-340-13, June 8, 2015.

Robert Bump and Mary Rose Bump vs. Michael Yen, M.D., Lee Marcus, M.D., The Heart Center and Vassar Brothers Medical Center, on behalf of the plaintiff, Supreme Court of The State of New York, County of Duchess, June 2, 2015.

Carol Ann Evangelou vs. New Jersey Manufacturers Insurance Company, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, Docket No.: BER-L1412-13, May 28, 2015.

Robert Ronceray vs. Township of Millburn & Township of Millburn Police Department, on behalf of the plaintiff, Superior court of New Jersey, Law Division: Essex County, Docket No.: ESX-L-5495-12, May 26, 2015.

Mary Beth Daras, Individually, and as Executrix of the Estate of Chris J. Daras vs. Thomas R.

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Murray, M.D., Anesthesia Associates of Morristown, P.A.; Atlantic Cardiology Group LLP; AHS Hospital Corporation, et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Morris County, Docket No.: MRS-L-1390-11, May 14, 2015.

Anthony Matsur vs. Chase Investment Services Corp., Alberto Chavez, John Cholankeril, Heidi Emmert Respondent, FINRA Dispute Resolution Arbitration No.: 11-04242, on behalf of the claimant, Berkan Garth De Santiago-Keene Law Office, Newark, New Jersey May 11, 2015.

Jeffrey S. Downs, Esq. vs. Anapol Schwartz, PC, Sol Weiss, Esq., Joel Feldman, Esq., Michael Monheit, Esq., Mark J. LeWinter, and Raynes McCarty, PC, Stephen R. Haynes, Esq., Martin K. Brigham, Esq., Harold I Goodman, Esq.,on behalf of the plaintiff, United States District Court, District of Pennsylvania, Docket No.: 2:14-cv-00630, May 7, 2015.

Juan Vargas vs. Peter Scalamandre & Sons, Inc., Ferrara Bros. Building Materials Corp., RAD & D'Aprile Construction Corp., Total Safety Consulting, LLC, and Ab Green Gansevoort, LLC, personal injury, on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, Docket No.: 302608/08, May 6, 2015.

Ronald Denig and Jennifer Denig vs. Mohammed Ishaq, John Doe 1-5 and XYZ Corporation 1-10, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, Docket No.: MID-L-2406-12, April 28, 2015.

Sara Machicado a/a/o the Estate of Jose Machicado, deceased, Sara Machicado, Individually, David Machicado, an infant by his mother Sara Machicado, and Sheila Machicado vs. Donna Paradise, Town of North Hempstead, John Doe & Doe d/b/a Doe Landscaping Co., on behalf of the plaintiff, Supreme Court of The State of New York, County of Nassau, Docket No.: 5767/09, April 24, 2015.

Chaya Applegrad, a Minor by Her Mother and Guardian ad Litem, Esther Applegrad, Individually and Gedalia Applegrad individually, vs. Eric Bentolila, M.D., an individual, Valley Hospital, an entity, Kourtney Kaczmarski, R.N.M an individual, Mary Brow, an individual, Yie Hsien Chu, M.D, an individual, John Does 1-10 and Jane Does 3-10, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Passaic County, Docket No.: PAS-L-908-08, April 13 and April 14, 2015.

Darlene Briscoe and Daniel Flynn vs. Elrac, Inc., Enterprise Rent-A-Car Company and Michael Agricola, on behalf of the plaintiff, Supreme Court of The State of New York, County of Nassau, Docket No.: 005864/09, March 23 and March 24, 2015.

Anthony Bianco, an infant by his Mother and Natural Guardian, Maura Bianco vs. Steven R. Sherwin, Jennifer H. Johnson, Seth Plancher and Winthrop University Hospital, on behalf of the plaintiff, Supreme Court of The State of New York, County of Nassau, Docket No.: 601321/09,

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

March 23, 2015.

Alexandra Rodriguez vs. Joselito Rivera and or John Doe #1-6, Bryan C. Distefano, Jennifer M. Mikula, jointly, severally and or in the alternative, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Gloucester County, Docket No.: GLO-L-811-12, March 4, 2015.

Raymond Kurz and Susanna Kurz vs. St. Francis Hospital, Roslyn, New York, Cardiothoracic Surgery, P.C., Harold A. Fernandez, M.D., The Interventional Heart Group PLLC, Antonio P. Madrid, Joseph Minadeo, M.D., Manhasset Opthalmology, P.C., Robert Broderick, M.D., and Laura Schoenberg, M.D., on behalf of the plaintiff, Supreme Court of the State of New York, County of Nassau, Docket No.: 10-11604, February 24, 2015.

Albert Leip, Jr. vs. Princeton University, Sordoni Skanska Construction Company, Inc., Central Metals, Inc., John Does and Jane Does (fictitious designations, ABC Partnerships (fictitious designations), ABC Company (fictitious designations), and Defendant Company (fictitious designations), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Mercer County, Docket No.: MER-L-002564-07, February 5, 2015.

Richard Chisholm and A. Katherine Chisholm, his spouse, vs. R.T. Vanderbilt Company, Inc., Individually and as successor interest to Gouverneur Tale Company, Inc., on behalf of the plaintiff, Supreme Court of the State of New York, County of Schenectady, Docket No.: 2012-1056, January 28, 2015.

Estate of Perlet Abuaf, by her Administratrix, Niso Abuaf and Niso Abuaf, Individually, vs. Saint Barnabas Medical Center, Saint Barnabas Health Care System, Elizabeth Junker, M.D., Mark Goldberg, M.D; Consultants in Cardiology, Ruchika Singla, M.D., Amit Malhotra, and Elizabeth Bella, N.P, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County Docket No.: ESX-L-9278-11, January 15, 2015.

Francine Comforto, As Administratrix of the Estate of Paul G. Comforto, Deceased and Francine Comforto, Individually vs. Rosetta Grella, M.D. and Joshi Abraham John, M.D., North Shore Syosset Hospital and Eugenio Tassy, on behalf of the plaintiff, Supreme Court of The State of New York, County of Nassau, Docket No.:48758-11, January 9, 2015.

Martino Caretto, as General Administrator; and Administrator ad Prosequendum of the Estate of Richard Caretto vs. Richard M. Sostowski, M.D., John Doe, M.D.'s 1-5 and ABC Psychiatry Groups (unknown persons/entities and fictitious names), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No.: ESX-L-8574-10, January 7, 2015.

Matthew Keefe vs. Xavier Fernandez, Christina A. Impelletiere, Borough of Ridgefield, Ridgefield

**Kristin Kucsma, M.A.**

*Trial, Arbitration and Mediation Testimony*

Fire Department, Trustees of Ridgefield Ladder Company No.: 1, Gary Chartoff, Andrew Chartoff, Federico Faria, Jimmy D's Blues Saloon, Ana Mayers, State of New Jersey, New Jersey Department of Transportation, County of Bergen, Borough of Teterboro, Borough of Moonachie, Township of South Hackensack, New Jersey Meadowlands Commission, Melissa Chartoff, Tais Hernandez, Amy Chartoff, John Doe 1-5, Jane Doe 1-5, ABC Corp 1-10, Bob Boe1-10, Rob Roe 1-10, DEF Corp 1-10, Mary Moe 4-10, and GEF Corp 1-10 ( the last eight being fictitious designations), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, Docket No.: BER-L-2250-11, January, 6, 2015.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Luz A. Nunez vs. Mordecai D. Katz, John Doe 1-10 and XYZ Corp. 1-10 (fictitious names for persons and/or entities as yet unidentified), Docket No.: BER-L-6279-16, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and household services, December 19, 2018.

Kenneth Klapak vs. Pacific Press Technologies LLC, Quality Products Inc., Case No.: 16-cv-2120, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, pension benefits, cost of health insurance, and household services, December 17, 2018.

Pedrina Lopez Aguilar, as Administrator Ad Prosequendum of the Estate of Jose A. Aguilar vs. Donald J. Ross, Wisniewski Trucking Corporation, John Doe 1-5, ABC Companies 1-5 and XYZ Corporation, (said names being fictitious and unknown), Docket No.: MRS-L-2190-17, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding financial support to children in past years, adjusted income to children in future years, household services to sister in past years, household services to children in future years, companionship services to children in future years, and advice and counsel services to children in future years, December 14, 2018.

Corrine DeKeukelaere, Administratrix of the Estate of James M. DeKeukelaere, and Corrine DeKeukelaere Individually vs. Shankar Srinivasan, M.D., Immediate Care Psychiatric Center, john Doe and Jane Doe (1-100) and ABC Corp (1-100) (fictitious names/entities unknown), Docket No: MOR-L-122-17, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, adjusted pension income, household services, companionship services to spouse, nighttime (on-site, on call) companionship services to family, companionship services to daughter, advice and counsel services to spouse, and advice and counsel services to daughter, December 11, 2018.

Tamara Bell vs. Shop Rite and/or John Doe One and John Doe Two, fictitious names, i/j/s/a Docket No.: CUM-L-42-16, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and household services, December 11, 2018.

Ralph Iacobelli, Administrator ad Prosequendum of the Estate of Dominick Iacobelli, and Angelina Iacobelli vs. Mikaelie Marseille, Comfort Keepers, Charles Molinaro, John Doe (1-3) and Richard Roe, Inc. (1-5) (Fictitious Defendants), Docket No.: ESX-L-2062-17, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted Social Security retirement income, incremental cost of facility care, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, November 30, 2018.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Mary Murphy-Clagett as Temporary Administrator for the Estate of Pietro Macaluso vs. A.O. Smith Corporation, et al., Index No.: 190311/2015, Livingston, New Jersey, on behalf of the plaintiff, 50-B Analysis, November 29, 2018.

Dennis Reardon and Susan Reardon, his wife vs. Venkata K. Jonna, MD, St. Peter's Physician Associates, St. Peter's University Hospital, John Doe/Jane Doe, MD, I-V (said names being fictitious, true identities presently unknown), XYZ Corporation, I-V (said names being fictitious, true identities presently unknown), Docket No.: MID-L-2424-17, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, net pension benefits, and Social Security retirement benefits, November 28, 2018.

John Christopher Butler vs. Ravi Suria, Civil Action No.: 1:17-CV-3077, Livingston, New Jersey, on behalf of the defendant, opinion regarding loan agreements and interest rates, November 27, 2018.

David A. Joffe vs. King & Spalding LLP, Civil Action No.: 17-CV-03392 (VEC), New York, New York, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes, November 20, 2018.

Richard Sanders vs. Jason Schuchman, Felicia Schuchman, John Does I-X, (said names being fictitious, true names presently unknown), ABC Employer I-X (said names fictitious, true names presently unknown), Docket No.: MID-L-3057-16, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and household services, November 19, 2018.

Estate of Samir Mikhail by Elizabeth Mikhail as Administrator Ad Prosequendum of the Estate of Samir Mikhail, and Elizabeth Mikhail vs. George J. Ciechanowski, M.D.; Preston A. Hupart, D.O.; Total Cardiology Care; RWJ Barnabas Health; John Does 1-100 (representing presently unknown healthcare providers; including, but not limited to, doctors, nurses, technicians, etc.); Jane Does 1-100 (representing presently unknown healthcare providers; including, but not limited to, doctors, nurses, technicians, etc.); ABC Corps. 1-100 (representing presently unknown facilities or entities who rendered care ot the Plaintiff) and Doe Managed Care Company 1-100 (a fictitious designation representing the class of as yet unknown corporate entities affiliated or connected in any manner with the individual Defendants in this matter or with Plaintiff's care and vicariously, directly or administratively responsible for the other medical providers actions or failures or Plaintiff's injuries), et. al, Docket No.: HUD-L-4487-16, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services, companionship services to spouse (daytime companionship services and nighttime companionship services), companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, November 19, 2018.

# Kristin Kucsma, M.A.

### *Deposition Testimony*

Alan Fernando Reyes, an infant, by his Guardian Ad Litem, Jenny Collahuazo and Jenny Collahuazo, individually vs. Paula M. Barcia, M.D., Paula Barcia-Pena, M.D., Newark Beth Israel Medical Center, John Doe (name being fictitious) and ABC Corp (name being fictitious), Docket No.: ESX-L-6400-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime earnings, November 15, 2018.

Jeffrey Bowie vs. Costco Wholesale Corporation, Bruce Dzeneorf, and John and Jane Does 1-10 (fictitious names), Civil Action No.: 3:16-CV-05808-BRM-LHG, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes, November 14, 2018.

John Gleeson, in His Own Right and as Co-Administrator of the Estate of John P. Gleeson Deceased, Margaret Gleeson, in Her Own Right and as Co-Administrator of the Estate of John P. Gleeson, Deceased, and Donna Dempsey, on behalf of and as the Natural Parent and Guardian of the Property of both E.A.G., an Infant, and J.P.G., an Infant vs. County of Nassau, Nassau County Correctional Center, Nassau County Sheriff's Department, Michael J. Sposato, Individually, and as Sheriff of Nassau County, Armor Correctional Health Services, Inc., Armor correctional Health Services of New York, Inc., Nassau County Corrections Officers, "John Does 1-10," in their Individual and Official Capacities, Armor Correctional Health Services, Inc., Employees and Agents, "John and Jane Does 11-20," in their Individual and Official Capacities, Case No.: 15-CV-06487, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, cost of health insurance, household services, and parental nurturing and guidance services, October 19, 2018.

Jean Derisse, Individually and as Administrator and Administrator Ad Prosequendum of the Estate of Kerene Derisse, deceased vs. William Sloan, M.D., Affiliates in Gastroenterology, Howard Berman, M.D., and John Does 1-10, (fictitious names, true names being unknown), Docket No.: ESX-L-5022-16, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, adjusted pension income, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, October 2, 2018.

Michelango Malleo vs. Abbvie Inc., Civil Action No.: 3:17-cv-00784-JCH, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, pension benefits, RSU awards, and compensation for excess taxes, October 1, 2018.

Michelle and Richard Chapman vs. BASF Catalysts, LLC, et al., Docket No.: MID-L-2911-17 AS, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted earnings/income, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, September 25, 2018.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Ricardo Rimondi and Pilar Rimondi vs. BASF Catalysts, LLC, et al., Docket No.: MID-L-2911-17, AS, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted SSD and pension income, household services, companionship services to spouse, companionship services to sons, advice and counsel services to spouse, and advice and counsel services to sons, September 25, 2018.

