LITTLER MENDELSON, P.C.
One Newark Center – 8th Floor
Newark, New Jersey 07102
*Attorneys for Defendants*
  *Salisbury Bank and Trust Company and Salisbury Bancorp, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM GUNNAR TRUITT,<br><br>                              Plaintiff,<br><br>     -against-<br><br>SALISBURY BANK AND TRUST COMPANY;<br>AND SALISBURY BANCORP, INC.,<br><br>                              Defendants. | Civil Action No.: 7:18-cv-08386-NSR-PED<br><br>**DECLARATION OF JENNIFER I.<br>FISCHER IN FURTHER SUPPORT OF<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT** |

**JENNIFER I. FISCHER**, of full age, hereby declares pursuant to 28 U.S.C. § 1746:

1.     I am an attorney-at-law admitted to practice before this Court and an Associate at the law firm of Littler Mendelson, P.C., attorneys for Defendants Salisbury Bank and Trust Company and Salisbury Bancorp, Inc. (together, "Defendants") in the above-captioned matter.  I submit this Certification in further support of Defendants' motion for summary judgment.

2.     Attached as **Exhibit B Supplement** are true and exact copies of the relevant pages from the transcript of the deposition of Plaintiff William Gunnar Truitt ("Plaintiff"), conducted on June 27, 2019.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  January 28, 2020

By: */s/ Jennifer I. Fischer*_____

Jennifer I. Fischer

# EXHIBIT B

# SUPPLEMENT

Page 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS COUNTY

----------------------------------------X

WILLIAM GUNNAR TRUITT,

                    Plaintiff,

        -against-

SALISBURY BANK and TRUST COMPANY; and
SALISBURY BANCORP, INC.,

                    Defendants.

----------------------------------------X

                        June 27, 2019

                        9:42 a.m.

    EXAMINATION BEFORE TRIAL of WILLIAM GUNNAR

TRUITT, a Plaintiff herein, taken by the

respective parties, pursuant to Court Order,

held at the offices of McCullough Ginsberg

Montano & Partners, 122 East 42nd Street, Suite

3505, New York, New York, before Shechinah

Jackson, a Notary Public for and within the

State of New York.



Page 106

W. TRUITT

1
2  please allow me to stay in this position.
3      Q.  And what did Rick say in response?
4      A.  Basically, similar to what Doug had
5  reiterated or said on Thursday or Friday when I
6  had met him, similar to time commitment that he
7  talked to the board of directors, that he
8  wouldn't be able to explain it to them that we
9  have a person running for the State Assembly
10  and that if it was his son, he would recommend
11  that his son runs for the assembly over --
12      Q.  Let me step back.  When you say he
13  couldn't explain it to the board, can you
14  clarify that?
15      A.  I can't clarify that.  I don't know.
16  I don't know what that meant either.  That he
17  would have to talk to the people of the board
18  of directors and clearly there was uncomfort
19  there, amongst them, that I was running.
20      Q.  Did he tell you specifically that he
21  had already spoken to the board or he would
22  need to go to the board?
23      A.  I believe that he spoken to them.  I
24  believe that's what he said.
25      Q.  He reiterated the same concern about

Page 107

W. TRUITT

1
2  the time commitment that Mr. Cahill had
3  advised; is that correct?
4      A.  Yes.  And again, with the saying that
5  it wasn't a concern for the publicity, or
6  whatever, they both stated that.
7      Q.  Was anything else discussed?
8      A.  That had I not been successful he
9  would welcome me to apply, again, in November
10  or whenever.
11      Q.  Did Mr. Cantele stay anything else?
12      A.  Just like I said.  I remember him
13  saying if it was his son he would of
14  recommended him do it, because he thought it
15  was really, I guess -- again cool is not the
16  best word for it -- something most people don't
17  do, and that it was like a once in a lifetime
18  opportunity, and that he thought that was
19  something that that's what I should pursue.
20      Q.  Anything else?
21      A.  That's about all that I can recall.
22      Q.  And had you not decided to pursue this
23  opportunity, did Mr. Cantele say that you would
24  have remained in your position as a mortgage
25  originator trainee?

Page 108

W. TRUITT

1
2      A.  It was never said that I was a
3  mortgage originator trainee.  That wasn't said
4  in any of these conversations.
5      At this point I believe, and I thought
6  I was a mortgage loan originator based on what
7  we had spoken about prior --
8      Could you repeat the question?
9      Q.  Yes, let me rephrase it.
10      Did anyone, did either Rick or Doug
11  state that your employment at Salisbury Bank
12  would be terminated whether or not you chose to
13  run for office?
14      MR. LOWER:  Objection to form.
15      A.  Not at all, being that they had said
16  they were both very impressed with what I had
17  accomplished so far and how quickly I retained
18  information and that both Amy Raymond and
19  Andrea MacArthur were both very impressed with
20  the work I have done up to that point, and that
21  they were sad to see me go, but that if I was
22  running I could no longer continue working for
23  the bank.
24      And so it was that ultimatum, that I
25  had to pick one or the other.  And it's not

Page 109

W. TRUITT

1
2  that I picked the assembly over the bank.  I
3  had said I want to stay in this role, and I
4  know I can do both.
5      Q.  After your conversation with Mr.
6  Cantele was anything else discussed with any of
7  the executives at Salisbury Bank regarding your
8  election?
9      MR. LOWER:  Objection to form.
10      A.  Can you state that again, like
11  rephrase that.
12      Q.  Sure.  I think you testified as to the
13  completeness of the meeting, correct?  You
14  testified as to everything you can recall that
15  was discussed at your meeting with Rick
16  Cantele?
17      A.  Yes.  I believe so, that I can recall.
18      Q.  When the meeting ended, did you have
19  any further meeting or any further
20  communications with anybody at Salisbury Bank
21  regarding you running for office?
22      MR. LOWER:  Objection.
23      A.  It was the next day I believe that I
24  had sent an e-mail -- well, I had received a
25  text message from Amy asking what my decision

