UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM GUNNAR TRUITT,<br><br>　　　　　　　Plaintiff,<br><br>　　-against-<br><br>SALISBURY BANK AND TRUST COMPANY;<br>AND SALISBURY BANCORP, INC.,<br><br>　　　　　　　Defendants. | Civil Action No.: 7:18-cv-08386-NSR-PED |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DATED JULY 21, 2020**

MCCULLOUGH GINSBERG & PARTNERS LLP
122 E 42nd Street, Suite 3505
New York, NY 10168
Tel: (646) 435-0300
Counsel for Plaintiff

COUGHLAN LAW OFFICES, LLP
P.O. Box 72, 22 Hutton St.
Rhinecliff, NY 12574
Tel: (845) 802-6684
Co-counsel for Plaintiff

Plaintiff William Gunnar Truitt ("Mr. Truitt") respectfully submits this memorandum of law in support of his motion for reconsideration, under Fed. R. Civ. P. 60(b) and Local Civil Rule 6.3, of the Court's Opinion and Order dated July 21, 2020, ECF No. 52, which granted Defendants' ("Salisbury's") Motion for Summary Judgment.

## BACKGROUND

On August 22, 2018 Mr. Truitt filed a one-count civil action alleging unlawful termination and retaliation by Salisbury in violation of N.Y. Lab. Law § 201-d.

On September 14, 2018, Salisbury removed the above-captioned matter to this Court. ECF No. 1.

On December 13, 2019, Salisbury moved for Summary Judgment pursuant to Fed. R. Civ. P. 56, enclosing a "Statement of Undisputed Material Facts Pursuant to FRCP 56.1." ECF No. 47.

On January 13, 2020, Mr. Truitt served a Memorandum of Law in Opposition to Salisbury's Motion for Summary Judgment and admissible evidence, including a declaration by Mr. Truitt made on his personal knowledge, ECF No. 48, which responded to disputed various specific paragraphs from Salisbury's "Statement of Undisputed Material Facts," in compliance with the procedures set forth in Fed. R. Civ. P. 56, the rule Salisbury's "Statement of Undisputed Material Facts" was served "[p]ursuant to," both on its face and in the docket text.

On January 28, 2020, Salisbury served a Reply Memorandum of Law in Further Support of Salisbury's Motion for Summary Judgment, ECF No. 49, citing Local Rule 56.1 for the first time, asking the Court to "deem Defendants' SOMF as true and grant their Motion" because "movant's Local Civil Rule 56.1 Statement" [sic] was not "controverted by a Local Civil Rule 56.1 statement from the nonmoving party."

On January 29, 2020, in view of Salisbury's retroactive January 28, 2020 characterization of its prior "Statement of Undisputed Material Facts Pursuant to FRCP 56.1" as one that was actually made pursuant to Local Rule 56.1, Mr. Truitt wrote a one-paragraph letter to the Court requesting two days' leave to incorporate Local Rule 56.1(b)'s "correspondingly numbered paragraph" requirement into Mr. Truitt's existing "response to Defendants' Statement of Undisputed Facts."

On January 31, 2020, the Court denied Mr. Truitt's January 29, 2020 request to comply with Local Civil Rule 56.1 and for oral argument. ECF No. 51.

On July 21, 2020, this Court cited Salisbury's "Local Rule 56.1 Statement of Undisputed Facts" and Mr. Truitt's "fail[ure] to comply with Local Rule 56.1" as the "reason" for granting Salisbury's Motion for Summary Judgment. ECF No. 52.

## ARGUMENT

Mr. Truitt respectfully submits that the Court overlooked Salisbury's failure to file a Local Rule 56.1 Statement, denied Mr. Truitt the same opportunity, and cited the foregoing as the "reason" for granting Salisbury's Motion for Summary Judgment. Opinion and Order dated July 21, 2020 ("MTD Opinion") at 1, ECF No. 52.

For these and other reasons discussed *infra* and set forth in Mr. Truitt's Opposition papers, Mr. Truitt respectfully requests reconsideration of the Court's decision granting Salisbury's Motion for Summary Judgment.

