USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/22/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM GUNNAR TRUITT,

                Plaintiff,

  -against-

SALISBURY BANK AND TRUST COMPANY et al,

                Defendants.

18-cv-8386 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff William Gunnar Truitt ("Plaintiff") commenced this action against Defendants Salisbury Bank and Trust Company and Salisbury Bancorp, Inc. ("Defendants" or the "Bank") on or about August 21, 2018 in the Supreme Court of the State of New York, Dutchess County. (ECF No. 1-1.) Plaintiff alleges that Defendants retaliated against him and wrongfully terminated his employment due to his political activities, in violation of New York Labor Law ("N.Y.L.L.") § 201-d. (*Id*.) On September 14, 2018, Defendants removed this action from state court pursuant to 28 U.S.C. §§ 1332, 144 I, and 1446. (ECF No. 1.)

    Before the Court is Plaintiff's motion for reconsideration of the Court's July 21, 2020 Opinion and Order granting Defendants' motion for summary judgment. (ECF No. 54.) For the following reasons, Plaintiff's motion for reconsideration is denied.

## BACKGROUND

    The Court assumes familiarity with the factual background of this case, as delineated in the Court's July 21, 2020 Opinion and Order (the Court's "Opinion") granting Defendants' motion for summary judgment. (ECF No. 54.)

In short, Plaintiff began working for Defendants on February 26, 2018. In April 2018, Plaintiff announced his intent to campaign for New York State Assemblyman for District 106. Defendants rejected Plaintiff's request to serve as a New York State Assemblyman while maintaining his employment with Defendants due to the time commitment—approximately 60 business days per year—and the $80,000 salary. Defendants indicated that Plaintiff would need to decide between continuing his employment with Defendants and serving as an Assemblyman. On May 1, 2018, Plaintiff wrote a letter to Defendants indicating his decision to continue with his campaign and ceased working for Defendants. Plaintiff argues that Defendants presented him with an ultimatum—to resign or be terminated—which constitutes constructive discharge. Plaintiff alleges this discharge was in violation with N.Y.L.L. § 201-d which provides that "it shall be unlawful for any employer … to discharge from employment … an individual … because of … an individual's political activities." N.Y.L.L. § 201-d. "Political activities" is defined to include "running for public office." (*Id.*) Plaintiff further argues that Arthur Bassin ("Bassin"), a member of the Bank's board and a financial donor to Plaintiff's political opponent, played a role in forcing the ultimatum.

On January 28, 2020, Defendants moved for summary judgment. (ECF No. 47.) On July 21, 2020, this Court issued and Opinion and Order granting summary judgment on the grounds that no rational juror could conclude Plaintiff was constructively discharged. (ECF No. 52 at 20.)[1] On August 4, 2020, Plaintiff filed a motion for reconsideration of the Court's Opinion & Order. (ECF No. 56.)

**STANDARD OF LAW**

---

[1] The Court also indicated that even assuming, *arguendo*, that Plaintiff had established a constructive discharge, his claim would nonetheless fail because he was unable to rebut Defendants' strong showing that the reason Plaintiff was discharged was due to the time commitment required by campaigning and serving as Assemblyman. (*Id.*)

**I.      Motion for Reconsideration**

Motions for reconsideration are governed by Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b). "The standard for granting a motion for reconsideration pursuant to Local Rule 6.3 is strict." *Targum v. Citrin Cooperman & Company, LLP*, 2013 WL 6188339, at * 1 (S.D.N.Y. Nov. 25, 2013). Motions for reconsideration are "addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990). A motion to reconsider "is not a vehicle for . . . presenting the case under new theories . . . or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quotation and citation omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (noting that party moving for reconsideration, "may not advance new facts, issues, or arguments not previously presented to the Court" (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000))) . They "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration of a Court's previous order is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal citation and quotation omitted), *aff'd sub nom. Tenney v. Credit Suisse First Bos. Corp.*, 2006 WL 1423785, at *1 (2d Cir. May 19, 2006).

**II.     Motion for Summary Judgment**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment will not lie where there is a "dispute[] over facts that might

3

affect the outcome of the suit under the governing law" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The Supreme Court has made clear that 'at the summary judgment stage the judge's function is not [] to weigh the evidence and determine the truth of the matter[.]'" *Westinghouse Elec. Corp. v. N.Y.C. Trans. Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249). Rather, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In deciding a motion for summary judgment, courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal citation and quotations omitted).

The moving party bears the initial burden of pointing to evidence in the record "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by showing "that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal citation and quotation marks omitted).

The party asserting that a material fact is genuinely disputed must support his or her assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly

4

supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). In addition, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252.