Joanna Ruman and Jacenty Ruman vs. BASF Catalysts, LLC, et al., Docket No.: MID-L-2919-17 AS, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings/income, household services, companionship services to spouse, companionship services to daughters, advice and counsel services to spouse, and advice and counsel services to daughters, September 25, 2018.

Olivia M. Archer vs. Carol Trolano, R.N., Cheryl Conlin, R.N., Linda Rosenzweig, R.N., Rita Lyman-Sicilia, C.R.N.A., Antonios Thalassinos, D.O., Cape Regional Medical Center, Physician Associates, Cape Regional Health System, et al., Docket No.: CPM-L-565-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings, pension benefits, cost of health insurance, and household services, September 19, 2018.

Donna Cappadona vs. Trinitas Regional Medical Center, and John Does 1-5, Docket No.: BER-L-2057-17, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings, pension benefits, and household services, September 18, 2018.

Kenneth Franco, an alleged incapacitated individual, by his Guardians Ad Litem, Cecilia Griglak and Patrick Griglak, and Cecilia Griglak and Patrick Griglak, Individually, vs. Fairleigh Dickinson University, Abe Bow (1-3 fictitiously named), John Vin (1-3 of them - fictitiously named), Def Company (1-10 fictitiously named), Upsilon Hexaton Chapter of Phi Sigma Kappa Fraternity, The Grand Chapter of Phi Sigma Kappa, Inc., ABC Company (1-10 names being fictitious), et al., Docket No.: BER-L-5362-16, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime earnings and cost of lifetime care, September 14, 2018.

Damara Scott, vs. Patrick Pignatello, PNC Financial Services Corporation, John Does 1-20, Jane Does 1-20, ABC Corporations 1-10, and XYZ Corporations 1-10, Docket No.: ESX-L-7276-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, household services, and future medical care, September 10, 2018.

Estate of Elizabeth Fuehring, by the Administratrix Ad Prosequendum, Sarah Slanovec, and Sarah Slanovec, Individually, vs. CPP Streets of Chester, LLC d/b/a The Streets of Chester Shopping Center, Historic Chester Business Association, Inc., Hideaway Farm LLC, Centurion Shield Protection Services, LLC, State Shuttle, Inc., Alstede's Farm, LLC, Neil McWilliams, Anthony Tomilson, Toni Perry, and/or The Write Direction, LLC, ABC Corporations 1-10, and John Does 1-10, Docket No.: MRS-L-2780-15, Livingston, New Jersey, on behalf of the plaintiff, wrongful

## Kristin Kucsma, M.A.

### *Deposition Testimony*

death proceeding, opinion regarding financial support to parents, companionship services to parents, and advice and counsel services to parents, August 29, 2018.

Isabelle Parham, Individually and as Administratrix Ad Prosequendum of the Estate of John E. Parham and Isabelle Parham, Individually, per quo, vs. The City of Hackensack, New Jersey, a Municipal Corporation of the State of New Jersey, County of Bergen, its Officials, Employees and/or agents, Stephen Ochman, Individually and as a Police Officer of the City of Hackensack, and Salvatore DeAngelis, Docket No.: BER-L-1527-17, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, companionship services to son, advice and counsel services to spouse, and advice and counsel services to son, August 24, 2018.

Delia Carracedo, Guardian of Antonio Raphael Carracedo, a minor, and Delia Carracedo, Administrator Ad Prosequendum of the Estate of Rafael Carracedo, deceased, vs. Martin P. Mayer, M.D., John Does 1-20 (fictitious names representing as yet unidentified individuals, including physicians), ABC Corp. 1-20 (fictitious names representing as yet unidentified business entities, Docket No.: MID-L-657-17, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, cost of health insurance, companionship services to son, and advice and counsel services to son, August 23, 2018.

Christine Broadley and Beau Broadley, Her Husband, vs. Labcorp., John Does A-Z (said names being fictitious as their identities are presently unknown), and Jane Does A-Z (said names being fictitious as their identities are presently unknown), Docket No.: MON-L-2171-15, Morristown, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and household services, August 22, 2018.

Susan DeFlorio, as Administratrix Ad Prosequendum for the Heirs at Law of Paul DeFlorio, Deceased, as Adminstratrix of the Estate of Paul DeFlorio, Deceased and Individually, vs. Cooper University Healthcare, Cooper University Hospital, Jon S. Heist, D.O.. P.A., Jon S. Heist, D.O., John Does I to C, Jane Does I to C, John Does Incorporated I to C, John Does Professional Assoc. I to C, John Does Partnerships I to C, and John Does Institutional I to C, Fictitious and Unidentified Medical Personnel, Corporations, Professional Associations, Partnership and Institutions, Individually, Jointly and in the Alternative, Docket No.: GLO-L-639-016, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, nighttime on-site, on call (companion) services to spouse, and advice and counsel services to spouse, August 20, 2018.

Linda Denise Folsom vs. Empire International, Ltd., a New Jersey Corporation doing business as Empirecls Worldwide Chauffeured Services, Empirecls Worldwide Chauffeured Services, a Foreign Corporation, and Mayurkumar Patel, Civil Action No.: 16-cv-8068-LAK, New York, New York, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, and household services, August 14, 2018.

# Kristin Kucsma, M.A.

## *Deposition Testimony*

Estate of Erika Coro Chimbana, deceased, by Administrator and Administrator Ad Prosequendum Mirian Bailon and Zoila Chimbana and Michael Coro, vs. Barnabas Health, Newark Israel Medical Center, Sadie Mirabel D.O., Stephen Amaefuna, M.D., John Does, M.D., 1-5 and Jane Does, R.N. 1-5 (class of fictitiously named defendants), and Doe Physician Group. PA or Doe Physician Group, PC, or Doe Physician Managed Care Company (a fictitious designation representing the class of as yet unknown corporate entities affiliated or connected in any manner with the individual defendants in this matter or with plaintiff's care and vicariously, directly or administratively responsible for the other medical providers actions or failures or plaintiff's injury), Docket No.: ESX-L-190-16, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding financial support to parents, companionship services to parents, and advice and counsel services to parents, July 30, 2018.

Melissa Migut vs. State of New Jersey, Administrative Office of the Courts, Glenn A. Grant, J.A.D. in his capacity as the Acting Administrator Director of the Courts, Harvey M. Goldstein, in his capacity as the Manager of the Intensive Supervision Program and Jasper Reeves, in his capacity as Building Manager, Docket No.: MER-L-934-14, Princeton, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, net pension benefits, and compensation for excess taxes, July 25, 2018.

Deana Zingrone and Charles Zingrone vs. The William W. Backus Hospital and/or its servants, agents, apparent agents and/or employees, Nader M. Bahadory, DO and/or his servants, agents, apparent agents and/or employees, Matthew J Spates, MD, and/or his servants, agents, apparent agents and/or employees, Faisal Nagarwala, MD and/or his servants, agents, apparent agents and/or employees, Nathaniel Dueker, MD and/or his servants, agents, apparent agents and/or employees, John P. Tauro, DO, DC and/or his servants, agents, apparent agents and/or employees, No.: CV 15 6025590 S, New York, New York, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, and household services, July 24, 2018.

Judith Schaper vs. The Bronx Lebanon Hospital Center and Carol Wilson, Index No.: 17-CV-01246, White Plains, New York, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, pension benefits, and compensation for excess taxes, July 17, 2018.

Karrie Kolesar as Personal Representative of the Estate of Thomas G. Kolesar, Deceased and Karrie Kolesar, as Adminstratrix Ad Prosequendum of the Estate of Thomas G. Kolesar, Deceased, vs. Michael A. Cascarina, M.D., Laura M. Tesoriero, M.D., Our Family Practice, LLC, John/Jane Doe #1-5 c/o Our Family Practice, LLC, Community Medical Center and Barnabas Health, Docket No.: OCN-L-1108-15, Shrewsbury, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, companionship services to daughters, and advice and counsel to daughters, July 9, 2018.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Rosalyn Williams, Individually and as Administrator ad Prosequendum of the Estate of Daryll Williams vs. Brian Johnson, Kadian Brodley, Barbara Bennett-Brodley, Gennadiy Monich, MZ Express, Inc., Lisa Beam, Donald Wroten, Sr., Mountaire Farms, Inc., Wei Lin, Oriental Pearl Travel, Inc., Robert Deiner, Robin Deiner, Shu Zhang, Michael Aulisio, Jacob Reed, LLP Transport, LLC, Richard Wehrhan, Enterprise FM Trust Lease, Pablo Vizcaino-Paulino, RTV Trucking, LLC, Major Kumar, All American Recycling Co., Francesco Fabrizio, Penske Leasing and Rental, Lun D. Chen, Lun K. Chen, Wendell Powell, Hub Truck Rental, Fezhong Chen, Murat Okur, Delphia Distribution, Inc., John Does 1-40, ABC Corps. 1-40, Docket No.: MID-L- 2609-16, Roseland, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, pension income, cost of health insurance, household services, companionship services to spouse, and advice and counsel services to spouse, June 29, 2018.

Danielle Dodds vs. Live Nation Entertainment, Inc., Richard Santiago, Arbitration Demand, telephone deposition, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes, June 26, 2018.

David Jones vs. Peter Park, M.D., Alfonso Ciervo, M.D., Innovative Vascular Health Group, Christopher Spagnuola, M.D., Monmouth Medical Center, John Does (fictitious names of those persons whose true identities and/or culpability are not presently known, who participated in plaintiff's medical surgical radiological and nursing care March, April, May and June 2011), Seaview Orthopedics and Medical Associates, ABC Groups (fictitious name of any group practice association, entity of whom or which any individual defendant is an agent, servant or employee) and Jane Roes (fictitious names of those persons whose true identities and/or culpability are not presently known, who participated in plaintiff's medical surgical radiological and nursing care March, April, May and June 2011), Docket No.: MON-L-1060-13, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, June 21, 2018.

Allyson Sexton, etc., et al., vs. Anthony V. Rizzetta, D.O., et al., Docket No.: 1:15-CV-03181 RBK, AMD, Mt. Laurel, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, June 18, 2018.

Priyashri Nayak vs. Bayer Healthcare LLC, & Jerry Meisel, Docket No.: MRS-L-1780-16, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and pre-termination equity benefits, June 15, 2018.

K. Doe vs. Kurt Ludwigsen, in his individual capacity, Kristen Lambertson, in her individual capacity, Michael G. Scales, individually and as President of Nyack College, David G. Jennings, individually and as Executive Vice President of Nyack College, Keith Davie, individually and as Athletic Director for Nyack College, Amanda Aikens, individually and as Assistant Athletic Director for Nyack College, Taylor Brown, individually and as Assistant Softball Coach for Nyack

## Kristin Kucsma, M.A.

### *Deposition Testimony*

College, Nyack College, and Does 1-10, Case No.: 7:15-cv-07822-CS, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted pre-injury earnings in future years, and adjusted post-injury earnings in future years, June 12, 2018.

Kerri Prettitore, by her GAL Glenn Prettitore, and Glenn Prettitore individually, vs. Louise Ligresti, M.D., Valley Medical Group, Valley Health Systems, Valley Hospital, et. al, Docket No.: BER-L-1391-16, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of lifetime care, care services, household services, and nighttime (on-site, on-call) services to spouse, June 7, 2018.

Shavon Gaddie, Executrix of the Estate of Gloria Gaddie, deceased, vs. Ilia Segal, M.D., Pulmonary & Critical Care Associates, LLC, Alan Heideman, M.D., Millburn Medical Imaging, P.A., John Does (fictitious names of healthcare providers whose identities and culpability are not presently known who were involved in any way in causing a delay in diagnosis of decedent's condition), ABC Groups (fictitious names of any group, entity, partnership, business, corporation, of any kind, of which any defendant is an agent, servant or employee), Docket No.: ESX-L-6165-15, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, May 21, 2018.

Enrichetta Ravina vs. Columbia University, a/k/a The Trustees of Columbia University in the City of New York, and Geert Bekaert, Civ. No.: 1:16-cv-02137, New York, New York, on behalf of the defendant, employment discrimination proceeding, opinion regarding plaintiff's calculation of economic damages, May 16, 2018.

Raymond Bailey and Cordella Davids, his wife, Ira Delgado and Dorothy Miller, his wife, Frederick Fischer, Gregory Klein, Nicholas Warren and Maria Miller, his wife vs. Time Warner Cable Enterprise, LLC, Time Warner Cable, LLC, Time Warner Cable Company, Rob Marcus, Lynden Armogan, Daymion Montanez, Marielys Mejia, ABC Corp. 1-5, and/or John Doe 1-5, and/or Jane Doe 1-5, (the last three being fictitious designations), Docket No.: BER-L-10272-15,
Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, pension income, and compensation for excess taxes, May 15, 2018.

Kathleen Ryan, Guardian of Patricia O'Brien, an Incompetent and Rachel Constance, Spouse of Patricia O'Brien, by Civil Union vs. Richard D. Shih, M.D., Patrick Zimmerman, M.D., Kathryn Calmus-Frankel, M.D., Lorraine M. Kane, R.N., Tanya R. Parolari, R.N., Karen Galluzzo, R.N., Morristown Medical Center, Valerie G. McLaughlin, Jennifer L. Mazza, R.N., Heather D. Neidle, P.A., Monmouth Medical Center, John Does 1-5, and Jane Does 1-5, being fictitious names, Docket No.: ESX-L-7288-15, Roseland, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, household services, and cost of lifetime care, May 14, 2018.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Maida Garabed, Individually and as Executrix of the Estate of Arka Garabed vs. Sheldon Eisenberg, M.D., Westwood Cardiology Associates, Hackensack University Medical Center Cardiovascular Partners, John Does (fictitious names of healthcare providers whose negligence contributed to the death of Arka Garabed by mechanisms not currently known and whose identities are not known) and ABC Groups (fictitious names of groups, entity and/or practice of which any defendant is an agent, servant or employee), Docket No.: BER-L-1317-16, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, adjusted Social Security income, household services, companionship services to spouse, companionship services to daughters, advice and counsel services to spouse, and advice and counsel services to daughters, May 2, 2018.

Dalila Czukerberg, (a/k/a/ Dalila Rosenstrauch) vs. Newark Public Schools, City of Newark, State of New Jersey, Regina V. Sharpe, individually, Henri Frederique, individually, and Cynthia Guinn, individually, Docket No.: ESX-L-8847-15, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, post-retirement health insurance, net pension income, and compensation for excess taxes, May 1, 2018.