**A.      Legal Standards**

"Relief under Rule 60(b)(1) is . . . appropriate where a court may have overlooked certain parties' arguments . . . ." *Lugo v. Artus*, No. 05 Civ. 1998 (SAS), 2008 WL 312298, at *2 n.19 (S.D.N.Y. Jan. 31, 2008); *accord SEC v. Milan Capital Grp.*, No. 00 Civ. 108 (DLC), 2014 WL

2815590, at *5 (S.D.N.Y. June 23, 2014) (explaining that "when a Rule 60(b) motion constitutes a motion for reconsideration . . . it contends that the Court overlooked certain matters or controlling decisions"). "A motion for reconsideration should be granted where 'the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Ventura-Nieves v. United States*, No. 12 Cr. 844 (RWS), 2017 WL 2061394, at *1 (S.D.N.Y. May 12, 2017) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "Alternatively, the moving party may establish that the court failed to consider 'factual matters that were put before the court on the underlying motion.'" *Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 739 F. Supp. 209, 211 (S.D.N.Y. 1990).

"The standards governing motions" for reconsideration under Rule 60(b) and Local Rule 6.3 "are the same." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014). A party seeking reconsideration under Local Rule 6.3 "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." *Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*, 301 F.R.D. 31, 45 (S.D.N.Y. 2014) (internal quotation marks omitted).

**B.     The Court Overlooked Salisbury's Failure to Submit a Local Rule 56.1 Statement**

"This District's Local Civil Rule 7.1 states that all motions and oppositions to motions must contain '[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion.'" *Hastad v. Hippos in Tanks, LLC*, No. 17-CV-2518 (VEC), 2019 U.S. Dist. LEXIS 42298, at *8 (S.D.N.Y. Mar. 15, 2019). Federal Rule of Civil Procedure 56 was the only civil rule relied upon or cited in support of Salisbury's Motion for Summary Judgment. *See, e.g.*, "Defendants' Statement of Undisputed Material Facts Pursuant to FRCP 56.1" ("Salisbury's

SOMF") and Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' MOL"), ECF No. 47.

"[B]ecause 'summary judgment cannot be granted by default even if there is a complete failure to respond to the motion,' Fed. R. Civ. P. 56, Advisory Committee Note (2010), the Court must independently consider whether [a party] has met his burden for summary judgment." *Hastad v. Hippos in Tanks, LLC*, No. 17-CV-2518 (VEC), 2019 U.S. Dist. LEXIS 42298, at *9 (S.D.N.Y. Mar. 15, 2019). See also *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.").

Mr. Truitt respectfully submits that the Court's citation to Salisbury's "Local Rule 56.1 Statement of Undisputed Facts" and Mr. Truitt's alleged failure to submit a Local Rule 56.1 Counter-statement as the "reason" for granting summary judgment overlooked the record and the fact that Salisbury never filed a Statement of Undisputed Material Facts pursuant to Local Rule 56.1. Instead, Salisbury's motion was accompanied by a "Statement of Undisputed Material Facts Pursuant to *FRCP* 56.1" (emphasis added), ECF No. 47-3, which Mr. Truitt's counsel recognized as a reference to the Federal Rules of Civil Procedure generally, and Fed. R. Civ. P. 56 specifically, which governs summary judgment motions of this type. That understanding was corroborated by the fact that the only rule cited or relied upon in Defs.' MOL or its Table of Authorities is "*Federal* Rules of Civil Procedure Rule 56," "Rule 56 of the *Federal* Rules of Civil Procedure," and "*Fed. R. Civ. P. 56(c).*" Defs.' MOL at iv, 12 (emphasis added).

In view of Salisbury's consistent and repeated invocation of *Federal* Rule of Civil Procedure 56, Mr. Truitt served Fed. R. Civ. P. 56-compliant Opposition papers including a declaration by Mr. Truitt, based on his personal knowledge, which disputed false and misleading

assertions and characterizations of evidence throughout Salisbury's SOMF by paragraph number. *See* Decl. of R. Lower ("Lower Decl."), ECF No. 48-1; Lower Decl. Ex. 13 ("Truitt Decl."). Mr. Truitt's Opposition papers similarly cite to and refute several factual allegations in Salsibury's SOMF with extensive citations to the record. *See, e.g.*, Mr. Truitt's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s MOL"), ECF No. 48, at 3 & n.11, 6 & n.22.