## DISCUSSION

### I.  Local Rule 56.1 Statement

Defendants submitted a Local Rule 56.1 Statement with their motion for summary judgment. (ECF No. 47-3.) However, Plaintiff failed to submit an appropriate response to Defendants' 56.1 Statement.[2] After the motion for summary judgment was fully briefed, Plaintiff realized his error and sought leave from the Court to file a complaint Rule 56.1 Statement. The Court denied Plaintiff's request. (ECF No. 51.) Plaintiff argues that the Court cited "[Plaintiff's] 'fail[ure] to comply with Local Rule 56.1' as the 'reason' for granting [Defendants'] [m]otion for [s]ummary [j]udgment." (ECF No. 54-1 at 3.) However, this is an inaccurate representation of the Court's Opinion; as the Court noted in its Opinion, "[b]ecause Plaintiff failed to comply with Local Rule 56.1, the Court [deemed] as admitted the facts set forth in Defendants' 56.1 Statement, *to the extent they are supported by the record*." (ECF No. 52 at 2) (emphasis added). While the Court noted Plaintiff's failure to comply with its rules, the Court nonetheless engaged in its own fact-finding process by reviewing the record in its entirety.

### II.  Testimony of Interested Witnesses and Evidence Favorable to the Moving Party

Plaintiff argues that the Court erred by considering evidence favorable to the moving party and testimony of interested witnesses. On a motion for summary judgment, the Court is

---

[2] Plaintiff argues that because Defendants referenced "FRCP 56.1" instead of "Local Rule 56.1" in their Rule 56.1 Statement, Plaintiffs were not obligated to submit a compliant response to Defendants' statement. The Court rejects the notion that a mere typo in the title of a document relieves Plaintiff of his obligation to comply with this Court's Rules. Since there is no Federal Rule of Civil Procedure 56.1, Plaintiff could not conceivably mistake Defendants' Rule 56.1 Statement as falling under any rule other Local Rule 56.1.

required to view the record in a light most favorable to a non-moving party and draw all reasonable inferences in his favor. *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). The Court's role is not to make credibility assessments or choose between conflicting versions of events when deciding a motion for summary judgment. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006). However, the Court is required to make *reasonable* inferences and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In its Opinion, the Court made factual findings based on the record and, in an absence of any evidence supporting Plaintiff's contentions whatsoever, found that the evidence was so one-sided that Defendants prevailed as a matter of law. Had Plaintiff presented evidence demonstrating a genuine issue of material fact, the Court would have denied Defendants' motion for summary judgment; however, Plaintiff presented very little evidence in the record to counter Defendants' factual assertions.

### III.  Alleged Factual Oversights

Plaintiff argues that the Court erred in several of its factual determinations and submits five examples of "incorrect and unsupported factual determinations that warrant reconsideration." (ECF No. 54-1 at 11.)

    A.    *"Plaintiff has not pointed to any evidence in the record that credibly raises a material question of fact about whether Defendants forced him to decide between termination or resignation."*

Plaintiff argues that the Court "overlooked a substantial volume of evidence in the record" including Cahill's testimony that Plaintiff "would have to make a decision" if he "wanted to continue with his—with his campaign for the Assembly" and Cahill's statement that he "told [Plaintiff] that we needed a decision as to what he was going to do by that Tuesday." (ECF No. 54-1 at 11.) The Court agrees with Plaintiff that Defendants indicated Plaintiff would

6

have to make a decision. But these statements do not demonstrate that Plaintiff was *forced* to resign; they merely indicate that the Bank—which had determined it would not grant Plaintiff outside employment approval for the Assemblyman position—needed to know whether Plaintiff intended to continue with his campaign.

> B. *"[E]ven when drawing all inferences from the record in Plaintiff's favor, his departure from the Bank is best classified as a resignation."*

Plaintiff sent a letter to Defendants indicating that he had decided to pursue the Assemblyman position—a position Defendants had indicated Plaintiff could not simultaneously hold while maintaining his role with the Bank—and then ceased working for Defendants. Plaintiff even indicated in the letter that he would consider coming back to work for Defendants if he was not successful in the November election. There is no doubt from a review of the record that Plaintiff resigned. Factually speaking there is no evidence to dispute Defendants' contention that Plaintiff resigned; the more pertinent question is whether his resignation was a constructive discharge.

In its Opinion, the Court addressed this issue and determined that the circumstances under which Plaintiff resigned did not rise to the level of a constructive discharge under the law, which typically requires hostile or coercive conduct. Nonetheless, even if Plaintiff were constructively discharged, the Court found that Plaintiff would be unable to prevail on summary judgment because Plaintiff would be unable to rebut Defendants' contention that the discharge was due to an assessment that Plaintiff would be unable to campaign and serve as Assemblyman while simultaneously fulfilling his duties at the Bank.