Geraldo Herrera as the Administrator Ad Prosequendum of the Estate of Leslie Lebron, deceased, and Geraldo Herrera, individually vs. Edwin Kane, M.D., Michael Buckley, M.D., and St. Mary's Hospital, Docket No.: PAS-L-2922-15, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding financial support, household services, companionship services to daughter and son, advice and counsel services to daughter and son, and cost of psychiatric care to daughter and son, April 27, 2018.

Cynthia Arteglier vs. Novo Nordisk, Inc. and Kevin Haimovitz, Docket No.: MID-L02173-16, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes, April 26, 2018.

Kevin Olivares, by his guardian ad litem, Maria Olivares vs. Rasul Quardatullah, Umaya Ali, Middlesex Builders, Inc., et al., Docket No.: MID-L-6783-13, Shrewsbury, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime adjusted earnings, and cost of lifetime care, April 11, 2018.

Min Amy Guo, vs. Novartis Pharmaceuticals Corporation, John Does 1-10 (fictitiously named), and XYZ Corporation 1-10 (fictitiously named), Docket No.: MRS-L-1486-14, Whippany, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, equity-based compensation, and compensation for excess taxes, April 6, 2018.

Carolyn M. Estrada vs. Paul G. Rivero and Camp Out, Inc., Docket No.: ESX-L-7557-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury matter, opinion regarding pre-injury earnings: adjusted earnings in past years, adjusted earnings in future years, pension benefits,

## Kristin Kucsma, M.A.

### *Deposition Testimony*

and cost of health insurance; post-injury earnings: adjusted earnings in past years, adjusted earnings in future years, and cost of lifetime care, March 26, 2018.

Estate of Landy Ortiz by Dorian Ortiz, the Administrator of the Estate of Landy Oritz, and Landy Ortiz, Individually vs. Adam Moises, M.D., John Doe, M.D., JFK Medical Center, ABC Inc., (fictitious entity), d/b/a JFK Medical Center, et als., Docket No.: MID-L-4235-15, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to brother, and advice and counsel services to brother, March 22, 2018.

Kelly A. Ramsay-Morrell vs. Paul G. Saccone, M.D., Carl Quillen, M.D./P.A., Barnabas Health Medical Group, Saint Clare's Hospital, Saint Clare's Health System, John Does 1-100, (representing presently unknown healthcare providers, including, but not limited to, doctors, nurses, technicians, etc.), ABC Corps. 1-100 (representing presently unknown facilities or entities who rendered care to the Plaintiff), et al., Docket No.: MRS-L-1816-16, Roseland, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, and household services, March 20, 2018.

Suzanne Ferrie and Patrick J. Ferrie vs. Lauren Murphy, R.N., A.P.N., Zubin Bamboat, M.D., Hackensack Radiology Group, P.A., Hackensack University Medical Center, Patrick Toth, M.D., John Doe(s), M.D., and/or Jane Doe(s) M.D., (fictitious names representing doctor who rendered treatment to plaintiff), Richard Roe(s) and Jane Roe(s), (fictitious names representing other medical professionals who rendered treatment to plaintiff, including but not limited to, medical personnel administering contrast materials on September 16, 2013), and/or ABC Corporation, (fictitious name representing corporate entities), their servants, agents, and/or representatives jointly, severally, or in the alternative, Docket No.: BER-L-7004-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in future years, and cost of lifetime care, March 18, 2018.

Ajay Saraswat vs. Business Integra, Inc., Selva Jayaraman, Pratibha Ramdoss, Jagan Parathasarathy, Case No.: 1:15-cv-04680, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted lifetime earnings, and compensation for excess taxes, March 16, 2018.

Cory Beach and Cherie Beach vs. United States of America, No.: 15 Civ 2732, New York, New York, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, pension income, cost of health insurance, post-retirement adjusted earnings in future years, and cost of lifetime care, March 15, 2018.

Michael B. Donohue and Anne Donohue, his wife vs. ABB, Inc., et al., Index No.: 190232/2017, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted pension income, household services, parental nurturing and guidance services, and guidance services to grandson, March 7, 2017.

# Kristin Kucsma, M.A.

## *Deposition Testimony*

Clara Ferebee, Individually, and as Administrator of the Estate of Tanya Davenport, Deceased vs. Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals Inc., Bayer Healthcare LLC, Bayer Healthcare AG, Berlex Laboratories, Inc., Berlex, Inc., and Bayer Schering Pharma, United States District Court Southern District of Illinois, Civil Action No. 3:10-cv-13322-DRH-PMF, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted income to children, household services, companionship services to children, and advice and counsel services to children, March 6, 2018.

Frank Alan Longley and Alice Longley vs. Daniel Zacharias, M.D., Daniel Zacharias, M.D. PC, John Does (fictitious names of healthcare providers whose identities and culpability are not presently known who were involved in any way in causing a delay in diagnosis of plaintiff's condition), ABC Groups (fictitious names of any group, entity, partnership, business, corporation of any kind, of which any defendant is an agent, servant or employee), Docket No.: ESX-L-1421-16, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding care services, household services, adjusted earnings in past years, and adjusted earnings in future years, February 27, 2018.

Estate of Carol Falcone vs. Chu, M.D., Docket No.: OCC-L-      , Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding Social Security Income, adjusted pension income, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, February 23, 2018.

Lamont D. Parks and Jackie M. Parks vs. United States of America, No.: 15 Civ. 2735 (CS), New York, New York, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, pension income, projected private investigator-related earnings in future years, and cost of lifetime care, February 12, 2018.

Lynne M. Mele and Gale B. Giacalone-Tursini, Co-Executrix of The Estate of Leonard Giacalone, deceased vs. Angelo Piccirillo, Inc., d/b/a Angelo's Restaurant, John Does (1-10) (fictitious names representing unknown individuals), ABC Corporations 1-10 (fictitious names representing unknown entities), Docket No.: ESX-L-1046-16, Woodland Park, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding Social Security Retirement Income, household services, companionship services to spouse, special care services to spouse, nighttime on-site, on call (companionship) services to spouse, and advice and counsel services to spouse, January 23, 2018.

Keith Hudson vs. Town of Morristown, Karl Peter Demnitz, Individually and in his official capacity as Chief of Police, John Doe(s) 1-10, and XYZ Corp(s). 1-10, Docket No.: MRS-L-2343-15, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion

## Kristin Kucsma, M.A.

### *Deposition Testimony*

regarding adjusted on-call compensation in past years, adjusted on-call compensation in future years, transportation expenses, pension income, and compensation for excess taxes, January 23, 2018.

Sergio Hincapie, as Administrator of the Estate of Milena Echeverry vs. Estate of Jorge Echeverry, Dale A. Darlington, Penske Truck Leasing Co., and Penske Corporation, Docket No.: UNN-L-1381-16, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services, companionship services to sons, and advice and counsel services to sons, January 18, 2018.

Bria Albinder-Miletsky, an infant by her natural Mother and Guardian Ad Litem, Cindi Albinder-Miletsky, Cindi Albinder-Miletsky, individually and Jason Miletsky vs. Manuel Alvarez, M.D., R & R Perinatal Associates, Hackensack University Medical Center, Magdalena J. Pawlik, A.P.N, Monique P. Donnelly, R.P.N., John Does 1 though 10 (fictitious names, true identities unknown), Jane Does 1 through 10 (fictitious names, true identities unknown), Entities A through Z (fictitious names, true identities unknown), Docket No.: BER-L-4342-14, Livingston, New Jersey, wrongful death proceeding, opinion regarding lifetime adjusted earnings, and cost of lifetime care, January 12, 2018.

Tracy T. Tompkins-Martin, Administrator of the Estate of Joyce Anne Call Tompkins and Individually, vs. Manny E. Christakos, M.D., Medical Park Imaging of Wayne, Qiang Sun, M.D., Richard M. Flanzman, M.D., and John Doe M.D.'s, I through V (fictitious defendants), Docket No.: PAS-L-213-16, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, adjusted pension income, adjusted Social Security income, household services, companionship services to daughter, and advice and counsel services to daughter, January 8, 2017.

Lauren Camarinos, Michael D. Camarinos and Lauren Camarinos, Guardian Ad litem for Nicholas J.M. Camarinos, an infant, vs. Matthew S. Stokesbury and John T. Stokesbury, Docket No.: BER-L-8715-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding pre-injury adjusted earnings in future years, post-injury adjusted earnings in future years, cost of lifetime care, and household and childcare services, December 22, 2017.

Holly Maynard and James Maynard vs. Miguel A. Colon, Smith Transport, Inc., Raghavend Velakoti, Swetha Yatavelli, Roger A. Ranz, John Doe Incorporated 1-5, John Doe 1-5 (fictitious designations), Docket No.: MID-L-3736-16, Livingston, New Jersey, on behalf of the defendant, opinion regarding commentary on economic expert, December 21, 2017.

Carmella Moustafa, Administratrix ad Prosequendum on behalf of the Estate of Cristiano Bonner and as Guardian ad Litem for Bianca Bonner, an infant and Carmella Moustafa, Individually, vs. Troup and Walters, Inc., Jeffrey Troup, Catherine Troup, "ABC Corp. 1-5" and/or "Def Corp. 1-5" and/or "GHI Corp. 1-5" and/or "MNO Corp. 1-5" and/or "XYZ Corp. 1-5" and/or "John Doe 1-5" and/or "Jane Doe 1-5" (the last seven being fictitious designations), Docket No.: MRS-L-820-14,

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime earnings, and cost of lifetime care, December 21, 2017.

Samuel Mejia, Individually and as Administrator and Administrator Prosequendum of the Estate of Tania Mejia vs. Quest Diagnostics, John Does (fictitious names of persons reading interpreting or evaluating plaintiff's PAP smears), ABC Companies (fictitious names of companies or entities whose agents, servant and/or employees interpreted PAP smears or rendered medical care to plaintiff), Jane Roes (fictitious names of healthcare providers whose true identities and culpability are not presently known but who rendered medical care to the plaintiff before, during, and after the PAP smears complained of), "TSL," Cytotechnologist, and "LTP," Cytotechnologist , Docket No.: ESX-4240-14, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services, companionship services to spouse, companionship services to daughter, advice and counsel services to spouse, and advice and counsel services to daughter, December 21, 2017.

Troy Bessler vs. County of Morris, Morris County Sherriff's Department, Frank Corrente, John Kowalski and John and Jane Does 1-10 (fictitious names), Docket No.: MRS-L-2239-14, Florham Park, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings, pension income, and compensation for excess taxes, December 20, 2017.

Sandra Szell vs. Kessler Institute For Rehabilitation, Agnes Blaszcyk, Laura Priester, Ronald Thomas, John Does (fictitious names of those persons whose identities and/or culpability are not presently known who participated in the plaintiff's care and who contributed or caused her injury), ABC Groups (fictitiously named groups companies or entities of which any defendant was an agent servant or employee), Docket No.: ESX-L-6881-15, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, December 19, 2017.

Clifford Sisco and Deborah Sisco vs. Hyeun T. Park, M.D., Philip S. Rogers, M.D., Michael Blick, M.D., Lakeland Cardiology, ABC Groups (fictitious name of group, entity, partnership of whom any defendant is an agent, servant or employee whose actual name or designation is not presently known), John Does (fictitious names of healthcare providers who were involved in plaintiff's healthcare during the time he was at Saint Clare's and at Lakeland Cardiology), Saint Clare's Hospital, Docket No.: MRS-L-1144-15, Chatham New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding care services provided by spouse, household services, and cost of lifetime care, December 18, 2017.

Thomas Wallick vs. Johns Hopkins Health System Corporation, et al., Case No.: 24C17000602, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, pre-impairment adjusted earnings in future years, post-impairment adjusted earnings in future years, and household services, December 13, 2017.

# Kristin Kucsma, M.A.

## *Deposition Testimony*

Adriana Agostini vs. EmblemHealth, Inc. and Alan Weishaupt, Jonathan Frandsen, and Daniel Byrne, Individually and As Employers, Case No.: 16-CV-7119, New York, New York, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, and compensation for excess taxes, December 8, 2017.

Robert Shallo vs. Paramount Property Management, LLC, Park Electric, Inc., t/a Eiseman's Wholesale Electrical Distribution and Associated Electrical Solutions Group, LLC, Landy Group, LLC, Docket No.: MID-L-03057-15, Roseland, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, December 5, 2017.

Rigoberto Apanco vs. Paolo Stierti and/or John Does 1-10, (being fictitious persons unknown at the time), and Pivotal Utility Holdings, Inc. and/or ABC Company 1-10 (being fictitious entities unknown at this time) and/or John Does 11-20 (being fictitious persons unknown at this time), Docket No.: UNN-L-2114-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and cost of lifetime care, November 28, 2017.

Susan Kasman, Adminstratrix of the Estate of Lee Kasman and Susan Kasman, Individually, vs. Shivang Triveldi, M.D., Cardiology Associate of Somerset County, John Doe, M.D., Jane Doe, R.N., (fictitious names of physicians, nurses or other health care providers whose identities are not presently known), DOE Physician Group 1-100 (fictitious names representing the yet unknown corporate entities affiliated or connected in any manner whether vicarious or direct with plaintiff's care) and ABC Corporation 1-100 (a fictitiously named corporations employing healthcare provider whose identities are not presently known), Docket No.: SOM-L-1237-15, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, health insurance, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, November 13, 2017.

John Goodhue vs. 3M Company, et al., Civil Action No.: 16-2529, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding household services, November 6, 2017.

Sherry G. Louis and Cuthbert Louis vs. Metropolitan Transportation Authority, Metropolitan Transportation Authority Police Department, MTAPD Sergeant Tyrone Santos, MTAPD Officer Sky Michaels, and MTPAD Officer James Dinnigan, Index No.: 12-cv-6270, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and cost of lifetime care, October 24, 2017.

Nelson Perez and Blanca Flor Gonzaga De Solano, as Administrators Ad Prosequendum of the Estate of Yesenia Del Cisne Perez, deceased, vs. Galaxy Recycling, Inc., Joseph Smentkowski Inc.d/b/a/Smentkowski Garbage Removal, Rocco J. Fornaro, Alexander Rosario, City of Elizabeth,

## Kristin Kucsma, M.A.

### *Deposition Testimony*

State of New Jersey, Department of Transportation, John Does Nos. 1-5 and ABC Corporations Nos. 1-5, Docket No.: ESX - L- 2105-15, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, companionship services to sister, companionship services to parents, companionship services to brother, and advice and counsel services to parents, October 12, 2017.