Mr. Truitt further notes that the first time Salisbury characterized its SOMF as one made pursuant to *Local* Civil Rule 56.1 was in Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment ("Defs.' Reply MOL"), ECF No. 49, at 1-2, which was served weeks after Mr. Truitt's only opportunity to serve opposition papers.

Mr. Truitt's counsel promptly reacted to Salisbury's retroactive January 28, 2020 characterization of its SOMF as one made pursuant to *Local* Rule 56 by respectfully requesting two days' leave to incorporate the Local Civil Rule 56.1 requirements into Mr. Truitt's previously-filed Fed. R. Civ. P. 56-compliant opposition. The Court denied that request on January 31, 2020. ECF No. 51.

By allowing retroactive invocation of Local Civil Rule 56.1 by Salisbury, denying Mr. Truitt the same opportunity, and citing Salisbury's invocation of Local Civil Rule 56.1 as *the* basis for granting summary judgment, the Court overlooked its obligation to independently evaluate the parties' summary judgment submissions. Accordingly, Mr. Truitt respectfully submits that the Court should reconsider its grant of summary judgment for this and other reasons discussed *infra*.

**C.     In-District Decisions Governing Requirements for Citation to Evidence**

Although the Court concluded "[e]ach statement by the movant or opponent . . . including each statement controverting any statement of material fact, must be followed by citation to

evidence which would be admissible," MTD Opinion at 2, Mr. Truitt respectfully notes this District has interpreted the rule more broadly.

"Statements in an affidavit or Rule 56.1 statement are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative or do not cite to supporting evidence." *Epstein v. Kemper Ins. Cos.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002); *see also McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 693 n.2 (S.D.N.Y. 1999) (refusing to deem contrary facts in defendant's Rule 56.1 statement admitted because plaintiff had included facts based on personal knowledge in signed briefs, affidavits, and his Rule 56.1 statement).

Accordingly, to the extent the Court characterizes the Truitt Decl. as a Local Rule 56.1 statement, Mr. Truitt respectfully submits that this District's precedent does not require Mr. Truitt's own admissible declaration to include citations in general, or circular citations to itself, in order to comport with Local Rule 56.1.

Mr. Truitt also respectfully submits that his declaration's citations to specific paragraphs in Salisbury's "FRCP 56.1" SOMF incorporate the evidence cited therein. "Citations to a party's 56.1 Statement incorporate by reference the documents cited therein." *Soto v. CDL (N.Y.) L.L.C.*, 2020 U.S. Dist. LEXIS 78736, at *3 n.1 (S.D.N.Y. May 5, 2020). Accordingly, Mr. Truitt respectfully submits that the Court overlooked the independently admissible representations in Mr. Truitt's declaration as well as the evidence incorporated into Mr. Truitt's declaration by reference.

For example, Mr. Truitt's declaration informed the Court that "Paragraph 35 of Salisbury's 'Statement of Undisputed Material Facts' . . . is false in general, unsupported by any part of [the] deposition testimony that Salisbury cited [and] indicates that Salisbury [] failed to review the calendar they cite." Truitt Decl. at 3. Mr. Truitt respectfully submits that such statements

incorporate by reference the documents cited therein and respectfully requests reconsideration of Mr. Truitt's admissible representations based on his personal knowledge and the evidence cited in Mr. Truitt's Opposition papers.

**D.     Even if Salisbury Had Submitted a Local Rule 56.1 Statement and Mr. Truitt Had Not Submitted a Response, it Would Not Authorize Summary Judgment in Conflict with Fed. R. Civ. P. 56, 83(a)**

"[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Fed. R. Civ. P. 56(e), Advisory Committee Note to 1963 Amendment; *Holtz v. Rockefeller & Co., 258 F.3d 62*, 74 n.1 (2d Cir. 2001). "To hold otherwise would risk creating tension between Local Rule 56.1 and Fed. R. Civ. P. 56." *Id.*