>    C. *"Plaintiff contends, without support, that Defendants falsely asserted that he would be required to spend 'at minimum 3-4 days per week – 60 business days – in Albany," given that there are multiple weeks during the legislative session with no meetings. . .However, both the documentary evidence proffered by both parties and the depositions of Cahill and [Plaintiff] support Defendants' assertion."*

The 2018 Legislative Session calendar includes 8 session days in January, 6 session days in February, 15 session days in March, 7 session days in April, 12 session days in May, and 11 session days in June, for a total of 59 planned session days. (*See* Def. Ex. S.) It is clear from the calendar, that an Assemblymember is required to spend approximately 60 days in Albany. Therefore, the Court's factual finding is supported by the record.

In his opposition to summary judgment, Plaintiff argued that the position would not require 60 *full* days in Albany because some sessions run 1-2 hours at most and the drive from the Bank to the Capitol is "approximately an hour and 15 minutes." (Truitt Dep. Tr. at 93:18-22.) However, Plaintiff also conceded that he "was never an [A]ssemblyman and so [he] wasn't entirely positive of what the times would be." (*Id*. at 94:17-24.) Further, even if *some* of the *planned* sessions were 1-2 hours, Plaintiff cannot explain how his 15 days of vacation and 5 days of personal leave could feasibly cover the Assemblymember obligations, especially in light of his role at the Bank which required fifty hours of in-person work per week.

>    D. *"[A]s Plaintiff testified, he was never told by either Cantele or Cahill that his employment would be terminated whether or not he ran for office."*

During his deposition, Plaintiff was asked "Did anyone, did either Rick [Cantele] or Doug [Cahill] state that your employment at Salisbury Bank would be terminated whether or not you chose to run for office?" Plaintiff responded: "Not at all" While Plaintiff indicated that he was facing an ultimatum, he also indicated that he was never explicitly told he would be terminated if he chose to seek office. Therefore, the Court did not err in making this factual finding.

8

> E.      "*[A]s it relates to those individuals involved with the decision not to grant [Plaintiff's] request for outside employment, the record indicates that none of them were involved with Barrett's campaign or provided any financial support*."

Plaintiff argues that Arthur Bassin, a board member and contributor to the campaign of Plaintiff's opponent, played a role in the Bank's decision to deny Plaintiff's outside employment request. As the Court indicated in its Opinion, the record clearly reflects that the Board is not involved in managing personnel decisions and that Bassin was not an employee of the Bank who was involved in the decision on Plaintiff's request. Plaintiff's assertion hinges on Plaintiff's testimony that Cahill "mentioned he had spoken with members of the board of directors, including [Bassin] who had told Cahill that he was not 'comfortable with [Plaintiff] … running for this position and working for the bank." (Truitt Dep. Tr. At 101:13-24.) However, the fact that Bassin expressed his opinion to Cahill does not contradict the Court's finding and the record which reflect that Bassin was not involved in the actual decision-making process.

***

In sum, the Court finds no error in its prior factual findings. Accordingly, the Court affirms its finding that Plaintiff was not constructively discharged. Further, the Court reiterates that even if Plaintiff were discharged, Plaintiff would be unable to rebut Defendants' rationale for termination—that campaigning for and holding office as an Assemblymember is a time commitment that would interfere with Plaintiff's ability to work for the Bank.[3]

---

[3] Plaintiff attempts to rebut this rationale by imputing a nefarious motive on Bassin. However, as explained, the record reflects that Bassin did not play a role in the decision to deny Plaintiff's outside employment request. Further, Plaintiff's own testimony reveals that Bassin was uncomfortable with Plaintiff simultaneously running for the New York Assembly and working at the Bank not due to some ulterior motive, but rather because "as an elected official himself … he didn't think it was plausible" to both work at the bank and be an assemblyman. (Truitt Dep. Tr. At 112:4-7.)

9

**IV.     Plaintiff's Political Activity**

In closing, Plaintiff argues that it is undisputed that Plaintiff's political activity never interfered with his ability to work at the Bank. However, the Court fails to see how this is relevant. First, the Court reiterates its finding that Plaintiff was not discharged. Second, even if Plaintiff were discharged, at the time of discharge Plaintiff was at the beginning stages of his campaign. Based on an evaluation of the time commitment required to serve in (and by extension, campaign for) the New York Assembly and the high salary, Defendants determined that Plaintiff could not feasibly hold both positions. This determination was based on information provided by Plaintiff and appears to be correct as Plaintiff took a four month leave of absence from his current job leading up to the election. (Truitt Dep. Tr. 139:5-141:7.)

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is DENIED. The Clerk of the Court is directed to terminate the motion at ECF No. 54.

Dated:   March 22, 2021                                                     SO ORDERED:

          White Plains, New York

                                                                                        _____
                                                                                        NELSON S. ROMÁN
                                                                                        United States District Judge