David Straka vs. BASF, a corporation or business organization, David Freidinger, Individually, and/or as agent, servant, or employee of BASF, Deon Carter, Individually, and/or as agent, servant, or employee of BASF, and John Does 1-100, said names being fictitious and unknown, Docket No.: UNN-L-1025-16, Maplewood, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, and compensation for excess taxes, October 3, 2017.

Ines C. Erazo, Individually and as Administratrix of the Estate of Carlos Erazo, vs. Kessler Institute for Rehabilitation, Select Medical, Uri S. Adler, M.D., Alex R. Pavon, M.D., Achyut Gandhi, M.D., Allied Medical Associates, Beverly Hahn, M.D., John Does 1-10, (fictitious names, identities not presently known), Docket No.: BER-L-6167-15, Hackensack, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, advice and counsel services to spouse, October 2, 2017.

Raymond Benkovich and Linda Benkovich, wife, per quod, vs. Gorilla, Inc., Cabelas, Inc., ABC Inc. 1-5, and John Does, 1-5, (fictitious names representing individuals, whose present identities are unknown, who negligently and improperly manufactured, distributed, supplied, handled, displayed and /or sold tree stands/safety harnesses that was purchased by plaintiff Raymond Benkovich, and who caused or contributed to plaintiff's injuries, Civil Action No.: 2:15-CV-07806-WJM-MF, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, and cost of lifetime care, September 27, 2017.

Christina Kerr, Guardian Ad Litem for Gabriella Giarraffa, a minor, Christina Kerr, in her own right, Travis Giarraffa, in his own right, and Gabriella Giarraffa, a minor in her own right, vs. Rachel Grencavich, C.N.M., R.N., Advanced Care OBGYN, Atlantic Care Regional Medical Center, John Does, M.D., #1-10, Jane Roes, R.N., #1-10, ABC Corporation, #1-10, Docket No.: ATL-L-5245-14, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime adjusted earnings, special care services to daughter, and cost of lifetime care, September 26, 2017.

Jann Bensilio and Cara Cangelosi, Administratrices CTA of the Estate of Frank Cangelosi, deceased vs. Dr. Jules Geltzeiler, Jersey Shore University Medical Center, and John Does 1-10, Docket No.: MON-L-4823-11, Roseland, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted pension income, net Social Security income, household services, companionship services to spouse, companionship services to children, and advice and counsel services to children, September 19, 2017.

# Kristin Kucsma, M.A.

## *Deposition Testimony*

Jennifer Lebowitz vs. Joseph Leonard, Christina Leonard, John Doe (1-10) (fictitious names, true names unknown at this time), Jane Doe (1-10) (fictitious names, true names unknown at this time), Docket No.: MID-L-4690-16, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding pre-injury adjusted earnings in past years, pre-injury adjusted earnings in future years, post-injury adjusted earnings in future years, and household services, September 14, 2017.

Anne-Marie Ryan, Executrix of the Estate of Rohan V.C. Ryan, deceased, and Anne-Marie Ryan, individually vs. Jeffrey Bechler, M.D.,University Orthopaedic Associates, LLC, John Does (being fictitious names), ABC Medical Practice (being a fictitious name), Docket No.: MER-L-1607-15, Roseland, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, adjusted equity-based compensation, cost of health insurance, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, September 13, 2017.

Thomas Flynn vs. Township of Montclair, Township Manager Marc Dashield, Wilhelm Young, Michael DeGrazio, David O'Dowd, and John and Jane Does, 1-10, Docket No.: ESX-L-7210-14, Chatham, New Jersey, on behalf of the plaintiff, failure to promote proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, pension income, and compensation for excess taxes, August 28, 2017.

Helena Ross as Administratrix of the Estate of Emory F. Ross, deceased, as Administratrix ad Prosequendum for the heirs-at-law for Emory F. Ross, deceased, and individually vs. Eddy Simon, M.D., JFK Medical Center, John Doe (fictitious name) and North Jersey Emergency Physicians, PA, Docket No.: ESX-L-5733-15, Livingston, New Jersey,  on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, companionship services to daughter, advice and counsel services to spouse, and advice and counsel services to daughter, August 23, 2017.

Aston Shaw vs. Long Island Railroad Company D/B/A MTA Long Island Railroad, Metropolitan Transit Authority, and Marilyn Kustoff, in her Personal and Official Capacity, Case No.: 1:16-cv-06972, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, net pension income, and compensation for excess taxes, August 21, 2017.

David Branch vs. Prestige Management Services, Inc., and Prestige Motors, Inc., Docket No.: BER-L-3287-15, Chatham, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes on lump-sum award, July 28, 2017.

Bella Carlson, an infant under the age of 14 years old by her natural guardians, Jason Carlson and Leighann Carlson, Jason Carlson, Individually, and Leighann Carslon, Individually vs. Greenwich Hospital, Stephen Carolan, M.D., Jenny Veira, R. N., and Kandace M. Edmondson, R.N., Superior

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Court J.D. of Stamford/Norwalk, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime adjusted earnings and cost of lifetime care, July 27, 2017.

Giuseppe G. Santangelo and Apollonia F. Santangelo vs. Jeremy Dominik, M.D., AHS Hospital Corp/Overlook Medical Center, Edward J. Zampella, M.D., and Atlantic Neurosurgical Specialists, Docket No.: UNN-L-788-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, July 27, 2017.

Vina Badami, Administratrix Ad Prosequendum of the Estate of Sudhindra Badami, Vina Badami Individually vs. John F. Kennedy Medical Center, Joanna Halat, Paramedic, Jeanette Pernell, Paramedic, Woodbridge Township Ambulance and Rescue Squad, Olga Russell, EMT-B, Kristen Corno, EMT-B, Nivedita Meghadri, M.D., John Does and/or Jane Does, M.D., 1-10 (fictitious names used to describe unknown Defendants), and ABC Corporations, "A" through "Z" (fictitious names used to describe unknown Defendants), Docket No.: MID-L-6347-17, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding, adjusted income, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, July 26, 2017.

Tracey L. Vizzoni, as Executrix for the Estate of Judith A. Schrope, vs. Barbara Mulford-Dera, Joseph Dera, Atlock Farm, Stefan Lerner, John/Jane Doe Doctors/Pharmacists 1-10 (Fictitious Defendants) and ABC Employer 1-10 (Fictitious Defendants), Docket No.: SOM-L-575-15, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding companionship services to children, and advice and counsel services to children, July 21, 2017.

Boston Scientific Corporation, East Hanover, New Jersey, Judicial Council Coordination Proceeding No.:4733, on behalf of the plaintiff, opinion regarding punitive damages, July 14, 2017.

Morgan Santiago, Individually and as Administrator Ad Prosequendum for the Estate of Diane Santiago vs. Thomas Magliaro, M.D., Sanjiv Patank, M.D., Amar Bukhari, M.D., St. Peter's University Hospital, John/Jane Doe Medical Doctors 1-10 (representing presently unknown healthcare providers, including but not limited to Gynecologists, Gastroenterologists, Colon & Rectal Surgeons, Pulmonologists, Emergency Room Physicians, who rendered care to the Plaintiff), John/Jane Doe LPN/RNs 1-10 (representing previously unknown nurses, including to but not limited to Gynecology, Gastroenterology, Colon & Rectal Surgery, Pulmonology, Emergency Room, who rendered care to the Plaintiff, and Jane/John Doe Technicians 1-10 (representing presently unknown technicians, including but not limited to Gynecology, -Gastroenterology, Colon & Rectal Surgery, Pulmonology, Emergency Room rendered care to the Plaintiff), and ABC Corporations, 1-10 (representing presently unknown facilities or entities that rendered care to the Plaintiff or manufactured equipment used in said care), Docket No.: MID-L-5424-15, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income to daughters, household services, companionship services to daughters, and advice and counsel services to daughters, July 6, 2017.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Pansy Harris-Lane, M.D. vs. Jersey City Medical Center, a corporation or business organization, Amer K. Syed, M.D., individually, and/or as agent, servant, or employee of Jersey City Medical Center, Douglas Ratner, M.D., individually, and/or as agent, servant, or employee of Jersey City Medical Center, and Rumana Khan, M.D., individually, and/or as agent, servant or employee of Jersey City Medical Center, Docket No.: ESX-L-6572-15, Maplewood, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes, June 29, 2017.

Kimberly Everett vs. Bayer Healthcare, LLC, Bayer Healthcare Pharmaceuticals, Inc., Bayer Schering Pharma AG, Intendis Inc., Bayer AG, Teva Pharmaceutical Industries, LTD., Teva, Pharmaceuticals USA, Inc., Barr Pharmaceuticals LLC (formerly known as Barr Pharmaceuticals, Inc.), Barr Laboratories, Inc., Jane Doe Distributors (1-50), Jill Doe Manufacturers (1-50), Jack Doe Wholesalers (1-50), Jake Doe Sellers (1-50), John Doe Marketers (1-50), Joan Doe Formulators (1-50), Jim Doe Health Care Providers (1-50), and Jean
Doe (1-50), St. Mary's Hospital, Sharon Campbell, Cesar Lopes Alves, Dr. Bikkina Mahesh, Heart & Vascular Associates - Northen, Dr. Howard Benn, Dr. Jose Luis Sabogal, Better Healthcare of New Jersey, LLC, Passaic Community Pharmacy, Inc. d/b/a Passaic Community Pharmacy, Samirkumar Patel, R.P.H., ABC Companies (1-10), Jane Doe Nurses (1-10), John Doe Physicians (1-10), Def Companies (1-10), Def Companies (10-15) and Jim Doe Pharmacists (1-5), Docket No.: BER-L-2813-13, Livingston, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and household services, June 27, 2017.

Wendy Christiansen vs. Kenneth T. DeFusco, M.D., John Does 1-10, Docket No.: ESX-L-1922-15, Livingston, New Jersey, on behalf of the plaintiff, medical malpractice proceeding, opinion regarding adjusted earnings in past years, adjusted pre-incident earnings in future years, adjusted post-incident earnings in future years, cost of health insurance, and household services, June 19, 2017.

James Carey vs. Meadowlands Hospital Medical Center, Napoleon A. Valdez, M.D., and John Doe M.D.s 1-5 & ABC Medical Groups 1-5 (fictitious names for unknown persons or entities who negligently treated plaintiff), Docket No.: HUD-L-1201-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and cost of lifetime care, June 14, 2017.

Estate of Barbara Pabian by Brian Pabian, Administrator and Administrator Ad Prosequendum, and Brian Pabian, Individually vs. Albert Greenwood, M.D., Jersey Medical Care P.C., John Does (fictitious names of persons whose names or culpability is presently unknown but who participated in the medical care and treatment of Leslaw Pabian), and ABC Groups fictitious names of any business, group, entity of a partnership or other business designation of which any individual defendant or liable person, is an agent servant or employee), Docket No.: MID-L-28215, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income to son, companionship services to son, advice and counsel services to son, June 5, 2017.

# Kristin Kucsma, M.A.

## *Deposition Testimony*

Jennifer Toro, General Administratrix and Administratrix Ad Prosequendum of the Estate of Baby Girl Toro a.k.a. Cattleya Yambo, and Jennifer Toro and Luis Yambo, Individually vs. Kenneth Treadwell, Jr., M.D., Kristina Seader, M.D., Alexander Juusela, M.D., Newark Beth Israel Medical Center, John Does, 1-5 (these names being fictitious as their true identities are presently unknown), and ABC Corporation 1-5 (these names being fictitious as their true identities are presently unknown), Docket No.: ESX-L-5174-15, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding financial support to parents, companionship services to parents, and advice and counsel services to parents, June 5, 2017.

Thomas Eliezer and Solly Eliezer, his wife vs. James Thomas, D.O., Raashan C. Williams, M.D., Naresh J. Patel, D.O., Ingrid Aviles, R.N., Siobhan Neurouter, R.N., Annie Weber, R.N., Leila Perez, R.N., Jean Abrigo, Christ Hospital, CarePoint Health, Hudson Hospital OPCO, LLC, Garden State Healthcare Associates, LLC, Total Cardiology Care, LLC John/Jane Does 1-10 (fictitiously denominated), ABC Entities 1-10 (fictitiously denominated), Docket No.: HUD-L-1427-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, May 30, 2017.

Gail Infantes and William Infantes vs. Steven Binenebaum, M.D., Sukrat Dwivedi, DO, Andrew Lee, M.D., Tisha Tan, M.D., Ajay Mathur M.D., Barnabas Health Inc., Monmouth Medical Center, Specialty Surgical Associates, et als., Docket No.: ESX-L-8893-14, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding household services, and care services, May 19, 2017.

GEICO vs. Nabil Yazgi, M.D., Thomas Senatore, D.C., Scott Murphy, D.C., Tri-County Neurology & Rehabilitation, LLC and Hudson Neurology & Pain Management LLC, Livingston, New Jersey, on behalf of the defendant, opinion regarding commentary on economic expert report, April 24, 2016.

Hilda Razzaghi, Administratrix Ad Prosequendum for the Estate of Payman Houshmandpour, and Hilda Razzaghi, Individually vs. Virtua Health Inc., a/k/a Virtua Voorhees; Mario Maffei M.D., The Estate of Giocondo Navek; Annamarie Ibay, M.D., Lynda Bascelli, M.D., Jean Bertuola, and John Does, Docket No.: CAM-L-292-14, Atlantic City, New Jersey on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, cost of health insurance, household services, companionship services to spouse, companionship services to daughter, nighttime companionship services to spouse, advice and counsel services to spouse, advice and counsel services to daughter, medical advice, and guidance services and on-call services, April 21, 2017.

Maury Brown & Erica Brown vs. Waste Management Inc., Lubo Systems, Bollengraaf Recycling Solutions, Bollengraaf Recycling Machinery Group, Van Dyk Recycling Solutions, Van Dyk Baler Corporation, Hustler Conveyor Company, RRT Design & Construction, Enviro-Services & Constructors, Inc., and John Doe A to Z, ABC Company, A to Z, and XYZ Company, A to Z, individually, jointly, and/or severally, Docket No.: ESX-L-2680-13, Livingston, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, pre-

## Kristin Kucsma, M.A.

### *Deposition Testimony*

injury adjusted earnings in future years, post-injury adjusted earnings in future years, and household services, April 11, 2017.