"Considering some facts undisputed does not of itself allow summary judgment. If there is a proper response or reply as to some facts, the court cannot grant summary judgment without determining whether those facts can be genuinely disputed." Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendment; s*ee also Winston & Strawn, LLP v. McLean*, 427 U.S. App. D.C. 17, 843 F.3d 503 (2016) (prohibiting summary judgment "as conceded" pursuant to a local rule when nothing in the record indicated that the district court had determined whether appellee's assertions warranted judgment under Fed. R. Civ. P. 56); *Heinemann v. Satterberg*, 731 F.3d 914, 915 (9th Cir. 2013) (prohibiting use of local rule to "deem a non-movant's failure to respond a complete abandonment of its opposition to summary judgment," noting "[t]his is the practice that the 2010 amendments to Fed. R. Civ. P. 56 sought to eliminate" and concluding "[b]ecause this local rule conflicts with the Federal Rule, it cannot provide a valid basis for granting a motion for summary judgment."). "To hold otherwise would risk creating tension between Local Rule 56.1 and Fed. R. Civ. P. 56, which permits a district court to grant an

unopposed motion for summary judgment only when it is 'appropriate,' *i.e.*, only when 'the . . . admissions on file . . . show that . . . the moving party is entitled to judgment as a matter of law." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 n.1 (2d Cir. 2001); Fed. R. Civ. P. 56(c), (e).

The 2010 Advisory Committee notes to Fed. R. Civ. P. 56 also echo Fed. R. Civ. P. 83(a), which confirms local rules "must be consistent with—but not duplicate—federal statutes and rules," and prohibits enforcement of local rules imposing "a requirement of form" in a "way that causes a party to lose any right because of a nonwillful failure to comply."  Within that vein, although Mr. Truitt respectfully contests the premise that any opportunity existed to respond to Salisbury's retroactive characterization of its SOMF as one made pursuant to Local Rule 56.1, to the extent the Court believes any such failure to comply with Local Rule 56.1 occurred, Mr. Truitt notes it was nonwilful.

### E. The Court Overlooked its Obligation to Disregard Testimony of Interested Witnesses and Evidence Favorable to the Moving Party

"[O]n motion for summary judgment, [the] district court 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Brink v. Muscente*, 2013 U.S. Dist. LEXIS 137880, at *39 (S.D.N.Y. Sep. 25, 2013) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).  Accordingly, Mr. Truitt respectfully submits that the Court's extensive citation of evidence proffered by and favorable to Salisbury as support for the Court's determining disputed questions of fact in Salisbury's favor, such as the question as to whether Mr. Truitt was fired, warrants reconsideration.

"[E]vidence that court should disregard on summary judgment 'includes testimony and affidavits from interested witnesses.'" *Brink v. Muscente*, 2013 U.S. Dist. LEXIS 137880, at *39 (S.D.N.Y. Sep. 25, 2013) (quoting *Williams v. City of White Plains*, 718 F. Supp. 2d 374, 377 (S.D.N.Y. 2010)).  Accordingly, Mr. Truitt respectfully submits that the Court's citation of

interested Salisbury witness testimony, including without limitation that of Messers. Cantele, Cahill, and Bassin, as bases for determining disputed questions of fact in Salisbury's favor, warrants reconsideration. *See, e.g.,* MTD Opinion at 6 (several citations to Cantele and Cahill's testimony), 8-13 (dozens of citations to Salisbury witnesses' self-serving declarations and testimony).

Accordingly, Mr. Truitt respectfully submits that the Court should reconsider its extensive citation to evidence favorable to the moving party.

**F.      Unsupported Factual Determinations Warranting Reconsideration**

"[A] court should reconsider its prior order where . . . the court failed to consider 'factual matters that were put before the court on the underlying motion.'" *Travelers Ins. Co. v. Buffalo Reins. Co.*, 739 F. Supp. 209, 211 (S.D.N.Y. 1990) (citations and quotations omitted); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration proper where the "moving party can point to controlling decisions or data that the court overlooked.").

The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted); *Knutson v. G2 FMV, LLC*, No. 14-CV-1694 (AJN), 2020 U.S. Dist. LEXIS 93346, at *5 (S.D.N.Y. May 28, 2020).

"Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party." *Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2d 506, 508 (S.D.N.Y. 2003); *see Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

Mr. Truitt respectfully submits that the Court should have abstained from making credibility assessments on thoroughly and genuinely disputed questions of fact, including without limitation the examples provided below, which should have been drawn in favor of the nonmoving party at the summary judgment stage.

The following five bullet points are excerpts of factual determinations appearing in the MTD Opinion (emphasis added) that Mr. Truitt respectfully submits are examples of incorrect and unsupported factual determinations that warrant reconsideration.

- ▲ **Plaintiff has not pointed to any evidence in the record that credibly raises a material question of fact about whether Defendants forced him to decide between termination or resignation.**

MTD Opinion at 20.

Mr. Truitt respectfully submits that the Court overlooked a substantial volume of evidence in the record in making this factual determination. For example, Mr. Truitt informed the Court that Salisbury Director of Human Resources Doug Cahill testified that Mr. Truitt "would have to make a decision" if he "wanted to continue with his -- with his campaign for the Assembly." Pl.'s MOL at 2.

Mr. Truitt's Opposition papers also cited supporting evidence in the record including "Ex. 10, Cahill Dep. 85:16-19" and informed the Court that, "when Mr. Cahill was asked 'Did you ever tell Mr. Truitt that he needed to choose between his job at Salisbury and his campaign for New York State Assembly,' he responded, 'I told him we needed a decision as to what he was going to do by that Tuesday.'" Pl.'s MOL at 2 n.6; *see also* Pl.'s MOL at 9-10 nn.29-30 (citing Salisbury documents establishing the involvement of Salisbury executives Bassin, Cantele, and Cahill in the "decision to make Mr. Truitt choose between his job and political activity.").

Accordingly, Mr. Truitt respectfully submits that the Court overlooked multiple citations to admissible evidence in the record that credibly established the fact that Salisbury forced Mr.

Truitt to decide between termination or resignation, and accordingly, this factual determination warrants reconsideration.

> ▲ **[E]ven when drawing all inferences from the record in Plaintiff's favor, his departure from the Bank is best classified as a resignation.**

MTD Opinion at 19.

Mr. Truitt respectfully submits that, although disputed, a classification of his termination as a resignation is not a sufficient basis for dismissing Mr. Truitt's wrongful termination claim when Mr. Truitt has consistently informed the Court that his termination was involuntary. *See, e.g.*, Ex. 13 to Pl.'s MOL, Truitt Decl. ¶ 13 (confirming Mr. Truitt was "fired" in response to Salisbury's SOMF). "[A] claim that an employer constructively discharged an employee is no different from a claim that an employer actually discharged an employee." Pl.'s MOL at 8 (quoting *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016)).

Salisbury failed to state or even suggest Mr. Truitt voluntarily resigned in any part of its Answer or the 11 defenses asserted therein. Pl.'s MOL at 12 & n.34. Accordingly, Mr. Truitt respectfully submitted that this 11th hour attempt to effectively amend Salisbury's Answer "should be waived, as it would be unfairly prejudicial to allow such a material shift in Salisbury's" strategy at this stage, when Salisbury's Answer "actually suggests Mr. Truitt was terminated." Pl.'s MOL at 12 & n.35.

Mr. Truitt further submits that no part of the record, including the correspondence that Salisbury began falsely characterizing as a resignation letter several months into this litigation, can reasonably be interpreted as evidence that Mr. Truitt voluntarily resigned. Notably, the opening paragraph of the email from Mr. Truitt that Salisbury attempts to characterize as a resignation letter reads: **"I am truly saddened to say** that after multiple discussions with Doug Cahill and after meeting with Rick Cantele yesterday, it has been confirmed to me that **my employment with**

**Salisbury Bank will not be continued if I pursue election to the New York State Assembly."**
Pl.'s MOL at 1-2, n.4, & nn.6-8 (citing and describing that email) (emphasis added); Pl.'s MOL at 3 & n.10 (quoting this email and notifying the Court this email explained "why he was being fired and who was firing him.").

Mr. Truitt respectfully submits that the Court overlooked these and other portions of the record indicating Mr. Truitt was fired, and accordingly, this factual determination warrants reconsideration, as the record cannot reasonably be interpreted as a basis for classifying Mr. Truitt's departure from Salisbury as a resignation.