Barbara Zwolinski, as Administrator of the Estate of Frank Zwolinski, deceased, and Barbara F. Zwolinski, Individually vs. Kenneth R. Kaufman, M.D., John and/or Jane Does, M.D. (1-10) fictional Defendants whose identities are unknown at the present time, Docket No.: MID-L-6623-2014, New York, New York, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services to spouse, companionship services to spouse, companionship services to children, nighttime (on-site, on call) services to spouse, advice and counsel services to spouse, and advice and counsel services to children, April 10, 2017.

Estate of Joshua A. Fischel by Amy Schwartz, Administratrix Ad Prosequendum, Harrison Fischel, an infant by his Guardian ad Litem, Amy Schwartz and Amy Schwartz, Individually vs. Lejla Mujic M.D., Dana DeOliveira, P.A., Paul Wangenheim, M.D., Barnabas Health/Saint Barnabas Medical Center, Consultants Inc. Cardiology, P.A., Emergency Medical Associates, et. als., Docket No.: ESX-L-4249-14, Summit, NJ,, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, companionship services to son, advice and counsel services to spouse, and advice and counsel services to son, April 7, 2017.

Roderick Trusty, Individually and as Personal Representative of the Estate of Julie Trusty and parent of minor children Blake Trusty and Baylee Trusty,  vs. Joy Patterson, ARNP, Gainesville Emergency Medical Associates, P.A., Charles Wilson, M.D., Clarence UY, M.D., Hospital Internal Medicine, P.A., North Florida Regioal Medical Center, Inc., d/b/a North Florida Regional Medical Center, Suzanne Zentko, M.D., Brian Werbel, M.D., Genevieve Farnham, ARNP, and Interventional Cardiologists of Gainesville, P.A., d/b/a The Cardiac and Vascular Institute, The Circuit Court of the 8th Judicial Circuit In and For Alachua County, Florida, Case No.: 2015-CA-004503, Roseland, NJ, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, family services to spouse, family services to children, support services to spouse, and support services to children, April 5, 2017.

Ilana Peretz and Meir Peretz as Guardian Ad Litem for Aviv Peretz, and Meir Peretz individually vs. Rudrani K. Belnekar, M.D., Alyssa Licata, R.N., Centrastate Healthcare System d/b/a Centrastate Medical Center, Central Jersey Emergency Medicine Associates, P.C., Donna Dolcemascolo, R.N., ABC Corps. 1-10 and John Does 1-10, Docket No.: MID-L-144-15, Roseland, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime earnings and cost of lifetime care, March 29, 2017.

Joseph Rohan vs. Wardlaw Claim Service, Inc., William Wardlaw, Frank Scarmardo, and Keith Scarmardo, Docket No.: CV 113-1116, Jericho, New York, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and cost of lifetime care, March 21, 2017.

# Kristin Kucsma, M.A.

### *Deposition Testimony*

Patricia Hoover and Noel Hoover vs. Kenneth Romano, M.D., Jeffrey Chalal, M.D., Freehold Area Radiology, PA; Freehold Radiology Group, PA, Freehold MR Associates, Centrastate Medical Center; John Does 1-100 (fictitious names, true identities unknown), Jane Does 1-100 (fictitious names, true identities unknown), ABC Clinic 1-100 (fictitious names, true identities unknown), and ABC Hospital 1-100 (fictitious names, true identities unknown), Docket No.: MON-L-3150-13, Livingston, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, pension income, household services, cost of lifetime care, and special care services, March 10, 2017.

Jane Ashton vs. NAC Foods Corp., Lambert Management Corp., Julio Linares, John Doe 1-10 and ABC Corp. 1-10 (fictitious names), Docket No.: ESX-L-6411-14, Livingston, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, and household services, March 9, 2017.

Walter Hamilton and Dianna Hamilton, Individually and as Legal Guardians of the Person and Estate of Kaitlin Hamilton, an incapacitated person, vs. Bayer Healthcare Pharmaceuticals, Inc., Bayer Pharma AG, Bayer Corporation, Bayer Healthcare LLC, Bayer Healthcare AG, and Bayer AG, United States District Court Southern District of Illinois, No.: 3:11-cv-13465-DRH-PMF, Livingston, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime adjusted earnings and cost of lifetime care, February 22, 2017.

Neelan S. Phalke, Executrix of the Estate of Hari Phalke, Deceased, Neelam S. Phalke, Individually and Shriniwas P. Phalke, her husband, Individually, Shriniwas P. Phalke, Per Quod vs. Palisades Medical Center, Hackensack University Health Network, Dr. Mark Brescia, Dr. Jeremy Moon, Brescia and Migliaccio, MDs, Dr. Mary Nath, Michelle Caratozzolo, RN, ABC Corporation 1-10 (fictitious hospitals, professional associations, partnerships, corporations or other entities who employed or had agency relationship with any other named defendants); John Doe 1-10 (fictitious names of individuals, physicians, medical personnel, sole practitioners, physicians's assistants, professional associations, partnerships, corporations or other entities who rendered medical care to Neelam S. Phalke and/or Hari Phalke), Jane/Joe Roe 1-10 (fictitious names of individual registered nurses, licensed practical nurses, nurse practitioners, and/or other healthcare providers who rendered medical care to Neelam S. Phalke and/or Hari Phalke); j/s/a, Docket No.: HUD-L-4062-14, Livingston, NJ, on behalf of the plaintiff, wrongful death proceeding, opinion regarding financial support to parents, companionship services to parents, advice and counsel services to parents, February 14, 2017.

Maria Cuevas vs. Park & Sixth Gastropub, The Estate of Rudolph Maurizi, Konabona III, LLC., John Doe 1-4 (a fictitious name) and ABC Corp., 2-4 (a fictitious corporation), Docket No.: HUD-L-1644-15, Livingston, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, and household services, February 14, 2017.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Eileen Mullen vs. James M. Chimenti, M.D.; Jay More, M.D.; Neurosurgical Associates of Central Jersey, Raritan Valley Surgery Center, Docket No.: SOM-L-1499-12, Livingston, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted pre-injury earnings in past years, adjusted pre-injury earnings in future years, cost of health insurance, and cost of lifetime care, February 13, 2017.

Jose Bauta vs. Greyhound Lines Inc., Sabrina Anderson, Akos Gubica, Karoly Gubica, CAV Enterprise, LLC, First Group America, Inc. and First Group PLC, Docket No.: 14-3725, New York, New York, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and cost of lifetime care, January 27, 2017.

Pasquale Mastriani and Linda Mastriani vs. FCA US, f/k/a Chrysler Group, LLC on its own and as successor in interest to Old Carco, LLC., Johnson Controls, Inc., ABC Corps, 1-10 and Def Corps 1-10, Civil Action No.: 2:15-cv-00629-SDW-SCM, Roseland, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and cost of lifetime care, January 24, 2017.

Yassien Abdelhamid by his Guardian Ad Litem, Mohammed Abdelhamid, and Mohammed Abdelhamid and Salma Individually vs. Keith Williams, M.D., Kenneth Covone, D.O., John Does (fictitious names of healthcare providers who participated in the prenatal care and labor and delivery, whose culpability and/or identities are not presently known), Kennedy Memorial Hospital and ABC Groups (fictitious names of groups, businesses, entities, practices, partnerships, whose identities are not currently known, but of whom any individual healthcare provider is an agent, servant and/or employee), Docket No.: GLO -L-1738-14, Chatham, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime earnings and cost of lifetime care, January 13, 2017.

David A. Jablow Executor of the Estate of Anne S. Jablow, Deceased, and David A. Jablow, Individually vs. Wendy J. Wagner, M.D., Lifetime Ob/Gyn, Somerset Medical Center and John and Jane Does Physicians 1-10 (names being fictitious), Docket No.: SOM-L-1182-13, Livingston, NJ, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, January 8, 2017.

Frederick B. Ashplant, Administrator Ad Prosequendum of the Estate of Laura Ann Ashplant and Frederick B. Ashplant, Individually vs. Ashraf Anani, M.D., Gennaro Marino, D. O., Akbar Khan, M.D., Jonathon Stillman, M.D., Lisa Steven, M.D., Bonnie Cheng, M.D., Aravinda Reddy, M.D., Nidal Matalkah, M.D., Patrick Hines, M.D., Lawrence Guarino, M.D., Richard E. Krieger, M.D., Richard E. Krieger, M.D., P.A., Chilton Memorial Hospital, Chilton Medical Center, Chilton Hospital, Atlantic Health System, Inc., Chilton Hospital Practice, P.C., Chilton Emergency Physicians, LLC, House Physicians of Chilton, LLC, ID Care, ID Associates, P.A., Infectious Disease Care, North Jersey Gastro, North Jersey Gastroenterology and Endoscopy Associates, P.A., Wayne Hills Medical Associates, P.A., Montclair Radiology, Montclair Radiological Associates,

# Kristin Kucsma, M.A.

## *Deposition Testimony*

P.A., Gastrointestinal Group of North Jersey, P.A., John Doe, M.D., and/or Mary Doe, M.D., one through ten (fictitious names), John Doe and/or Mary Doe one through ten (fictitious names) and ABC Corporations, one through ten (fictitious names), Docket No.: ESX-L211-14, Morristown, NJ on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, and advice and counsel services to spouse, January 5, 2017.

Kaylee Sebastiao, by G/A/L Amanda Loeffler and Amanda Loeffler, Individually vs. Laura B. Klein, M.D., Jennifer Kertesz, M.D. and Hunterdon Medical Center, John Does (fictitious names of healthcare provider(s) who participated in the prenatal imaging studies and testing of Amanda Loeffler and her unborn child Kaylee Sebastiao whose identities and culpability is of presently unknown); ABC Groups (fictitious name of group, entity, partnership of whom any decedent is an agent servant or employee whose actual name or designation is not presently known), Jane Roes (fictitious names of healthcare providers who participated in the prenatal imaging studies and testing of Amanda Loeffler and thereby her unborn child Kaylee Sebastiao, whose identities and culpability is not presently known); All Women's Healthcare, Lifeline Medical Associates, LLC, Barbara Reale, CNM, Barbara LaBrie, CNM, and Mamie Bowers, M.D., Docket No.: SOM-L-1378-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care for Kaylee Sebastiao, January 3, 2017.

Basilia D'Amico, Individually and as Administratrix Ad Prosequendum of the Estate of Franco D'Amico vs. Meherwan Burzor Joshi, M.D., Oscar E. Verzosa, M.D.,  Ellen T. Leavell, M.D., Paul J. Bolanowski, M.D., Vanessa Mae S. Abrina, M.D., Trinitas Regional Medical Center, Rutgers, The State University, ABC Entities 1-10 and John Does 1-20, unknown entities and persons, Docket No.: UNN-L-0788-15, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, Social Security income, household services, companionship services to spouse, nighttime companionship services to spouse, companionship services to son, advice and counsel services to spouse, and advice and counsel services to son, December 21, 2016.

Cheryl Grasso and Brian Grasso, Individually and as Parents and Natural Guardians of Gianna Grasso, a minor vs. Phillip D'Arrigo, MD, Individually, and/or d/b/a Phillip D. D'Arrigo, M.D., PA, Inspira Medical Center Vineland, Individually and/or d/b/a South Jersey Regional Medical Center, Lisa Cox, RN, Jane Doe, CRNM, Sue Ferzetti, RN, Gladys Colon, RN, Jane Doe, RN, Louis Wesley, M.D., Reliance Medical Group, Thomas Westover, M.D., Atlanticare Regional Medical Center Division of Maternal Fetal Medicine and Ann Riley Spoltore, CNM, Docket No.: CUM-L-1018-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime earnings and cost of lifetime care, December 15, 2016.

Hilda Razzaghi, Administratrix Ad Prosequendum for the Estate of Payman Houshmandpour, and Hilda Razzaghi, Individually vs. Virtua Health Inc., a/k/a Virtua Voorhees; Mario Maffei M.D., The Estate of Giocondo Navek; AnnamarieIbay, M.D., Lynda Bascelli, M.D., Jean Bertuola, and John Does, Docket No.: CAM-L-292-14, Atlantic City, New Jersey on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, cost of health insurance, household services,

## Kristin Kucsma, M.A.

### *Deposition Testimony*

companionship services to spouse, companionship services to daughter, nighttime services to spouse, advice and counsel services to spouse, advice and counsel services to daughter, medical advice and guidance services, and on-call services, December 12, 2016.

Angela Kuhn, vs. Advanced Surgery Center, LLC, Docket No.: BER-L-9778-13, Parsippany, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, adjusted commission income, and compensation for excess taxes, December 8, 2016.

Brownislawa Malek, vs. Hahn Automotive Warehouse, Inc., et al., Docket No.: MID-L-4868-15, Livingston, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, December 5, 2016.

William Marks representative of the Estate of Jeanne Marks vs. Brian Coleman, M.D.; Justin Bartl, PA-C; South Palm Orthopedics, P.A. and Delray Medical Center, Inc., The Circuit Court Of The 15th Judicial Circuit in and for Palm Beach County, Florida. Docket No.: 2015CA013574 Livingston, NJ, on behalf of plaintiff, wrongful death proceeding, opinion regarding adjusted income, household chores, family services to spouse, and support services to spouse, November 23, 2016.

Shawn J. Hilborn, Individually, and as Father and next Friend of Ethan Hilborn, a minor, Emma Hilborn, a minor, and Ella Hilborn, a minor & Jessica Hilborn, Individually, and as Mother and next Friend of Ethan Hilborn, a minor, Emma Hilborn, a minor, and Ella Hilborn, a minor & Christopher Coombs, Individually, and as Father and next Friend of Lydia Coombs, a minor and Quinton Coombs, a minor, & Courtney Coombs, Individually and as Mother and next Friend of Lydia Coombs, a minor, and Quinton Coombs, a minor vs. Keating-Severson Hospitality, Inc., d/b/a Holiday Inn Express Hotel & Suites, Kankakee County, Illinois, Case No.: 12L53, Livingston, NJ, on behalf of plaintiffs, personal injury proceeding, opinions regarding adjusted earnings in future years, lifetime adjusted earnings, and cost of lifetime care, November 22, 2016.

Diane Carrion and John Carrion, vs. Mountain Creek Resort, Inc., John Does 1-10 ( fictitious defendants), ABC defendants ( fictitious defendants), Docket No.: SSX-L-315-14, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of lifetime care, and household services, November 14, 2016.