> ▲ **Plaintiff contends, without support, that Defendants falsely asserted that he would be required to spend "at minimum 2-4 days per week – 60 business days – in Albany," given that there are multiple weeks during the legislative session with no meetings. (Truitt Decl. ¶¶ 12, 24.) However, both the documentary evidence proffered by both parties and the depositions of Cahill and Truitt support Defendants' assertion.**

MTD Opinion at 7 n.5.

As an initial matter, Mr. Truitt respectfully notes that he was never elected to NYS Assembly or required to spend *any* time in Albany, an undisputed fact established throughout the summary judgment record. *See, e.g.*, Pl.'s MOL at 6 & nn.22-26 (informing the Court "Mr. Truitt has never been offered or held a NYS Assembly position" and citing several pieces of evidence establishing the "objectively false" nature of this factual assertion by Salisbury).

Mr. Truitt also respectfully disputes the Court's assertion that "the documentary evidence proffered by both parties and the depositions of Cahill and Truitt support Defendants' assertion." MTD Opinion at 7 n.5 (without citation to any documentary evidence). Conversely, the documentary evidence proffered by Mr. Truitt established the unsupported nature of this determination by the Court. Pl.'s MOL at 6 nn.22-26.

Case 7:18-cv-08386-NSR-PED   Document 54-1   Filed 08/04/20   Page 14 of 20

Mr. Truitt's Opposition papers also informed the Court that, even *if* Mr. Truitt had been elected to NYS Assembly, he would not be required to spend "at minimum 2-4 days per week – 60 business days – in Albany," as the Court determined. Instead, Mr. Truitt respectfully informed the Court that

> Every part of that statement is false, unsupported by the testimony Salisbury cites,[n.22] and unsupported by the New York State Legislative Session Calendar to which Salisbury refers.[n.23] No reasonable jury could conclude that January 3, 2018 to June 20, 2018 is "more than half of the year," or conclude Mr. Truitt "would be required to spend at a minimum 2-4 days per week" in Albany based upon the calendar Salisbury references as its source, which includes three weeks with zero session days and one week with only one session day.[n.24]

Pl.'s MOL at 6 & nn.22-24 (citing the 2018 New York State Legislative Session Calendar at issue, explaining how it establishes the objectively false nature of this conclusion, and respectfully informing the Court that the Cahill and Truitt deposition testimony cited in Salisbury's SOMF do not support this conclusion).

Mr. Truitt's Opposition papers further informed the Court that "Salisbury provided Mr. Truitt with 'three weeks of vacation and then one week of personal time,'[n.26] which, had Mr. Truitt been elected, would have been more than enough time for him to attend every single Assembly session" without missing any work. Pl.'s MOL at 6 & n.26.

Accordingly, Mr. Truitt respectfully submits this factual determination was incorrect and warrants reconsideration for the same reasons stated in Mr. Truitt's Opposition papers and because the Court overlooked the complete absence of any evidence indicating any aspect of Mr. Truitt's campaign interfered with his job at Salisbury or provided a lawful basis for terminating Mr. Truitt's employment.

> ▲ **[A]s Truitt testified, he was never told by either Cantele or Cahill that his employment would be terminated whether or not he ran for office.**

MTD Opinion at 11-12.

Mr. Truitt respectfully submits that the Court overlooked or misinterpreted Mr. Truitt's deposition testimony cited by the Court. Specifically, the objection to form and portion of Mr. Truitt's deposition answer that the Court cites ("108:14-23") does not appear in the record cited by the Court ("ECF No. 49-1, Ex. B at Tr. 108:14-23"), MTD Opinion at 12. The Court's citation to Mr. Truitt's deposition transcript also cuts off the end of Mr. Truitt's answer to the confusing question at issue. Mr. Truitt's full answer to the question at issue clearly establishes Mr. Truitt wanted to continue working at Salisbury, but was forced to "pick one or the other," *i.e.*, his job or his protected political activity. Truitt Dep. Tr. at 108:10-109:4. Accordingly, Mr. Truitt respectfully submits that the Court overlooked the fact that the deposition testimony it referenced does not appear in the exhibit cited or support for this factual determination.