Michael Fava, vs. Vincent Moss, M.D., Harold Chung-Loy, M.D., Surgical Practices Associates, JFK Medical Center, John Does (fictitious names of those persons whose true identities and/or culpability are not presently known), et als., Docket No.: MID-L-4567-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, November 11, 2016.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Gail Infantes and William Infantes vs. Steven Binenebaum, M.D., Sukrat Dwivedi, DO, Andrew Lee, M.D., Tisha Tan, M.D., Ajay Mathur M.D., Barnabas Health Inc., Monmouth Medical Center, Specialty Surgical Associates, et als., Docket No.: ESX-L-8893-14, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding household services, and care services, November 7, 2016.

Monica Sanchez and Joseph Sanchez, Individually, and on behalf of their minor son, Mason Sanchez vs. South Miami Hospital, Inc., Kathy Sweat, R.N., Ann Podrasky, M.D., Radiology Associates of South Florida, P.A., Susan S. Chi, M.D., et als., Docket No.: 2015-010268-CA-01, Woodbridge, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime adjusted earnings, and cost of lifetime care, October 28, 2016.

Kevin Rakowski, vs. Life Time Fitness, Inc., Todd Slechten and Paul Russo, Docket No.: UNN-L-910-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance and compensation for excess taxes, October 26, 2016.

Ivette Montanez and Peter Montanez, her spouse vs. American Honda Motor Co., Inc., et als., Docket No.: 190409/2014, Livingston, New Jersey, on behalf of plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, household services and care services, October 11, 2016.

Patricia Hoover and Noel Hoover, vs. Kenneth Romano, M.D., Jeffrey Chalal, M.D., Freehold Area Radiology, PA; Freehold Radiology Group, PA, Freehold Mr Associates, Centrastate Medical Center, et als., Docket No.: MON-L-3150-13, Livingston, New Jersey, on behalf of plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, pension income, household services and cost of lifetime care, October 7, 2016.

Joaquin Ruiz, vs. Brian P. Stack, Union City, Brian Civic Organization, Docket No.: HUD-L-0971-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, and pension income, October 6, 2016.

Michael Figueroa, vs. The City of Union City, Brian Stack in his individual and official capacity, Brian Stack Civic Association, and John and Jane Doe 1-10 (fictitious yet to be identified), Docket No.: HUD-L-3590-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, and pension income, October 6, 2016.

Jorge A. Porress vs. Mayor Brian P. Stack in his individual and official capacity, City of Union City, Brian Stack Civic Association, Docket No.: HUD- L-3119-15, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, and pension income, October 6, 2016.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Mark Julve vs. The City of Union City, Brian Stack in his individual and official capacity, Brian Stack Civic Association, Docket No.: HUD-L-770-15, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, and pension income, October 6, 2016.

Nawal Esawy a minor, by and through her father and guardian ad litem, Nasser Esawy, vs. Joseph Kyu Chong, M.D., Lawrence G. Adelsohn, M.D., Hackensack University Medical Center, Mary Kondolean, M.D., Yaakove Abdelhak, M.D., Genea Lawrence, M.D., et als., Docket No.: BER-L-7894-14, Woodland Park, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime adjusted earnings, October 4, 2016.

Maurice R. Grassia, Jr., Executor of the Estate of Elisabeth K. Garssia, on behalf of All Wrongful Death and Survival Action Claimants vs. Underwood Memorial Hospital, Inspira Medical Center Woodbury, Inc., Inspira Health Network, Inc., et als., Docket No.: CAM-L-002024-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding companionship services to sons, and advice and counsel services to sons, September 26, 2016.

Alexander Son vs. Derrick Senior, New Jersey Transit Corporation, State of New Jersey, John Does 1-20, Docket No.: ESX-L1380-15, Roseland, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, September 23, 2016.

Estate of Richard L. Henry, Jr., by Donna Henry, Administratrix of the Estate of Richard L. Henry, Jr., and Donna Henry, his wife individually, vs. Robert Brautigan M.D., Jaxon Fernandes, M.D., Katherine Hanify, D.O. Christopher Boni, D.O., et als., Docket No.: ESX-L-4174-14, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, cost of health insurance, companionship services to spouse and children, advice and counsel services to spouse and children, and household services, September 23, 2016.

Jeffrey Boslet, vs. Randy Klein, M.D., The Doctor Is In and John Does 1-100, Docket No.: HNT-L-127-14, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of healthcare insurance, pension income, and cost of lifetime care, September 20, 2016.

Louis Cesaro, Jr., and Ritta Cesaro, his wife vs. Anthony Garcia and LLC Air Cheff Holdings, et als., Docket No.: PAS-L-835-15, Elmwood Park, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance, September 19, 2016.

Donna Jamieson vs. Saad Chuadrhary, M.D., North Jersey Orthopaedic Institute, UMDNJ-New Jersey Medical School/Rutgers-New Jersey Medical School, et als., Docket No.: ESX-L-5291-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of lifetime care, September 6, 2016.

# Kristin Kucsma, M.A.

## *Deposition Testimony*

Angel Alvarado, Administrator Ad Prosequendum of the Estate of Judith Alvarado, and Angel Alvarado, individually vs. Joseph Popovich, M.D., Christ Hospital, et als., Docket No.: HUD-L-003655-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and sons, and advice and counsel services to spouse and sons, September 2, 2016.

Kyle Generale vs. Julie Ashton, M.D., Howard Cory, M.D., John Does, et als., Docket No.: MRS-L-316-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, August 22, 2016.

Ann Marie De Candia vs. Douglas J. Spiel, M.D., James Scott Schoeb, M.D., NJ Spine Center, Middlesex Surgical Center, et als., Docket No.: MID-L-0001-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted pre- and post-incident earnings in future years, and household services, August 17, 2016.

Deoborah J. Stazak and Shawn M. Stazak, her husband vs. Bayonne Medical Center, John Does 1-10, et als., Docket No.: MID-L-4453-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, pension income, and cost of lifetime care and household services, August 16, 2016.

Stephanie O'Neill Lingenfesler by and through Robert O'Neill and Theresa O'Neill, her parents and Legal Guardians of her person and Estate vs. United States Parcel Services, Inc., and Adel A. Elsalam and Champps of Marlton, Inc. d/b/a Champps, et als., Docket No.: CAM-L-3:03CV1223, Philadelphia, Pennsylvania, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of lifetime care, August 15, 2016.

Susan Boleck and Alex Kardos vs. Diane Foreman, R.N., APN, Carolina Biala, R.N.,University Medical Center At Princeton, et als., Docket No.: SOM-L-1490-11, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings and cost of lifetime care, August 8, 2016.

Bernard Belzi, Individually and as Personal Representative of the Estate of Patricia Belzi, deceased, and as legal guardian and parent of Abigail Belzi, minor vs. Plantation General Hospital Limited Partnership, d/b/a/ Plantation General Hospital, et als., Docket No.: 15-3711MA, Fort Lauderdale, Florida, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and daughter, and advice and counsel services to spouse and daughter, July 18, 2016.

Ethan Slater, a minor by and through his Guardians ad Litem, Danielle Karol and George Slater, Individually vs. Joseph C Canterino, M.D., Rutgers, The State University of New Jersey, et als., Docket No.: 1-4687-13, Livingston, New Jersey, on behalf of the defendant, personal injury proceeding, opinion regarding commentary on expert report, July 1, 2016.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Andrea Rachelle Clinton vs. Mentor Worldwide, LLC, Docket No.: 4-12cv-245 (CDL), Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and household services, July 1, 2016.

John D. Brown, as General Administrator and Administrator Ad Prosequendum of the Estate of Jonathan A. Brown, and John D. Brown, Individually, Bobbie Brown, David Brown, and Jashan Brown a minor, by his Guardian Ad Litem, Jasmine Page vs. Lorenzio Miller-Santos, AVIS Car Rental Company, et al., Docket No.: L-1443-12, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income to son, companionship services to son, and advice and counsel services to son, June 28, 2016.

Karen Del Rey and Paul Schmalz, vs. New Jersey Turnpike Authority, Hohn Knuth, et al., Docket No.: MON-L-2190-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance and household services, June 28, 2016.

Robert Morris Milloul vs. Knight Capital Group, Inc., Knight Capital Americas LLC, KCG Holdings, Inc., and Brendan Joseph McCarthy, Docket No.: HUD-L-2913-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance coverage, and compensation for excess taxes, June 27, 2016.

Ana Pereira vs. Michael P. Esposito, M.D., et al., Docket No.: MON-L-1397-12, Roseland, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime adjusted earnings and cost of lifetime care, June 24, 2016.

Christina Brigliadoro vs. Shaun Joypoop Chun, M.D., Valley Hospital, John Does 1-10, Jane Does 1-10, et al., Docket No.: BER-L-009615-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, cost of health insurance, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, June 23, 2016.

Yaseene Demir by G/S/L Aisha Asani and Aisha Asani and Ferdi Demir, individually vs. Sonia Gof, ST. Joseph's Regional Medical Center, et al., Docket No.: PAS-L-3103-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding pre-injury earnings in future years, post-injury earnings in future years, and cost of lifetime care, June 20, 2016.

Jeffrey Gorsak vs. Navistar, Inc. (f/k/a) international Harvester Company, et al., Docket No.: HNT-L558-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and household services, June 15, 2016.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Alison Caravaggio vs. Christine Ganitsch, M.D., Kerry Graebe, M.D., Malua Tambi Iya, M.D., Nina Reynolds, M.D., Ellen Williams, R.N., et al., Docket No.: MRS-L-3150-13, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of lifetime care, June 15, 2016.

Risa Rosenberg, individually and as Executrix of the Estate of Gerald Lazar vs. Englewood Hospital and Medical Center, Inc., Mitchell Spinnell, M.D., Russell Gura, M.D., et al., Docket No.: BER-L-1818-14, Mercerville, NJ, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services, companionship services to spouse and children, and advice and counsel services to spouse and children, June 6, 2016.

The Estate of Martin Yudko, Bryan Yudko as Administrator of the Estate of Martin Yudko and Ana Yudko, Bryan Yudko individually and Jennifer Zisa vs. Community Medical Center and Barnabas Health, Sal Security, et als., Docket No.: OCN-L-8042-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services, personal assistance for Ana, companionship services to children, and advice and counsel services to spouse and children, June 3, 2016.

Rebecca Zinnah, Individually and as Administratrix Ad Prosequendum on behalf of the Estate of John Zinna vs. Michael Omoh, M.D., Lukose Vadakara, M.D., Leon O'Neill, IV, D.O. Vadakara International Medicine Associates, et al., Docket No.: MER-L-687-14, Princeton, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, and advice and counsel services to spouse, June 2, 2016.

Dmitriy Markov as Administrator Ad Prosequendum of the Estate of Galina Volodina vs. Kanta Davessar, MD., Micheale C. McGinnis, M.D., Miracle Life Sciences, Inc. (F/K/A Plus Diagnostics), Docket No.: UNN-L-3807-14, Roseland, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and sons, and advice and counsel services to spouse and sons, June 1, 2016.

Michael Maccarrone, an infant by his Parents and Guardians ad Litem, Karla S. Maccarrone and Giuseppe Maccarrone vs. Kimball Medical Center, Inc., Eric Lehnes, M.D., Adam N. Repole, M.D., Ocean Gynecological Associates, P.A., et al., Docket No.: ESX-L-170-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted lifetime earnings and cost of lifetime care, May 23, 2016.

Mikael M. Safarian vs. American DG Energy Inc., John Does 1-20, being fictitious names vs. Multi Service Power Inc., Docket No.: 3:10-VC-06082-GEB-TJB, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding unpaid compensation, adjusted earnings in past and future years, cost of health insurance, and compensation for excess taxes, May 12, 2016.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Jann Benzillo and Cara Cangelosi Administrices CTA of the Estate of Frank Cangelosi vs. Dr. Jules Geltzeiler, Dr. Felix Fianko, Dr. Felix Garcia-Perez, Dr. Stephen Windsor, Dr. Susan Greenberg, Loretta Christensen, Jersey Shore University Medical Center,  and John Does 1-10, Docket No.: MON-L-4823-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, May 2, 2016.

Arthur Ruff, Individually and as Administrator Ad Prosequendum of the Estate of Jimeta Yashone Moseley-Ruff vs. Newark Beth Israel Medical Center, Yvonne Wright-Cadet, M.D., Monroe Karetzky, M.D., Martin Larry Gimovsky, M.D., and David Nunez, M.D., Docket No.: ESX-L-6561-08, Roseland, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, April, 28, 2016.

Todd Lopez, As Personal Representative of the Estate of Fernando Flores; and Catalina Flores Rico vs. Devon Energy Production Company, LP, McVay Drilling Co., Armando Arenivas, Plaster & Wald Consulting, Corp., Bruce Holman, Sierra Engineering, LLC, and Allen Whiteplume, Docket No.: D-10-CV-2013-01720, East Elmhurst, New York, on behalf of the plaintiff, wrongful death proceeding, opinion regarding punitive damages, April 13, 2016.

Stanley Witczak, III vs. Township of Morris, Morris Township Police Department, Deputy Mayor Bruce D. Sisler, H. Scott Rosenbush and John and Jane Does 1-10, Docket No.: MRS-L-1962-13, Little Falls, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, pension income, and compensation for excess taxes, April 11, 2016.

Elisabeth Walter vs. Ramapo Indian Hills Regional School District, RIH Board of Education As Supervisors of Plaintiff and John Does 1-5, fictitious names of agents, employees and/or supervisory employees of the Ramapo Indian Hills Regional School District, Responsible for causing harm to Plaintiff, Docket No.: BER-L-000629-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, pension income and compensation for excess taxes, April 11, 2016.

Judith Kroll vs. Lin Chou, M.D., Internal Medicine Associates of Somerset, John Does (fictitious names), and ABC Groups (fictitious names), Docket No.: MER-L-1446-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, March 28, 2016.

Karen Rochester, as Administratrix of the Estate of Collin T. Rochester, deceased vs. County of Nassau, Mario Mastropierro, Christopher M. McCarthy, et al., Docket No.: 10-CV-6017, Islandia, New York, on behalf of the plaintiff, wrongful death proceeding, opinion regarding financial support to mother, special care services to mother, and advice and counsel services to mother, March 22, 2016.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Antonio Parracho and Dina Parracho, his wife vs. Compact Power Services, J& D Manufacturing, Interlake Mecalux, Electric and John Doe(s) 1-7 as fictitious names true names being unknown, Docket No.: MID-L-4412-13, East Brunswick, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance, March 11, 2016.