Included below is the question and answer corresponding to the Court's citation in support of its factual determination, including the question and portion of Mr. Truitt's deposition answer that was omitted from the Court's citation (emphasis added):

> Q: Did anyone, did either Rick [Cantele] or Doug [Cahill] state that your employment at Salisbury Bank would be terminated whether or not you chose to run for office?
>     MR. LOWER: Objection to form.
> A: Not at all, being that they had said they were both very impressed with what I had accomplished so far and how quickly I retained information and that both Amy Raymond and Andrea MacArthur were both very impressed with the work I have done up to that point, and that they were sad to see me go, but that if I was running I could no longer continue working for the bank. **And so it was that ultimatum, that I had to pick one or the other. And it's not that I picked the assembly over the bank. I had said I want to stay in this role, and I know I can do both.**

Truitt Dep. Tr. at 108:10-109:4; MTD Opinion at 12, citing Fischer Supp. Decl., ECF No. 49-1, Ex. B at Tr. 108:14-23 (although the testimony cited does not appear in Ex. B or any portion of Salisbury's motion papers, an error that Salisbury attempted to remedy by filing an "Ex. B Supplement," ECF No. 49-1).

Mr. Truitt further submits that the Court overlooked the extensive record that Mr. Truitt's Opposition papers cited as evidence that "Salisbury instructed Mr. Truitt to choose between his job and his political campaign." Pl.'s MOL at 2 & nn. 5-7 (summarizing and providing page:line citation to Salisbury Director of Human Resources Doug Cahill's testimony acknowledging he told Mr. Truitt "he needed to choose between his job at Salisbury and his campaign for New York State Assembly.").

Mr. Truitt respectfully submits that the Court overlooked or misinterpreted the evidence discussed *supra*, which confirms this factual determination is unsupported and warrants reconsideration.

> ▲ **[A]s it relates to those individuals involved with the decision not to grant Truitt's request for outside employment, the record indicates that none of them were involved with Barrett's campaign or provided any financial support.**

MTD Opinion at 13.

Mr. Truitt respectfully submits the evidence cited by the Court in support of this factual determination, "Fischer Decl. Ex. I at Resp. No. 1," MTD Opinion at 13, does not support the Court's conclusion. The relevant portion of the Salisbury interrogatory answer cited by the Court as the basis for this factual determination states:

> [N]o Salisbury **employee** involved in any discussions regarding whether Plaintiff would be able to fulfill his full-time job duties while campaigning for and/or as a member of the New York State Assembly, including Doug Cahill, Rick Cantele, Richard Kelly, Andrea McArthur or Amy Raymond, has provided financial support to a political campaign or political office held by Didi Barrett nor

> have these employees volunteered time to campaign or work on behalf of Ms. Barrett.

MTD Opinion at 13, citing "Fischer Decl. Ex. I at Resp. No. 1" (emphasis added).

Mr. Truitt respectfully submits that Salisbury Board of Directors members Bassin and Banta are not Salisbury employees, and accordingly, this self-serving interrogatory answer by Salisbury does not relate to or support this factual determination by the Court.

Mr. Truitt also respectfully submits this factual determination is inconsistent with the MTD Opinion at 9, which accurately states Salisbury Vice President and Director of Human Resources Doug Cahill "mentioned he had spoken with members of the board of directors, including Art Bassin ('Bassin'), who had told Cahill that he was not 'comfortable with [Truitt] . . . running for this position and working for the bank.'" MTD Opinion at 9 & n.9 (concluding these statements are not hearsay pursuant to Fed. R. Evid. 801(d)(2)(D)).

This factual determination by the Court is also inconsistent with the MTD Opinion's accurate conclusion that Bassin indeed provided financial support for Barrett's campaign. MTD Opinion at 12 (acknowledging Bassin "did contribute to Barrett's campaign, and would talk with her from time to time about political issues.").