Charles Perrine, Adminstrator and Administrator Ad Prosequendum of the Estate of Charles Picciotto Perrine and Charles Perrine, Individually vs. Anthony Giovine, D.O., Joanne Change, M.D., A Woman's Place, et al., Docket No.: MON-L-2912-13, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, and advice and counsel services to spouse, March 3, 2016.

Patricia T. Conn, as the Executrix Ad Prosequendum of the Estate of David W. Conn, deceased and Patricia T. Conn, individually, and per quod. vs. Babylin Rebustillo, an individual, and Newton Memorial Hospital, a business entity a/k/a Newton Medical Center, et al., Docket No.: SSX-L-452-14, Edison, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted pension and disability income, social security income, household services, companionship services to spouse, and advice and counsel services to spouse, March 2, 2016.

Terry Polt vs. Andrew C. Loesberg, M.D., Hunterdon Radiology Associates, David F. Kroon, M.D., and Stephen M. Schwartz, M.D., et al., Docket No.: SOM-L-427-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, February 29, 2016.

Estate of Linda Pizzano by her Executor and Proposed Administrator Ad Prosequendum Thomas P. Pizzanno, and Thomas P. Pizzanno, individually, Docket No.: L-3443-13, Livingston, New Jersey, wrongful death proceeding, on behalf of the plaintiff, wrongful death proceeding, opinion regarding social security income, household services, companionship services to spouse and children, and advice and counsel to spouse and children, February 26, 2016.

Jesse Diaz vs. City of Trenton, James Hall, Leonard Carmichael and Qareeb Bashir, Docket No.: L1058-14, Merceville, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earning in the past and future years, adjusted pension benefits and compensation for excess taxes, February 25, 2016.

Lorraine Notorfrancesco vs. Surgical Monitoring Associates, Inc., and Specialty Care, Inc., et al., Docket No.: 2;09-CV-01703, Cherry Hill, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, and compensation for excess taxes, February 24, 2016.

Dennis Lamond and Theresa Lamond husband and wife Plaintiffs vs. Tishman Construction Corp., Weatherby Construction and Renovation Corp., Network Construction Company, Inc., et al., Docket No.: ATL-L-002413-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury

# Kristin Kucsma, M.A.

## *Deposition Testimony*

proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance and household services, February 16, 2016.

Luis Henriques, vs. Luis Juarbe-Grajales, Hollywood Memorial Park Company, Docket No.: MID-L-5308-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance and household services, January 15, 2016.

Holly Callan, Executrix of the Estate of James Andrew Callan and Holly Callan, individually vs. Syed Siddiq, M.D., George Poisni, M.D., Somerset Pulmonary, Somerset Medical Center, John Doe Physicians, M.D., 1-10 (names being fictitious) and Jane Roes, RNS 1-10 (names being fictitious), Docket No.: SOM-L-379-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and son, and advice and counsel services to spouse and son, January 12, 2016.

Stephen Buckley and Patricia Buckley vs. Edgardo Ong, M.D., Mazrn Itani, M.D., Michael Resnikoff, M.D., Hackettstown Regional Medical Center, et al., Docket No.: MRS-L-1813-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance and cost of lifetime care, December 28, 2015.

Laura Schneider vs. The Depository Trust & Clearing Corporation and Anthony Alizzi, Docket No.: HUD-L-5096-13, Florham Park, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, cost of healthcare insurance, and compensation for excess taxes, December 9, 2015.

Antoinette Heather Cooper vs. Walmart Stores, Inc., Susan Demiraslan and David Dorsey, Docket No.: BUR-L-2018-13, Cherry Hill, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings and compensation for excess taxes, December 8, 2015.

Elizabeth Way and Stuart M. Way vs. George T. Besong, M.D., George T. Besong, M.D. OBGYN, LLC d/b/a/ Women's Health Resource Center; and Southwest Volusia Healthcare Corporation d/b/a Florida Hospital Fish Memorial, and C.R.. Bard Inc., Docket No.: 2011-10945-CIDL, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance and lifetime care, December 4, 2015.

Glenn R. Jones vs. Rutgers, The State University of New Jersey, Lester Aron, William F. Owen, Jr., and Kevin M. Barry, Docket No.: ESX-L-7138-11, Newark, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, pension income, and compensation for excess taxes, November 24, 2015.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Katrina Sandy and Norman Sandy vs. The Brickman Group, LLC, ABC Corporation 1-20 (one or more fictitious corporations), DEF Company 1-20, (one or more fictitious companies), their agents, serventas, and/or employees, John and/or Jane Doe 1-20 ( names being fictitious), Docket No.: MER-L-411-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earning in past and future years, and household services, November 10, 2015.

Cecilia Samson vs. Almallah, et al., Docket No.: Not provided, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, November 2, 2015.

Estate of Gregory Polvere, by his Administratrix Angela Polvere, and Angela Polvere individually vs. The Valley Hospital, The Valley Health System, The Valley Heart & Vascular Institute, Jason Sperling, M.D., Anatoly Volkov, M.D., et al., Docket No.: L-4576-13, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, October 20, 2015.

Estate of Angel Rodriguez, by Melony Rodriguez, Administratrix ad Prosequendum and Melony Rodriguez individually vs. Yvan D. Ducheine, M.D., Robert Roe 1-100 ( A fictitious name) , Newark Beth Israel Medical Center, St. Barnabas Health Care System, et al., Docket No.: ESX-L-10375-11, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding,  opinion regarding lifetime income, household services, companionship services to spouse and children, and advice and counsel to spouse and children, October 19, 2015.

Michelle Komlodi vs. Patel, M.D., et al., Docket No.: MID-L-02512-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, October 19, 2015.

Estate of Michael Blotsky by his Administrator Minerva Blotsky, and Minerva Blotsky , individually vs. Saint Barnabas Medical Center, Kalyani Theivanayagam, M.D., Manickam Ganesh, M.D., Lawrence Rosenthal, M.D., Matthew Askin, M.D., Courtney Quinn, M.D., Mei Kwang, M.D., Samuel Bride, M.D., Ronald Chamberlain, M.D., Debra Arrantino, M.D., Mark Gilder, M.D., Alan Garten, M.D., Barry Julius, M.D., Mark Laible, M.D., et al., Docket No.: ESX-L-6069-12, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, and advice and counsel services to spouse, October 15, 2015.

Lorraine Dasilva, Administratrix of the Estate of John Dasilva, deceased vs. Philip J. Olivieri, M.D., Atlantic Cardiology Group, LLP, Steve Xydas, M.D., Mid-Atlantic Surgical Associates, Michael H. Leonardo, M.D., Igor F. Agaronin, M.D., Morristown Medical Center, Paul Derenzi, M.D., Lakeland Cardiology Center, et al., Docket No.: SOM-L-536-13, Woodland Park, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted Social Security

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Income, net pension benefits, household services, companionship services to spouse and children, and advice and counsel to spouse and children, October 5, 2015.

C. Charles Zanna and Barbara Zanna, his wife v Advanced Orthopedics & Neurosurgery, LLC, Jeffrey Oppenheimer, M.D., John Does, M.D.( A fictitious name), Docket No.: MRS-L5433-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, September 28, 2015.

Joseph Fleischman vs. Direct Energy Services, LLC, and Gateway Energy Services Corporation, Docket No.: L-2638-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted commission in past and future years, September 11, 2015.

Robert Lipman and Maryanne Lipman, his wife vs. Michael Kozaczek, M.D., Aditi Dhakar Modi, M.D., Morristown Memorial Hospital , ABC Groups (the fictitious name of any group, practice, entity, organization, association of any kind, whose correct name is not known, of which any defendant is an agent, servant or employee), et al., Docket No.: MRS-L-493-13, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, health insurance, pension income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, August 31, 2015.

Monica Smolyar, infant by her Mother and Natural Guardian, Suzanne Smolyar, Monica Smolyar, individually vs. Yvette A Bridges, M.D., Charles H. Bowers, M.D., Mark Einstein, M.D., Matthew D. Horn, M.D., Kristina A. Bakery, R.N., Chunping Zheng, R.N., Linda Paschik, R.N., Sedat Surmeli, M.D., St. Barnabas Medical Center and Suburban OB/GYN Speciality Group, Docket No.: ESX-L-5833-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding opinion regarding adjusted earnings and cost of lifetime care, August 21, 2015.

Estate of Ainsworth Mallett et al., vs. Schmidt Baking Co., Inc. et al., Docket No.: 1:14-CV-02438-JEI-KMW, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding companionship services to daughter and sister, advice and counsel services to daughter and sister, and on call services to daughter and sister, August 21, 2015.

Arlene Simpson, vs. Magnolia Development, LLC; Medical Facilities Condo Association; AC Restoration, LLC; Interstate Power Washing, LLC, et al., Docket No.: MID-L-8227-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, August 7, 2015.

Paul Reichenberg, Individually and as Executor of the Estate of Ellen Reichenberg vs. Barbara McCormack, M.D., Violet Merle Mcintosh, M.D., Johen Doe 1-10 (a fictitious name), Jane Doe, R.N. (1-10) (a fictitious name), and Women 's Physician OB/GYN, Docket No.: BER-L-7321-12, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and son, and advice and counsel services to spouse and son, July 30, 2015.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Solande Destin vs. Lara Paul, et al., Docket No.: ESX-L-1496-14, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in future years, pension income and household services, July 30, 2015.

John Garvey vs. John Clemente, M.D., Sanjay Misar, M.D., Jersey Shore Medical Center, John Does 1-10 ( a fictitious name representing a class of fictitious medical providers involved in the medical care of John Garvey), Docket No.: MON-L-5740-10, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and household services, July 23, 2015.

Regina Fucile vs. Dr. Robert Pampin, Newton Medical Center, Dr. Stephen Golombek, Morristown Medical Center, Dr. Christopher O. Okechukwu ( formerly pleaded as John Doe A), Dr. Ellen Benson ( formerly pleaded as John Doe A), John Does B-Z, (said names being fictitious as their identities are presently unknown), and Jane Does B-Z, (said names being fictitious as their identities are presently unknown), Docket No.: MRS-L-2260-12, Livingston New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance and cost of lifetime care, July 17, 2015.

Joan Pykosh, individually and as Executrix of the Estate of Michael Pykosh vs. James Najarian, M.D., and John Doe 1-100, Docket No.: MRS-L-757-13, Parsippany, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services to spouse, companionship services to spouse and advice, guidance and counsel services to spouse, July 1, 2015.

Mark Vamos vs. New Jersey-American Water Company, Inc., American Water Works Service Company, Inc., Pasquale Lombardi Trustee and/or Pasquale Lombardi Revocable Living Trust Dated June 29, 2009, ABC Co (1-5), John Doe (1-5), (said names being fictitious and unknown, hereby used to connote ether singular or plural individuals and/or companies, corporations or entities, who may have controlled, owned, operated, maintained, constructed, inspected, supervised, managed, repaired, the subject premises), Docket No.: UNN-L-3793-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, pension benefits and household services, June 12, 2015.

Edward Kohler vs. TE Wire & Cable LLC, Docket No.: ESX-L-1447-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance and compensation for excess taxes, June 5, 2015.

Patricia Spahr, Individually and as Administratrix and Administratrix ad Prosequendum of the Estate of Richard Spahr vs. Eddie Santiago, M.D., Stephen Windsor, M.D., Susan Greenberg, M.D., West Park Medical Center LLC, St. Barnabas Health Care System, Monmouth Medical Center, Adult Medical Oncology Hematology Group, LLC, et al., Docket No.: MON-L-487-13, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income,

# Kristin Kucsma, M.A.

### *Deposition Testimony*

household services, companionship services to spouse, son and granddaughter, and advice and counsel services to spouse, son and granddaughter, June 4, 2015.

Ivanka and Andrew Jovic vs. Rakesh K. Sahni, M.D., et al., Docket No.: UNN-L-998-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance, medical costs and household services, May 29, 2015.

Kenneth C. Reed III and Ruth E. Reed vs. 3M Co. (F/k/a Minnesota Mining & Manufacturing Co.), et al., Docket No.: ASB-DBD-VC-12-6011052-S, West Orange, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance in past and future years, and household services, May 27, 2015.

Marlowe Botti vs. Borough of West Long Branch, Borough of West Long Branch Police Department and Chief of Police Arthur N. Cosentino, individually and in his official capacity, Docket No.: MON-L-3327-12, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, adjusted pension income and compensation for excess taxes, May 21, 2015.

Vanessa Russy and Lee Russy vs. Hackensack University Medical Center and Jerry Barrata, D.O., Docket No.: BER-L-3606-12, Fort Lee, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance, pension income and household services, May 15, 2015.

Thomas McDaniel, Jr., Administrator and Administrator Ad Prosequendum of the Estate of Tashema Fisher McDaniel and Thomas McDaniel, Jr. Individually vs. William Dalsey, DO., Kimball Medical Center, Saint Barnabas Emergency Physicians Group, Emergency Medical Associates, P.A., Emergency Medical Associates of New Jersey, PA, ABC Groups 1-10 (Fictitious names), John Does 1-10 (Fictitious names), Docket No.: OCN-L-181-13, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, May 12, 2015.

Carmine S. Cortese, as Executor of the Estate of Barbara Anne Cortese, deceased, and on behalf of the heirs-at-law of Barbara Anne Cortese, decease and individually vs. Kanga N. Sundarm, M.D., Allergy and Clinical Immunology Center, P.A., Aaron Chevinsky, M.D., John Does 1-10 ( a fictitious name), and Allied Surgical Group, P.A., Docket No.: MRS-L-817-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel to spouse and children, May 12, 2015.

Soraya Rodriguez vs. Melissa A. Casale, Yu Li, Mary Ann T. Ruglio Santor, Maryann Ruglio Santorella, Allstate Insurance Company, ABC Corporations 1-100 (names being fictitious) and John

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Does 1-100 ( Names being fictitious), Docket No.: L3803-13, Livingston, New Jersey, on behalf of the plaintiff,  personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance and household services, April 29, 2015.

Elif Kose, a minor by and through her Parent and Natural Guardian, Ali Kose vs. Springs Industries, Inc, Springs Window Fashions, LLC, Springs Window Fashions Manufacturing Co. USA, Inc., Beautiful Window Enterprise Co., LTD., Home Depot USA, Inc., Bill Tetkoski Irene Caputo, John Doe, Inc., (1-20) ABC, Inc. (1-20) Fictitious names representing a class of as
yet unknown individuals, corporations or partnership who sold, marketed, maintained, manufactured, designed and/or supplied the Product or component of the Product Docket No.: L-2166-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime earnings and cost of lifetime care, April 9, 2015.