Mr. Truitt also respectfully submits the Court overlooked documentary evidence summarized and cited in Mr. Truitt's Opposition papers, which established the involvement of Messers. Banta and Bassin in the decision to terminate Mr. Truitt's Salisbury employment. For example, Mr. Truitt's Opposition papers cited to and informed the Court that:

> The minutes from an April 27, 2018 Salisbury Board of Directors Meeting regarding Mr. Truitt's political activity . . . indicate that Art **Bassin** and George **Banta** were both at that meeting. . . . The section of the meeting minutes dedicated to Mr. Truitt's political activity concludes by stating **"he must make a decision whether to run for office or to continue employment with the Bank."**

Pl.'s MOL at 14 & n.42 (emphasis added); *see also* Pl.'s MOL at 1 & n.3, 14-15 & nn.43-44 (summarizing and citing a Salisbury memorandum to Bassin and Banta regarding "William Truitt . . . running for the NY State Assembly in November").

Based on the foregoing, Mr. Truitt respectfully submits the Court misinterpreted the evidence it cited in support of this factual determination and overlooked multiple portions of Mr. Truitt's Opposition papers and pieces of Salisbury evidence cited therein that established the involvement of Messers. Banta and Bassin (undisputed financial supporters of Mr. Truitt's political opponent, Didi Barret), in Mr. Truitt's termination. Accordingly, Mr. Truitt respectfully submits this factual determination by the Court is unsupported and warrants reconsideration.

**G.     Undisputed: Mr. Truitt's Political Activity Never Interfered With His Work at Salisbury and Was the Only Reason Given for His Termination**

Mr. Truitt's Opposition papers also respectfully and accurately informed the Court "[i]t is undisputed that Mr. Truitt's political activity never interfered with his work at Salisbury, which Salisbury witnesses have confirmed." Pl.'s MOL at 3 & n.11. Mr. Truitt's Opposition papers continued to inform the Court that, "when Salisbury CEO Rick Cantele was asked if he had any 'knowledge of Mr. Truitt's campaigning interfering with his ability to do his job at Salisbury,' Mr. Cantele, who was closely involved with Mr. Truitt's termination, responded 'No.'" Pl.'s MOL at 3 & n.12.

Mr. Truitt respectfully reiterates the undisputed and well-supported nature of the fact that his campaign for NYS Assembly — a position he was never offered — did not interfere with his job at Salisbury, and that "Salisbury has produced zero testimony or evidence indicating Mr. Truitt's political activity interfered with his work for Salisbury." Pl.'s MOL at 3.

It remains undisputed that "Mr. Truitt's protected political activities are the only reason Salisbury has provided for terminating Mr. Truitt's employment," Pl.'s MOL at 8, and "[i]t is also

undisputed that Mr. Truitt's campaign for New York State Assembly constitutes protected political activity under New York Labor Law § 201-d which occurred outside of working hours, off Salisbury's premises, and without the use of any Salisbury equipment or property." Pl.'s MOL at 1.

Accordingly, Mr. Truitt respectfully submits the Court overlooked the unrefuted and well-plead nature of Mr. Truitt's complaint and unlawful nature of his termination pursuant to N.Y.L.L. § 201-d, which were confirmed by numerous citations to the record throughout Mr. Truitt's Opposition papers. *See, e.g.*, Pl.'s MOL at 8 & n.27.

Because Mr. Truitt's protected political activities are the only reason Salisbury has provided for terminating Mr. Truitt's employment and it "remains undisputed that Mr. Truitt's political activity never interfered with his work," Pl.'s MOL at 3, 11, 21-22, & n.12, Mr. Truitt respectfully submits that the Court overlooked the unrefuted and well-plead nature of Mr. Truitt's N.Y.L.L. § 201-d claim, and accordingly, the Court's decision to grant Salisbury's Motion for Summary Judgment warrants reconsideration.

## CONCLUSION

For the foregoing reasons, Plaintiff William Gunnar Truitt respectfully requests the Court grant this Motion for Reconsideration and deny Salisbury Defendants' Motion for Summary Judgment in its entirety with prejudice.

Dated: August 4, 2020
      New York, New York

                                Respectfully submitted,

                                Robert B. Lower
                                Ted McCullough
                                *Attorneys for Plaintiff*
                                MCCULLOUGH GINSBERG
                                MONTANO & PARTNERS LLP
                                rlower@mgpllp.com
                                tmccullough@mgpllp.com
                                122 East 42nd Street, Suite 3505
                                New York, New York 10168
                                Phone: (646) 747-6895