Maria Zarzabal, individually and as Administratrix of the Estate of Francisco Gonzalez vs. Atlantic Emergency Associates, P.A., Nacy Hayes, RN, Candace Leonard, RN, Darlene Chornomaz, APN, Henry L. Souto, DO, Mark A. Schmidheiser, MD, Sheryel D. Martin, MD, Catherine Dudick, MD, Jeffrey D. Anderson, MD, and Atlantic Regional Medical Center, Inc. Docket No.: ATL-L-09829-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel to spouse and children, April 17, 2015.

Lucia Lawrence vs. East Coast Tile d/b/a Best Tile, Angelo Paladino, Stanley Araino, John Doe 1-5 and ABC Corp 1-5 ( names being fictitious as true identities are unknown at this time), Docket No.: MID-L-4003-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance, and compensation for excess taxes, April 1, 2015.

John Kearney vs. Glenda E. Roasa, R.N., Holy Name Medical Center, John Doe and Jane Doe (1-100) and ABC Corp (1-100) (fictitious names/entities unknown), Docket No.: BER-L-6312-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance and pension income, March 25, 2015.

Estate of Malissa Eisenhauer and Justin L. Eisenhauer vs. Southern Ocean County Hospital, John Armstrong, D.O, Rosallia C. Riguerra, M.D., Kimberly Jones, M.D., Laurie Sawyer, R.N. L Charanjit Vedi, M.D., Theresa Otte, R.N., Denise Wachter, R.N., Raymond P. Mantovani, M.D. and or John Does 1-10, individually, jointly & severally, Docket No.: OCN-L-564-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, March 13, 2015.

Estate of Alice Lee by the Administrators of the Estate, Judianna Lau and Peter Lau, individually, Wai Lee and Yau Lan Lee vs. Harinder S. Uppal, Garden Leasing Inc., Lee Transport Systems,

## Kristin Kucsma, M.A.

### *Deposition Testimony*

LLC, Lee Transport Inc., L. Jays Leasing, Sunoco Logistics, John Doe 1-5, John Doe Inc. 1-5, Richard Roe 1-5, Richard Roe Inc. 1-5, Docket No.: L-6176-16, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding lost income to estate, companionship services to parents, and advice and counsel services to parents, March 13, 2015.

Estate of John Kelly, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, life insurance premium differential, household services, companionship services to spouse and children, and advice and counsel to spouse and children, March 11, 2015.

Maria Ortiz, Executrix and Individually of the Estate of Pascual Ortiz vs. Glen Mogan M.D., Advanced Gastroenterology, Neil Lyman, M.D., Nephrological Associates; Alan Dembner, M.D., Imaging Consultants of Essex, et al., Docket No.: ESX-L-9422-11, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, March 10, 2015.

Debra Warren, Executrix of the Estate of Robert Warren and Debra Warren, individually vs. Christopher Muenzen, MD., Charles Carey, PA-C; John Doe, MD; Mary Roe, Rn and XYZ Corp. (Fictitious names), Docket No.: MRS-L-207-13, Roseland, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, championship services to spouse and children, and advice and counsel services to spouse and children, March 3, 2015.

Debra Weyhknecht Administratrix and Administratrix Ad Prosequendum of the Estate of Leon Weyhknecht, Jr. and Debra Weyhkencht, individually vs. Douglas Ross, M.D., John Does (fictitious names) and Internal Medicine Associates of Monmouth, P.C. and ABC Groups (fictitious names), Docket No.: MON-L-3729-13, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, March 2, 2015.

Anthony J. Lucca and Toni Lucca vs. Mary A. Sorenson, Docket No.: 1:12-cv-05890-JHR-KMW, Cherry Hill, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and household services, February 11, 2015.

Ana V. Sagastume and Byron Sagastume her husband vs. Roger E. Kelly, R.F. Chamberland, Inc., and/or XYZ Companies 1-5 (names being fictitious) and ABC Companies (1-10) (names being fictitious), Docket No.: 12-cv-05536-SRC-CLW, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and household services, February 10, 2015.

# Kristin Kucsma, M.A.

### *Deposition Testimony*

Joan and Coffey Wilson vs.  Holy Name Medical Center, et al., Docket No.: PIC-1995-STH, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, February 4, 2015.

Peggy Lucas, Executrix of the Estate of Arthur Lucas, decease and Peggy Lucas in her own right
 vs. Greogry Noto, M.D., Ashish B. Patel, M.D., Monmouth Cardiology Associates, John Does, D.P.M. 1-10, John Does, M.D. 1-10, Jane Does, R.N. 1-10 ABC Corporations 1-10, Docket No.: MON-L-4461-12, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services, companionship services to spouse, and advice and counsel services to spouse, January 30, 2015.

Jacquelyn Mangini, Administratrix Ad Prosequendum of the Estate of John Mangini and Administratrix of the Estate of John Mangini vs. Nathan Martinez, Elio Martinez, Joseph Alvarez, Fette Ford, Ford Motor Company, Rockport Commercial Vehicles, A Division of Forest River, Inc., John Does 1-3 (fictitious defendants) ABC Corporation 2-3 (fictitious defendants), Docket, No.: L-515-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and daughters, and advice and counsel services to spouse and daughters, January 29, 2015.

Lee Ann Horton, Administratrix and Administratrix Ad Prosequendum of the Estate of Shaina Horton vs. Linda Stanley, M.D., Louis Wesley, M.D., Adebola Nnewihe, M.D., John Does (fictitious names of healthcare providers who cared for the decedent during relevant time period, whose true identities and/or culpability is not presently known); Reliance Medical Group, Northfield OB/GYN, Galloway OB/GYN and ABC Medical Group (fictitious entities whose true designation is not presently known), Docket No.: ATL-L-7365-12, Chatham, New Jersey, on behalf of the plaintiff,  wrongful death proceeding, opinion regarding adjusted income to daughter, household services, companionship services to daughter, and advice and counsel services to daughter, January 29, 2015.

Chaya Applegrad, A minor by her mother and guardian ad Litem, Esther Applegrad, Esther Applegrad, Individually, and Gedalia Applegrad, Individually vs. Eric Bentolla, M.D., An Individual, Valley Hospital, An Entity, Kourtney Kacsmarski, R.M., An Individual, Mary Brown, An Individual, Yie-Hsien Chu, M.D., An Individual, John Does 1-10 and Jane Does 5-10, Docket No.: PAS-L-908–08, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime earnings and cost of lifetime care, January 22, 2015.

Christian Worthy, A minor by his Guardian Litem Yadira Worthy; Yadira Worthy, Individually and Clarence Worthy, Individually vs. David H. Moskowitz M.D., J. Lindquist, R.N.; Jersey Shore University Medical Center and Pat Post 3-25 ( fictitious persons/entities), Docket No.: MON-L-1592-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime adjusted earnings and cost of lifetime care, January 21, 2015.

## Kristin Kucsma, M.A.

### *Deposition Testimony*

Linda Y. Kennedy, Individually and as the Executor of the Estate of Willis A. Kennedy, Deceased vs. Hunterdon Urological Associates, P.A. and Allen J. Kern, M.D., Docket No.: L-113-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, Social Security income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, January 8, 2015.

William Sample vs. Marketstar Corp., et al., Docket No.: 12-5538 (SDW), Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes, January 8, 2015.



**P.O. Box 394**
**Mount Union, PA 17066**

Phone:  (866) 370-6233                                                                                       nancy@nafe.net
Fax:      (814) 542-3253                                                                                      http://www.nafe.net

## Statement of Ethical Principles and Principles of Professional Practice
## National Association of Forensic Economics (NAFE)
### (Effective July 1, 2014)

Forensic economics is the scientific discipline that applies economic theories and methods to matters within a legal framework. Forensic economics covers, but is not limited to:
- The calculation of pecuniary damages in personal and commercial litigation.
- The analysis of liability, such as the statistical analysis of discrimination, the analysis of market power in antitrust disputes, and fraud detection.
- Other matters subject to legal review, such as public policy analysis, and business, property, and asset valuation.

When providing expert opinion for use as evidence by the trier of fact, a NAFE member pledges, as a condition of membership, adherence to the following:

**1. Engagement**
Practitioners of forensic economics should decline involvement in any litigation when they are asked to assume invalid representations of fact or alter their methodologies without foundation or compelling analytical reason.

**2. Compensation**
Practitioners of forensic economics should not accept contingency fee arrangements, or fee amounts associated with the size of a court award or out-of-court settlement.

**3. Diligence**
Practitioners of forensic economics should employ generally accepted and/or theoretically sound economic methodologies based on reliable economic data. Practitioners of forensic economics should attempt to provide accurate, fair and reasonable expert opinions, recognizing that it is not the responsibility of the practitioner to verify the accuracy or completeness of the case-specific information that has been provided.

**4. Disclosure**
Practitioners of forensic economics should stand ready to provide sufficient detail to allow replication of all numerical calculations, with reasonable effort, by other competent forensic economics experts, and be prepared to provide sufficient disclosure of sources of information and assumptions underpinning their opinions to make them understandable to others.

**5. Consistency**
While it is recognized that practitioners of forensic economics may be given a different assignment when engaged on behalf of the plaintiff than when engaged on behalf of the defense, for any given assignment, the basic assumptions, sources, and methods should not change regardless of the party who engages the expert to perform the assignment. There should be no change in methodology for purposes of favoring any party's claim. This requirement of consistency is not meant to preclude methodological changes as new knowledge evolves, nor is it meant to preclude performing requested calculations based upon a hypothetical--as long as its hypothetical nature is clearly disclosed in the expert's report and testimony.

**6. Knowledge**
Practitioners of forensic economics should strive to maintain a current knowledge base of their discipline.

**7. Discourse**
Open, uninhibited discussion is a desired educational feature of academic and professional forensic economic conferences. Therefore, to preserve and protect the educational environment, practitioners of forensic economics will refrain from the citation of oral remarks made in an educational environment, without permission from the speaker.

**8. Responsibility**
Practitioners of forensic economics are encouraged to make known the existence of, and their adherence to, these principles to those retaining them to perform economic analyses and to other participants in litigation. In addition, it is appropriate for practitioners of forensic economics to offer criticisms of breaches of these principles.



# SOBEL TINARI  ECONOMICS GROUP LLC
**Professional Fees**
**(effective May 8, 2018)**

<div align="right">page 1 of  2</div>

**NOTICE: In litigated matters we are retained by counsel, not individual plaintiffs or defendants, and all of our correspondence and communications are with retaining counsel.**

## Payment Requirements

To maintain scientific and ethical standards of objectivity, fees for services are not contingent on the outcome of litigated matters.  The retaining attorney and law firm are responsible for payment of all fees.  Payment in full for all services is due upon completion of work. A signed final report will be issued only when payment of the outstanding balance due has been received.  Payment for deposition and/or trial testimony is due at least three (3) days prior to the day of testimony.

## Retainer Deposit

In order to contract for services, and/or name us as an expert, and before work can begin, a non-refundable retainer deposit is required.

The retainer deposit in standard tort cases is typically between $4,000 and $5,000, depending on the nature of the assignment.

If substantial travel expense is required, an additional retainer may be requested.

All work is charged against the retainer deposit.

For extended assignments, additional retainer deposits will be requested.

**Be advised that the retention of our services is contingent on the receipt of the non-refundable retainer payment.**

## Written Reports (Research and preparation)

The total cost of a written report in standard tort cases is typically between $4,000 and $5,500. If work is needed on an expedited basis, multiple scenarios apply or a more complex analysis is required, an additional fee will apply.

Supplements and revisions to previously issued reports are billed according to the Professional Fees that are in effect at the time of the request.

## Trial, Arbitration Mediation or *De bene esse* Video Testimony (Fee includes reasonable travel time.)

All unpaid balances must be paid in full before testimony.

| | | |
|---|---|---|
| $   600 | • | Non-refundable fee for trial preparation (including preparation of demonstrative aids, administrative services, etc.) |
| | | Payment is due upon receipt of invoice. |
| | | An additional charge for updates or revisions may apply. |
| $3,500 | • | Half-day appearance. |
| | | Payment is due at least three (3) business days before the day of testimony. |
| $3,000 | • | Additional half-day continuation on same or next day. |

If a case settles or a decision is made not to call our expert to testify, a refund will be issued for payment received less the non-refundable portion.



## SOBEL TINARI  ECONOMICS GROUP LLC
### Professional Fees (continued)

page 2 of 2

**Deposition Testimony**

$500 per hour (Minimum 4-hour charge in the amount of $2,000).

The minimum 4-hour charge encompasses both testimony time and travel time, if any.
Payment is due at least three (3) business days before the day of testimony. Additional hours, if
any, are invoiced subsequent to the deposition. Payment is to be made by our retaining attorney.  If
adversary firm is responsible for paying, our retaining attorney is expected to recoup payment
advanced to us. Cancellation less than 24 hours before a scheduled appearance is invoiced at
$300.00.

**In-Person Consultation**  (invoiced portal-to-portal plus reasonable travel expenses)

$500 per hour

**NOTICE:**    Under no circumstances is our firm name or the name of any of our testifying experts to
be used or listed for litigation purposes without prior notification and approval by the Sobel
Tinari Economics Group. **[Unauthorized use of our name is subject to a fee of $5,000.]**

**Late Payment Finance Charge**

Amounts outstanding are subject to a 1.3% monthly late payment charge after 30-day grace period.

We reserve the right to stop work or withdraw from an assignment if invoices are not paid on a
timely basis.

In the event the account becomes delinquent and is turned over to an attorney/collection agency
for collection, reasonable attorney's fees plus all court and attendant collection costs will be the
responsibility of the retaining attorney/law firm. These fees will also include the cost of travel (air
fares, car rentals), lodging, meals, etc. to collect or file any court motions required in the collection
process.

All fees listed herein apply until such time as they are changed by the Sobel Tinari Economics Group.

All payments should be made to:          Sobel Tinari Economics Group, LLC
293 Eisenhower Parkway, 2nd Floor
Livingston, New Jersey 07039
www.SobelTinariEconomics.com
973-992-1800 (phone)    973-994-1571 (fax)

*** Credit Card payments may be made by telephone. ***

